Filing # 42175471 E-Filed 06/01/2016 11:29:21 AM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

MEDICAL & CHIROPRACTIC CLINIC,
INC.,

      Plaintiff,

                                Case No.

vs.

                                Division:

DAVID M. OPPENHEIM, an individual, and
BOCK LAW FIRM, LLC d/b/a BOCK,         INJUNCTIVE RELIEF REQUESTED
HATCH, LEWIS, & OPPENHEIM, LLC,

      Defendants.

_____/

### PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION
### AND SUPPORTING MEMORANDUM OF LAW

      The plaintiff, Medical & Chiropractic Clinic, Inc., ("Medical & Chiropractic"), through

its undersigned counsel, hereby moves the Court to enter a Temporary Injunction, more fully

described below, against the defendants, David M. Oppenheim ("Mr. Oppenheim"), and Bock,

Hatch, Lewis & Oppenheim, LLC ("Bock Hatch," and collectively with Mr. Oppenheim, the

"Defendants"). The grounds for this Motion are set forth in the following Memorandum of Law

In Support of Plaintiff's Motion for a Temporary Injunction with Notice.

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFF'S MOTION FOR A TEMPORARY INJUNCTION

#### Introduction

      Medical & Chiropractic filed this action against its former attorney, Mr. Oppenheim, and

his new firm, Bock Hatch, to enjoin them from breaching their duties to Medical & Chiropractic

and usurping Medical & Chiropractic's position as a class representative for the putative class

(the "M&C Class") in a lawsuit against the Buccaneers Limited Partnership (the "Buccaneers").

The lawsuit alleges the Buccaneers violated the Telephone Consumer Protection Act ("TCPA")

by sending unsolicited faxes to thousands of fax numbers, including Medical & Chiropractic's fax number (the "Federal Action").

After years of contentious litigation representing Medical & Chiropractic, Mr. Oppenheim suddenly resigned Anderson + Wanca to join a new firm. Less than a month later, Mr. Oppenheim's new firm filed a class action lawsuit purporting to represent the same class as the Federal Action, but with a different class representative, Technology Training Associates. In doing so, Mr. Oppenheim and his new firm sought to usurp Medical & Chiropractic's position as putative class representative. Mr. Oppenheim's new firm then scheduled an immediate mediation in an attempt to negotiate a class wide settlement to the detriment of Medical & Chiropractic and the M&C Class. Only after Medical & Chiropractic inadvertently discovered the lawsuit and mediation, sought to stop the mediation, and two mediators refused to proceed with the mediation due to conflicts, did Mr. Oppenheim's new firm voluntarily dismiss the competing class action.

In light of Mr. Oppenheim's breaches of the duties owed to his client Medical & Chiropractic, as well as his new firm's aiding and abetting of those breaches, Medical & Chiropractic now seeks a temporary injunction to enjoin both Mr. Oppenheim and his new firm Bock Hatch from (1) representing any entity in a case alleging class-wide allegations substantially related to the Federal Action; (2) representing Technology Training in any actions substantially related to the Federal Action; (3) engaging in settlement negotiations with the Buccaneers, or reaching a settlement, in any matter substantially related to the Federal Action; and (4) using, disclosing, or relying upon confidential information that Mr. Oppenheim gained while representing Medical & Chiropractic.. As detailed below, Medical & Chiropractic is at the mercy of Mr. Oppenheim and his new firm, should they again attempt to secretly negotiate a

2

class-wide settlement, refile the Technology Training Action, or represent some other member of the putative class in the Federal Action against Medical & Chiropractic's interests. Accordingly, the Court should grant Medical & Chiropractic's motion.

## Factual Background

### I.     The Law Firm Anderson + Wanca Investigates and Files a Putative Class Action

In 2009, Anderson + Wanca and Addison & Howard, P.A., began investigating potential TCPA violations involving the Tampa Bay Buccaneers. (Ver. Compl., ¶ 9). That investigation culminated in the filing of the Federal Action, a putative class action lawsuit on behalf of Cin-Q Automobiles ("Cin-Q") in the U.S. District Court for the Middle District of Florida. (*Id.*, ¶ 10). In the Federal Action, the plaintiffs alleged that, beginning July 1, 2009, the Buccaneers sent facsimile advertisements offering group or individual game tickets for Tampa Bay Buccaneers games, in violation of the TCPA. (*Id.*, ¶ 11).

On January 3, 2014, Cin-Q Automobiles, Inc. ("Cin-Q") and Medical & Chiropractic filed a second amended complaint ("Second Amended Complaint"), which, among other things, added Medical & Chiropractic as a putative class representative of the M&C Class. (*Id.*, ¶ 12). The Second Amended Complaint defined the M&C Class as "[a]ll persons from July 1, 2009, to present who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt out language required by 47 C.F.R. 64.1200." (*Id.*, ¶ 13).

The Federal Court action has been an active, contentious litigation. Since 2013, the parties and their attorneys have participated in extensive fact discovery, depositions, class discovery, and expert discovery. (*Id.*, ¶ 15). The parties also filed cross-motions for summary judgments, motions for interlocutory appeal, and motions to bifurcate. (*Id.*). As further detailed

3

below, the parties also engaged in two full-day mediation sessions in an attempt to reach a class action settlement. (*Id.*).

**II.    Mr. Oppenheim Represents Medical & Chiropractic As Its Attorney.**

Mr. Oppenheim was employed as an attorney at Anderson + Wanca at the time the Federal Action was filed. (*Id.*, ¶ 17). Mr. Oppenheim extensively represented Medical & Chiropractic in connection with the Federal Action, working more than 80 hours on the Federal Action. (*Id.*, ¶ 19-21; Aff. of Michele Zakrewski, ¶ 3, attached as Ex. 1). Mr. Oppenheim's work focused on mediation and settlement negotiations of the Federal Action, and he gained confidential and privileged insight into Medical & Chiropractic's overall case strategy and settlement strategy. (*Id.*, ¶ 24).

In 2015, the parties to the Federal Action twice mediated in attempts to negotiate a class settlement. (*Id.*, ¶ 22). Mr. Oppenheim was the primary representative for the plaintiffs and the M&C Class in connection with those mediations. (*Id.*, ¶ 23). Mr. Oppenheim was granted full settlement authority on behalf of Cin-Q, Medical & Chiropractic, and the M&C Class in connection with those mediations. (*Id.*, ¶ 25). Mr. Oppenheim also prepared and submitted the mediation statements on behalf of Cin-Q, Medical & Chiropractic, and the M&C Class in preparation for the mediations. (*Id.*, ¶ 23).

The first mediation occurred in February, 2015, with Rodney Max of Upchurch Watson White & Max. (Ex. 1, Zakrewski Aff., ¶ 4; Ver. Compl., ¶ 29). Mr. Oppenheim discussed the mediation and Medical & Chiropractic's legal position in advance with Michele Zakrewski of Medical & Chiropractic, and they then met in-person on February 12, 2015. (Ex. 1, Zakrewski Aff., ¶ 5; Ver. Compl., ¶26-27). On February 13, 2015, Mr. Oppenheim, as the attorney representative of Medical & Chiropractic, Cin-Q, and the M&C Class, attended the mediation with Ms. Zakrewski. (Ex. 1, Zakrewski Aff., ¶ 4; Ver. Compl., ¶ 28).

The case did not settle at the February mediation, and the parties scheduled a second mediation in August, 2015, with the Hon. Wayne R. Andersen (Ret.) of JAMS. (Ex. 1, Zakrewski Aff., ¶ 7; Ver. Compl., ¶ 31, 34). Ms. Zakrewski and Mr. Oppenheim continued discussions before the August mediation. (Ex. 1, Zakrewski Aff., ¶ 8; Ver. Compl., ¶ 30). Mr. Oppenheim again prepared and submitted the mediation statement on behalf of Cin-Q, Medical & Chiropractic, and the M&C Class, with full access to case and settlement strategy. (Ver. Compl., ¶ 32). Mr. Oppenheim then attended the mediation on August 31, 2015, again as the attorney representative of Cin-Q, Medical & Chiropractic, and the M&C Class. (Ex. 1, Zakrewski Aff., ¶ 7; Ver. Compl., ¶ 33).

The case again did not settle at the mediation, but Mr. Oppenheim continued correspondence with Judge Andersen and counsel for the Buccaneers for months following the mediation. (Ver. Compl., ¶ 37). As recently as March 18, 2016, Mr. Oppenheim emailed with Judge Andersen and counsel for the defendants regarding settlement negotiations. (*Id.*, ¶ 39). Shortly thereafter, on March 25, 2016, the M&C Class filed its Motion for Class Certification. (*Id.*, ¶ 48).

**III.    Mr. Oppenheim Resigns from Anderson + Wanca to Form His Own Firm, Dropping Medical & Chiropractic and Surreptitiously Filing a "Copycat" Lawsuit in State Court on Behalf of a Different Putative Class Representative.**

On April 8, 2016, Mr. Oppenheim resigned from Anderson + Wanca to join Bock Hatch. (*Id.*, ¶ 49-50). Other attorneys at the firm include Phillip A. Bock and Daniel J. Cohen. (*Id.*, ¶ 52, 64). On April 20, 2016, shortly after Mr. Oppenheim resigned from Anderson + Wanca to join Bock Hatch, the Buccaneers orally asked the Court for, and obtained, an extension to June 13, 2016 to respond to the Motion for Class Certification in the Federal Action. (*Id.*, ¶ 53). Shortly, after that, on May 2, 2016, Judge Andersen declared an impasse in the mediation negotiations in the Federal Action. (*Id.*, ¶ 54).

When Mr. Oppenheim joined Bock Hatch, his firm immediately disregarded the interests of his former client Medical & Chiropractic and sought out clients with conflicting interests to Medical & Chiropractic. On or before May 5, 2016, Bock Hatch mailed solicitation letters to entities, looking for potential plaintiffs in TCPA lawsuits and apparently utilizing the list of potential class members filed in the Federal Action. (*Id.*, ¶ 55-56). One of the solicitation letters went to Ms. Zakrewski. (Ex. 1, Zakrewski Aff., ¶ 9-10). Then, just four days after Judge Andersen declared an impasse and one day after sending the solicitation letter to Medical & Chiropractic, Mr. Oppenheim's new firm filed a "copycat" lawsuit against the Buccaneers Limited Partnership in this Circuit Court, styled *Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, Case No. 16-CA-004333 (the "Technology Training Action"). (*Id.*, ¶ 57). The Technology Training complaint was signed by Mr. Bock of Mr. Oppenheim's new firm.[1]

In filing the Technology Training action, Mr. Oppenheim and his new firm sought to usurp the position of Medical & Chiropractic as the putative class representative and undermine the position of the Federal Action because the class covers the exact same class members as the Federal Action. (*Id.*, ¶ 58). More specifically, the Technology Training Action purports to cover all persons or entities sent fax advertisements for Tampa Bay Buccaneers tickets "from July 1, 2009, to present" that failed to include an "opt-out-notice" complying with FCC regulations. (*Id.*). In fact, the fax number for Technology Training, the named plaintiff and putative class representative, is listed in the motion for class certification filed by the plaintiffs in the Federal Action as one of the fax numbers receiving the unsolicited faxes from the Buccaneers. (*Id.*, ¶ 58). Mr. Oppenheim's new firm also included class allegations in the Technology Training

---

[1] The signature block of the complaint lists Bock & Hatch, LLC. (Ver. Compl., ¶ 57). The law firm Bock Law Firm, LLC does business as both Bock & Hatch, LLC and Bock, Hatch, Lewis & Oppenheim, LLC—Mr. Oppenheim's new firm. (*Id.*, ¶ 5).

6

Action although the statute of limitations had run on the class action approximately two years before filing. (*Id.*, ¶ 60).

**IV.    Mr. Oppenheim's New Firm Attempts to Mediate the Case and Negotiate a Class-Wide Settlement Just Days after Filing, Without Informing Medical & Chiropractic.**

Mr. Oppenheim's firm did not stop at filing the Technology Training Action—they then quickly scheduled a mediation, on a date less than two weeks later. (*Id.*, ¶ 62). By contrast, in the Federal Action, the parties vigorously litigated the same subject matter for two years before attempting mediation. (*See id.*, ¶ 22). Mr. Oppenheim's firm scheduled a mediation of the Technology Training Action contrary to Medical & Chiropractic's interests, despite the fact that Medical & Chiropractic would not be able to receive the financial incentives and other benefits of acting as the class representative through such a settlement. The Buccaneers also agreed to mediate the case without even receiving service of the complaint, and despite the long passed statute of limitations on the class allegations.

Although they represented a new client with interests in conflict with Medical & Chiropractic, Mr. Oppenheim and Bock Hatch did not obtain consent from Medical & Chiropractic before filing the Technology Training Action or attempting to mediate the case. (*Id.*, ¶ 61). Mr. Oppenheim and Bock Hatch did not even inform Medical & Chiropractic or its attorneys that they had filed the action or were attempting to mediate the case. (*Id.*, ¶ 61). Rather, Medical & Chiropractic's attorneys happened upon this information through a series of inadvertent disclosures by third parties. (*Id.*, ¶ 63-68).

Specifically, on May 11, 2016, Mr. Addison, co-counsel with Anderson + Wanca in the Federal Action, received an email confirmation of a mediation session that was scheduled to take place before Judge Andersen on Friday May 20, 2016. (Aff. of Michael Addison, attached as Ex. 2, ¶ 4; Ver. Compl., ¶ 63). The other recipients of the email were Mark Mester, counsel for

7

the Buccaneers in the Federal Action, and Daniel J. Cohen, an attorney associated with Bock Hatch. (Ex. 2, Addison Aff., ¶ 4; Ver. Compl., ¶ 63-64). The referenced matter was the "Buccaneers LTD Partnership TCPA". (Ex. 2, Addison Aff., ¶ 4; Ver. Compl., ¶ 63).

The next day, Mr. Addison contacted the JAMS office to determine what the email referenced, and the JAMS case manager informed him that he had received the email in error. (Ex. 2, Addison Aff., ¶ 5; Ver. Compl., ¶ 66). Mr. Addison then found the Technology Training Action online. (Ex. 2, Addison Aff., ¶ 6; Ver. Compl., ¶ 68). Later that same day, only after the ruse was discovered did the Buccaneers file a "Notice of Pendency of Related Action" in the Federal Action, disclosing the Technology Training Action. (Ex. 2, Addison Aff., ¶ 8; Ver. Compl., ¶ 69).

## V.    After Discovering the Competing Class Action Filed By Its Former Attorney, Medical & Chiropractic Takes Immediate Steps to Preserve Its Interests As Putative Class Representative.

Realizing that Mr. Oppenheim's new firm was attempting to hijack the pending class action against the Buccaneers and the associated settlement negotiations, Medical & Chiropractic took action. On May 13, 2016, Medical & Chiropractic filed in the Technology Training Action a Motion to Intervene and a Motion to Stay Or in the Alternative Strike Class Allegations and Disqualify Plaintiff's Counsel, which was set for an emergency hearing on May 19, 2016. (Ver. Compl., ¶ 75). On May 16, 2016, Medical & Chiropractic filed in the Federal Action a Motion to Enjoin Defendant from Proceeding in Competing Case. (*Id.*, ¶ 76). Both motions sought to preserve Medical & Chiropractic's interests as putative class representative and to stop any attempted "reverse auction" of the class settlement. (*Id.*, ¶ 81; Exhibits 13-14 to the Ver. Compl.).

On May 16, 2016, Judge Andersen notified the Technology Training parties that he would not mediate the case because it conflicted with his previous mediations in the Federal

8

Action. (*Id.*, ¶ 77). Undeterred, Mr. Oppenheim's new firm secretly attempted to proceed with another mediator, (*Id.*, ¶ 78). Mr. Addison once again accidentally was notified of a mediation in the Technology Training Action, which was scheduled to occur prior to the emergency hearing on the Motion to Intervene. (*Id.*, ¶ 79). Thereafter, Anderson + Wanca sent an email to the Buccaneers' attorney inquiring whether another mediation had been scheduled with a different mediator, but received no response. (*Id.*, ¶ 80). However, on May 18, 2016, Mr. Oppenheim's new firm filed a Notice of Voluntary Dismissal, without prejudice, in the Technology Training Action. (*Id.*, ¶ 82). This filing, one day before the scheduled emergency hearing on the Motion to Intervene, was signed by Mr. Bock, identifying Bock Hatch as his law firm. (*Id.*, ¶ 83).

Neither Mr. Oppenheim nor Bock Hatch has agreed to refrain from proceeding with further settlement negotiations substantially related to the Federal Action. (*Id.*, ¶ 84).

**Argument**

**I.    The Standard for Entry of a Temporary Injunction.**

The function of a temporary injunction is to preserve the status quo, until the case can be fully considered. *Manatee County v. 1187 Upper James of Florida, LLC*, 104 So.3d 1118, 1121 (Fla. 2d DCA 2012); *City of Miami Beach v. Kuoni Destination Mgmt., Inc.*, 81 So.3d 530, 532 (Fla. 3d DCA 2012). Medical & Chiropractic seeks this temporary injunction to preserve the status quo and stop Mr. Oppenheim and his new firm from usurping Medical & Chiropractic's position as putative class representative. To obtain a temporary injunction under Florida law, the moving party must establish that: (1) irreparable injury will result in the absence of the injunction; (2) no adequate legal remedy is available; (3) the moving party has a substantial likelihood of success on the merits; and (4) the injunctive relief will serve the public interest. *Provident Mgmt. Corp. v. City of Treasure Island*, 796 So. 2d 481, 485 (Fla. 2001); *Hasley v.*

9

*Harrell,* 971 So. 2d 149, 152 (Fla. 2d DCA 2007). Medical & Chiropractic's position here meets all of these elements, and it will present factual evidence in support of each of these elements at a hearing on the temporary injunction. *See Montville v. Mobile Med. Indus., Inc.,* 855 So.2d 212, 214 (Fla. 4th DCA 2003) (relying on facts from evidentiary hearing on a temporary injunction).

## II.    Medical & Chiropractic Will Suffer Irreparable Injury In The Absence Of The Injunction, and There Is No Adequate Remedy at Law.

If Mr. Oppenheim and his firm are permitted to continue to represent other class members, file competing class actions, or negotiate class-wide settlements, Medical & Chiropractic will be irreparably harmed. As detailed below, Medical & Chiropractic faces this irreparable harm through Mr. Oppenheim breaching his fiduciary duties and engaging in representation adverse to Medical & Chiropractic. Medical & Chiropractic also faces irreparable harm due to the risk of a "reverse auction" should Mr. Oppenheim and his firm be permitted to continue their unethical representation of other class members in conflict with his obligations to Medical & Chiropractic and the Class.

Other courts have found irreparable harm and enjoined attorneys from representing parties in conflict with their former client's interests. In *Maritrans v. Pepper,* the Supreme Court of Pennsylvania upheld a preliminary injunction enjoining a law firm from representing its former client's competitors, whose interests were adverse to the interests of its former client. 602 A.2d 1277, 1279 (Pa. 1992). The court held that a preliminary injunction was appropriate because the former client's competitive position could be irreparably injured if the law firm continued to represent the former client's competitors. *Id.* at 1287. Here, Mr. Oppenheim and his new firm are representing a competing putative class representative attempting to supplant Mr. Oppenheim's former client as putative class representative. Medical & Chiropractic will be

10

irreparably harmed if Mr. Oppenheim and his firm succeed in pursuing the competing class lawsuit.

Courts also find irreparable harm supporting an injunction in cases where the opposing party breaches a fiduciary duty. In *Vargas v. Vargas,* 771 So. 2d 594 (Fla. 3d DCA 2000), the Vargas sisters sought injunctive relief against their brothers for breach of fiduciary duty and conversion following a transfer of offshore bearer corporate shares to the brothers without the sisters' consent and an alleged conversion of $4.4 million. *Id.* at 595. The Vargas sisters presented evidence to establish that that they had common ownership of the bearer shares and the $4.4 million. *Id.* at 595-96. Absent injunctive relief, the sisters' assets would have been exposed to the risk of conversion or dissipation by a third party, resulting in irreparable harm beyond the jurisdiction of the court. *Id.* at 596. The court also found that no adequate remedy at law existed to restore the assets to the sisters. *Id.* Similarly, here, Medical & Chiropractic would suffer irreparable harm if Mr. Oppenheim breaches his fiduciary duty and usurps Medical & Chiropractic's position as putative class representative. Medical & Chiropractic would no longer be involved in strategy for the lawsuit, and would love the financial incentives related to its status as putative class representative.

Medical & Chiropractic, along with the M&C Class, would also be irreparably harmed by a "reverse auction" due to Mr. Oppenheim's representation of other class members. As the Seventh Circuit has described, a reverse auction is:

> the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant... The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line-- the sum of the settlement and the attorneys' fees--and not the allocation of money between the two categories of expense.

11

*Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (citations omitted). Judges have a duty at the settlement phase to conduct a thorough inquiry to ensure the settlement is not the result of a reverse auction creating an undervalued settlement. *Id.* at 282-283.

In light of this risk, courts will enjoin settlements that have the potential to undermine existing class actions. *See, e.g., In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1322 (S.D. Fla. 2012) (enjoining defendant from settling in competing, later filed class action; citing the court's power to enjoin under the All Writs Act); *see also In re Am. Online Spin-Off Accounts Litig.*, No. CV 03-6971-RSWL, 2005 U.S. Dist. LEXIS 45625, at *14 (C.D. Cal. May 9, 2005) (enjoining Illinois state court proceeding because of threat to federal court's ability to decide the case).

In *In re Checking Account*, the court was overseeing a class action that had been pending for approximately two years. *Id.* at *7. The defendant filed a Notice of Settlement and Motion to Stay based on the entry of an order granting preliminary approval of a settlement in a proposed class action that had been filed in a different court only one month before the settlement. *Id.* The court enjoined the settlement, finding that granting the motion to stay "would result in irreparable harm to the putative class in *Swift* and establish a precedent in MDL 2036 of permitting other defendants to pursue similar courses of action." *Id.* at *22.

Here, Mr. Oppenheim and his new firm are not only representing other putative class members and pursuing a settlement that would irreparably harm Medical & Chiropractic, they are taking these steps after Mr. Oppenheim had already represented Medical & Chiropractic and the putative Class in the competing litigation. *See, e.g., Masztal v. City of Miami*, 971 So. 2d 803 (Fla. 3d DCA 2007) (finding breach of fiduciary duty by attorney and vacating settlement by putative class counsel that included only the named plaintiffs and abandoned the class). Thus,

12

the risk of irreparable harm from a reverse auction is further amplified by Mr. Oppenheim's breach of his ethical and fiduciary obligations to his former client Medical & Chiropractic, and the M&C Class.

## III.  Medical & Chiropractic Has a Substantial Likelihood of Success on The Merits of Its Claims.

Medical & Chiropractic brings two claims in this litigation: breach of fiduciary duty against Mr. Oppenheim and Bock Hatch, and aiding and abetting a breach of fiduciary duty against Bock Hatch, Mr. Oppenheim's new firm. Medical & Chiropractic has a substantial likelihood of success on the merits of both claims.

### A. Breach of Fiduciary Duty

To establish a breach of fiduciary duty, Medical & Chiropractic will need to establish the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. *Gracey v. Eaker,* 837 So.2d 348, 353 (Fla. 2002).

#### 1. Mr. Oppenheim Owed Medical & Chiropractic Fiduciary Duties.

As an attorney representing Medical & Chiropractic, Mr. Oppenheim owed Medical & Chiropractic fiduciary and ethical duties. *Cap. Bank v. Mvb,* 644 So. 2d 515, 518 (Fla. 3d DCA 1994) (attorney/client relationships are expressly created fiduciary relationships); *Masztal,* 971 So. 2d at 808-09 (attorneys owe fiduciary duties to their clients). "A fiduciary owes to its beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts." *Cap. Bank,* 644 So. 2d at 520.

The Florida Rules of Professional Conduct set forth additional duties owed by Mr. Oppenheim to his former client, Medical & Chiropractic. Under Rule 4-1.9, Mr. Oppenheim owed a duty of loyalty to Medical & Chiropractic:

13

A lawyer who has formerly represented a client in a matter must not afterwards:

> **(a)** represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>
> **(b)** use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
>
> **(c)** reveal information relating to the representation except as these rules would permit or require with respect to a client.

Fla. Bar Reg. R. 4-1.9; *see also Brent v. Smathers*, 529 So.2d 1267 (Fla. 3d DCA 1988) ("Rule 4-1.9 also imposes upon the lawyer a duty of loyalty"). Duties to Medical & Chiropractic were also imputed to Bock Hatch under Fla. Bar Reg. 4-1.10.

A "substantially related" matter is one that involves "the same transaction or legal dispute." Comment to Fla. Bar Reg. R. 4-1.9. Further, "[l]awyers owe confidentiality obligations to former clients, and thus information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client without the former client's consent." *Id.* To overcome any conflict of interest, Mr. Oppenheim was required to obtain informed consent from each client, "confirmed in writing or clearly stated on the record at hearing." Fla. Bar. Reg. R. 4-1.7(b)(4). Mr. Oppenheim never asked for, let alone obtained, informed consent from Medical & Chiropractic.

In addition, Rule 4-8.4(c) provides that Mr. Oppenheim shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. Fla. Bar. Reg. 4-8.4(c). Mr. Oppenheim's conduct violated all of these requirements of the Rules Regulating the Florida Bar.

### 2. Mr. Oppenheim Breached His Fiduciary Duties to Medical & Chiropractic.

By taking steps to represent another putative class representative in a competing class action, Mr. Oppenheim acted contrary to Medical & Chiropractic's interest in being named the

class representative, as well as the financial incentives that would come with successfully representing the M&C Class,[2] By then attempting to immediately negotiate a settlement of the competing class action, Mr. Oppenheim also disregarded Medical & Chiropractic's interests in being the lead class representative involved in those settlement negotiations.

In a case similar to this case, Florida's Third District Court of Appeals and the Florida Supreme Court each found that an attorney breached his fiduciary duty to his former clients, putative class members, by secretly negotiating a settlement benefiting only the named class representatives. *See Fla Bar v. Adorno*, 60 So.3d 1016 (Fla. 2011); *Masztal*, 971 So. 2d 803. The *Adorno* case arose from a civil case seeking class certification for alleged improper emergency medical assessment fees imposed on property owners by the City of Miami. *Adorno*, 60 So.3d at 1019. A group of citizens hired a law firm which filed a putative class action complaint. *Id*. The parties engaged in six years of litigation, and "from the inception of the case, the parties [] treated it as a class action." *Id*. at 1019-1020. The morning of the trial, the attorney for the putative class settled the case on behalf of only the named plaintiffs. *Id*. at 1021.

The Florida Supreme Court found that in negotiating "to the detriment of the other class members," the attorney "ignored or abandoned the putative class members." *Id*. at 1024. Accordingly, the Court found that the attorney had breached his fiduciary duty to the putative class members. *Id*., at 1027-1028; *see also Masztal*, 971 So. 2d at 810. The attorney also violated Rule 4-8.4(c) and (d) by prejudicing the rights of the putative class by abandoning them, reaching a settlement with the City that benefited only the handful of named plaintiffs, hiding the terms of the settlement agreement through a nondisclosure agreement, and failing to inform the client of the conflict and obtain the client's consent, among other things. *Adorno*, 60 So.3d at

---

[2] Medical & Chiropractic has retained counsel to file complaints with the Illinois Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois and the Florida Bar.

15

1029; *see also, Young v. Achenbauch*, 136 So.3d 575, 576 (Fla. 2014) (finding a violation of Rule. 4-1.9 and 4-1.7 where attorneys for a class attempted to bring suit against the foundation established by the class settlement, while their former clients were members of the board of the foundation).

Here, as in *Adorno* and *Masztal*, Mr. Oppenheim is essentially switching teams in the middle of the Federal Action and abandoning his former client for a new, competing client. He dropped Medical & Chiropractic, picked up a client whose interests are in conflict with those of his former client, and then attempted to negotiate a settlement with that client, cutting Medical & Chiropractic out of the deal. Mr. Oppenheim's actions are plainly to the detriment of Medical & Chiropractic. As in *Adorno* and *Masztal*, these actions are violations of Mr. Oppenheim's fiduciary and ethical duties to Medical & Chiropractic.

### 3. Medical & Chiropractic Has And Will Suffer Damages Due To Mr. Oppenheim's Breach.

If Mr. Oppenheim's breaches of fiduciary duty are permitted to continue, Medical & Chiropractic will suffer even more significant damages, including loss of any financial incentives associated with being the putative class representative for any judgment or settlement. Medical & Chiropractic has also already been forced to incur fees and costs to protect its interests in the Federal Action. (*See, e.g.,* Motion to Intervene filed in the Technology Training Action and Motion to Stay filed in the Federal Action).

### B. Aiding and Abetting a Breach of Fiduciary Duty

To establish that that Bock Hatch aided and abetted Mr. Oppenheim's breach of fiduciary duty, Medical & Chiropractic will establish (1) a fiduciary duty by Mr. Oppenheim; (2) a breach of this fiduciary duty; (3) knowledge of the breach by Bock Hatch; and (4) Bock Hatch's substantial assistance or encouragement of the wrongdoing. *Rosenbaum v. Becker and Poliakoff*

*PA*, No. 08-81004-CIV, 2010 WL 376309, \*9 (S. D. Fla., Jan. 26, 2010), *citing Sensormatic Electronics Corp. v. TAG Co. US, LLC*, 632 F.Supp.2d 1147, 1192 (S.D. Fla. 2008). As elements (1) and (2) are addressed above, only Bock Hatch's knowledge and substantial assistance or encouragement are addressed below.

### 1. Bock Hatch Knew Mr. Oppenheim Breached His Fiduciary Duty.

When Mr. Oppenheim joined the firm, Bock Hatch knew of his involvement in the Federal Action and representation of Medical & Chiropractic in that litigation. Then, once Bock Hatch filed the Technology Training Action, Mr. Oppenheim's breaches of his fiduciary duties were immediately identified for Bock Hatch through Medical & Chiropractic's flurry of motion filings. Within days of the filing of that action, Medical & Chiropractic filed a Motion to Intervene in the Technology Training Action, pointing out Mr. Oppenheim's fiduciary duty and ethical violations. Even Judge Andersen declined to mediate the case, acknowledging the conflicts of interest between the Federal Action and the Technology Training Action.

Nonetheless, Bock Hatch refused to dismiss the Technology Training Action, and sought to mediate the case in front of a different mediator, knowing full well that Mr. Oppenheim had been intimately involved in representing Medical & Chiropractic in the Federal Action. Only after a second mediator refused to mediate the case due to the conflicts at issue did Bock Hatch voluntarily dismiss the lawsuit. These facts demonstrate that Bock Hatch knew of Mr. Oppenheim's breaches.

### 2. Bock Hatch Substantially Assisted Mr. Oppenheim's Breach of Fiduciary Duty.

Bock Hatch substantially assisted in Mr. Oppenheim's breach of fiduciary duty by hiring Mr. Oppenheim, filing the Technology Training Action, and proceeding with representation adverse to Medical & Chiropractic, Mr. Oppenheim's former client. The ethical rules of the

17

Florida Bar make this clear. Under Rule 4-1.10, no lawyer in a firm may "knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9..." Fla. Bar Reg. R. 4-1.10 (a). In addition, when a lawyer becomes associated with a firm, "the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter." Fla. Bar Reg. R. 4-1.10(b). Here, Phillip Bock of Bock Hatch filed the lawsuit at issue, and Bock Hatch pursued a class settlement of the Technology Training Action even after express notice of Mr. Oppenheim's ethical and fiduciary duty violations. This is direct assistance in Mr. Oppenheim's breaches of his fiduciary duty to Medical & Chiropractic.

**IV.    Granting The Injunction Serves The Public Interest.**

Granting an injunction which bars Mr. Oppenheim and his new firm from representing other putative class members, proceeding with the Technology Training Action, or any other competing class actions to the Federal Action, and negotiating a class-wide settlement with the Buccaneers serves the public interest both by enforcing the ethical and fiduciary duties of a lawyer to his client, and by protecting Medical & Chiropractic and the putative Class from the threat of a reverse auction.

First, the injunction will serve to protect and uphold the ethical and fiduciary duties an attorney owes to his current and former clients. "Loyalty is an essential element in the lawyer's relationship to a client." *Brent*, 529 So.2d at 1269 (*citing* Fla. Bar. Reg. R. 4-1.7 (cmt)). These obligations also include the ethical duties in Rules 4-1.9 (barring a lawyer from representing a client in a substantially related matter materially adverse to a former client's interests without informed consent), 4-1.10 (providing a firm may not represent a client in a substantially related

18

matter adverse to the former client of an attorney at the firm), and 4-8.4 (providing an attorney shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). If clients cannot count on courts protecting clients from attorneys' ethical and fiduciary violations, the trust that clients place in lawyers would suffer greatly.

Second, protecting Medical & Chiropractic and the putative M&C Class from the threat of a "reverse auction" settlement with Mr. Oppenheim's new firm and new client will uphold the public interest. *See, e.g., Reynolds,* 288 F.3d at 283, 289 (reversing approval of settlement that had hallmarks of reverse auction because of position of judge as "fiduciary of the class" in analyzing the settlement phase of a class action case). The risk of such a "reverse auction" is heightened here given Mr. Oppenheim and his new firm's attempts to quickly negotiate a class settlement through a competing, time-barred, and just-filed case. This threat to the pending Federal Action and putative class absent the injunction further supports that the injunction will serve the public interest.

## Conclusion

Medical & Chiropractic has been betrayed by its former attorney, Mr. Oppenheim, and his new law firm. After representing Medical & Chiropractic in a contentious, large class action litigation, Mr. Oppenheim suddenly abandoned Medical & Chiropractic and sought to usurp its position as putative class representative by filing a competing putative class action. In taking these actions, Mr. Oppenheim and his new firm breached fiduciary and ethical duties to Medical & Chiropractic, and aided and abetted in those breaches. Medical & Chiropractic is at risk of irreparable harm should Mr. Oppenheim and his new firm again attempt to secretly file a lawsuit, negotiate a class-wide settlement, or represent some other member of the putative class in the Federal Action against Medical & Chiropractic's interests. Accordingly, the Court should grant Medical & Chiropractic's motion and enjoin Mr. Oppenheim and his firm.

WHEREFORE, Medical & Chiropractic respectfully requests that this Court enter an Order:

    a.      Temporarily, and until final hearing herein, enjoining the defendants, and any other person or entity acting in concert or participation with any of the defendants, from:

    i.      Representing any entity in a case alleging class-wide allegations substantially related to the Federal Action;

    ii.      Representing Technology Training in any actions substantially related to the Federal Action;

    iii.      Engaging in settlement negotiations with the Buccaneers, or reaching a settlement, in any matter substantially related to the Federal Action;

    iv.      Using, disclosing, or relying upon confidential information Mr. Oppenheim gained while representing Medical & Chiropractic, including information protected by the attorney-client privilege or the mediation privilege; and

    b.      For such other and further relief that the Court deems proper.

/s/Christopher L. Griffin
Christopher L. Griffin (FBN 273147)
cgriffin@foley.com
lmiranda@foley.com
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, FL  33602-5810
P.O. Box 3391
Tampa, FL 33601-3391
Telephone:  813.229.2300
Facsimile:  813.221.4210

Attorneys for Medical & Chiropractic Clinic,
Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 1, 2016, the foregoing was electronically filed

through Florida e-Portal which will provide electronic notice to all counsel of record.  The

foregoing was also delivered to a process server for personal service on the following:

David M. Oppenheim
6805 N. Wolcott Ave
Chicago, IL 60626

Donald L. Sadowksi
Registered Agent of Bock Law Firm, LLC
1515 E Woodfield Rd. #880
Schaumburg, IL 60173

/s/Christopher L. Griffin
Attorney

IN THE CIRCUIT COURT OF THE
13TH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

TECHNOLOGY TRAINING ASSOCIATES, )
INC., a Florida Corporation, individually and )
as the representative of a class of similarly- )
situated persons, )                                 Case No.
)
            Plaintiff,                      )       Class Representation
)
v. )
)
BUCCANEERS LIMITED PARTNERSHIP, )
a Foreign Limited Partnership and JOHN )
DOES 1- 12, )
)
            Defendants. )

## AFFIDAVIT OF MICHELE ZAKREWSKI

Before me, the undersigned authority, personally appeared Michele Zakrewski, (Affiant), who first being duly sworn or affirmed by me, under penalty of perjury, deposed as follows:

1. My name is Michele Zakrewski. I am over the age of 18 and fully competent to make this affidavit. The facts stated herein are true and correct and are based on my personal knowledge.

2. I am the President of Medical & Chiropractic Clinic, Inc., a Florida Corporation.

3. I retained Anderson + Wanca to represent Medical & Chiropractic Clinic, Inc. in connection with its lawsuit against Buccaneers Limited Partnership (hereafter "BLP"). One of the lawyers that provided representation in this matter was David M. Oppenheim (hereafter "Oppenheim").

4. On February 13, 2015, I attended a mediation in connection with this matter. The mediator was Rodney Max of Upchurch Watson White & Max. At this mediation, I was represented by Oppenheim.

5. On February 12, 2015, I had in-person discussions with Oppenheim regarding Medical & Chiropractic Clinic, Inc.'s legal position in the February 13, 2015 mediation.

6. I had additional discussions with David M. Oppenheim regarding this matter both before and after the February 13, 2015 mediation.

**EXHIBIT 1**

*August 31, 2015 at m.e.*

7. On or about  there was a second mediation in connection with this matter. The mediator was Wayne Andersen of JAMS. At this mediation I was represented by Oppenheim.

8. I had discussions with David M. Oppenheim regarding the second mediation.

9. On or about May 11, 2016, I received a solicitation for services from the law offices of Boek, Hatch, Lewis & Oppenheim (hereafter "the solicitation"). A copy of the solicitation is attached hereto as Exhibit A.

10. The solicitation referenced the website faxlawyers.com. Upon visiting that website, I discovered that Oppenheim is now at that firm. A printout of the attorneys at the firm is attached hereto as Exhibit B.

11. On May 12, 2016, I became aware that Oppenheim's firm filed a competing case to this matter.

12. On May 12, 2016, I became aware that Oppenheim's firm intends to mediate its competing case to this matter on May 20, 2016 with Wayne Andersen, the same mediator that Oppenheim represented me with on November 17, 2015.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me this _13_ day of _May_, 2016.

_____
Notary Public

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 N. La Salle St., Ste. 1000                                    P.O. Box 416474
Chicago, IL 60602                                                Miami Beach, FL 33141
312-658-5501 (phone) 312-658-5555 (fax)                          305-239-8726 (phone or fax)

Michele Williams                                                          May 5, 2016
Dr. Gregory L. Williams
5346 8th St.
Zephyrhills, FL 33542

### Re:   Our law firm can help you stop fax advertisements

Dear Michele Williams:

Are you tired of receiving fax advertisements? They tie up your phone lines and equipment, and waste your time, paper, and toner. Federal laws regulate fax advertising to protect you and your business. They are not limited to vacation offers, business loan offers, or other "junk" faxes, but apply equally to all faxes "advertising the commercial availability or quality of any property, goods, or services." 47 U.S. Code § 227 (a) (5). Companies you've done business with in the past might be sending you illegal faxes, fax ads you've agreed to receive are sometimes illegal, and the laws protect not only your traditional, standalone fax machine but also your computerized fax program.

We can help. Our law firm has spent more than 15 years fighting fax ads and winning compensation for our clients. Federal law provides a *minimum* $500 recovery for each unlawful fax and the judge can increase that amount up to $1,500. (The same relief is available for claims about text messages to your cell phone and robocalls to your home.) Our office pursues these claims through the class action process for you and all others that received the advertiser's faxes. If you are the "class representative" in a successful class action, we would ask the judge to award you additional money as compensation for stepping forward and assisting us on behalf of the other class members/fax recipients.

How do we move forward? Send us the faxes you receive and we will investigate them and recommend a course of action. (Fax them to 312-658-5555, e-mail to help@faxlawyers.com, or "Upload Documents" at www.faxlawyers.com.) Legal claims about fax ads are viable for 4 years, so that pile of faxes in your office is worth our time reviewing. Let us know and we will send you a postage-prepaid label so you can forward them to us at our expense. We get paid only if your case is settled or won in court and we are paid only from the funds we recover. We will not bill you and you will not pay us out of pocket. Our written retainer agreement will explain this and our respective responsibilities should we both agree to create an attorney-client relationship.

We look forward to hearing from you.

Sincerely,

Phillip A. Bock

For a no-cost consultation, write your information and fax to 312-658-5555 or e-mail to phil@faxlawyers.com.

Contact person: _____

Phone number: _____   E-mail address: _____

Advertisement

Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602-1233

5 SUBURBAN IL 604

06 MAY 2016  PM 30 1

**Advertisement**

Dr. Gregory L. Williams
5346 8th St.
Zephyrhills, FL 33542

33542-433645

IN THE CIRCUIT COURT OF THE
13TH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

TECHNOLOGY TRAINING ASSOCIATES, )
INC., a Florida Corporation, individually and )
as the representative of a class of similarly- )
situated persons, ) Case No. 16-CA-004333
 )
     Plaintiff, ) Class Representation
v. )
 )
BUCCANEERS LIMITED PARTNERSHIP, )
a Foreign Limited Partnership and JOHN )
DOES 1- 12, )
 )
     Defendants. )

## AFFIDAVIT OF MICHAEL C. ADDISON IN SUPPORT OF CIN-Q AUTOMOBILES, INC. AND MEDICAL & CHIROPRACTIC CLINIC, INC.'S MOTION TO INTERVENE

STATE OF FLORIDA  :
COUNTY OF HILLSBOROUGH :

   Before me, the undersigned authority, personally appeared Michael C. Addison, a person known to me, who deposes and states as follows:

   1.  I have personal knowledge of the facts set forth in this Affidavit and I am competent to testify with respect to these facts.

   2.  I am co-counsel for the named plaintiffs, Cin-Q Automobiles, Inc. ("Cin-Q") and Medical & Chiropractic Clinic, Inc. ("Medical & Chiropractic"), in the case of *Cin-Q Automobiles, Inc. v. Buccaneers Limited Partnership,* Case No. 13-cv-1592, currently pending in the United States District Court for the Middle District of Florida.

   3.  On August 31, 2015, I participated in a mediation in the *Cin-Q* case in Chicago, Illinois, along with my co-counsel and counsel for the Buccaneers Limited Partnership that was convened by retired Judge Wayne Andersen under the auspices of JAMS dispute resolution company. As such I had email correspondence both before August 31, 2015, and many times

**EXHIBIT 2**

thereafter with Judge Anderson's assistant, Brooke Buczkowski, concerning the planning and follow-up following the mediation.

     4.     At approximately 6:20 p.m. on Wednesday, May 11, I received an email confirmation of a mediation session that was scheduled to take place at the JAMS office in Chicago before Judge Andersen (Ret.) on Friday, May 20, 2016, beginning at 9:00 a.m. Also listed on the addressees of this email were Attorney Mark Mester and Attorney Daniel Jay Cohen. The email contained an attached Mediation Agreement to be executed by the recipients, and identified the matter as the "Buccaneers Limited Partnership TCPA."

     5.     On Thursday morning I contacted Ms. Buczkowski by telephone to inquire about my receipt of the email and the attached Mediation Agreement. Miss Buczkowski obviously checked her records, and then informed me that I had received that email in error. When I asked her if there was another Buccaneers Limited Partnership TCPA case other than the *Cin-Q* case that Judge Andersen had already mediated, Ms. Buczkowski informed me that she was not at liberty to respond.

     6.     Realizing that for a mediation involving the Buccaneers Limited Partnership relating to a TCPA claim to occur, it was likely that a lawsuit had to be pending and only recently filed. I immediately checked online with the Hillsborough County Clerk of Court's website and located this new case filing by Technology Training Associates, Inc., and obtained a copy of the Complaint. I noted the Complaint had been filed on May 6 by Attorney Philip Bock. Interestingly, the case description provided by Attorney Bock to the Clerk's office described the action as a "constitutional challenge statute – ordinance."

2

7.     At 12:11 p.m. on Thursday I received another email from Ms. Buczkowski in which she informed me that I should disregard the invitation that had been sent to me the prior evening because it had been sent to me in error.

8.     In the interim between my first telephone call to Ms.Buczkowski and her email to me advising me to disregard the invitation, counsel for the Buccaneers Limited Partnership filed a Notice of Pendency of Related Action in the Federal Case, identifying this action as the related matter filed by Attorney Bock.

9.     But for receiving the email from JAMS Wednesday evening (obviously in error) I would not have learned of the filing of this action or of the scheduled mediation that was to take place a mere two weeks after the action was filed.

FURTHER AFFIANT SAYETH NAUGHT

_____

Michael C. Addison

STATE OF FLORIDA              )
COUNTY OF HILLSBOROUGH    )

Sworn to and subscribed before me this ___ day of May, 2016, by Michael C. Addison, who is personally known to me and who produced his Florida Driver's License as identification.



SUSAN KNOTT
Notary Public - State of Florida
My Comm. Expires Aug 5, 2018
Commission # FF 148261

_____

NOTARY PUBLIC, State of Florida
Print, Type or Stamp Name of Notary
(Seal)