# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLOIRDA

| | |
|---|---|
| MEDICAL & CHIROPRACTIC CLINIC, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 8:16-cv-001477-CEH-TBM |
| vs. ) | |
| ) | |
| DAVID M. OPPENHEIM, an individual, and ) | |
| BOCK LAW FIRM, LLC d/b/a BOCK, HATCH, ) | |
| LEWIS, & OPPENHEIM, LLC, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendants, Bock Law Firm, LLC ("Bock Law Firm") by undersigned counsel, and David Oppenheim pro se ("Oppenheim"), collectively referred to hereinafter as Defendants, submit this response in opposition to Plaintiff's motion for temporary restraining order ("TRO") and preliminary injunction ("Plaintiff's motion").

## I. Introduction

Plaintiff's motion is predicated on a number of allegations directed toward Oppenheim that are unfounded and untrue. Most notably, Plaintiff accuses Oppenheim (1) of having participated in the actions of Bock Law Firm in prosecuting and negotiating a settlement of a separate action against Buccaneers Limited Partnership ("BLP") involving substantially similar claims to those prosecuted on behalf of Plaintiff in a case styled *CinQ, et al. v. Buccaneers Limited Partnership*, 13-cv-01592 ("the *CinQ* case"), and (2) of having disclosed to Bock Law Firm, in furtherance of the aforementioned actions, confidential and attorney-client privileged information obtained by Oppenheim during his representation of Plaintiff while he was employed by Anderson + Wanca

1

("A+W"), the law firm representing Plaintiff in the *CinQ* action. *See e.g.,* Motion at ¶ 1. Plaintiff's motion is devoid of evidence to support either of those accusations. As discussed below, these accusations are false.

A second accusation that implicitly pervades Plaintiff's motion, presumably to lend credence to the first accusation, is that Oppenheim's status in the Bock Law Firm's business organization is that of an owner or principal. To this end, Plaintiff's motion repeatedly speaks of Oppenheim forming "his own firm" (p. 8), and the actions of "his new firm" (pp. 2-5, 9, 13, 15, 22, 23). This implicit accusation is false. The law firm doing business as "Bock, Hatch, Lewis & Oppenheim, LLC" is wholly-owned by Bock Law Firm, P.C., which is wholly-owned by Phillip A. Bock, P.C., which is wholly-owned by Phillip A. Bock ("PAB"). Oppenheim has no ownership status in the law firm that employees him. He is an employed associate attorney. It is not "his firm."

Attached hereto as <u>Exhibit A</u>, and incorporated herein by reference, is the Declaration of David M. Oppenheim establishing, *inter alia*, the following facts:

1. On April 8, 2016, Oppenheim left the employment of A+W, and accepted employment at Bock Law Firm d/b/a Bock & Hatch, LLC, d/b/a Bock, Hatch, Lewis & Oppenheim ("Bock Law Firm").

2. At no time prior to the termination of Oppenheim's employment with A+W did Oppenheim communicate with PAB or Bock Law Firm communicate with Oppenheim about bringing an action that would overlap with the *CinQ* case.

3. At no time after the termination of Oppenheim's employment with A+W did PAB or Bock Law Firm communicate Oppenheim about bringing an action that would overlap with the *CinQ* case, except: (a) as necessary to inform Oppenheim that

2

such an action had been filed, that Oppenheim would have no involvement in that action, and that Oppenheim was "walled off" from anything having to do with that action; and (b) as necessary to address and respond to accusations Plaintiff made against Oppenheim and Bock Law Firm in Plaintiff's attempted intervention in the now-dismissed action styled, *Technology Training Associates, Inc. v. Buccaneers Limited Partnership*, No. 16-CA-4333 (Hillsborough County, FL), and in Plaintiff's pleadings in the case at bar, before and after removal.

4. At no time before or after the termination of his employment with A+W did Oppenheim disclose to PAB or Bock Law Firm, or to any agents, employees or representations thereof, any confidential or privileged information obtained by Oppenheim while employed at A+W and while participating in the representation of Plaintiff in the *CinQ* case.

5. Oppenheim has had no participation whatsoever in the prosecution of any action that would overlap with the *CinQ* case.

The foregoing negates the unsupported accusations in Plaintiff's motion that are leveled at Oppenheim. Oppenheim did not breach any duty to Plaintiff, and has had no involvement in the filing or prosecution of the *TTA* litigation.

A third accusation persistent in Plaintiff's motion is that Defendants were attempting to engage, and later successfully engaged, in a reverse auction of the class action liability at issue in both the *CinQ* and *TTA* cases. On the one hand, it is unclear how or why that accusation would warrant injunctive relief given that the recently-filed *TTA* action has been assigned to Magistrate Judge Porcelli, the same Judge presiding over the *CinQ* case. Judge Porcelli is familiar with the issues and evidence in the *CinQ* and

3

*TTA* cases, and it is appropriate that he hears and decides the merits of any proposed settlement, including Plaintiff's corollary argument about a supposed reverse auction. Plaintiff will have a full and fair opportunity to present evidence in support of its reverse-auction argument, either in the *CinQ* case, or as objectors to the proposed settlement in the *TTA* case, or both. Plaintiff has not provided this Court with any justifiable reason to interfere with Judge Porcelli's longstanding jurisdiction over and supervision of that subject matter. Indeed, it is curious that Plaintiff, in response to Defendants' proposal and stipulation, refused to consent to the transfer of this case to Judge Porcelli so that all of these interrelated issues could be resolved in one forum by the Judge most familiar with the relevant case history.

In addition, Defendants take this opportunity to alert the Court to bench rulings made by Judge Porcelli at the conclusion of a joint status conference held this morning, June 27, 2016, in both the *CinQ* and *TTA* cases. In particular, Judge Porcelli indicated an intention to proceed in the *TTA* case in a manner that will ultimately address and resolve Plaintiff's allegation that the *TTA* settlement is the result of a reverse auction (16-cv-01622, Doc. 25), and in the meantime, the Court granted a motion the Buccaneers filed in the *CinQ* case seeking to stay that case pending the outcome of the motions for preliminary and final settlement approval filed in the *TTA* case. 13-cv-01592, Doc. 242.

The point, though, is that Plaintiff's claim in this case of a reverse auction in the *TTA* case is going to be resolved on its merits in the *TTA* case, as it should be. Under such circumstances, there is no plausible reason for the Court to issue injunctive relief in this case based upon an as-yet-unsubstantiated and highly disputed claim of reverse auction that will be resolved on the merits in another and more appropriate case. Further, it would

be highly anomalous that at the same time Judge Porcelli has stayed the *CinQ* case in order to determine the merits of the *TTA* settlement, Plaintiff would persist in asking this Court to effectively stay the *TTA* case via TRO or injunction. That just doesn't make sense.

Setting the foregoing aside, the accusation of a reverse auction is unfounded and false. Bock Law Firm has filed its motion for preliminary approval of class settlement in the *TTA* case. 16-cv-01622, Doc. 18. The proposed settlement is an exceptionally good one, providing very significant benefit – a $19.5 million settlement fund – to the class. *Id*. The parties reached this settlement only after two full-day mediation sessions, and several additional days of direct negotiations outside of the formal mediation process. The settlement is unquestionably the result of arms-length negotiation, and Bock Law Firm is confident the settlement will receive preliminary and later final approval from Judge Porcelli.

Notably, by definition, an accusation of a reverse auction in the *TTA* case presupposes, among other things, that the settlement entered into by the parties in that case, now pending preliminary approval by the Court, obtains less benefit for the class than the benefit being negotiated by Plaintiff and its counsel during their previous settlement efforts in the *CinQ* case. Given that the terms of the settlement reached in the *TTA* case have been made public, at the very least it would be incumbent upon Plaintiff or its counsel in the *CinQ* case to come forward with evidence to support the aforementioned presupposition. They have not done so, nor is it anticipated that they will or could do so. But unless and until they do so, their accusations of a reverse auction are

nothing more than empty and hollow allegations that cannot possibly form a sufficient basis for extraordinary equitable relief in the form of a TRO or preliminary injunction.

Nor is Plaintiff's request for TRO and other injunctive relief supported by its superficial allegations of a conflict of interest on the part of Oppenheim, automatically imputed to Bock Law Firm, so as to disqualify Bock Law Firm from representing the putative class representative in the *TTA* case. The Complaint asserts claims for breach of fiduciary duty and for aiding and abetting such breach. All claims stem from the argument that representation of one class representative is "materially adverse" to representing another class representative against a common defendant. This proposition is absurd on its face, and is belied both by relevant case law and by the actions and filings of Plaintiff and its counsel in the Class Actions.

As noted, all of Plaintiff's claims are based on the Florida and Illinois versions of Model Rule of Professional Conduct 1.9. Complaint, ¶¶ 41-47, *quoting* F.S.A. Bar Rule 4-1.9 and Illinois Rule of Professional Responsibility 1.9. This rule imposes three requirements on attorneys who switch firms. Such attorneys may not:

> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>
> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
>
> (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

F.S.A. Bar Rule 4-1.9.

The Complaint does not allege any violation of subsections (b) or (c). It conclusorily alleges that Oppenheim possessed confidential information relating to

6

Plaintiff, but it does not allege that any such information was used or divulged. Rather the claim is for an alleged violation of Rule 1.9(a), and the related provision in Rule 1.10 that "[w]hen a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter." Complaint, ¶¶ 89-90.

Both of these provisions require, as a prerequisite to application, that the interests of the former client must be "materially adverse" to those of the new client. Unsurprisingly, the decisions applying this rule to support disqualification of an attorney or a law firm involve circumstances where an attorney moved from a firm representing a plaintiff to one representing the defendant in the case, or vice versa. They refer to Rule 1.7 in defining what is "materially adverse." "Rule 1.7 is generally implicated when counsel is representing one client in a lawsuit against another individual who is also the counsel's client. In other words, counsel is, in effect, on both sides of the lawsuit." *In re Commissioner of Banks and Real Estate,* 764 N.E.2d 66, 98 (Ill. App. 2001), *citing Guillen v. City of Chicago,* 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

Here, the Complaint alleges that Oppenheim worked at the Wanca Firm on behalf of a potential class of plaintiffs against the Buccaneers and then joined the Bock Firm, which is representing the same class of plaintiffs against the Buccaneers. All such plaintiffs share an interest in recovering on their claims against the Buccaneers. Indeed, Plaintiff itself argued that its interests were not in conflict with the other members of the

7

class (including the plaintiffs in the Technology Action) in arguing that it was an adequate class representative. Medical Action, Doc. 207.

Even after filing this action, Plaintiff and its counsel filed a motion seeking to do *precisely what Plaintiff asserts Oppenheim and the Bock Firm are not allowed to do* in this action: Plaintiff filed a motion seeking to consolidate the two class actions and requesting that the Wanca Firm be named Class Counsel representing both Plaintiff *and the Technology Plaintiffs*. Technology Action, Doc. 8, p. 19, ¶ D. But if representation of one member of a plaintiff class precludes representation of another, how could Plaintiff make such a motion?

The simple answer is that such representation is not barred because the interests of one class member are not adverse to the interests of another for purposes of the rules of professional responsibility. The Florida Appellate Court has held that representation of a codefendant is not "materially adverse" to representation of another codefendant where the case against the plaintiff was the same. *Anderson Trucking Service, Inc. v. Gibson*, 884 So.2d 1046, 1051-52 (Fla. App. 2004) ("the interests of Minchew and ICE and Anderson are consistent for the purpose of establishing that Minchew did not commit a wrongful act"). Likewise, here, the interests of Plaintiff and the Technology Plaintiffs are the same for the purpose of establishing that the Buccaneers *did* commit wrongful acts.

Moreover, the duty of class counsel or potential class counsel, above all, is to the class members as a whole—as opposed to any particular named plaintiff. "Class counsel's duty to the class as a whole frequently diverges from the opinion of either the named plaintiff or other objectors." *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983); *see also Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 508

8

(5th Cir. 1981) (holding "'client' in a class action consists of numerous unnamed class members as well as the class representatives," which can force class counsel to act in what she or he perceives to be in the "'best interests of the class as a whole'").

The duty owed to class clients differs significantly from the duty owed in an individual representation case. *Parker v. Anderson*, 667 F.2d 1204, 1211–12 (5th Cir. 1981), cert. denied, 459 U.S. 828 (1982). "The compelling obligation of class counsel in class action litigation is to the group which makes up the class." *Id*. at 1211. To that end, Class Counsel must act in a way that best represents the interests of "the entire class and is not dependent on the special desires of the named plaintiffs." *Id*. See *Allapattah DFC Class Action Settlement Fund v. U.S.*, 2010 WL 6430699, at *8 (S.D. Fla. 2010) (holding that, as a matter of federal and state law, class counsel owe a duty to *all* class members throughout the litigation); *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) (noting that class counsel have a "heavy fiduciary responsibility to their clients – especially to those who are absent and those in the minority whose interests are at odds with the named plaintiffs and their group"); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1176 (5th Cir. 1978) (holding that, "when a potential conflict arises between the named plaintiffs and the rest of the class, the class attorney must not allow decisions on behalf of the class to rest exclusively with the named plaintiffs. In such a situation, the attorney's duty to the class requires him to point out conflicts to the court so that the court may take appropriate steps to protect the interests of absentee class members."); *Kincade*, 635 F.2d at 508 ("Because of the unique nature of the attorney-client relationship in a class action, the cases cited by appellants holding that an attorney cannot settle his individual client's case without the authorization of the client are simply inapplicable.").

9

"Because the client in a class action consists of numerous class members, in addition to the class representatives, and because the class itself often speaks in several voices, all that can be expected of class counsel is that he seek to protect the best interests of the class as a whole." *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 307 (N.D. Ill. 1997). "This duty may require class counsel to take actions which are in derogation of the express desires and contrary to the best interest of the class representatives in order to protect the interests of the plaintiff class." *Id.*

Indeed, in *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1176 (5th Cir. 1978) the Fifth Circuit held that "when a potential conflict arises between the named plaintiffs and the rest of the class, the class attorney must not allow decisions on behalf of the class to rest exclusively with the named plaintiffs. In such a situation, the attorney's duty to the class requires him to point out conflicts to the court so that the court may take appropriate steps to protect the interests of absentee class members." In other words, if there were some conflict between Plaintiff and the other class members—including the Technology Plaintiffs—far from being obligated to keep it confidential, class counsel would be obligated to disclose it to the Court.

This Court recently rejected an attempt by a putative class representative to maximize its incentive award at the expense of the class. *See Palmer v. Dynamic Recovery Solutions, LLC*, 2016 WL 2348704, *10 (M.D. Fla. May 4, 2016) (Byron, J.). Yet, that is precisely what Plaintiff seeks here. Class Counsel in the Technology Action has obtained $19.5 million for the class, plus other valuable relief. Judge Porcelli will evaluate and determine whether that effort is fair, reasonable, and adequate under Rule 23

and prevailing precedent. But Plaintiff asks this Court to stop everything in its tracks because it wants an incentive award.

Ultimately, Oppenheim represented the entire class in the work he did at the Wanca Firm. *See Piambino*; *Allapattah*. That included the Technology Plaintiffs. Neither he nor the Bock Firm representing them now, in pursuit of relief for the class, is "materially adverse" to the interests of their fellow class member, Plaintiff. Presumably, that is why the Wanca Firm had no qualms about asking Judge Porcelli to make them counsel for a consolidated case including the Technology case. But it is fatal to Plaintiff's claims herein.

## II.  Response to Plaintiff's Cited Legal Authorities

A.     *In re Checking Account  Overdraft Ligitation*

Plaintiff cites *In re Checking Account Overdraft Litigation*, 859 F. Supp. 2d 1313 (S.D. Fla. 2012), for the proposition that under the "first-filed rule" an injunction is proper to prevent a recently-filed class action from proceeding to settlement to the detriment of a longstanding class action relating to the same subject matter. Motion at 14-15. *Checking* is neither factually nor legally on point. There the first-filed case was pending as an MDL in the Southern District of Florida, and it appeared the defendant in that MDL conspired with a different plaintiff's counsel to reach a settlement of the same subject matter, file it in a different federal district court, and then mislead that district court to preliminarily approve the settlement, all the while keeping the plaintiff and district court in the MDL litigation in the dark. Here, in contrast, the *CinQ* Court was made aware of the existence of the overlapping *TTA* class claim and of the fact that the Buccaneers were likely involved in settlement negotiations with TTA's counsel, and

11

Judge Porcelli specifically declined *CinQ's* counsel's request that the Buccaneers be enjoined from proceeding with such negotiations. 13-cv-01592, Doc. 233. Here, in further contrast, upon reaching a settlement agreement with the Buccaneers, TTA filed its action in the same District Court in which the *CinQ* case is pending, filed a notice of related action as required by the rules, and upon Judge Porcelli being assigned the Magistrate Judge on the *TTA* case, both TTA and the Buccaneers stipulated to Judge Porcelli being the trial judge in the *TTA* case. Thus, this case does not involve a conspiratorial feature of attempting to avoid the first-filed court's jurisdiction as did the *Checking* case. To the contrary, here the first-filed court has direct supervisory jurisdiction over the later-filed *TTA* case.

These different facts also alter the applicable legal principles. As the *Checking* court observed:

> Under the "first-filed rule," the entire action should generally be decided by the court in which the action was first filed. *Smith v. S.E.C.,* 129 F.3d 356, 361 (6th Cir. 1997). The Eleventh Circuit follows the "first-filed rule." *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135-36 (11th Cir. 2005). * * *
>
>     \*        \*        \*
>
> "[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.'" *Cadle v. Whataburger of Alice, Inc.,* 174 F.3d 599, 606 (5th Cir. 1999) (citation omitted). Courts applying this rule agree "'that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.'" *Id.* Thus, once the court determines that the two suits likely involve substantial overlap, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed. *Cadle,* 174 F.3d at 606; *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). Rather, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Cadle,* 174 F.3d at 606.

*Checking,* 859 F. Supp. 2d at 1324-25. Applying the above language from *Checking* to the situation at hand, there is no first-filed issue, and certainly no such issue for this Court to resolve. There is no first-filed issue because not only did TTA file its case in the same District Court as the *CinQ* case and ensure that the same Judge presiding in *CinQ* – Magistrate Judge Porcelli – would preside in *TTA*, but as previously indicated, Judge Porcelli earlier today ruled that the *CinQ* case, not the *TTA* case, would be stayed pending the Court's consideration of issues related to the merits of the proposed *TTA* settlement. In that respect, all of the considerations of the first-filed rule have been complied with, and all of the concerns at issue in *Checking* have been avoided. Beyond that, however, whereas *Checking* could be construed to have empowered Judge Porcelli to enjoin or stay a later-filed action, *Checking* does not authorize an independent action in a separate court to enforce the first-filed rule. Plaintiff's reliance on *Checking* is fundamentally flawed.

**B.**    ***In re American Online Spin-Off Accounts Litigation***

Plaintiff's reliance on *American Online Spin-Off Accounts Litigation,* 2005 WL 5747463 (C.D. Cal. May 9, 2005), Motion at 14-15, fares no better. There, as in *Checking, supra*, the first-filed action was pending in federal district court, and the defendant conspired with a different plaintiff's counsel to reach a settlement and process that settlement in an Illinois state court without prior notice to the first-filed federal court. Unable to order the later-filed case transferred to the first-filed court because it was filed in an Illinois state venue, the first-filed court enjoined the later-filed action from proceeding to settlement of the claims at issue in the first-filed action. For the same reasons articulated above regarding *Checking*, *American Online* has no bearing on the procedural posture of the matters at issue here. Both the first-filed (*CinQ*) and second-

13

filed (*TTA*) actions were filed in the same District Court, and are pending before the same Magistrate Judge. The concerns underlying the first-filed rule, and the concerns that led the *American Online* court to issue injunctive relief, are simply not at issue here. And, as with *Checking,* nothing in the *American Online* decision would sanction a court other than the first-filed court from issuing injunctive relief directed to later-filed proceedings pending in the first-filed court, which is what Plaintiff is requesting.[1]

C. *Reynolds v. Beneficial National Bank*

Plaintiff's reliance on *Reynolds v. Beneficial National Bank,* 288 F.3d 277 (7th Cir. 2002), is a mystery. Defendants acknowledge that Plaintiff here has accused them of engaging in a reverse auction, and that *Reynolds* involved a case where an allegation of reverse auction was in play, and the Court of Appeals reversed and remanded a class action settlement for further consideration in light of concerns about a possible reverse auction. But that has nothing to do with Plaintiff's filing of a separate action in a different court seeking an injunction of class action proceedings pending before a different federal Magistrate Judge. *Reynolds* in no way, shape or form supports Plaintiff's prayer in this Court for an injunction. Rather, *Reynolds* supports the proposition that Judge Porcelli should reasonably scrutinize the terms of the settlement reached in the *TTA* action, and the circumstances under which that settlement was reached, in order to satisfy the Court that the settlement is fair, reasonable and adequate, and not the result of a reverse auction.

---

[1] It has been previously mentioned but bears repeating that Defendants agreed to the transfer of this case to Judge Porcelli – the first-filed Judge in the *CinQ* case and the Judge that the *TTA* case is pending before – but Plaintiff refused the transfer. Presumably, Plaintiff refused because Plaintiff knew that Judge Porcelli had previously denied CinQ's motion, filed in in the *CinQ* case, to enjoin the *TTA* settlement negotiations. Plaintiff's refusal was prescient in light of Judge Porcelli's ruling earlier today staying the *CinQ* case in light of the *TTA* settlement, but that does not entitle Plaintiff to shop around its request for injunctive relief in search of a court that might look more favorably upon it.

14

Undoubtedly, Judge Porcelli will do that. There is no need, and no legal basis under *Reynolds*, for this Court to intercede in equity.

D.  **Plaintiff's Cited State Law Case Decisions Regarding Conflicts Of Interest**

Plaintiff's motion also cites several Florida state court decisions that Plaintiff claims are applicable to the circumstances in the case at bar, and in the related *CinQ* and *TTA* cases, and which Plaintiff argues demonstrate a disqualifying conflict of interest as to Oppenheim, automatically imputable to Bock Law Firm, that warrants the issuance of injunctive relief by this Court. Plaintiff's reliance on these cases is misguided.

*Young v. Achenbauch*, 136 So. 3d 575 (Fla. 2014), is not on point. *Young* involved a class action context, but only tangentially because the class action in question had been settled in the past on terms that gave all class members the right to pursue individual claims against the named class defendants without the availability of a statute of limitations defense. The fundamental conflict of interest in *Young* arose long after that settlement when the attorneys who had prosecuted and settled the class action then represented two members of the class in their individual claims against the defendants, yet thereafter represented other members of the class in a claim against those first two members relating to their alleged involvement in alleged violations of the terms of the class settlement. The major conflict of interest did not relate to the class action per se, but to individual representation events in which the attorney first represented individual class members, and then later sued those same individual class members. Of course, that has nothing to do with the situation at hand. Neither Oppenheim nor Bock Law Firm has brought a claim against any class member, including Plaintiff in the case at bar. *Young* is simply inapposite.

15

*Florida Bar v. Adorno*, 60 So.3d 1016 (Fla. 2011), involved an allegation that class counsel had abandoned the class in order to obtain individual benefit for the named class representatives, and to obtain for themselves significant attorneys' fees. Defendants have not abandoned the class in the *TTA* and *CinQ* cases, nor is there any allegation that they have done so. Perhaps more to the point, though, *Adorno* highlights the fact that class counsel must not subordinate the interests of absent class members in favor of the interests of the class representatives, or their own interests. In the *TTA* case, Bock Law Firm is seeking to represent and obtain classwide settlement benefit for the entire absent class. *Adorno* does not apply.

*Masztal v. City of Miami*, 971 So. 2d 803 (Fla. App. 2007), suffers the same distinguishing characteristic as *Adorno*, because the allegation there was that the named class representative and class counsel breached their respective duties to the absent class by settling the class representatives claims, effectively abandoning the absent class members. Again, the proposed *TTA* settlement benefits the entire class, including Plaintiff in the case at bar. Putative class counsel in the *TTA* case have not abandoned Plaintiff or the other members of the class. *Masztal* is inapplicable.

### III. Plaintiff cannot meet its burden of proving entitlement to a TRO or injunction

In the Eleventh Circuit, a preliminary injunction is an "extraordinary and drastic remedy, not to be granted unless the movant has clearly established the 'burden of persuasion'…" *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000). The moving party must make a "clear showing" of "substantial," "actual and imminent" irreparable harm, as opposed to "a merely conjectural or hypothetical – threat of future injury." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008); *Siegel*, 234 F.3d at

...
...
...

1176-77. The ability of a plaintiff to recover money damages as an adequate remedy for losses suffered precludes a finding of irreparable harm. *Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 917 (2nd Cir. 1986). The *Loveridge* court stated:

> It is well established that "irreparable injury means injury for which a monetary award cannot be adequate compensation." Likewise, where money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law.

*Id.* (citations omitted). These principles negate any suggestion in the case at bar that Plaintiff can meet its burden of proving entitlement to a TRO or injunction.

The first insurmountable problem for Plaintiff is that its damages are speculative. Its claim is predicated upon an entitlement to an incentive award, but that entitlement is purely speculative. The claim may fail, and even if it does not fail, the Court might not award an incentive fee. As indicated above, equity will not issue upon speculative damages. The second insurmountable problem is that Plaintiff has an adequate remedy at law for legal damages. The loss of an incentive award, if pure dollars, is a claim for attorneys fees and costs. As indicated above, where a legal remedy for damages exists, equity will not intervene. Plaintiff's equitable prayer is simply not a proper vehicle for vindication of its claim against Defendants.

**WHEREFORE**, Defendants respectfully request that the Court deny Plaintiff's Amended Motion and award Defendants all appropriate relief.

Respectfully submitted,

| **DAVID M. OPPENHEIM** | **BOCK LAW FIRM, LLC** |
|---|---|
| By: /s/ David M. Oppenheim, pro se | By: /s/ Phillip A. Bock<br>One of its attorneys |
| David M. Oppenheim<br>6805 N. Wolcott Ave<br>Chicago, IL 60626<br>david@classlawyers.com | Phillip A. Bock<br>Fla. Bar No. 93895<br>Daniel J. Cohen (admitted *pro hac vice*)<br>     [TRIAL COUNSEL]<br>Jonathan B. Piper (admitted *pro hac vice*)<br>Bock Law Firm, LLC<br>134 N. La Salle St., Ste. 1000<br>Chicago, IL 60602<br>Telephone:  312/658-5500<br>Fax:  312-658-5555<br>phil@classlawyers.com |

## CERTIFICATE OF SERVICE

I hereby certify that, on June 27, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which serves all counsel of record registered with the system.

/s/ Phillip A. Bock

Phillip A. Bock (Fla. Bar No. 93895)
P.O. Box 41674
Miami Beach, FL 33141
Telephone: 312-658-5501
Fax: 312-658-5555

## SERVICE LIST

Christopher L. Griffin
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602
E-mail: cgriffin@foley.com