UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDICAL & CHIROPRACTIC CLINIC, INC.,

    Plaintiff,

vs.

DAVID M. OPPENHEIM, an individual, and BOCK LAW FIRM, LLC d/b/a BOCK, HATCH, LEWIS, & OPPENHEIM, LLC,

    Defendants.

_____/

Case No. 16-cv-1477

INJUNCTIVE RELIEF REQUESTED

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS OR STAY

The plaintiff, Medical & Chiropractic Clinic, Inc., ("Medical & Chiropractic"), through its undersigned counsel, hereby submits this response in opposition to David M. Oppenheim's ("Mr. Oppenheim") and Bock Law Firm, LLC, a/k/a Bock, Hatch, Lewis & Oppenheim, LLC's ("Bock Hatch," and collectively with Mr. Oppenheim, the "Defendants") Motion to Dismiss, or in the Alternative, to Stay.

### INTRODUCTION

Medical & Chiropractic properly states claims for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty against the Defendants. It is clear that Mr. Oppenheim had an attorney-client relationship with Medical & Chiropractic, and therefore owes fiduciary and ethical duties to Medical & Chiropractic. These duties are imputed to Bock Hatch under the Florida Rules of Professional Conduct (the "Florida Rules"). Defendants cannot dispute that Medical & Chiropractic pleads these basic facts.

Further, Medical & Chiropractic's interests with respect to the underlying class actions are materially adverse to Mr. Oppenheim's new firm's client in the underlying class actions.

This is particularly true in this case given Bock Hatch's surreptitious settlement negotiations, and Medical & Chiropractic's position in the class actions that the settlement is the product of a reverse auction. In fact, in the underlying class actions, Medical & Chiropractic is in a current, material, adverse, dispute with Defendants' new client, Technology Training Associates Inc., that is the subject of extensive briefing.

Further, this matter should not be stayed in favor of the pending underlying class actions. Defendants' ignore the fundamental differences between this lawsuit—a breach of fiduciary duty lawsuit—and the class actions—TCPA claims against the Buccaneers. Medical & Chiropractic is not asking the Court to dismiss or otherwise stay those actions or rule on the merits of those claims. Indeed, those class actions can continue provided the Defendants are not representing competing clients and interests in those actions. In addition, the substantive or procedural propriety of the proposed settlement, including whether the settlement is a reverse auction are not at issue in this fiduciary duty matter between a client and its former counsel.

## FACTUAL BACKGROUND

**I.   Medical & Chiropractic, Individually and as a Class Representative, Files Claims against the Buccaneers for Violation of the TCPA.**

In 2013, Cin-Q Automobiles ("Cin-Q") filed a putative class action lawsuit against the Buccaneers in the U.S. District Court for the Middle District of Florida, captioned *Cin-Q Automobiles, Inc. v. Buccaneers Limited Partnership*, No. 8:13-cv-1592-AEP ("Federal Action"). (Ver. Compl., ¶ 10). Two and a half years ago, on January 3, 2014, Medical & Chiropractic joined Cin-Q as Plaintiffs in the Second Amended Complaint as named plaintiffs, both individually and as putative class representatives. (*Id.*, ¶ 12). The law firm of Anderson + Wanca represented Medical & Chiropractic in the Federal Action. (*Id.*, ¶ 9).

In the Federal Action, the plaintiffs alleged that, beginning July 1, 2009, the Buccaneers sent facsimile advertisements offering group or individual game tickets for Tampa Bay Buccaneers games, in violation of the TCPA. (*Id.*, ¶ 11). The class was defined as "[a]ll persons from July 1, 2009, to present who were sent facsimile advertisements offering group tickets or individual game tickets for the Tampa Bay Buccaneers games and which did not display the opt out language required by 47 C.F.R. 64.1200" ("M&C Class"). (*Id.*, ¶ 13).

The Federal Action has been an active, contentious litigation. Since 2013, the parties and their attorneys have participated in fact discovery, depositions—including the deposition of Medical & Chiropractic--, class discovery, expert discovery, cross-motions for summary judgment, and other motion practice. (*Id.*, ¶ 15). The parties also engaged in two full-day mediation sessions in an attempt to reach a class action settlement. (*Id.*).

## II.   Mr. Oppenheim Represents Medical & Chiropractic As Its Attorney.

When Medical & Chiropractic filed the Federal Action, Mr. Oppenheim was employed as an attorney at Anderson + Wanca. (*Id.*, ¶ 17). He continued to be employed by Anderson + Wanca until April 8, 2016. (*Id.*, ¶ 49-50). Mr. Oppenheim extensively represented Medical & Chiropractic in connection with the Federal Action, working more than 80 hours on the Federal Action. (*Id.*, ¶ 19-21). Mr. Oppenheim's work focused on mediation and settlement negotiations of the Federal Action, and he gained confidential and privileged insight into Medical & Chiropractic's overall case strategy and settlement strategy. (*Id.*, ¶ 24).

In 2015, the parties to the Federal Action twice mediated in attempts to negotiate a class settlement. (*Id.*, ¶ 22). Mr. Oppenheim was the primary representative for the plaintiffs and the M&C Class in connection with those mediations. (*Id.*, ¶ 23). Mr. Oppenheim was granted full settlement authority on behalf of Cin-Q, Medical & Chiropractic, and the putative M&C Class in connection with those mediations. (*Id.*, ¶ 25). Mr. Oppenheim also prepared and submitted the

3

mediation statements on behalf of Cin-Q, Medical & Chiropractic, and the M&C Class in preparation for the mediations. (*Id.*, ¶ 23).

The first mediation occurred in February, 2015, with Rodney Max of Upchurch Watson White & Max. (*Id.*, ¶ 29). Prior to the mediation, Mr. Oppenheim met in-person on February 12, 2015 with Michele Zakrzewski of Medical & Chiropractic. (*Id.*, ¶¶ 26-27). Mr. Oppenheim and his client discussed Medical & Chiropractic's legal position, including settlement and negotiation strategy for the named plaintiffs and the class. (*Id.*). On February 13, 2015, Mr. Oppenheim, as the attorney representative of Medical & Chiropractic, Cin-Q, and the M&C Class, attended the mediation with Ms. Zakrzewski. (*Id.*, ¶ 28).

The case did not settle at the February mediation, and the parties scheduled a second mediation in August, 2015, with the Hon. Wayne R. Andersen (Ret.) of JAMS. (*Id.*, ¶ 31, 34). Ms. Zakrzewski and Mr. Oppenheim continued confidential legal strategy discussions before the August mediation. (*Id.*, ¶ 30). Mr. Oppenheim prepared and submitted the mediation statement on behalf of Cin-Q, Medical & Chiropractic, and the M&C Class. (*Id.*, ¶ 32). Mr. Oppenheim then attended the mediation on August 31, 2015, again as the attorney representative of Cin-Q, Medical & Chiropractic, and the M&C Class. (*Id.*, ¶ 33).

The case again did not settle at the mediation, but Mr. Oppenheim continued correspondence with Judge Andersen and counsel for the Buccaneers for months following the mediation. (*Id.*, ¶ 37). As recently as March 18, 2016, Mr. Oppenheim emailed with Judge Andersen and opposing counsel regarding negotiations. (*Id.*, ¶ 39). Shortly thereafter, on March 25, 2016, the M&C Class filed its Motion for Class Certification. (*Id.*, ¶ 48).

**III.   Mr. Oppenheim Resigns from Anderson + Wanca and Joins Bock Hatch, Which Promptly Pursues a Competing Settlement of a Competing Class Action.**

On April 8, 2016, Mr. Oppenheim resigned from Anderson + Wanca to join Bock Hatch. (*Id*., ¶ 49-50). Other attorneys at the firm include Phillip A. Bock and Daniel J. Cohen. (*Id*., ¶ 52, 64). Immediately thereafter, on April 20, 2016, the Buccaneers asked the Court for, and obtained, an extension to June 13, 2016 to respond to the Motion for Class Certification in the Federal Action. (*Id*., ¶ 53). On May 2, 2016, Judge Andersen declared an impasse in the mediation negotiations in the Federal Action. (*Id*., ¶ 54).

When Mr. Oppenheim joined Bock Hatch, his firm immediately disregarded the interests of Mr. Oppenheim's former client Medical & Chiropractic and sought out clients with conflicting interests to Medical & Chiropractic. On or before May 5, 2016, Bock Hatch mailed solicitation letters to entities utilizing the list of potential class members filed in the Federal Action. (*Id*., ¶ 55-56). In their search for potential plaintiffs in TCPA lawsuits, Defendants had the nerve to solicit Medical & Chiropractic. (*Id*., ¶ 72). Then, just four days after Judge Andersen declared an impasse and one day after soliciting Medical & Chiropractic as a client, Mr. Oppenheim's new firm filed a "copycat" lawsuit against the Buccaneers in this Circuit Court, styled *Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, Case No. 16-CA-004333 (the "Technology Training Action"). (*Id*., ¶ 57). The Technology Training Action covers the same class members as the Federal Action. (*Id*., ¶ 58).

IV. **Mr. Oppenheim's New Firm Attempts to Mediate the Case and Negotiate a Class-Wide Settlement Just Days after Filing, Without Informing Medical & Chiropractic.**

Mr. Oppenheim's firm immediately attempted to mediate the Technology Training Action. (*Id*., ¶ 62). Although they represented a new client with interests in conflict with Medical & Chiropractic, Mr. Oppenheim and Bock Hatch did not obtain consent from Medical & Chiropractic before filing the Technology Training Action or attempting to mediate the case. (*Id*., ¶ 61). Mr. Oppenheim and Bock Hatch did not even inform Medical & Chiropractic or its

5

attorneys that they had filed the action or were attempting to mediate the case. (*Id*.). Rather, Medical & Chiropractic's attorneys happened upon this information by chance. (*Id*., ¶ 63-68). Only after the ruse was discovered, did the Buccaneers file a "Notice of Pendency of Related Action" disclosing the Technology Training Action. (*Id*., ¶ 69).

V. **Bock Hatch Voluntarily Dismisses The Technology Training Action After Medical & Chiropractic Attempts to Preserve Its Interests.**

Within days of discovering the competing class action, Medical & Chiropractic sought to intervene and stay the Technology Training Action, and filed a Motion to Enjoin Defendants from Proceeding in Competing Case. (*Id*., ¶ 75, 76). Medical & Chiropractic took these actions to preserve its interests as putative class representative and to stop any attempted "reverse auction" of the class settlement. (*Id*., ¶ 81; Exhibits 13-14 to the Ver. Compl.).

On May 18, 2016, the day before Medical & Chiropractic's motion to intervene was to be heard in the Technology Training Action, Mr. Oppenheim's new firm filed a Notice of Voluntary Dismissal, without prejudice. (*Id*., ¶ 82). Expecting its prior counsel to try again to usurp its position as lead class plaintiff, two weeks later, Medical & Chiropractic filed this lawsuit seeking both injunctive relief and damages for Mr. Oppenheim and his new firm's breaches of fiduciary duty. (Dkt. 5).

VI. **Defendants Re-File The Technology Training Action, Immediately Followed By A Motion for Preliminary Approval of Settlement.**

After Medical & Chiropractic filed this lawsuit, Mr. Oppenheim's new firm re-filed the Technology Training Action in the U.S. District Court for the Middle District of Florida, *Technology Training Associates, Inc. et al., v. Buccaneers Limited Partnership*, No. 8:16-cv-01622-MSS-AEP. Mr. Oppenheim's new firm filed an Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice to the Class just two days later, seeking approval for a settlement they reached with the Buccaneers after a mediation in Tampa, FL with

6

mediator Peter Grilli on June 16, 2016. (*See* Technology Training Action Compl., Technology Training Federal Docket ("Technology Training Fed. Dkt.") 1; Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice to the Class, Technology Training Fed. Dkt. 18, p. 6, 16). The parties consented to proceed before Magistrate Judge Porcelli.

### VII. Judge Porcelli Stays The Federal Action In Light of The Proposed Settlement, and Medical & Chiropractic Takes Further Steps To Preserve Its Interests.

Since Mr. Oppenheim's new firm refiled the Technology Training Action, there has been a flurry of activity in the Technology Training Action and the Federal Action. On June 27, 2016, Magistrate Judge Porcelli held a combined status conference in the *underlying* class actions, both the Technology Training Action and Federal Action. (Federal Action, Dkt. 243). Judge Porcelli requested briefing from the parties regarding how to proceed on Medical & Chiropractic's arguments that the Technology Training Action settlement is a reverse auction.

## ARGUMENT

### I. The Standard for a Rule 12(b)(6) Motion to Dismiss.

"A Rule 12(b)(6) motion should be granted only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitle them to relief." *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999). "When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs." *Id.*; *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir.1994).

To state a claim for breach of fiduciary duty, Medical & Chiropractic must plead the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. *Gracey v. Eaker,* 837 So.2d 348, 353 (Fla. 2002). To state a claim that Bock Hatch aided and abetted Mr. Oppenheim's breach of fiduciary duty, Medical & Chiropractic must plead

(1) a fiduciary duty by Mr. Oppenheim; (2) a breach of this fiduciary duty; (3) knowledge of the breach by Bock Hatch; and (4) Bock Hatch's substantial assistance or encouragement of the wrongdoing. *Rosenbaum v. Becker and Poliakoff PA*, No. 08-81004-CIV, 2010 WL 376309, *9, 2010 U.S. Dist. LEXIS 5880, *8-9 (S. D. Fla., Jan. 26, 2010), *citing Sensormatic Electronics Corp. v. TAG Co. US, LLC*, 632 F.Supp.2d 1147, 1192 (S.D. Fla. 2008).

Plaintiff has clearly and adequately pled the elements and underlying factual allegations of both causes of action in its complaint. Defendants arguments that this action is the same as the underlying class actions, that the harm has already occurred or is nonexistent and that they are not materially adverse to their former client are without merit.

## II. Defendants' New Representation is Materially Adverse to Medical & Chiropractic.

Mr. Oppenheim had an attorney-client relationship with Medical & Chiropractic, as alleged in the Verified Complaint, and therefore owes fiduciary and ethical duties to Medical & Chiropractic. Medical & Chiropractic's interests with respect to the class actions are materially adverse in the case, in light of the conflict over Bock Hatch's surreptitious settlement negotiations and proposed settlement. The mere presence of the heated dispute apparent in the latest briefing in the underlying class actions makes this clear.

### A. The Florida Rules of Professional Conduct Apply.

Defendants' assumption that the Illinois Rules of Professional Conduct ("Illinois Rules") apply to a Florida client in a Florida litigation is false. (Mot., p. 11, n. 3). Under Illinois or Florida law, the Florida Rules apply here. To determine which ethical rules apply, "the overriding consideration will be whether Florida or the other jurisdiction in question has the most significant relationship to the client and the case." Fla. Bar Op. 88-10, May 1, 1988.[1]

---

[1] A full copy of this opinion is attached as Exhibit 1. It can be found at http://www.floridabar.org/tfb/tfbetopin.nsf/SearchView/ETHICS,+OPINION+88-10?opendocument

"Important factors to be examined include the client's state of residence, the state where the cause of action arose, and the state (or states) where suit may be filed." *Id.*; *see also* Ill. R. of Prof'l Cond. 8.5(b)(2) ("the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct..."). The Florida Rules impute Oppenheim's conflicts to Bock Hatch, and do not permit Mr. Oppenheim to be "screened out" of the matter.[2] (*See* § II(D), *infra*).

Medical & Chiropractic is a Florida corporation located in Florida. (Ver. Compl..¶ 2). The Federal Action involves faxes sent by the Buccaneers and received in Florida. (*Id.*, ¶ 11). The Federal Action is in the U.S. District Court for the Middle District of Florida. (*Id.*, ¶ 10). These factors establish that Mr. Oppenheim is subject to the Florida ethical rules in representing Medical & Chiropractic. *See* Ex. 1, Fla. Bar Opinion 88-10; Ill. R. of Prof'l Cond. 8.5(b)(2).

Bock Hatch is similarly subject to the Florida ethical rules. The Technology Training Action arose out of faxes sent by the Buccaneers and received in Florida. (*See* Technology Training Action Compl., Technology Training Fed. Dkt. 1). The Technology Training Action is pending in the U.S. District Court for the Middle District of Florida and was mediated in Florida. (*Id.;* Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice to the Class, Technology Training Fed. Dkt. 18, p. 6). Moreover, Mr. Bock is a licensed Florida attorney. Jonathan Piper and Daniel Jay Cohen are Bock Hatch attorneys representing the plaintiffs in the Technology Training Action and representing Bock Hatch in this action. Mr. Piper and Mr. Cohen both filed motions for *pro hac vice* admission in the Technology Training Action and this action promising to adhere to the Florida ethical rules. (*See* Motions to Appear

---

[2] Even under Illinois rules, Mr. Oppenheim could not be properly screened out if he was to receive any share of firm's profits from this litigation. Ill. R. Prof'l Cond. 1.10(e).

*Pro Hac Vice* Dkt. 6, ¶ 2; Dkt. 15, ¶ 2*;* Technology Training Action Motions to Appear *Pro Hac Vice*, Technology Training Fed. Dkt. 20, ¶ 2, Dkt. 26, ¶ 2)..

### B. Mr. Oppenheim Owed Fiduciary and Ethical Duties to Medical & Chiropractic.

Medical & Chiropractic filed the claims individually and as a putative class representative. (Dkt. 2, Compl., Ex. 2 to Compl., Sec. Am. Compl., p. 1). To date, the M&C Class has not been certified. (*See* Federal Action Dkt., 241). Medical & Chiropractic and Mr. Oppenheim had an attorney-client relationship. *Morisky v. Public Service Elec. and Gas Co. ("PSE & G"),* 191 F.R.D. 419, 424 (D.N.J.2000) (noting attorney-client relationship between named plaintiffs and putative class counsel); *In re Katrina Canal Breaches Consol. Litigation,* No. 05-5531, 2008 WL 4401970, *3, 2008 U.S. Dist. LEXIS 112504, *10-11 (E.D. La. Sept. 22, 2008) (same) (quoting ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 07-445, at 3 (2007)).

Mr. Oppenheim represented Medical & Chiropractic and the class at two mediations and during settlement discussions. (Ver. Compl. ¶ 19-40). Accordingly, Mr. Oppenheim owed Medical & Chiropractic fiduciary and ethical duties, both individually and as putative class representative. *Cap. Bank v. Mvb*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994) (attorney/client relationships are expressly created fiduciary relationships). These fiduciary duties include "the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts." *Cap. Bank*, 644 So. 2d at 520. Mr. Oppenheim also owed a duty of loyalty to Medical & Chiropractic:

> A lawyer who has formerly represented a client in a matter must not afterwards:
>
> **(a)** represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

> **(b)** use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
>
> **(c)** reveal information relating to the representation except as these rules would permit or require with respect to a client.

Fla. Bar Reg. R. 4-1.9; *see also Brent v. Smathers*, 529 So.2d 1267, 1269 (Fla. 3d DCA 1988) ("Rule 4-1.9 also imposes upon the lawyer a duty of loyalty").

A "substantially related" matter is one that involves "the same transaction or legal dispute." Cmt. to Fla. Bar Reg. R. 4-1.9. Further, "[l]awyers owe confidentiality obligations to former clients, and thus information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client without the former client's consent." *Id*. To overcome any conflict of interest, Mr. Oppenheim was required to obtain informed consent from each client, "confirmed in writing or clearly stated on the record at a hearing." Fla. Bar. Reg. R. 4-1.7(b)(4). Mr. Oppenheim never asked for, let alone obtained, informed consent from Medical & Chiropractic. (Ver. Compl., ¶ 57, 61).

### C. Mr. Oppenheim's Duties And Conflicts Are Imputed To Bock Hatch.

Because Mr. Oppenheim could not pursue and settle the Technology Training Action without breaching his fiduciary and ethical duties to Medical & Chiropractic, Bock Hatch likewise cannot pursue the competing class action. Florida Rule 4-1.10 states in relevant part:

> (a) **Imputed Disqualification of All Lawyers in Firm**. While lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
>
> (b) **Former Clients of Newly Associated Lawyer**. When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are

11

materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

Thus, Bock Hatch cannot represent a client whom Oppenheim is prohibited from representing.[3]

Finally, Mr. Oppenheim possesses information protected by Florida Rules 4-1.6 and 4-1.9(b) and (c) that is material to the pending class actions. Mr. Oppenheim's knowledge of confidential information is apparent from his relationship with Medical & Chiropractic. "Upon a showing there is an attorney-client relationship, **there is a presumption there was a confidential relationship and confidential information was transferred to all members of a firm by the client**. This is the first aspect of loyalty to a client." *In re Outdoor Prods. Corp.*, 183 B.R. 645, 648 (Bankr. M.D. Fla. 1995) (emphasis added) (finding imputation of conflict to new law firm, disqualifying law firm); *see also* Fla. R. 4-1.9, cmt. ("The essential question is whether, but for having represented the former client, the lawyer would know or discover the information."). "The need to protect the integrity of loyalty to a client is predicated upon removing instances which would cause apprehension in a client's expectation of confidences." *In re Outdoor Prods. Corp.*, 183 B.R. at 649.

Further, Mr. Oppenheim unquestionably obtained confidential information regarding the Federal Action while representing Medical & Chiropractic. Florida Rules 4-1.6 and 4-1.9 protect "information relating to representation of a client." Fla. R. 4-1.6(a); Fla. R. 4-1.9(c). Settlement posture and strategy, even as an individual plaintiff and class representative, is "information relating to representation of a client." Mr. Oppenheim cannot take the position that he attended two mediations for his client but knew no confidential information or legal strategies. To have done so would be to commit malpractice at the mediations.

---

[3] As detailed below, the interests are materially adverse. *See* § II(D), *infra*. Further, the matters are the same matter. *See* § II(D), *infra*.

### D. Medical & Chiropractic's Interests Are Materially Adverse to Bock Hatch's New Clients.

Regardless of how Defendants want to frame the relative positions of Medical & Chiropractic and Bock Hatch's new clients, their interests are adverse with respect to the settlement approval in the pending class actions. The comments to Florida Rule 4-1.7, governing conflicts of interest, provides guidance as to what is considered "adverse": "Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated." Fla. R. 4-1.7, cmt; *see* Fla. R. 4-1.9, cmt. ("The principles in rule 4-1.7 determine whether the interests of the present and former client are adverse.").

Here, Bock Hatch is advocating against Medical & Chiropractic's positions in the pending class actions. Bock Hatch negotiated a class settlement in a competing class action without involving Medical & Chiropractic, the putative class representative in the pending class action. Medical & Chiropractic has filed motions and briefs arguing that the settlement is the product of a reverse auction. (*See* Technology Training Action Fed. Dkt. 29). Bock Hatch's new clients are taking the position that the settlement is fair and should be approved. (Technology Training Action Fed. Dkt. 18). These interests are adverse when it comes to the settlement, and therefore Mr. Oppenheim's new firm cannot represent Technology Training. Defendants' current client, Technology Training, is actively involved in a dispute and arguing competing positions with Mr. Oppenheim's former client, Medical & Chiropractic. That dispute is the entire current argument in the *underlying* class actions.

Further, the matter in which the former and current clients are adverse is not only "substantially related" to Mr. Oppenheim's representation—it is the same matter. *In re Outdoor Prods. Corp.*, 183 B.R. at 649 (disqualifying counsel where "[t]he instant matter is not a

'substantially related' matter, it is the 'same' adversary proceeding"). This undeniably falls within the purview of the conduct prohibited by Florida Rules 1.9 and 1.10.

The fact that Medical & Chiropractic's attorneys in the Federal Action are seeking appointment as interim class counsel does not bear upon whether Mr. Oppenheim's new firm can represent a client in an adverse position to Mr. Oppenheim's former client in the same matter. Class actions frequently involve conflicts between class members over settlements.[4] The issues being addressed through appointment of class counsel do not involve the breaches of fiduciary or ethical duties by a client's former attorney. That is the issue before this Court.

### III.     Injunctive Relief Is Appropriate Here.

The injunctive relief Medical & Chiropractic seeks in this case is both timely and appropriate. Injunctive relief by its nature enjoins threatened future injury. *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994). The threat of future harm must be "real and immediate" rather than "merely conjectural or hypothetical." *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1271 (11th Cir. 2015) (*citing Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)). "[A] plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Wooden*, 247 F.3d at 1283.

The Defendants dispute that injunctive relief is appropriate here, claiming their actions—taken during the pendency of this lawsuit and while the Motion for Temporary Restraining Order and Preliminary Injunction was on file—moot that relief. However, the fact that the Defendants

---

[4] Defendants' logic would allow Defendants to represent a class representative and a party objecting to a proposed settlement simultaneously. This is plainly an untenable position. Further, although Defendants claim Medical & Chiropractic can still petition for an incentive award (Mot., p. 17-18), Plaintiff is not aware of a situation where a court has approved an incentive award from a settlement to a plaintiff who also opposed the settlement. Defendants are therefore suggesting Medical & Chiropractic should either not fight the settlement and then ask the court for an incentive award (even though Medical & Chiropractic is not a named plaintiff in the Technology Training Action), or oppose it and roll the dice on whether the Judge will permit an incentive award in that circumstance.

have filed a competing lawsuit and are seeking preliminary settlement approval establishes the real and immediate harm to Medical & Chiropractic from Defendants' conduct. Further, Defendants have not obtained court approval of their proposed settlement. Their adverse representation is ongoing. Defendants' actions make the need for injunctive relief more immediate, not moot.

Additionally, Plaintiff has alleged damages in this case by identifying the fees, costs, and potential for a lost incentive award. (Ver. Compl., ¶ 96). But, a claim for injunctive relief would be appropriate and sufficiently stated regardless of Medical & Chiropractic's alleged damages. "Equitable relief is a prospective remedy", while "money damages look[] back in time and [are] intended to redress a past injury." *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). Injunctions are not only appropriate when damages cannot be proven, they are in fact most often applied when damages are difficult to prove. *See, e.g., Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1240 n.21 (11th Cir. 2009) (damage caused by employees' breach of restrictive covenant can difficult to prove); *see also Platypus Wear, Inc. v. Horizonte Ltda.*, 558 F. App'x 929, 931 (11th Cir. 2014) ("[D]amages are not a necessary element of a cause of action seeking declaratory and injunctive relief."). Prospective equitable relief is precisely what Medical & Chiropractic seeks in this action. Medical & Chiropractic properly pled injunctive relief.

**IV.   The Court Should Not Stay This Action Under The First-Filed Rule.**

Finally, Defendants incorrectly claim that this action is duplicative of the underlying class actions in seeking to stay or dismiss this action under the first-filed rule.[5] "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts,

---

[5] This is an ironic argument considering that Defendants filed the Technology Training Action over two years after Medical & Chiropractic became a plaintiff in the Federal Action.

15

the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013), *citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir.1982). "[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Collegiate Licensing*, 713 F.3d at 78, *citing Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 (11th Cir. 2005). "The three primary considerations are (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Beta Const. LLC*, No. 8:10-CV-1541-T-26TBM, 2010 WL 3789042, at *3, 2010 U.S. Dist. LEXIS 108266, at *9 (M.D. Fla. Sept. 24, 2010) (citations omitted).

As this Court has recognized, this case is not the *underlying* class actions – it is a separate and independent breach of fiduciary duty lawsuit. (Dkt. 41 ("...Plaintiff's claims involved breaches of fiduciary duties that stem from an *underlying* [TCPA] complaint...") (emphasis in original). Analyzing the first-filed rule makes this clear. First, this lawsuit was filed before the Technology Training Action, which was filed on June 20, 2016. (*See* Technology Training Action Dkt. 8). The Federal Action was filed years earlier in 2013. (Federal Action Dkt. 241). Second, the parties in the cases are not similar. The Technology Training Action and the Federal Action are putative class actions filed by Technology Training Associates, Larry Schwanke, CinQ Automobiles, and Medical & Chiropractic, individually and as class representatives, against the Buccaneers. The Defendants are not parties to the Technology Training Action or the Federal Action, and the Buccaneers are not a party to this action. Third, this Action does not involve similar issues to the underlying class actions. This is a breach of fiduciary duty case, not

16

a TCPA case. The litigation of this case will involve different factual evidence and witnesses than the TCPA cases.

Further, Medical & Chiropractic is not asking this Court for a determination of whether the settlement is a reverse auction, whether it should be approved, or whether it is fair and reasonable—that is the province of Judge Porcelli. Rather, Medical & Chiropractic is asking the Court to determine that its former attorney and his new firm cannot represent a competing class representative in a competing class because such representation breaches the fiduciary duties owed to Medical & Chiropractic, as well as the damages associated with that breach of fiduciary duty. *See, e.g., Nat'l Union Fire*, 2010 WL 3789042, at *4-5, 2010 U.S. Dist. LEXIS 108266, at 11-12 (denying transfer and stay of action under first-filed rule because parties were not identical and claims did not substantially overlap).

**CONCLUSION**

This lawsuit is not an end run around the underlying class actions. On the contrary, this lawsuit involves serious allegations of unethical conduct by Plaintiff's former counsel and his new firm – the Defendants. These allegations sufficiently plead causes of action for breach of fiduciary duty, and aiding/abetting same. Whether Technology Training can file suit against the Buccaneers, and then settle that suit, is not at issue here. What is at issue is whether Mr. Oppenheim can actively represent Medical & Chiropractic, gain confidential and strategic knowledge of its case, and then move to a new firm and usurp the claims of his former client. Pursuant to Florida law and ethical rules, Mr. Oppenheim cannot.

Should Medical & Chiropractic obtain the injunctive relief it seeks, the Technology Training Action against the Buccaneers will still move forward – it will just require different Plaintiff's counsel. Regardless of whether representation of different class members would present a conflict of interest and breach of fiduciary and ethical duties in different matters,

17

Defendants' actions in this matter do present such breaches and conflicts. This is particularly apparent given that Medical & Chiropractic is arguing in the pending class actions that the settlement procured by Mr. Oppenheim's new firm is a reverse auction and must be stopped. Further, Medical & Chiropractic's confidential client information is at risk through this competing representation. Medical & Chiropractic has been, continues to be, and will in the future be harmed by Mr. Oppenheim and his new firm pursuing the competing litigation and settlement. Under these facts, the Verified Complaint states causes of action against the Defendants and should not be dismissed.

/s/Christopher L. Griffin
Christopher L. Griffin (FBN 273147)
cgriffin@foley.com
lmiranda@foley.com
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, FL  33602-5810
P.O. Box 3391
Tampa, FL 33601-3391
Telephone:  813.229.2300
Facsimile:  813.221.4210

Jeffrey A. Soble (Ill. Bar No. 6238138)
jsoble@foley.com
Admitted *Pro Hac Vice*
Lauren M. Loew (Ill. Bar No. 6293248)
lloew@foley.com
Admitted *Pro Hac Vice*
FOLEY & LARDNER LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
Telephone:  312.832.4500
Facsimile:  312.832.4700

Attorneys for Medical & Chiropractic Clinic, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 11, 2016, the foregoing was filed via ECF which will provide electronic notice to all counsel of record. The foregoing was also mailed by U.S. Mail to:

David M. Oppenheim
6805 N. Wolcott Ave
Chicago, IL 60626

/s/Christopher L. Griffin
Attorney