UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDICAL & CHIROPRACTIC CLINIC,
INC.,

      Plaintiff,

v.                                                                    Case No: 8:16-cv-1477-T-36TBM

DAVID M. OPPENHEIM and BOCK LAW
FIRM, LLC,

      Defendants.

_____/

## **O R D E R**

This matter comes before the Court upon the Plaintiff's Amended Motion for a Temporary Restraining Order[1] and Preliminary Injunction (Doc. 5). In the motion, Plaintiff seeks to preliminarily enjoin the Defendants, and any other person or entity acting in concert or participation with any of the Defendants, from representing any entity in a matter, settlement, or case alleging class-wide allegations substantially related to *Cin-Q Automobiles, Inc. v. Buccaneers Limited Partnership,* 8:13-cv-1592-T-AEP (Doc. 5). Defendants oppose the issuance of a preliminary injunction (Doc. 32). The Court held an evidentiary hearing on the motion for preliminary injunction on July 18, 2016, at which Michele Zakrzewski, Michael C. Addison, Esq., David M. Oppenheim, Esq., and Phillip A. Bock, Esq., testified. (Doc. 51). The Court, having considered the testimony at the hearing, oral arguments, the parties' submissions and being fully advised in the premises, will now deny the motion for a preliminary injunction.

---

[1] The Court has already denied the Temporary Restraining Order (Doc. 41).

## I.     BACKGROUND

In 2009, the law firms of Anderson & Wanca and Addison & Howard began investigating potential Telephonic Consumer Protection Act ("TCPA") violations involving the Tampa Bay Buccaneers (Doc. 2 at ¶9).   In 2013, Cin-Q Automobiles, Inc. ("Cin-Q"), filed a putative class action lawsuit against the Buccaneers for alleged violations of the TCPA (*Cin-Q Automobiles, Inc. v. Buccaneers Limited Partnership*, 8:13-cv-1592-T-AEP) ("Federal Action") (*Id*. at ¶10).   On January 3, 2014, Cin-Q and Medical & Chiropractic Clinic ("Medical & Chiropractic") filed a second amended complaint which, *inter alia*, added Medical & Chiropractic as a putative class representative of the Federal Action (*Id*. at ¶12).   Medical & Chiropractic has an interest in being named the class representative and obtaining class certification (*Id*. at ¶14).   Since 2013, Cin-Q, Medical & Chiropractic and their attorneys have vigorously litigated and participated in fact discovery, depositions, class discovery, and expert discovery (*Id*. at ¶15).   They have briefed cross-motions for summary judgment, motions for interlocutory appeal, and various other motions (*Id*.).   On February 12 and August 31, 2015, day long mediation sessions were conducted without a settlement being reached (*Id*. at ¶28, 31, 37).

Defendant David M. Oppenheim[2] was employed as an attorney by Anderson & Wanca when the Federal Action was filed (*Id*. at ¶17).   Mr. Oppenheim's work focused on mediation and settlement negotiations of the Federal Action. In this role, he had access to Medical & Chiropractic's overall settlement strategy (*Id*. at ¶ 23, 24).   Mr. Oppenheim was the primary representative for the plaintiffs in the Federal Action in connection with those mediations (*Id*. at ¶23).   He also prepared and submitted the mediation statements in preparation for the mediation sessions (*Id*.).   On April 8, 2016, Mr. Oppenheim resigned from the Anderson & Wanca law firm

---

[2] Mr. Oppenheim is not a licensed attorney in the State of Florida (Doc. 56 at 156).

(*Id*. at ¶18).  On April 11, Mr. Oppenheim began working for the Bock Law Firm[3] (*Id*. at ¶50; Doc. 32-1 at ¶ 6).

On May 6, 2016, the Bock Law Firm, on behalf of Technology Training Associates, Inc., filed a similar class action in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, against the Buccaneers Limited Partnership (*Id*. at ¶57).  Shortly thereafter, Medical & Chiropractic's attorneys filed a Motion to Intervene in the Technology Training action (*Id*. at ¶75).  On May 18, Technology Training Associates filed a voluntary dismissal of the action (*Id*. at ¶82).

On June 1, 2016, Medical & Chiropractic filed the instant action and a Motion for a Temporary Restraining Order in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, against its former attorney, David M. Oppenheim, and his new law firm, the Bock Law Firm, LLC.  Thereafter, Defendant Bock Law Firm removed[4] the action to this court (Docs. 1, 4).  On June 13, Medical & Chiropractic filed the instant motion for a preliminary injunction (Doc. 5).

On June 20, 2016, the Bock Law Firm filed a second Technology Training Associates action, settled the suit and filed, *inter alia*, a motion for preliminary approval of class action settlement which is pending.  *See Technology Training Associates, Inc. v. Buccaneers Limited Partnership*, 8:16-cv-1622-T-AEP; Doc. 1, 18.

---

[3] Defendant Bock Law Firm, LLC, d/b/a Bock, Hatch, Lewis & Oppenheim, LLC is registered with the Illinois Secretary of State as "Bock Law Firm, LLC" (Doc. 2 at ¶ 5).
[4] Defendant Oppenheim consented to the removal (Doc. 4).  After the parties submitted responses to the Court's inquiry regarding jurisdiction, the Court determined that it had jurisdiction over the case (Doc. 39).

## II.   LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. "The purpose of a preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). "The grant or denial of a preliminary injunction is a decision within the discretion of the district court." *Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd.,* 112 F.3d 1125, 1126 (11th Cir. 1997). Moreover, the entry of a preliminary injunction is "the exception rather than the rule." *Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000)(citation omitted). In considering a request for a preliminary injunction, the Court may rely on hearsay materials that may not be admissible to support an order of permanent injunctive relief "if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 985 (11th Cir. 1995)(citation omitted).

A party seeking entry of "a preliminary injunction must establish that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Forsyth Cty. v. U.S. Army Corps of Eng'r*, 633 F.3d 1032, 1039 (11th Cir. 2011)(citation omitted); M.D. Fla. R. 4.05(b)(4). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *ACLU of Fla., Inc. v. Miami–Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009)(citation omitted). Moreover, "the movant clearly carries the burden of persuasion as to the four prerequisites." *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (citation omitted).

### III.    DISCUSSION

Plaintiff brings two claims in this litigation: one count of breach of fiduciary duty against David M. Oppenheim and the Bock Law Firm, and one count of aiding and abetting a breach of fiduciary duty against the Bock Law Firm, Mr. Oppenheim's new firm.

### A.  Success on the Merits

The first factor to be established - a substantial likelihood of success on the merits - is generally the most important in obtaining a preliminary injunction. *See Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp 2d 1378, 1383 (M.D. Fla. 2005).  "A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success." *Id*.

### 1.  Breach of Fiduciary Duty

To establish a breach of fiduciary duty, a plaintiff must prove three elements: (1) existence of a fiduciary duty; (2) a breach of that duty; and (3) that such breach was the proximate cause of plaintiff's damages.  *See Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002).

### i.    Mr. Oppenheim's Fiduciary Duty

Medical & Chiropractic contends that Mr. Oppenheim owed it fiduciary[5] and ethical duties, including the duty to refrain from self-dealing, the duty of loyalty, the duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts.  Furthermore, Plaintiff contends that the Florida and Illinois versions of the Rules of Professional Conduct set forth additional duties owed by Mr. Oppenheim to his former client, Medical & Chiropractic.  The Florida Rules of Professional Conduct 4-1.9 and the Illinois[6] Rules

---

[5] *Maksym v. Loesch*, 937 F.2d 1237, 1241 (7th Cir. 1991) (Noting that "a lawyer is a fiduciary of his client and that a fiduciary is presumptively barred from self-dealing at the expense of the person to whom he stands in a fiduciary relationship.").
[6] Illinois Rule of Professional Conduct 1.7 "is generally implicated when counsel is representing one client in a lawsuit against another individual who is also the counsel's client. In other words,

of Professional Conduct Rule 1.9 impose three requirements on attorneys who switch firms.

They are as follows:

> A lawyer who has formerly represented a client in a matter must not afterwards:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent
> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
> (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

"Matters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute…" Comment to Fla. Bar Reg R. 4-1.9.  "Lawyers owe confidentiality obligations to former clients, and thus information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client without the former client's consent." Fla. Bar Reg R. 4-1.9.  According to the Plaintiff, to overcome any conflict of interest, Mr. Oppenheim was required to obtain informed consent from each client, "confirmed in writing or clearly stated on the record at a hearing." Fla. Bar Reg R. 4-1.7.  Plaintiff further contends that such duties were imputed to the Bock Law Firm.

Here, the parties do not dispute that attorneys owe a fiduciary duty to their clients. However, the duty of class counsel or potential class, *above all*, is to the class members as a whole—as opposed to any particular named plaintiff.  *See Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981)(holding that the "client" in a class action includes numerous unnamed class members and the class attorney must act in the best interests of the class as a whole.).  The duty owed to class clients differs significantly from the duty owed in an individual

---

counsel is, in effect, on both sides of the lawsuit." *In re Comm'r of Banks & Real Estate*, 764 N.E.2d 66, 98 (Ill. App. Ct. 2001).

representation case.  *See Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1981), cert. denied, 459 U.S. 828 (1982)(noting that the compelling obligation of class counsel in class action litigation is to the group which makes up the class and is not dependent on the special desire of the named plaintiffs.).  Thus, Mr. Oppenheim had a fiduciary duty to the entire class, including the Plaintiff, when he worked for Anderson & Wanca.  However, this duty was not "dependent on the special desire of the named plaintiff" and/or individual plaintiffs. *See Parker*, 667 F.2d 1211.  Given the foregoing, Plaintiff is likely to establish the existence of a fiduciary duty to the class. It is questionable whether Plaintiff is likely to establish the existence of a special fiduciary duty to the Plaintiff, different from the fiduciary duty to all of the class members.

### ii.      Breach of Fiduciary Duty

Assuming *arguendo* that Plaintiff can establish a breach of a fiduciary duty, the Court will consider whether Plaintiff could likely establish the second element, a breach of that duty.  Plaintiff contends that Mr. Oppenheim breached his fiduciary duty when he usurped Plaintiff's position as a class representative, abandoned his former client for a competing client and attempted to negotiate a settlement cutting Medical & Chiropractic out of the transaction.

To support these contentions, Plaintiff cites the following cases: *The Florida Bar v. Adorno*, 60 So. 3d 1016 (Fla. 2011) (holding that a three-year suspension was warranted for an attorney whose misconduct included negotiating a seven million dollar settlement on behalf of seven named plaintiffs, while abandoning thousands of putative class members and obtaining a nondisclosure agreement with named plaintiffs for which the only logical reason could be keeping the facts of settlement secret from putative class members); *Young v. Achenbauch*, 136 So. 3d 575 (Fla. 2014)(finding a violation of Rule 4-1.9 and 4-1.7 where attorneys for a class attempted to bring suit against the foundation, established by the class settlement, while their former clients

were members of the board of that foundation); and *Masztal v. City of Miami*, 971 So. 2d 803 (Fla. 3rd DCA 2007) (finding a breach of fiduciary duty and vacating the settlement that included only the named plaintiffs and abandoned the remaining class members.).

For purposes of determining whether preliminary injunctive relief is warranted, the Court notes that there appears to be no "materially adverse" interest among the parties. The record reveals that various parties are representing the same potential class of plaintiffs against the same defendant, namely the Buccaneers. As further evidence that there is no adverse interest among the parties, the Court notes that Anderson & Wanca's recently filed motion seeks to consolidate the Cin-Q and Technology Training Associates actions, and to be named co-lead interim class counsel. *See* Doc. 236; 8:13-cv-1592-T-AEP; 8:16-cv-1622-AEP. The Complaint alleges that Mr. Oppenheim worked at the Anderson & Wanca firm representing a potential class of plaintiffs against the Buccaneers. He then joined the Bock Firm, which firm represents the same class of plaintiffs against the Buccaneers. The plaintiffs all share the common goal of establishing that the Buccaneers violated the Telephone Consumer Protection Act. It cannot be said that the interests of Plaintiff and the Technology plaintiffs are materially adverse. Here, Mr. Oppenheim and the Bock Firm are not on both sides of the lawsuit.

In addition, Plaintiff's allegations, regarding the actions taken by Mr. Oppenheim and the Bock Law Firm, are belied by the testimony. Specifically, Mr. Oppenheim testified that he did not participate in the filing of the second Technology Training Associates ("TTA") action and was not consulted on the matter prior to the Bock Law Firm filing suit. *See* Doc. 56 at 147-148 (Oppenheim). Moreover, Mr. Oppenheim was unaware of the filing of the TTA action until he

received an electronic filing receipt[7] from Hillsborough County State Court on May 6, 2016.  *See* Doc. 56 at 151 (Oppenheim).  Thereafter, Mr. Oppenheim was screened[8] off from the case and prohibited from receiving revenue and/or bonuses derived from the litigation. *See Id.* at 151 (Oppenheim); 175, 179, 180 (Bock).  Indeed, Mr. Bock confirmed that Mr. Oppenheim was not consulted and was screened off to make sure "nobody could claim there was some skulduggery." *See Id.* at 172 (Bock).

Further, the cases that Plaintiff cites, *Adorno*, *Young* and *Masztal,* are inapplicable.  In the case at hand, there is no evidence that Mr. Oppenheim, and/or his new law firm, breached a duty owed individually to Medical & Chiropractic or abandoned the class.  Neither Mr. Oppenheim nor the Bock Law Firm are pursuing relief for the class that is "materially adverse" to the interests of their fellow class members.  As such, Plaintiff is not likely to establish the second element of the breach of fiduciary duty claim against Mr. Oppenheim and his new law firm.

### iii.   Damages due to Breach

Even though Plaintiff is not likely to establish the second element, the Court will still examine whether Plaintiff's damages warrant the issuance of a preliminary injunction.  Plaintiff contends that if Mr. Oppenheim's breaches of fiduciary duty are permitted to continue, it will suffer significant damages including loss of future financial incentive.  Further, Plaintiff points out that it has already been forced to incur additional fees and cost associated with filing multiple motions to preserve its interest.

In general, Plaintiff's contention regarding future financial harm is too speculative to merit the issuance of a preliminary injunction.  "[A] mere threatened monetary injury, which can be

---

[7] It is unclear if the email was sent directly from the state court or the Bock Law Firm's internal email system.

[8] Defendant contends that "screening conflicted attorneys" complies with the Illinois law.

addressed in damages, is insufficient to establish the irreparable injury essential to the issuance of a preliminary injunction." *Diamond Power Intern., Inc. v. Clyde Bergemann*, *Inc.,* 370 F. Supp. 2d 1339, 1349 (N.D. Ga. 2005) (quoting *Corbin v. Corbin*, 429 F. Supp. 276, 282 (N.D. Ga. 1977)). "Generally, the purpose of an incentive award is to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Palmer v. Dynamic Recovery Sols., LLC*, 6:15-CV-59-ORL-40KRS, 2016 WL 2348704, at *8 (M.D. Fla. May 4, 2016) (citation omitted).

In fact, many class plaintiffs share an interest in recovering financial incentives on their claims against the Buccaneers regardless of who represents them. As such, there is little doubt that financial incentives and attorneys' fees are granted in many class action cases, but they are not guaranteed. Moreover, to the extent Plaintiff has incurred fees/costs, they are the type of damages that can be remedied at law. Plaintiff has not shown a likelihood of prevailing on the third element of its breach of fiduciary duty claim against Mr. Oppenheim and his new law firm.

### 2. Aiding and Abetting a Breach of Duty

To establish that the Bock Law Firm aided and abetted Mr. Oppenheim's breach of fiduciary duty, Medical & Chiropractic has to establish the following four elements: "(1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). Notwithstanding Plaintiff's failure to establish a likelihood of success on the merits with regard to the breach of fiduciary duty claim, the Court will consider whether Plaintiff could likely establish the aiding and abetting of the breach of fiduciary duty claim against

10

the Bock Law Firm.  Because the Court has already addressed elements one and two above, only the Bock Law Firm's knowledge and substantial assistance or encouragement are addressed below.

### i.  Knowledge

Plaintiff contends that the Bock Law Firm knew and/or should have known that a conflict of interest existed.  Indeed, Plaintiff argues that the Bock Law Firm was informed of such conflict after the filing of the first TTA action and when Judge Andersen refused to conduct a mediation due to the potential conflict.

As previously noted, the Bock Law Firm's actions were not adverse to the Plaintiff.  See *supra* A.1.i-ii.  As such, Plaintiff is not likely to establish the third element of the aider and abettor claim.

### ii.  Substantial Assistance/Encouragement

Plaintiff also contends that the Bock Law Firm helped Mr. Oppenheim breach his fiduciary duty by hiring him, filing the TTA actions, and proceeding with representation adverse to Medical & Chiropractic, Mr. Oppenheim's former client.

As previously noted, the actions of Mr. Oppenheim and the Bock Firm were not materially adverse to the interests of Plaintiff and did not breach a fiduciary duty. Thus, "the aider and abettor's substantial assistance or encouragement of the wrongdoing" prong has not been met. *See* discussion *supra* Section A.1.ii.  Therefore, Plaintiff has failed to establish a likelihood of success on the merits with regard to the aider and abettor claim.

Having found that Plaintiff has not shown a substantial likelihood of success on the merits, the Court need not address the remaining prerequisites for the issuance of an injunction.  *See Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir. 1994)(stating that the remaining prerequisites of preliminary injunctive relief need not be addressed because the Plaintiff failed to

establish a substantial likelihood of success on the merits.).  Nevertheless, the Court finds that the remaining elements of the preliminary injunction analysis do not weigh in favor of issuing a preliminary injunction.

## B.  Irreparable harm

The second element of the preliminary injunction analysis requires the moving party to show that irreparable harm will result if an injunction is not issued.  *See Church,* 30 F.3d at 1337.  "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray,* 415 U.S. 61, 88 (1974).  "A showing of irreparable injury is the sine qua non of injunctive relief." *Siegel*, 234 F.3d at 1176(citation omitted).  "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Church,* 30 F.3d at 1337(citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)(emphasis in original)).  In other words, "the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Siegel,* 234 F.3d at 1176(citation omitted).

Furthermore, "[t]o demonstrate irreparable harm, a plaintiff must show that it has no adequate remedy at law, meaning that its injury cannot be undone through monetary remedies." *Morris Comm. Corp. v. PGA Tour, Inc.,* 117 F. Supp. 2d 1322, 1330 (M.D. Fla. 2000)(citing *Cunningham v. Adams,* 808 F.2d 815, 821 (11th Cir. 1987)).  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson,* 415 U.S. at 90. "Significantly, even if [a plaintiff] establish[es] a likelihood of success on the merits, the absence

of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176.

In the instant case, Plaintiff alleges that Mr. Oppenheim and the Bock Law Firm's continued representation of other class members, filing of competing class actions and/or negotiating class-wide settlements establishes irreparable harm.  In support of these contentions, Plaintiff cites to the following cases: *Vargas v. Vargas*, 771 So. 2d 594 (Fla. 3rd DCA 2000)(finding that a temporary injunction was warranted where sisters established, *inter alia*, that their brothers were attempting to dissipate property); *Maritrans v. Pepper*, 602 A.2d 1277 (Pa. 1992)(upholding a preliminary injunction where the client sued its former law firm in connection with firm's representation of clients whose interests allegedly *conflicted* with those of plaintiff.).

In addition, Plaintiff argues that it will suffer "irreparable harm" by a reverse auction.  In support of this contention, Plaintiff cites to the following cases: *Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir. 2002)(reversing and remanding the case due to "reverse auction," the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant, which rendered the settlement unfair); *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313 (S.D. Fla. 2012)(enjoining defendant from settling a competing later-filed class action, citing the court's power to enjoin under the All Writs Act); *In re Am. Online Spin-Off Accounts Litig.*, 2005 WL 5747463, at *5 (C.D. Cal. May 9, 2005)(finding an injunction "necessary to aid in its jurisdiction" because the Illinois state court settlement proceeding threatened the federal court's ability to decide the case);*Masztal v. City of Miami*, 971 So. 2d 803 (Fla. 3rd DCA 2007)(finding a breach of fiduciary duty and vacating the settlement that included only the named plaintiffs and abandoned the remaining class members.).

Here, Plaintiff has not demonstrated a threat of irreparable harm.  First, the cases cited by the Plaintiff are either inapplicable and/or distinguishable as discussed below.  *Vargas* is not factually similar because the court found that absent an injunction, the plaintiff would have no remedy in law.  *Maritrans* is also not factually similar because the lawyers were found to be on both sides of the litigation, thus the firm's representation of the new clients *conflicted* with those of plaintiff.  *Reynolds* is not factually similar because the dispute arose during a settlement proceeding. Here, the Court does not have jurisdiction over the settlement proceedings in the Cin-Q and TTA actions.  *Checking* is neither factually nor legally similar because, in the instant case, there is no dispute involving the "first-filed" rule.  *American Online* is not factually similar because, in the instant case, there is not a state court case currently pending and/or any concerns implicating the "first-filed" rule.  *Masztal* is not factually similar because the dispute arose during a settlement proceeding. Here, the Court does not have jurisdiction over the settlement proceedings in the Cin-Q and TTA actions.

Second, Plaintiff's contention regarding "reverse auction" can be remedied in the ordinary course of litigation, specifically, in the approval process of the settlement. Indeed, any concerns regarding, *inter alia*, the settlement terms, reverse auction, becoming class counsel, class certification and incentive awards can all be addressed during the settlement proceeding.

Third, Plaintiff's contention involving its "future" inability to participate in strategies for the lawsuit can be alleviated by "other corrective relief…available at a later date." *Sampson,* 415 U.S. at 90.  For instance, Plaintiff could file a motion to become co-lead counsel as other class members have already done.  The fact that Plaintiff may have an alternative corrective remedy "weighs heavily against a claim of irreparable harm." *Id*.  Accordingly, Plaintiff has failed to establish the threat of irreparable harm.

### C.  Balancing of Harm

In balancing the harm the issuance of an injunction may cause to either party, "the harm considered by the district court is necessarily confined to that which might occur in the interval between ruling on the preliminary injunction and trial on the merits."  *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983).  Here, Plaintiff has not shown irreparable injury, and thus it has not shown that the threatened injury outweighs the harm an injunction may cause Defendants. See discussion *supra* Section II.B.  As such, the balance of equities weighs against the entry of an injunction.

### D. The Public Interest

And finally, Plaintiff alleges that a preliminary injunction would serve the public interest by enforcing the ethical and fiduciary duties of a lawyer to his client, and by protecting Plaintiff and the putative class members from the threat of a reverse auction.  Here, issuance of an injunction would not serve the public interest since no materially adverse interest exist among the parties (*see* discussion *supra* Section II.A.1.i-ii.) and other corrective relief will be available… in the ordinary course of litigation."  *Sampson,* 415 U.S. at 90.

### Conclusion

Based upon the evidence presented, Plaintiff has not met its burden of proving that it is entitled to a preliminary injunction. Therefore, its Motion for a Preliminary Injunction will be **DENIED**.

Accordingly, for the reasons stated above, it is hereby **ORDERED**:

1.  Plaintiff's Amended Motion for a Temporary Restraining Order and Injunctive Relief (Doc. 5) seeking a preliminary injunction is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on October 19, 2016.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any