UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDICAL & CHIROPRACTIC CLINIC, INC.,

    Plaintiff,

vs.                                      Case No. 16-cv-1477

DAVID M. OPPENHEIM, an individual, and
BOCK LAW FIRM, LLC d/b/a BOCK,
HATCH, LEWIS, & OPPENHEIM, LLC,

    Defendants.
_____/

## PLAINTIFF MEDICAL & CHIROPRACTIC CLINIC, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Medical & Chiropractic Clinic, Inc. ("M&C") moves for partial summary judgment as to Counts I and II of the Complaint pursuant to Fed. R. Civ. P. 56(a). As outlined below, there is no issue of genuine material fact that (1) Defendant David M. Oppenheim ("Oppenheim") breached his fiduciary duties owed to his former client, M&C; and (2) Defendant BOCK LAW FIRM, LLC d/b/a BOCK, HATCH, LEWIS, & OPPENHEIM, LLC ("Bock Hatch") aided and abetted Oppenheim in his breach. For the reasons more fully set forth in the accompanying memorandum of law, M&C requests the Court enter an Order granting partial summary judgment as to liability in M&C's favor.

**MEMORANDUM OF LAW IN SUPPORT OF MEDICAL & CHIROPRACTIC CLINIC, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.     INTRODUCTION**

M&C is entitled to summary judgment as to liability for Counts I and II because it cannot be disputed that Oppenheim breached his fiduciary duty to M&C, and Bock Hatch aided and abetted Oppenheim in his breach. The facts are clear that Mr. Oppenheim has an attorney-client relationship with M&C, and therefore owes fiduciary and ethical duties to M&C. These duties are imputed to Bock Hatch under the Florida Rules of Professional Conduct (the "Florida Rules"). Oppenheim breached his duty when he disclosed confidential and mediation privileged information with Bock Hatch. Bock Hatch was acutely aware of Oppenheim's duties, but nevertheless used this information to file a competing copycat class action materially adverse to Oppenheim's former client, M&C. Defendants cannot dispute these duties and breaches with any record evidence.

M&C's interests in *Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship*, 8:13-cv-1592-T-AEP) (the "Cin-Q Action") are materially adverse to Oppenheim's new firm's client in *Technology Training Associates v. Buccaneers Limited Partnership*, Case No. 8:16-cv-1622-T-AEP (the "TTA Federal Action"). Indeed, the 11th Circuit recognized as much. *Tech. Training Assocs. v. Buccaneers Ltd. P'ship*, 2017 U.S. App. LEXIS 21205, *11 (11th Cir. Oct. 26, 2017). Communications between Oppenheim and Bock Hatch discussing M&C's settlement and mediation position, Bock Hatch's surreptitious settlement negotiations, and M&C's position in the class actions demonstrate Oppenheim breached his fiduciary duty and Bock Hatch aided and abetted in his breach. For these reasons and the reasons expressed below, M&C is entitled to partial summary judgment as a matter of law.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

M&C's Statement of Undisputed Material Facts ("SOF") was filed separately as Docket 141. References to the SOF are incorporated herein as "SOF ¶XX."

## III. ARGUMENT

### A. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323–24; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

### B. Ethical Rules Apply To Oppenheim and Bock Hatch's Conduct.

M&C's expert, Henry Lee Paul, served as Bar Counsel in the Tampa Branch of the Florida Bar from 2005 through January 2012 in matters related to enforcement of The Rules Regulating the Florida Bar. Paul Expert at 21. He was counsel of record for The Florida Bar for 79 cases before the Florida Supreme Court. Paul considered the facts of this case, and

determined both Oppenheim's and Bock Hatch's conduct implicated and breached various Florida ethical rules.[1] Paul Expert Report at 2.

> **1. Florida Ethical Rules Prevented Oppenheim From Sharing Confidential Information He Gained During His Representation Of M&C With Third Parties.**

The Florida Rules further define Oppenheim's duty of loyalty to M&C. Florida Rule of Professional Conduct 4-1.9 states in relevant part:

> A lawyer who has formerly represented a client in a matter must not afterwards:
>
> **(b)** use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
>
> **(c)** reveal information relating to the representation except as these rules would permit or require with respect to a client.

Fla. Bar Reg. R. 4-1.9; *see also Brent v. Smathers*, 529 So.2d 1267, 1269 (Fla. 3d DCA 1988) ("Rule 4-1.9 also imposes upon the lawyer a duty of loyalty"); Paul Expert Report at 7-10 ("The duty of confidentiality is broader than the attorney client privilege. . . . The confidentiality provisions of Rule 4-1.9(b) and 4-1.9(c) are based on a duty of loyalty to the client"). The Rules further underscore an attorney's obligation not to disclose a client's confidential information under Rule 4-1.6—Confidentiality. Fla. Bar Reg. R. 4-1.6.

> **2. Oppenheim's Representation Of M&C Created A Conflict Of Interest Between Bock Hatch And The TTA Plaintiffs.**

The Florida Rules also establish that Oppenheim's duties to M&C and the knowledge he gained representing M&C in the Cin-Q Action created a conflict of interest for Oppenheim's new firm, Bock Hatch. Florida Rule of Professional Conduct 4-1.10 states in relevant part:

---

[1] M&C attached Paul's Expert Report to its Motion for Leave To Disclose Its Expert Report Instanter. Dkts. 137 and 137-1. However, even if the Court denies the Motion for Leave, M&C should still prevail on this Motion.

(a) **Imputed Disqualification of All Lawyers in Firm**. While lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

(b) **Former Clients of Newly Associated Lawyer**. When a lawyer becomes associated with a firm, *the firm may not knowingly represent a person in the same or a substantially related matter* in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client *whose interests are materially adverse* to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

Fla. Bar Reg. R. 4-1.10 (emphasis added).

As outlined in the Rule, Bock Hatch cannot represent a party (1) in the same or substantially related matter (2) where the party's interests are materially adverse to M&C. *Id.* The TTA Federal Action and the Cin-Q Action are not only substantially related matters—they are the same matter. *In re Outdoor Prods. Corp.*, 183 B.R. 645, 649 (Bankr. M.D. Fla. 1995) (disqualifying counsel where "[t]he instant matter is not a 'substantially related' matter, it is the 'same' adversary proceeding"). Moreover, the 11th Circuit recognized the TTA Federal Action and Cin-Q Action are the same matter when it permitted the Cin-Q Plaintiffs' intervention in the TTA Federal Action. *Tech. Training Assocs. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017); Paul Expert Report at 11.

The Cin-Q Plaintiffs and TTA Plaintiffs are also materially adverse. The Cin-Q Plaintiffs recognized the proposed settlement in the TTA Federal Action was adverse to the class and their interests. Therefore, they moved to intervene. SOF ¶ 65. Overruling the district court, the 11th Circuit agreed with the Cin-Q Plaintiffs and held "It is plain from the record that during the negotiations the interests of the [TTA Plaintiffs] and of Bock Hatch were aligned with those of Buccaneers and <u>adverse to the [Cin-Q Plaintiffs] interests</u>." *Tech. Training Assocs. v.*

*Buccaneers Ltd. P'ship*, 2017 U.S. App. LEXIS 21205, *11 (11th Cir. Oct. 26, 2017) (emphasis added). In addition, the Court noted the TTA Plaintiffs had a greater incentive to settle with the Buccaneers because the TTA Plaintiffs' claims were time barred, while the Cin-Q Plaintiffs faced no such issue. *Id.* at *10; SOF ¶¶ 49, 71.

To overcome this conflict of interest, Defendants were required to obtain informed consent from each client, "confirmed in writing or clearly stated on the record at a hearing." Fla. Bar Reg. R. 4-1.7(b)(4). Defendants never received this consent, let alone gave M&C notice of Oppenheim's departure from A+W. SOF ¶ 46, 53; Paul Expert Report at 10. Since Defendants never received M&C's consent to represent the TTA Plaintiffs, a conflict of interest existed preventing Defendants from serving as class counsel in the TTA Federal Action.

Importantly, Bock Hatch also could not overcome this conflict by "screening" Oppenheim from the case—and Bock Hatch knew it. SOF ¶ 39. The preamble to the Florida Rules makes it clear that screening is only applicable to Rules 4-1.11, 4-1.12, and 4-1.18. Fla. Bar Reg. Preamble Comment: "Screened"; Paul Expert Report at 12 (citing *Edward J. DeBartolo Corp. v. Petrin*, 516 So. 2d 6 (5th DCA 1987)).

### 3. Oppenheim And Bock Hatch Are Obligated To Conduct Themselves In A Manner That Does Not Harm The Class, The Legal System, And The Public Image Of The Legal System.

The Florida Rules further obligate Oppenheim and Bock Hatch to act in a professional manner and in the best interests of their clients and the legal system. Fla. Bar Reg. R. 4-8.4(d). Legal scholars have noted this duty is particularly vulnerable in the context of class actions. *See* Nancy J. Moore, *Who Will Regulate Class Action Lawyers*, 44 U. Chi. L.J. 577 (Winter 2012). As M&C's expert highlights, one successful class action lawyer was quoted as saying "I have the

6

best practice in the world. I have no clients." *Id.*; Paul Expert Report at 13. Rule 4-8.4(d) helps protect against this mentality that is harmful to both clients and the legal community.

### C. Oppenheim Breached His Fiduciary Duty To M&C.

To state a claim for breach of fiduciary duty, M&C must establish (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) that such breach was the proximate cause of plaintiff's damages. *Gracey v. Eaker,* 837 So.2d 348, 353 (Fla. 2002). Additionally, "[t]he standard of care established by ethical rules, while not dispositive, is relevant to the existence of a fiduciary duty and its possible breach." *Baker v. Eichholz*, 2009 U.S. Dist. LEXIS 1329, *5 (S.D. Ga. Jan. 9, 2009); *see also Griva v. Davison*, 637 A.2d 830, 846 (D.C. 1994) ("[C]ase law confirms that a violation of . . . the Rules of Professional Conduct can constitute a breach of the attorney's common law fiduciary duty to the client."); *Avianca, Inc. v. Corriea*, 705 F. Supp. 666, 679 (D.D.C. 1989). As outlined below, Oppenheim owed M&C a fiduciary duty, breached those duties, and proximately caused M&C's damages.

### 1. As Its Attorney, Oppenheim Owed M&C Fiduciary And Ethical Duties.[2]

M&C and Oppenheim had an attorney-client relationship. *Morisky v. Public Service Elec. and Gas Co. ("PSE & G"),* 191 F.R.D. 419, 424 (D.N.J. 2000) (noting attorney-client relationship between named plaintiffs and putative class counsel); *In re Katrina Canal Breaches Consol. Litigation,* No. 05-5531, 2008 WL 4401970, *3, 2008 U.S. Dist. LEXIS 112504, *10-11 (E.D. La. Sept. 22, 2008) (same) (quoting ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 07-445, at 3 (2007)). M&C filed the Cin-Q Action claims individually and as putative class representative. SOF ¶ 4. While Oppenheim was an A+W attorney, A+W entered

---

[2] The Court noted in its order denying Defendants' motion to dismiss that Defendants did not contest this element in their motion to dismiss. Dkt. 96 at 5. The fully developed factual record provides nothing for Defendants to now contest this element.

7

into an engagement letter with M&C for the Cin-Q Action. SOF ¶ 6. Oppenheim represented M&C at two mediations in the Cin-Q Action. SOF ¶ 11. Even after these mediations, Oppenheim continued settlement negotiations with the Buccaneers on M&C's behalf. SOF ¶ 18. M&C viewed Oppenheim as its attorney, chief negotiator, and "closer" for negotiations with the Buccaneers. SOF ¶ 9.

Accordingly, Oppenheim owed M&C fiduciary and ethical duties both individually and as putative class representative. *See Fla Bar v. Adorno*, 60 So.3d 1016 (Fla. 2011); *Cap. Bank v. Mvb*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994) (attorney-client relationships are expressly created fiduciary relationships); *Masztal v. City of Miami*, 971 So. 2d 803, 808 (Fla. Dist. Ct. App. 2007). These fiduciary duties include "the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts." *Cap. Bank*, 644 So. 2d at 520.

Oppenheim's duties to the class as a whole do not supplant the duties he also owed to M&C individually. As M&C's expert stated in his report, "The fact that Oppenheim as counsel for M&C in the [Cin-Q Action] had a fiduciary duty to the class as a whole, does not give him license to reveal the confidential information cited in the [11th Circuit Opinion] and shared with Mr. Bock." Paul Expert Report at 10.

### 2. Oppenheim Breached His Fiduciary Duty When He Shared Confidential and Mediation Privileged Mediation Information With Bock Hatch.

Oppenheim was the primary negotiator for M&C in the Cin-Q Action, and in this capacity he gained confidential and mediation privileged information relating the M&C's case strategy, discovery, analysis, and settlement strategy of M&C, the putative class, and the Buccaneers. SOF ¶¶ 9-10. Oppenheim's fiduciary and ethical duties prevented him from sharing this confidential and mediation privileged information with third parties. *See supra* Sections B(1)

and C(1). Nevertheless, Oppenheim revealed this information to Bock Hatch in a series of emails between Oppenheim and Bock. SOF ¶¶ 31-36. Armed with this confidential and privileged information, Bock Hatch immediately resolved to bring a copycat class action covering the same class as the Cin-Q Action. SOF ¶¶ 38-42.

Defendants may contend that Bock Hatch gained this information previously through discussions with M&C's local counsel, Michael Addison. SOF ¶ 30. Addison denies any such conversations ever occurred. *Id*. Importantly, this alleged conversation happened weeks before Bock discussed the Cin-Q Action with Oppenheim. SOF ¶¶ 30-31. Even if the conversation with Addison did occur, Bock Hatch took no affirmative steps to file the copycat class action because of it. SOF ¶ 40. Additionally, this alleged conversation did not contain the level of detail that Oppenheim provided in his April 29 emails with Bock. SOF ¶¶ 30-36. Addison allegedly told Bock A+W was holding out for a larger settlement for larger fees. SOF ¶ 30. This does not provide the precise detail the 11th Circuit Opinion highlighted when Oppenheim told Bock A+W wanted a settlement above $75 million, nor does it disclose that the mediator in the case believed the Buccaneers' new counsel was a settler. SOF ¶¶ 31-36; Paul Expert Report at 9.

Oppenheim's conduct also violated several ethical rules further demonstrating his breach of his fiduciary duty to M&C. As at least one court in this circuit found ethical violations can provide further support for finding a breach of fiduciary duty. *Baker v. Eichholz*, No. CV406-021, 2009 U.S. Dist. LEXIS 1329, at *4 (S.D. Ga. Jan. 9, 2009). In *Baker*, the court denied an attorney's motion in limine to exclude expert testimony related to breaches of the attorney's ethical duties. *Id.* at *4-8. The court held the expert testimony was admissible as evidence of the attorney's breach of fiduciary duties because it could "assist the trier of fact in determining the existence and breach of a fiduciary duty." *Id.* at *7.

9

Oppenheim shared confidential and mediation privileged information from the Cin-Q Action with Bock Hatch without M&C's consent. SOF ¶¶ 31-36, 53, 65. As M&C's expert explained, this conduct expressly violates Florida Rules 4-1.6, 4-1.9(b), and 4-1.9(c). Paul Expert Report at 7-10. In addition, Oppenheim's conflict was imputed to Bock Hatch when he joined the firm, and Bock Hatch's representation of the TTA Plaintiffs created a conflict of interest violating Florida Rules 4-10(a) and (b). Paul Expert Report at 10-12. Finally, Oppenheim's breach of confidentiality was in violation of Florida Rule 4-8.4(d). *Adorno*, 60 So. 3d at 1029 (Fla. 2011). Oppenheim's conduct was harmful to all members of the class, the legal system, and the public image of the legal system in violation of the Rule. *Tech. Training Assocs.*, 2017 U.S. App. LEXIS 21205 at *10; Paul Expert Report at 12-13.

### 3. Oppenheim's Breach Is The Proximate Cause Of M&C's Damages.

Oppenheim's breach also proximately caused M&C's damages. *Masztal*, 971 So. 2d at 809-10 (recognizing damages when class counsel obtained a self-interested settlement). Oppenheim's sharing of confidential and mediation privileged information spurred Bock Hatch in its filing of the TTA State Court and Federal Actions. SOF ¶¶ 31-40. Bock Hatch had taken no affirmative steps to file the copycat class action before his discussions with Oppenheim. SOF ¶ 40. The filing of the copycat class action forced M&C and the Cin-Q Plaintiffs to intervene in both the TTA State Court and Federal Actions in order to protect their rights. SOF ¶¶ 56, 65. M&C and the Cin-Q Plaintiffs were forced to expend time and other resources to prevent a settlement between Bock Hatch and the Buccaneers resulting from their aligned interests. SOF ¶ 64; *see also Tech. Training Assocs.*, 2017 U.S. App. LEXIS 21205 at *10-11. Indeed, Defendants conceded the significant damages M&C face when they removed this matter to

federal court acknowledging potential damages are at least $75,000. Dkt. 1 at 2-3. The exact damages number will be determined at trial.

### D. Bock Hatch Aided And Abetted Oppenheim's Breach Of His Fiduciary Duty To M&C.

To prove aiding and abetting a breach of fiduciary duty, a plaintiff must show: (1) a third-party owed a fiduciary duty; (2) the third-party's breach of that fiduciary duty; (3) defendant's knowledge of the breach; and (4) defendant substantially assisted or encouraged the breach. *Amerifirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). M&C established Oppenheim's existing fiduciary duties, breach, and proximate causation above. *See supra* Section C(1)-(3). The remaining two elements are addressed below establishing Bock Hatch's knowledge and encouragement.

#### 1. Bock Hatch Knew Oppenheim Breached His Fiduciary Duty To M&C.

Bock Hatch was aware that Oppenheim represented M&C in the Cin-Q Action. SOF ¶ 24. Moreover, Bock Hatch knew that Oppenheim was M&C's chief negotiator at mediations and in settlement negotiations with the Buccaneers in the Cin-Q Action. *Id*. The firm also knew that under the Florida Rules of Professional Conduct it could not avoid Oppenheim's conflicts of interest by "screening" him off matters. SOF ¶ 39.

Despite this knowledge, Bock Hatch engaged in multiple conversations with Oppenheim discussing the mediation and settlement negotiations in the Cin-Q Action. SOF ¶¶ 31-36, 60. Oppenheim gave Bock Hatch valuable insight as to M&C's settlement strategy, going so far as to reveal the exact dollar amount M&C sought. SOF ¶¶ 31-36; *Tech. Training Assocs. v. Buccaneers Ltd. P'ship*, 2017 U.S. App. LEXIS 21205, *3 (11th Cir. Oct. 26, 2017). All of these facts demonstrate Bock Hatch's awareness of Oppenheim's breach.

### 2. Bock Hatch Encouraged Oppenheim's Breach.

The communications cited directly above also show that Bock Hatch encouraged Oppenheim's breach through its continued dialogue discussing the Cin-Q Action's settlement negotiations while suggesting actions Oppenheim and Bock Hatch could take. SOF ¶¶ 31-36. However, the record also reveals that Bock Hatch, and specifically its managing partner, Phil Bock, was personally motivated to undermine M&C's years of effort in the Cin-Q Action. SOF ¶¶ 34-36. Bock described one of M&C's remaining counsel as a "greedy asshole" and proposed Oppenheim could file a competing suit, get it settled over the objections of both M&C and its counsel, and make it even more "Machiavellian" by getting M&C's co-counsel involved. SOF ¶¶ 35-36; *Tech. Training Assocs.*, 2017 U.S. App. LEXIS 21205 at *3. Immediately after the communications with Oppenheim, Bock emailed his partners suggesting Bock Hatch "could find a plaintiff and approach the [the Buccaneers] about settling? Lol." SOF ¶ 38. The record makes it abundantly clear that Bock Hatch encouraged Oppenheim to breach his fiduciary duty to his former client, M&C. *Amerifirst Bank*, 757 F. Supp. at 1379-80 (finding aiding and abetting breach of fiduciary duty claim existed even though defendant may have had separate duty to another party).

As previously explained, violations of ethical standards are instructive when evaluating breaches of fiduciary duty. *Baker v. Eichholz*, 2009 U.S. Dist. LEXIS 1329, *5 (S.D. Ga. Jan. 9, 2009). Bock Hatch's conduct not only aided and abetted Oppenheim's breach of his fiduciary duties, but it also violated Florida Rules of Professional Conduct. Oppenheim's conflict of interest was imputed on Bock Hatch. *See supra* Section B(2). Hence, Bock Hatch's representation of the TTA Plaintiffs violated Rule 4-10(a) and 4-10(b). Paul Expert Report at 10.

Additionally, Bock Hatch's personal interest in settling the TTA Federal Action violated Rule 4-1.7—Conflict of Interest: Current Clients. Paul Expert Report at 4; Fla. Bar Reg. R. 4-1.7; *see also Adorno*, 60 So. 3d at 1028-29 (Fla. 2011) (finding Rule 4-1.7 violation when settlement was reached in effort to collect large fees at putative class' expense). The 11th Circuit recognized that the interests of Bock Hatch were aligned with the Buccaneers and not M&C or the class "in an effort to collect attorney's fees while doing a fraction of the work that [A+W] did." *Id.*; *Tech. Training Assocs.*, 2017 U.S. App. LEXIS 21205 at *10-11. And even if Bock Hatch tried to obtain a waiver (which it did not), this type of conflict is not waivable. Paul Expert Report at 5-6 (citing Florida Bar Staff Opinion 35438).

Bock Hatch's personal interest also violated Rule 4-1.8(a)—Conflict of Interest: Prohibited and Other Transactions. Paul Expert Report at 6-7; Fla. Bar Reg. R. 4-1.8. Bock Hatch's interest in a quick settlement to collect attorneys' fees aligned Bock Hatch's interests with that of the Buccaneers and adverse to the M&C and the class in violation of the Rule. Paul Expert Report at 6-7.

Bock Hatch also violated of Florida Rule 4-8.4(d). Similar to Oppenheim's violation, Bock Hatch's conduct has been harmful to M&C and members of the class, the legal system, and the public image of the legal system in violation of the Rule. Paul Expert Report at 12-13. For all of the reasons stated above, as a matter of law Bock Hatch aided and abetted Oppenheim's breach of fiduciary duty.

## CONCLUSION

WHEREFORE, M&C respectfully requests the Court grant M&C partial summary judgment finding Oppenheim breached his fiduciary and ethical duties owed to M&C, and that Bock Hatch aided and abetted Oppenheim in his breach.

Dated: December 8, 2017

Respectfully submitted,

/s/ Lauren M. Loew

Christopher L. Griffin (FBN 273147)
cgriffin@foley.com
lmiranda@foley.com
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
P.O. Box 3391
Tampa, FL 33601-3391
Telephone: 813.229.2300
Facsimile: 813.221.4210

Jeffrey A. Soble (Ill. Bar No. 6238138)
jsoble@foley.com
Admitted Pro Hac Vice
Lauren M. Loew (Ill. Bar No. 6293248)
lloew@foley.com
Admitted Pro Hac Vice
FOLEY & LARDNER LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
Telephone: 312.832.4500
Facsimile: 312.832.4700

Attorneys for Medical & Chiropractic Clinic, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 8, 2017, the foregoing was filed via ECF which will provide electronic notice to all counsel of record:

**Barry Blonien**
Blonien Legal Counsel
1718 Adams St.
Madison, WI 53711
608-620-5357
Email: barry@blonienlegal.com
*Attorney for David Oppenheim*

**Christopher Stephen Polaszek**
The Polaszek Law Firm, PLLC
3407 W Kennedy Blvd
Tampa, FL 33609
813-574-7678
Email: chris@polaszeklaw.com
*Attorney for Bock Law Firm, LLC*

**Phillip Bock**
Bock & Hatch, LLC
Suite 1000
134 N La Salle St
Chicago, IL 60602
312-658-5500
Email: phil@bockhatchllc.com
*Attorney for Bock Law Firm, LLC and David Oppenheim*

**Daniel J. Cohen**
Bock Law Firm, LLC
134 N. LaSalle St Ste 1000
Chicago, IL 60602
312-658-5500
Fax: 312-658-5555
Email: danieljaycohen209@gmail.com
*Attorney for Bock Law Firm, LLC*

**Jonathan B. Piper**
Bock Law Firm, LLC
134 N. LaSalle St Ste 1000
Chicago, IL 60602
312-658-5500
Fax: 312-658-5555
Email: jon@classlawyers.com
*Attorney for Bock Law Firm, LLC*

/s/Lauren M. Loew
Attorney