**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MEDICAL & CHIROPRACTIC CLINIC, INC., )
                                               )
                       Plaintiff, )
                                               )
            v.                               )      No. 8:16-cv-01477-CEH-TBM
                                               )
DAVID M. OPPENHEIM, *et al.*,          )
                                               )
                     Defendants. )

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

The Court previously held M&C was unlikely to succeed on the merits because counsel's duty is to the class as a whole, not M&C individually. Doc. 71, pp. 6-7; *see id.* ("[M&C] is likely to establish the existence of a fiduciary duty to the class, [but] it is questionable whether [M&C] is likely to establish the existence of a special fiduciary duty to [M&C], different from the fiduciary duty to all of the class members").. Oppenheim owed M&C no "special" duty.

The Court also held there were no breach, as there are "no 'materially adverse' interests among the parties" because they "are representing the same potential class of plaintiffs against the same defendant, namely the Buccaneers." *Id.*, p. 8. *See also id.* ("Mr. Oppenheim testified that he did not participate in the filing of the [TTA] action and was not consulted on the matter prior to [BLF] filing suit"). Setting aside M&C's unsupported conspiracy-theories, the Court's holding remains factually sound and, as such, M&C cannot meet any of the elements of its claim.

The Court next held M&C was unlikely to establish damages. Doc. 71, pp. 8-9. The only damages M&C has identified are litigation fees/costs here, and a lost chance at an incentive award via class settlement elsewhere. As to the former, under M&C's contract with counsel in this case, it bears no responsibility for fee/costs. As to the latter, which the Court previously held speculative and subject to disposition in the TTA action—*i.e.*, *Technology Training Assoc., Inc.*

*v. Buccaneers Ltd. P'ship*, Case No. 8:16-cv-01622-AEP—M&C has intervened there, and can protect its claims there. BLF will not oppose an incentive award to M&C in the TTA action.

Summary judgment is also warranted on Defendants' champerty and maintenance affirmative defenses. Attorney Brian Wanca, putative class counsel in the competing Cin-Q action against the Buccaneers, is unconditionally financing this action—a violation of Rule 4-1.8(e) of the Rules Regulating The Florida Bar— ███████████████

███████████████████████████. But for such funding, this action would not have been brought. This is a textbook champerty and summary judgment should be granted.

Summary judgment for Defendants is required under Federal Rule of Civil Procedure 56.

## STATEMENT OF FACTS

**I.       A+W and BLF's joint prosecution of TCPA class actions.**

Bock Law Firm ("BLF") and Brian J. Wanca, J.D., P.C. d/b/a Anderson + Wanca ("A+W") have co-counseled on dozens of class actions under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Before 2009, Wanca and Bock agreed to prosecute all of their TCPA cases jointly. (Ex. 1, Bock Dep. Tr. at 41-42; Ex. 2, ███████████████). A+W interacted with potential class plaintiffs, and BLF handled briefing/arguments. (Ex. 1, pp. 50-52). These cases yielded key decisions governing TCPA cases and insurance coverage.[1]

---

[1]       *See, e.g., Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245 (11th Cir. 2015) (holding "sender" of fax is directly liable under TCPA); *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540 (6th Cir. 2014) (holding class of injured persons under TCPA not limited to fax machine owners); *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013) (holding TCPA cases generally should be certified as class actions, and newsletter with defendant's logo was "advertisement"); *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013) (holding Hobbs Act bound court to enforce FCC regulation regarding opt out notice on fax); *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011) (holding TCPA statute of limitations is four years, and state case tolled limitations period); *Standard Mut. Ins. Co. v. Lay*, 2013 IL 114617 (Ill. 2013) (holding TCPA damages remedial, compensatory, and insurable); *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814 (8th Cir. 2012) (finding coverage for TCPA claims under general liability policy); *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352 (2006) (same); *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258 (Mo. 2013) (same).

In 2009-2010, Wanca invited Bock to join a potential case against the Tampa Bay Buccaneers ("BLP"). (Ex. 3, ███████████; Ex. 4, ████████████████; Ex. 1, pp. 64-78).[2] ███

██████████████████████████████████████████████████████████████████████████████

█████████████████. Wanca later decided to stop co-counseling with Bock. (████████

█████), but the firms continue jointly prosecuting cases to this day. (*See* List, attached as Ex. 24).

## II.    The Cin-Q and M&C class actions against BLP.

On 6/18/13, A+W and Michael Addison (of Addison & Howard, P.A.) filed a class action in this Court on behalf of Cin-Q Automobiles, Inc. (the "Cin-Q Action") (Case 13-cv-1592, Doc. 1). Other TCPA class action cases were also brought against BLP for the same faxes. *See e.g., Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698 (11th Cir. 2014). ████████████████████

████████████████████████████████████

On 10/9/13, A+W signed a retainer agreement with M&C to pursue a TCPA class action against BLP (Ex. 6, ███████████████), ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████. Agreements among counsel to affiliate or divide fees must be in writing with M&C's written consent. (*Id.*). The agreement is signed by Michelle Zakrzewski for M&C, and by Wanca for A+W. It does not mention Addison.

---

2   ████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.

(*Id.*). In fact, he has no agreement with M&C.[3] (████████████████████████████

████████████████████████). Florida law requires a written agreement for Addison to

represent M&C on a contingency basis. (Ex. 9, p. 102-03).

Two days after the retention agreement was signed, the Cin-Q plaintiff sought leave to

file an amended complaint adding M&C as a second proposed class representative. (Case No.

13-cv-1592, Doc. 37). The Cin-Q court granted the motion on 1/3/14. (Case 13-cv-1592, Doc.

68). In total, Addison and six current and former A+W attorneys have appeared for M&C in the

Cin-Q action. (Case 13-cv-1592, Docket). Oppenheim did not appear on M&C's behalf. *Id.*

In 2014, BLP sought summary judgment on whether the faxes at issue were sent on its

behalf. The Cin-Q court denied summary judgment, articulating a multi-part balancing test. 2014

WL 7224943 (M.D. Fla. Dec. 17, 2014). ████████████████████████████

████████████████████████ Thereafter, Cin-Q action parties mediated with

Rodney Max. At that point, Oppenheim became involved in order to try to negotiate a settlement

on behalf of the class. (Ex. 8, 7/18/16. Hrg. Tr., p. 162; Ex. 2███████████). Wanca and

Addison retained full authority over class settlement negotiations. (*Id.*).

The Max mediation occurred in February 2015. Oppenheim attended with Addison, A+W

attorneys Ross Good and Kelly, Zakrzewski as representative for M&C, and Craig Cinque for

Cin-Q. (Ex. 10, Oppenheim Dep. Transcript at 40-41). Oppenheim interacted with M&C

regarding the Cin-Q action only during the mediation session and dinner the night before. (*Id.*).

M&C did not share individual, personal, or proprietary information with Oppenheim. (Ex. 7, ███

███; Ex. 8, p. 46). Nothing shared with Oppenheim set M&C apart from the class. (*Id.*).

M&C acknowledges Oppenheim acted for the class as a whole. (Ex. 8,, pp. 60-61).

---

[3] At the 7/18/16 hearing, Addison testified he *did* have a signed retention agreement with M&C. (Ex. 8, 7/18/16 Hrg. Tr. at 119). To date, neither Addison nor M&C has corrected the record.





On 3/25/16, with no settlement in sight, the Cin-Q plaintiffs moved for class certification. (Case 13-cv-1592, Doc. 207). The motion stated, "If for any reason the Court finds these representatives inadequate, Plaintiffs request 30 days to substitute new class representatives." (*Id.*, p. 25). It included Robert Biggerstaff expert report, including a list of all telephone numbers that received the faxes at issue. (*Id.*, Docs. 207-5 and 207-6; *see also* Ex. 2, ██; Ex. 9, p. 67).

The Cin-Q plaintiffs argued individual issues of prior express permission/invitation to receive faxes were irrelevant to certification as the faxes lacked compliant opt out notices under FCC regulations. (Case No. 13-cv-1592, Doc. 207 at 2, 14-15, 20 and n. 10, 28-29). After the TTA action settled, the D.C. Circuit voided the FCC regulation on which the Cin-Q plaintiffs had relied. *Bais Yaakov of Spring Valley v. Fed. Comms. Comm.*, 852 F.3d 1078 (D.C. Cir. 2017).

████████████████████████████████

███████████████████████. On 4/18/16, BLP filed a motion in the Cin-Q action to waive mediation privilege and set a settlement conference with Judge Porcelli. (Case 13-cv-1592, Doc. 215). BLP stated:

---

[4] This is not the only time Addison shared his thoughts about the mediation with Bock. Both were also present for a hearing on a joint case on 4/18/16. (Ex. 8, 7/18/16 Evid. Hrg. Tr., pp. 200-01; Ex. 18, TTA Evid. Hrg. Tr. at pp. 12-13; Ex. 1, Bock Dep., pp. 179-182). Further, Addison had previously discussed the Cin-Q Action with. Oppenheim in. Bock's presence. (Ex. 10, Oppenheim Dep. Tr., p. 111).

> Through the course of negotiations, the Buccaneers and their counsel have grown increasingly concerned over issues that would be best addressed by the Court. Although apparent progress was made during the prior negotiations, the impasse recently reached by the parties makes clear that these issues may only be resolvable by the Court, particularly given its role as a fiduciary of the proposed class and the absent members of that class.

(*Id.*, p. 2). On 5/2/16, the Cin-Q plaintiffs filed a notice of impasse prepared by the mediator, and refused to waive the mediation privilege. (Case 13-cv-1592, Docs. 218, 219).

### III. Oppenheim's transition from A+W to BLF.

On 3/31/16, Bock asked Oppenheim to work for BLF. (Ex. 10, p. 73). They met on 4/3/16 to work out details and reach agreement. (*Id.*, pp. 73-75, 84-85, 99). Oppenheim did not discuss the Cin-Q Action or any BLP class action. (*Id.*, p. 110; Ex. 1, p. 111). A BLP action had nothing to do with Oppenheim's decision to change firms. (Ex. 18, p. 47; Ex. 1, pp. 123-26).

Four days later, when Wanca returned to the office from traveling, Oppenheim gave notice that he had accepted employment with BLF. (Ex. 10, p. 99). Oppenheim and Wanca parted amicably, with the latter observing that they would still be working together on the many still-pending, jointly-prosecuted cases. (*Id.*, p. 104).

Oppenheim's first day on the job at BLF was 4/11/16. He continued to work on jointly-prosecuted cases, and remained involved in class settlements and mediations. A couple weeks later, Oppenheim and opposing counsel in a jointly-prosecuted case were communicating about selecting a mediator. (Ex. 20, 4/29/16 E-mail chain). Travelers' counsel proposed seven mediators, including Judge Andersen. (*Id.* at p. 6). On 4/28/16, Oppenheim responded, copied to Wanca and Bock, okaying Andersen and one other, and suggesting three more. (*Id.*, p. 5).

Wanca later indicated Andersen was unacceptable, so Oppenheim offered defense counsel potential dates for the remaining mediators. (*Id.*, p. 4). On reading the exchange, Bock emailed Oppenheim inquiring why Wanca had vetoed Andersen. (*Id.*, p. 3). Oppenheim

responded it was likely that Wanca "doesn't like how the Tampa Bay Bucs mediation process went and resents Andersen's continued efforts." (*Id.*). This exchange occurred 11 days after BLP filed its motion in the Cin-Q action seeking the Court's involvement in settlement efforts.

Bock responded, "I'm sure you and Judge Andersen already offered him [Wanca] more than he could ever get." (*Id.*). Oppenheim replied: "Yeah. He [Wanca] wants to set a record above the Capital One $75 million settlement. The magistrate judge it's in front of is squeamish and is giving the Defendants a broad shot at disproving 'on behalf of.' Sort of like Sarris." (*Id.*; *see also* Ex. 10, pp. 137-43). This communication is the only evidence that M&C and its witnesses have identified in claiming Oppenheim disclosed confidential, material information.

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████ Unfortunately, assertions of privilege by M&C and A+W witnesses continue to prevent a full assessment of the context or materiality of the 4/29/16 emails.

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

## IV.    The TTA v. BLP class action and settlement.

On 4/29/16, following his emails with Oppenheim (as well as his BLP-related conversation with Addison), Bock evaluated the possibility of bringing a competing BLP action.

---

[5] Plaintiffs produced these term sheets but did not confirm which of them were actually shared with the Buccaneers, or proposed by whom.

(Ex. 2, pp. 200-02; 4/29/16 emails, attached as Ex. 29). BLF had conducted a marketing campaign in Florida to find potential class plaintiffs willing to pursue TCPA claims. (Ex. 18, p. 17; Ex. 8, pp. 173-75). BLF reviewed the Biggerstaff Report filed in the Cin-Q action (Case 13-cv-1592, Docs. 207-5 and 207-6) to see if the fax numbers corresponded to persons who had responded to BLF's marketing efforts. (Ex. 18, pp. 17-21; Ex. 8, pp. 173-74). BLF found potential plaintiffs, including Technology Training Associates and Schwanke. (*Id.*). Wanca and Addison concede the Biggerstaff Report was sufficient to enable BLF to find plaintiffs and file the case. (*See* Ex. 2, ▮▮▮▮▮▮; Ex. 9, p. 67).[6]

BLF then filed the TTA action and contacted BLP counsel to inquire if BLP might be interested in discussing possible settlement. (Ex. 18, pp. 25-26, 31-32). ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. And BLF screened Oppenheim from the case. (Ex. 23, 5/17/16 Screening E-mail; Ex. 18, pp. 25-28, 30-31; Ex. 8, pp. 172, 174-75). Apart from passively receiving the receipt from the initial filing of the TTA action, Oppenheim has not participated in it at all. (*Id.*; Ex. 10, pp. 152-57).

Notwithstanding efforts by M&C, A+W, and Addison to interfere with the TTA action—including the filing of the instant case—TTA and BLP, and their respective counsel, participated in two mediations with Peter Grilli that led to a successful, classwide settlement. (Case 16-cv-1622, Doc. 2 at p. 2). The settlement provides for a fund of $19.5 million dollars, and payments of $350 to $565 to class members who submit claims. (*Id.*). ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

In the settlement, BLP waived any statute of limitations defense. (Case 16-cv-1622, Doc. 18-1 at 36). BLP might otherwise have had such a defense to a separately-filed action, *see Ewing*

---

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮.

*v. Bob Wines, Inc.*, 795 F.3d 1324 (11th Cir. 2015), but it would have had no such defense if TTA intervened in the Cin-Q Action, as M&C itself did. *Id.* The settlement was reached before the TTA action was filed in this Court. (Case 16-cv-1622, Doc. 18-1 at 1-2).

On 3/31/17, after briefing and a hearing at which Bock and Oppenheim testified about, *inter alia*, the 4/29/16 emails (Ex. 18), Judge Porcelli denied M&C and Cin-Q's motion to intervene, certified the class, granted preliminary approval, and appointed BLF attorneys as class counsel. (Case 16-cv-1622, Doc. 56, pp. 25-29, 40).

The Eleventh Circuit recently held M&C and Cin-Q satisfied the requirements for intervention under Fed. R. Civ. P. 24, and reversed that portion of Judge Porcelli's order denying intervention. *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. Oct. 26, 2017) ("The movants have met the 'minimal' burden of showing that plaintiffs' representation of their interests 'may be' inadequate."). The Eleventh Circuit did not reverse the settlement approval, or make findings of fact, but granted M&C and Cin-Q entrance into the TTA action as intervening parties, where they will argue the settlement is insufficient and resulted from BLF "underbidding" them. TTA will argue the settlement is fair and reasonable, and saved the class from the litigation risk to which M&C, A+W, Cin-Q, and Addison subjected it when demanding an excessive settlement fund to support an excessive fee, and then declaring an impasse when BLP declined to indulge their greed. Judge Porcelli will resolve that dispute.

## V.   Expert Testimony.

Defendants have tendered the expert opinion of former Florida Bar Ethics Director Timothy C. Chinaris (Ex. 25, Expert Witness Disclosure), who opines that neither Oppenheim nor BLF are ethically precluded from representing class members in the TTA action. (*Id.*, ¶ 20). Chinaris notes that Oppenheim represented M&C only in its capacity as a putative class representative (*Id.*, ¶ 21), learned no privileged or confidential information about M&C, and

knew of no legal position of M&C different or separate from the class. (*Id.*, ¶ 19).

Chinaris further opines M&C has no right to be a class representative. (*Id.*, ¶ 22), and the interests of M&C and the TTA action plaintiffs are not materially adverse, as all are members of the same class and have consistent interests in fair and reasonable settlement of the class's claims. (*Id.*). Thus, neither Rules 4-1.9 nor 4-1.10 of The Florida Rules Regulating The Bar preclude BLF or Oppenheim from representing TTA. (*Id.*, ¶¶ 22-23). Further, any duty of confidentiality Oppenheim owed is owed to the class. (*Id.*, ¶ 24).

**VI.     Wanca's retaliation, including the prosecution of this action.**

Upon learning of the TTA action, Wanca moved to intervene in an attempt to stop the competition. A+W prompted M&C to file this action, agreeing to pay M&C's attorney's fees and costs without recourse. (Ex. 26, ⬛⬛⬛⬛; Ex. 7, ⬛⬛⬛; Ex. 2, ⬛⬛⬛). ⬛⬛





Despite Wanca's outrage at BLF's competition—genuine or otherwise—and the claims asserted in this action, A+W is involved in precisely the same scenario that it (or its proxy, M&C) asserts is wrongful here. (███████). On 7/30/13, BLF and A+W jointly filed a putative class action in the District of New Jersey. (Ex. 28, City Select Complaint). Wanca personally signed the retainer agreement with the class plaintiff, City Select, on behalf of his firm. (Ex. 2, █████).

On 2/4/16, A+W filed a competing class action with a different class plaintiff against the same defendants in the Central District of Illinois. (Ex. 30, Foley Motors Complaint). ██████

---

[7] In addition to this action, Wanca has filed a separate case against Oppenheim in Illinois state court in A+W's name, and a complaint with the Illinois Attorney Registration & Disciplinary Commission.



. Oppenheim did **not** have an appearance in the Cin-Q action.

## RELEVANT LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley,* 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under governing law. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact to decide at trial. *Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). The nonmoving party must then "go beyond the pleadings," and designate specific facts showing that there is a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593–94 (11th Cir. 1995) (citing *Celotex,* 477 U.S. at 324).

A party cannot satisfy its burden by offering evidence in the form of conclusory allegations, legal conclusions, or evidence that is merely colorable or not significantly probative of a disputed fact. *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991); *Kernel Records,* 694 F.3d at 1301. "[U]nsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact;

instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005), *quoting Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995). "Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin Cnty. v. Purcell,* 971 F.2d 1558, 1563–64 (11th Cir.1992), "inferences based upon speculation are not reasonable." *Marshall v. City of Cape Coral,* 797 F.2d 1555, 1559 (11th Cir. 1986); *Ave. CLO Fund, Ltd. v. Bank of Am., N .A.,* 723 F.3d 1287, 1294 (11th Cir. 2013).

To establish breach of fiduciary duty, a plaintiff must prove three elements: (1) existence of a fiduciary duty; (2) breach of duty; and (3) damages proximately caused by the breach. *See Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). To establish aiding and abetting breach of fiduciary duty, a plaintiff most prove: (1) fiduciary duty by a primary wrongdoer; (2) breach of that duty; (3) knowledge of breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. *Turnberry Village North Tower Condo. Assoc., Inc. v. Turnberry Village S. Twr. Condo. Assoc.*, 224 So.3d 266, 267 n. 1 (Fla. App. 2017); *Mukamal v. Bakes*, 378 Fed. Appx. 890, 902 (11th Cir. 2010). Based on the record here, as a matter of law M&C cannot establish any of the elements of its case.

## ARGUMENT

### I.   M&C brought this action in its individual capacity, but Defendants owe no duty to M&C unique, special, or distinct from their duty to the class as a whole.

The Court previously held "the duty of class counsel or potential class counsel, *above all*, is to the class members as a whole—as opposed to any particular named plaintiff. Prel. Inj. Order, Doc. 71, p. 6., *citing Kincade v. General Tire & Rubber Co*., 635 F.2d 501, 508 (5th Cir. 1981). "Class counsel's duty to the class as a whole frequently diverges from the opinion of either the named plaintiff or other objectors." *Walsh v. Great Atl. & Pac. Tea Co*., 726 F.2d 956,

964 (3d Cir. 1983). *See also Kincade*, 635 F.2d at 508 ("'client' in a class action consists of numerous unnamed class members as well as the class representatives," which can force class counsel to act in what she or he perceives to be in the "'best interests of the class as a whole'").

"The duty owed to class clients differs significantly from the duty owed in an individual representation case." Prel. Inj. Order, Doc. 71, p. 7 (*citing Parker v. Anderson*, 667 F.2d 1204, 1211–12 (5th Cir. 1982), *cert. denied* 459 U.S. 828 (1982)). "The compelling obligation of class counsel in class action litigation is to the group which makes up the class." *Parker*, 667 F.2d at 1211. Thus, class counsel must act in a way that best represents the interests of "the entire class and is not dependent on the special desires of the named plaintiffs." *Id. See also Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) (noting class counsel have "heavy fiduciary responsibility to their clients – especially to those who are absent and those in the minority whose interests are at odds with the named plaintiffs and their group"); *Pettway v. Amer. Cast Iron Pipe Co.*, 576 F.2d 1157, 1176 (5th Cir. 1978) (holding where interest of named plaintiff conflicts with rest of class, "the class attorney must not allow decisions on behalf of the class to rest exclusively with the named plaintiffs," but must notify court of conflict); *Kincade*, 635 F.2d at 508 ("Because of the unique nature of the attorney-client relationship in a class action, the cases cited by appellants holding that an attorney cannot settle his individual client's case without the authorization of the client are simply inapplicable").

"Because the client in a class action consists of numerous class members, in addition to the class representatives, and because the class itself often speaks in several voices, all that can be expected of class counsel is that he seek to protect the best interests of the class as a whole." *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 307 (N.D. Ill. 1997). "This duty may require class counsel to take actions which are in derogation of the express desires and contrary

to the best interest of the class representatives in order to protect the interests of the plaintiff class." *Id.*

> Consistent with the foregoing, the Florida Bar's former Ethics Director opines:
>
> A named plaintiff in a putative class action is a representative of the putative class and Mr. Oppenheim's representation of M&C was in such a representative capacity. This principle is similar to that expressed in Florida Rule of Professional Conduct 4-1.13(a), which provides that a lawyer who represents an organization represents the organization as an entity, even though the organization necessarily must act through its individual constituents (such as officers and employees). This principle applies to the representation of unincorporated associations. Comment, Rule 4-4.2. *See also Jesse v. Danforth*, 485 N.W.2d 3 (Wis. 1992); Arizona Ethics Op. 02-06 (lawyer may form business entity for various individuals and be counsel only for the yet-to-be formed entity).

Ex. 25, Chinaris Report, ¶ 21 (d). The Eleventh Circuit's decision allowing M&C to intervene in the TTA action reinforces this point—*i.e.*, the only mention of ethical duties in the opinion is the observation that BLF owes a duty *to the class*. 874 F.3d at 697-98.[8]

M&C sued here in its individual capacity alleging individual harm. The Court previously held M&C must establish Oppenheim had a "special fiduciary duty to the Plaintiff, different from the fiduciary duty to all of the class members." (Prel. Inj. Order, Doc. 71, p. 7). M&C has not and cannot establish any such thing. The undisputed facts show A+W's representation of M&C was limited to class actions, including against BLP. M&C acknowledges Oppenheim acted for the class as a whole (Ex. 8, 7/18/16 Evid. Hrg. Tr., pp. 60-61), M&C did not share individual, personal, or proprietary information with Oppenheim (Ex. 7, ███████████████; Ex. 8, 7/18/16 Evid. Hrg. Tr., p. 46), and nothing M&C shared with him sets M&C apart from the absent class. (*Id.*). For this reason alone, M&C's claims fail.

---

[8]     The opinion also notes that "[i]n *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981." *Technology*, 874 F.3d at 696, n. 2. This adoption includes *Kincade*, *supra*.

## II.    Even if there were a duty, it would not have been breached.

As pleaded, M&C's claims stem from the notion that representing one class member is *per se* "materially adverse" to representing another class member against a common defendant. This proposition, absurd on its face, is belied by relevant case law and by M&C's actions and filings in the class actions. To the extent M&C argues a duty was breached through specific disclosures, that argument fails for two reasons: (1) as noted, any disclosures pertained to information about the class, not M&C individually; and (2) the record does not—and given M&C's and its attorneys' excessive reliance on privilege cannot—establish that any of Oppenheim's disclosures to Bock constituted confidential, material information.

### A.    Competing class representatives do not have materially adverse interests.

M&C's claims are based on Florida and Illinois versions of Model Rule of Professional Conduct 1.9. (Complaint, ¶¶ 41-47). This rule prohibits attorneys switching firms from:

> (a) represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

> (b) us[ing] information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or

> (c) reveal[ing] information relating to the representation except as these rules would permit or require with respect to a client.

F.S.A. Bar Rule 4-1.9. M&C alleges violation of Rule 1.9(a), and the related provision in F.S.A. Bar Rule 4-1.10 ("When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter").

But for these provisions to apply, the interests of the former client must be "materially adverse" to those of the new client. Decisions applying this rule to disqualify an attorney or a law firm involve an attorney moving from a firm representing a plaintiff to one representing the defendant, or vice versa. They refer to Rule 1.7 in defining what is "materially adverse." "Rule 1.7 is generally implicated when counsel is representing one client in a lawsuit against another individual who is also the counsel's client. In other words, counsel is, in effect, on both sides of the lawsuit." *In re Commissioner of Banks and Real Estate*, 764 N.E.2d 66, 98 (Ill. App. 2001), *citing Guillen v. City of Chicago,* 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

As the Court previously found, "there appears to be no 'materially adverse' interest among the parties. The record reveals that various parties are representing the same potential class of plaintiffs against the same defendant, namely the Buccaneers." (Prel. Inj. Order, Doc. 71, p. 8). As Chinaris explains, "M&C, the [TTA plaintiffs], and the other members of the class do not have adverse interests. All are members of the same class and, as a result, have consistent interests in a fair and reasonable settlement of their claims." (Ex. 25, Chinaris Report, ¶ 22(c)).

Moreover, preventing class counsel from continuing representation of a class "whenever class members have conflicting interests would substantially diminish the efficacy of class actions as a method of dispute resolution." *Eubank v. Pella Corp.*, 753 F.3d 718, 722-23 (7th Cir. 2014). M&C's own attorneys saw no problem with *them* simultaneously representing TTA, who supports the proposed settlement, and M&C, who does not. (TTA action, Doc. 8, at 19, ¶ D.) There is equally no problem with Defendants here sequentially representing M&C and TTA in the class actions. M&C's attempt to draw a distinction is unsupported and of minimal coherence. At best, M&C appears to be drawing a distinction between simultaneously representing two clients with opposing positions on a proposed class settlement (as M&C's counsel wanted to do)

and doing so sequentially (as they allege Defendants did), and concluding the former is permissible but the latter is not. There is no support for such an absurd rule.

> *Radcliffe v. Hernandez*, 818 F.3d 537 (9th Cir. 2016) ("*Radcliffe II*"), is in accord:

> The district court … conclude[ed] … there are "compelling reasons to interpret California's disqualification rule flexibly in light of California case law," for two reasons. "First and foremost, **this conflict was brief and caused by a specific provision in a now-defunct settlement**." "[T]he class representatives did not have inherently opposing interests from absent class plaintiffs," but rather "the conflict was manufactured by the faulty settlement terms."

*Id.* at 542-43 (emphasis added). The district court held representing a class rep who supports a settlement and another who opposes it does not create a conflict. The Ninth Circuit agreed:

> In essence, appellants' position is that because those decisions describe the automatic disqualification rule in *per se* terms, and make no mention of excluding class actions, the rule must therefore apply to class actions. This position is not implausible, but neither is it persuasive.

*Id.* at 544. As the court explained, policy justifications underlying the automatic disqualification rule "are not fully transferrable to class action cases." *Id.* The rule applies where two clients are on both sides of a case, not where a "lawyer [] represents a class of plaintiffs whose interests may in some ways be adverse to each other, but all of whose interests are adverse to the defendant." *Id.* The court observed that in class actions, "conflicts often arise not because an attorney simultaneously represents litigation adversaries but because they simultaneously represent different members of the *same* class who develop divergent interests regarding how to prevail on their shared claims." *Id.* (emphasis in original).

Disagreement among class members on whether to settle is not grounds for disqualification. *Id.* And representing class members who want to settle when another represented class member does not is not a breach of fiduciary duty. To hold otherwise would not "comport with federal law regarding the requirements for adequate class counsel under [Fed. R. Civ. P.] 23." *Id.* at 545, *citing Rodriguez v. West Pub. Corp.,* 563 F.3d 948, 961 (9th Cir.

19

2009) (holding "adequacy requirement for class counsel is satisfied" under Rule 23 despite "presence of conflicted representatives").

Finally, echoing *Eubank, supra,* the *Radcliffe II* court held that "'although automatic disqualification might promote the salutary ends of confidentiality and loyalty' in traditional cases, 'it would have a serious adverse effect on class actions.'" *Id., quoting In re "Agent Orange,"* 800 F.2d at 18. *See also Lazy Oil Co. v. Witco Corp.,* 166 F.3d 581, 589 (3d Cir. 1999) (observing in many class actions, "one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class), but the usual rules on attorney-client relations do not apply;" otherwise, "class counsel could easily be disqualified in these cases, not only would the objectors enjoy great 'leverage,' but many fair and reasonable settlements would be undermined[.]").[9]

The Eleventh Circuit's holding—that M&C satisfied the "minimal burden" of showing the TTA plaintiffs' representation of M&C's interests "may be" inadequate, *Technology,* 874 F.3d at 697—is not to the contrary. The court did not hold that various members of the class were "materially adverse" to one another within the meaning of Rule 4-1.9, or that class counsel in the TTA action are inadequate under Fed. R. Civ. P. 23. Nor did it undo the settlement or make findings of fact. Rather, it remanded the action for Judge Porcelli to make determinations regarding the sufficiency of the settlement, but with M&C granted party status in the action. *Id.*

**B.     M&C cannot establish disclosure of confidential, material information.**

Even if the interests of M&C and the TTA plaintiffs are now "materially adverse," there was no breach. Oppenheim does not and has not represented the TTA plaintiffs; he has had no

---

[9] The position urged here by M&C and A+W is also irreconcilable with A+W's own sequential filing of two competing BMW class actions without obtaining the consent of its earlier-filed client, City Select. *See* pp. 16-17, *supra.*

involvement in their recruitment, the filing of the action, or its prosecution or settlement.[10] (Ex. 8, Prel. Inj. Order, pp. 8-9, p. 12, *supra*). Likewise, as discussed herein, any potential harm from BLF's actions, if any, flows to the class as a whole, not to M&C individually, and Judge Porcelli and the class (after notice) will address the adequacy of the settlement.

That leaves Rule 4-1.9(c), which prohibits the disclosure of material, confidential information. Here, the only possible "disclosure" that M&C can point to is the 4/29/16 Bock-Oppenheim email chain. (Ex. 20). Nothing in that email pertains to information unique to M&C, as opposed to class as a whole. ████████████████████████████████████████ ████████████████████████████████.[11]

The other details of the A+W mediations and settlement efforts have been obscured by privilege invocations. It is impossible to conclude **on this record** that the referenced "$75 million" was either material or confidential with regard to negotiations in the Buccaneers case, or whether it was simply "something [Bock] knew anyway as a professional goal of [Wanca's]," having worked with and negotiated alongside Wanca for years. (Ex. 18, 10/20/16 TTA Evid. Hrg. Tr., p. 49; *see also id.*, p. 41: "I'm not settling the case based on what they were negotiating or what they were hoping for because I know how Mr. Wanca negotiates settlement. That's not how I try to negotiate my settlements."). M&C's claims thus fail on this element as well.

### III.   M&C has no damages.

M&C's suit is a challenge to BLF's adequacy as class counsel in the TTA action

---

[10] Oppenheim has been screened consistent with Illinois Rule of Professional Conduct 1.10 (e). The Illinois rule does not impute conflicts to a lawyer's new firm if "the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom." *Id.* Because both BLF and A+W are Illinois law firms, Mr. Oppenheim is an Illinois attorney, and Mr. Oppenheim's representation of Plaintiff in connection with the M&C Action did not involve a Florida admission, Illinois law should govern the question.

[11] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████.

shoehorned into an individual action financed by A+W, which represents M&C in the Cin-Q action. Even ignoring this obvious end-run, M&C has failed to identify any damages.

M&C claims it has been injured because its potential incentive award for services on behalf of the class has been jeopardized, but it has conceded the settlement has not changed its likelihood of receiving an incentive award. (Ex. 8, 7/18/16 Hrg. Tr., pp. 62-63). If anything, M&C's likelihood of receiving an incentive award increased because now there is a classwide settlement pending approval in the TTA action; *i.e.*, something M&C and A+W were unable to accomplish in the Cin-Q action over 3+ years. The TTA settlement does not prevent M&C from requesting an incentive award, and BLF has agreed it will not oppose such a request. And if M&C is otherwise dissatisfied with the settlement, it may object on that basis as an intervenor, or opt out and pursue its own claim. (Ex. 18, 10/20/16 TTA Hrg. Tr., pp. 53-54, 55-56).

██████████████████████████████████████████████████

████████████████████████████████████. No one may claim a right or entitlement to an incentive award. *See, e.g., Palmer v. Dynamic Recovery Sols., LLC*, Case No: 6:15-cv-59-Orl-40KRS, 2016 WL 2348704, *8-10 (M.D. Fla. May 4, 2016). Incentive awards are "fairly typical," but never guaranteed to a class representative, under any circumstances. *Id.* at *8 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). Because such an award so so speculative and discretionary, the potential loss of it has been held insufficient to confer standing. *See Bank v. Alliance Health Networks, LLC*, 669 Fed. Appx. 584 (2d. Cir. 2016).

Notably, there is no limitation on the discretion of a court overseeing a class action that would prevent it from granting an incentive award to a class member other than the named plaintiff if such a person benefitted the class. *See, e.g., Americana Art China Co. v. Foxfire Printing & Packaging*, Case No. 08-cv-6992 (N.D. Ill. June 19, 2013) (Doc. 31-1, p. 7) (in case

jointly prosecuted by A+W and BLF, court granted incentive award to former class representative as part of a class settlement). As a matter of law, potential loss of a speculative incentive award does not constitute cognizable damage to make a submissible case.

M&C's second claimed element of damages are the attorney's fees incurred in this action. The record here demonstrates that M&C has not, cannot, and will not incur those damages. As noted above, the contract under which Foley represents M&C in this action reveals that A+W has sole responsibility for all fees and expenses in this action. (Ex. 26, ████████; Ex. 7, ██████████████████; Ex. 2, ███████████████). M&C has no obligation to pay anything. *Id.* ████████████████████████████████████████ ████████████████████████████████████. As discussed below, Foley's representation of M&C is an improperly champertous arrangement, and M&C cannot with a straight face claim damages for attorney's fees when it well knows it has not and will not incur any, especially where A+W's payment of those fees itself violates Rule 4-1.8(e).

## IV.     M&C's claim for injunctive relief fails.

"[I]njunctive relief may not be used to enforce money damages." *APR Energy, LLC v. First Inv. Grp. Corp.*, 88 F. Supp. 3d 1300, 1313 (M.D. Fla. 2015). "[I]njury is irreparable only if it cannot be undone through monetary remedies." *Claughton v. Donner*, 771 F. Supp. 1200, 1204 (S.D. Fla. 1991), *citing Deerfield M&C Center v. Deerfield Beach,* 661 F.2d 328 (5th Cir. 1981); *Spiegel v. Houston,* 636 F.2d 997 (5th Cir. 1981). "The ability of a plaintiff to recover money damages as an adequate remedy for losses suffered precludes a finding of irreparable harm." *FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1212 (S.D. Fla. 2011), *citing Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 917 (2d Cir. 1986). Here, M&C claims diminished opportunity to obtain an incentive award, but it has not been denied such an award, and may still obtain one from Judge Porcelli. And, the award that M&C wants—████—is

plainly calculable and could be recovered as legal damages, making injunctive relief improper.

## V.    Because the claim against Oppenheim fails, the aiding & abetting claim fails.

As discussed, Oppenheim never owed an individual duty to M&C in the Cin-Q action; he owed a duty to the class. He did not breach that duty, and M&C has not suffered any damages. Because M&C cannot succeed on its claim against Oppenheim, its aiding and abetting claim against BLF necessarily fails. *See Mukamal*, 378 Fed. Appx. at 902 ("Because the underlying breach of fiduciary duty claims fail, the claims that Wellspring and the Individual Defendants aided and abetted those breaches must follow suit").

## VI.   Champerty and maintenance bar A+W's agreement to finance this action, and the Court should invalidate that agreement.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████. "Champerty is a form of maintenance wherein one will carry on a suit in which he has no subject-matter interest at his own expense or will aid in doing so in consideration of receiving, if successful, some part of the benefits recovered." *Kraft v. Mason*, 668 So.2d 679, 682 (Fla. App. 1996), *citing* 14 C.J.S. Champerty and Maintenance § 1a (1991). "Maintenance is an officious intermeddling in a suit which in no way belongs to the intermeddler, by maintaining or assisting either party to the action, with money or otherwise, to prosecute or defend it." 9 Fla.Jur.2d Champerty and Maintenance § 1 (1979). Under the modern view, "it is the act of one improperly, and for the purpose of stirring up litigation and strife, encouraging others either to bring [an] action[ ] or to... defen[d a suit] which they have no right to make...." *Friends of Nassau County, Inc. v. Nassau County*, 752 So. 2d 42, 53 (Fla. App. 2003); *see also* IV William Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND at 135–36 (1769) (defining maintenance). Champerty and maintenance remain valid

affirmative defenses in Florida. *Hardick v. Homol*, 795 So.2d 1107 (Fla. App. 2001).

Additionally, Florida ethics Rule 4-1.8(e) states, "a lawyer shall not provide financial assistance to a client in connection with a pending or contemplated litigation," except:

> (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
>
> (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

Rule 4-1.8(e), Rules Regulating the Florida Bar. Thus, a lawyer may not unconditionally pay the attorney fees and costs for a non-indigent client. *See also* Fla. Ethics Op. 961 ("Accordingly, the committee concludes that, under the plain language of Rule 4-1.8(e), it would be ethically impermissible for the inquiring attorney to unconditionally be responsible for all costs and expenses as provided in the proposed agreement"); Fla. Ethics Op. 161 (observing proposal not to seek reimbursement is permissible where, among other things, "there has been no agreement for the [attorney] to be unconditionally responsible for the costs at the outset of the representation"); *Florida Bar v. Patrick*, 67 So. 3d 1009 (Fla. 2011). Summary judgment based on Defendants' affirmative defenses of champerty and maintenance is warranted.

## CONCLUSION

Presumably, the Court denied Defendants' Fed. R. Civ. P. 12 (b) (6) motion to dismiss to avoid prematurely terminating seemingly baseless litigation that might prove meritorious after discovery. Many months, thousands of pages of production, and numerous depositions, later, M&C's claims remain baseless. This lawsuit must come to an end.

Respectfully submitted,

**DAVID M. OPPENHEIM**

By: __/s/ Barry J. Blonien__

Barry Blonien (admitted *pro hac vice*)
Blonien Legal Counsel
1718 Adams St.
Madison, WI 53711
Telephone: (608) 620-5357
barry@blonienlegal.com

**BOCK LAW FIRM, LLC**

By: /s/ Phillip A. Bock
    One of its attorneys

Phillip A. Bock
Fla. Bar No. 93895
Daniel J. Cohen (admitted *pro hac vice*)
    [TRIAL COUNSEL]
Jonathan B. Piper (admitted *pro hac vice*)
Bock Law Firm, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312/658-5500
Fax: 312-658-5555
phil@classlawyers.com

Christopher Stephen Polaszek
The Polaszek Law Firm, PLLC
3407 W Kennedy Blvd
Tampa, FL 33609 813-574-7678
Email: chris@polaszeklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on December 8, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically serves all counsel of record registered with the system.

/s/ Phillip A. Bock
Phillip A. Bock (Fla. Bar No. 93895)
P.O. Box 41674
Miami Beach, FL 33141
Telephone: 312-658-5501
Fax: 312-658-5555

## SERVICE LIST

Christopher L. Griffin (FBN 273147)
cgriffin@foley.com
lmiranda@foley.com
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
P.O. Box 3391
Tampa, FL 33601-3391
Telephone: 813.229.2300
Facsimile: 813.221.4210

Jeffrey A. Soble (Ill. Bar No. 6238138)
jsoble@foley.com
Admitted Pro Hac Vice
Lauren M. Loew (Ill. Bar No. 6293248)
lloew@foley.com
Admitted Pro Hac Vice
FOLEY & LARDNER LLP
321 N. Clark St., Suite 2800
Chicago, IL 60654
Telephone: 312.832.4500
Facsimile: 312.832.4700