UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDICAL & CHIROPRACTIC CLINIC, INC.,

Plaintiff,

vs.                                                                    Case No. 8:16-cv-1477-CEH-CPT

DAVID M. OPPENHEIM, an individual, and
BOCK LAW FIRM, LLC d/b/a BOCK,
HATCH, LEWIS, & OPPENHEIM, LLC,

Defendants.

_____/

**JOINT PRETRIAL STATEMENT**

Plaintiff Medical & Chiropractic Clinic, Inc. ("M&C") and defendants David M. Oppenheim ("Oppenheim") and Bock Law Firm, LLC ("BLF") (together, "Defendants"), the parties to the above-captioned civil action, hereby submit this Joint Pretrial Statement pursuant to Local Rule 3.06, and this Court's Case Management and Scheduling Orders entered October 13, 2016, and July 6, 2017 (Docs. 70 and 122).

**1.     Basis of Federal Jurisdiction**

There is diversity of citizenship between the parties. On June 22, 2016, Michele Zakrzewski, President of M&C, declared under oath that M&C is seeking damages including the loss of economic benefits of being class representative and attorneys' fees, and that the amount of damages exceeds $75,000, exclusive of interest and costs (Doc. 25-1). Based on the parties' submissions, the Court determined that it has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1). (Doc. 39)

2.    **Statement of the Nature of the Action**

M&C filed this suit against Defendants alleging a breach of fiduciary duty. Before April 7, 2016, Oppenheim was employed by the law firm Brian J. Wanca, J.D., P.C. d/b/a Anderson + Wanca ("A+W"). M&C alleges that while Oppenheim was employed with A+W, Oppenheim represented M&C individually and, at the same time, represented the putative class in connection with litigation against Buccaneers Limited Partnership ("BLP") in *Cin-Q Automobiles, Inc. v. Buccaneers Limited Partnership*, 8:13-cv-1592-T-AEP ("the Cin-Q action"). Defendants deny that Oppenheim represented M&C individually. Oppenheim no longer worked on the Cin-Q action after he left A+W and joined BLF. M&C alleges that Oppenheim shared M&C's confidential and privileged information with BLF, and further alleges that, based on that information, BLF filed a competing class action with named plaintiffs whose interests were materially adverse to M&C. Defendants deny that M&C provided confidential or privileged information, that Oppenheim shared any confidential or privileged information with BLF, that BLF filed a class action based on such information, or that the interests of the named plaintiffs are materially adverse. There are two counts in the Complaint, alleging: (1) breach of fiduciary duty against Oppenheim; and (2) aiding and abetting breach of fiduciary duty against BLF.

3.    **Brief Statement of Each Party's Case**

    A.    **M&C's Statement of the Case**

Oppenheim is an Illinois-licensed attorney residing in Chicago, IL. At all pertinent times prior to April 7, 2016, Oppenheim was employed at A+W. Oppenheim's primary practice area is Telephone Consumer Protection Act ("TCPA") class actions. During his employment at A&W, he represented M&C in a putative TCPA class action against BLP. *See Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship*, 8:13-cv-1592-T-AEP) (the "Cin-Q action").

2

Specifically, Oppenheim represented M&C at mediations with BLP, drafted mediation statements, met with M&C in advance of mediations, and conducted other settlement negotiations. This gave him access to M&C's case strategy, analysis, and settlement strategy. This also gave Oppenheim access to M&C's confidential information about the case.

Oppenheim accepted an offer to join BLF in April 2016. Oppenheim did not inform M&C or A+W of his plans to leave A+W. Oppenheim also did not inform M&C that he left A+W after joining the BLF.

Unbeknownst to M&C or A+W, when Oppenheim left A+W, he took with him a veritable treasure trove of confidential client information. Just days before his planned but undisclosed resignation from A+W, Oppenheim copied ***his entire hard drive*** from his A+W computer to take with him to his new employer, BLF. This stolen information included confidential information belonging to M&C (and other clients, and A+W). Oppenheim never made M&C or A+W aware that he took this information. M&C only became aware of Oppenheim's theft through discovery in this matter.

On April 29, 2016, Phillip A. Bock ("Bock"), the owner of the BLF, exchanged a series of emails with Oppenheim discussing the Cin-Q action. Oppenheim informed Bock that he believed A+W "wants to set a record settlement above the Capital One $75 million settlement" and that the mediator's "read" was that BLP's counsel was a settler. Bock told Oppenheim that he "could come forward with another class member and settle that case over the objections of your former employer and also over the objections of your former *individual client*." He further stated Oppenheim's "penultimate [sic] duty is to the class, not to [M&C] and certainly not to some greedy asshole who is not a class member and is just sitting in an office in [R]olling Meadows," referring to M&C's counsel, A+W. Bock also told Oppenheim he could "make it

even more Machiavellian" if he got M&C's local counsel to join in a competing class action against his former client. Less than an hour later, Bock emailed his BLF partners saying "Hmm. [A+W] holding out for a record settlement . . . . We could find a plaintiff and approach the defendant about settling? Lol." Eight days later, BLF filed a separate TCPA class action against BLP covering the same class as the Cin-Q action. *See Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, Case No. 16-CA-004333 ("the TTA state court action"). After voluntarily dismissing this lawsuit, the BLF re-filed the case in federal court. *See Technology Training Associates v. Buccaneers Limited Partnership*, Case No. 8:16-cv-1622-T-AEP ("the TTA federal action"). Reviewing these same emails and BLF's subsequent conduct, the 11th Circuit determined "the record appears to show that the [TTA plaintiffs'] counsel, BLF, deliberately underbid the [Cin-Q plaintiffs] in an effort to collect attorney's fees while doing a fraction of the work that the [Cin-Q plaintiffs'] counsel did." *Tech. Training Assocs. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 697 (11th Cir. 2017). The 11th Circuit continued: "If, as it appears, BLF was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement possible for the class, it violated its ethical duty to the class." *Id.* It concluded: "It is plain from the record that during the negotiations the interests of the named plaintiffs and of BLF were aligned with those of Buccaneers and adverse to the [Cin-Q plaintiffs'] interests. Given that, the [TTA plaintiffs] cannot be expected to adequately represent the [Cin-Q plaintiffs'] interests." *Id.* at 698.

Oppenheim breached his fiduciary duty to M&C when he shared M&C's confidential and privileged information with his new firm without M&C's consent. BLF aided and abetted in this breach through various conversations and correspondence with Oppenheim, and subsequently using the information it gained to file the competing TTA action. M&C asserts that the plaintiffs

4

in the TTA federal action are materially adverse to the Cin-Q action plaintiffs, namely Oppenheim's former client M&C.

    **B.  Defendants' Statement of the Case**

    For over a decade, A+W and BLF have worked together as co-counsel on many dozens of TCPA class action cases. In 2009 and 2010, Brian J. Wanca ("Wanca"), sole owner of A+W, invited BLF to join with A+W and attorney Michael Addison ("Addison") in pursuing a class action against BLP relating to more than 343,000 "junk faxes" sent to more than 131,000 unique fax numbers. At some point in time, Wanca starting filing TCPA class actions without including BLF, even though the firms had agreed to co-counsel on all junk fax actions, but Wanca did not communicate that to BLF. Nevertheless, the two firms continue to jointly prosecute dozens of active TCPA cases to this day.

    During his employment with A+W, Oppenheim frequently worked with Bock, ultimate owner of BLF. On April 3, 2016, Bock formally offered Oppenheim a job at BLF. After discussing the terms of the offer with Wanca and hearing Wanca tell him A+W would not match BLF's offer, Oppenheim accepted BLF's offer. Oppenheim began work at BLF on April 12, 2016. He continued working on many of the same TCPA class action cases that he had worked on at A+W, because the two firms were co-counsel in those cases.

    *Cin-Q Automobiles, Inc. v. Buccaneers Limited Partnership*, Case No. 8:13-cv-1592-T-AEP ("the Cin-Q action"), pending before Judge Porcelli in the Middle District of Florida, is one of many TCPA class actions that Oppenheim worked on while employed at A+W. After M&C signed a retainer agreement with A+W on October 9, 2013 for M&C to serve as a putative class representative in a class action against BLP, attorneys from A+W joined the already-pending

Cin-Q action as counsel of record, and M&C was added as a proposed class representative, along with Cin-Q.

Among other things, the M&C retainer agreement permitted A+W to decide that M&C is an "improper class representative" that can be replaced with somebody else. The agreement provided: "Client understands that as a class representative plaintiff, client will be required to act in the best interests of the class as a whole … and agrees that it will continue in that capacity until such time, if any, as … the Client is deemed by Plaintiff's Counsel … to be an improper class representative." The retainer agreement expressly stated that M&C was offered "No Special Treatment" than other members of the class, and that, "If successful, we [A+W] may ask the judge to award you [M&C] additional compensation for the extra time and effort you expend as class representatives [sic]. We cannot guarantee that the judge will award any such amounts but, in our experience, judges often will do so."

A+W is not licensed to do business in the State of Florida, nor is Wanca, its sole owner, licensed to practice law in Florida. Wanca appeared in the CinQ action *pro hac vice*. Addison is not mentioned in, and is not a signatory to, the retainer agreement between A+W and M&C; nor is Wanca or A+W mentioned in or a signatory to Addison's class action retainer agreement with Cin-Q. Oppenheim never entered any appearance in the Cin-Q action, but he and other A+W attorneys, acting for the class as a whole, attended mediation sessions and engaged in settlement discussions with the Buccaneers. Those discussions had failed by April 2016 because ███████ ██████████████████████████████████████████████████████████ On May 2, 2016, the plaintiffs in the Cin-Q action filed a notice of impasse in that case. At no point has Oppenheim represented M&C individually, nor has M&C shared any confidential information with him.

On May 6, 2016, BLF filed a class action in Florida state court against BLP. *See Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, Case No. 16-CA-004333 ("the TTA state court action"). That action asserted the same legal claims and covered the same class members as the Cin-Q action, although it was filed in the name of a different putative class representative, Tampa-based TTA. Oppenheim did not participate in the filing of the TTA state court action, was not consulted before BLF filed the lawsuit, and was screened off of, and has not participated in, that case. Upset that BLF had filed a "competing" class action, Wanca threatened litigation with BLF and Oppenheim if BLF continued to pursue the TTA class action. On May 16, 2016, the plaintiffs in the Cin-Q action asked Judge Porcelli to enjoin BLP from proceeding in the TTA state court action, but the court denied that motion.

On May 26, 2016, Wanca signed a retainer agreement hiring Foley & Lardner LLP ("Foley") to represent M&C in pursuing claims against Oppenheim and BLF. A+W agreed unconditionally to pay all fees and expenses associated with that representation—a blatant violation of Rule 4-1.8 (e) of the Rules Regulating the Florida Bar; and also Rule 1.8 (e) of the Illinois Rules of Professional Conduct of 2010 (the State in which Wanca is licensed to practice law).

BLF voluntarily dismissed the TTA state court action on May 18, 2016, filed a new case in the United States District Court for the Middle District of Florida on June 20, 2016, and consented to the jurisdiction of Magistrate Judge Porcelli, who was also presiding over the Cin-Q action. *See Technology Training Assocs. v. Buccaneers Ltd. P'ship*, Case No. 8:16-cv-1622-T-AEP ("the TTA federal action").

On June 22, 2016, the named plaintiffs in the TTA federal action—TTA and Larry E. Schwanke, D.C. d/b/a Back to Basics Family Chiropractic—filed an unopposed motion for class

certification and for preliminary approval of a class settlement. Subject to the court's approval after notice to the class members, the proposed settlement would provide a common fund of $19.5 million to pay from $350 to $565 for approved claims from class members and attorneys' fees of $4.875 million (25% of the fund), BLP would separately and additionally pay all costs of class notice and claims administration, and BLP agreed not to send any future advertisements by facsimile.

On July 8, 2016, the plaintiffs in the Cin-Q action moved to intervene in the TTA federal action and sought to set aside the proposed settlement, alleging that it was the result of a "reverse auction."

Meanwhile, on June 1, 2016, M&C had sued Oppenheim and BLF in Florida state court, seeking to enjoin Oppenheim and BLF from representing the class or settling with BLP. Defendants removed the case to this Court. M&C then moved for a temporary restraining order or preliminary injunction. This Court denied M&C's motion on the ground that M&C was unlikely to succeed on the merits of its claims.

The case at bar is a textbook example of champerty. A+W apparently has paid Foley nearly one million dollars in attorneys' fees so far in this litigation to further A+W's aspirations to recover attorney fees in the Cin-Q action; A+W agreed to pay, and has paid, Foley's fees expressly without recourse; M&C has no obligation of any kind to pay Foley and no obligation to reimburse A+W for paying Foley. This case is not about M&C's supposedly lost opportunity for a discretionary incentive award of between $0 and $25,000 from Judge Porcelli in a resolution of the class's claims against BLP, particularly as both BLF, speaking for the class, and BLP have stated on the record in the TTA action that neither would oppose a request by M&C for an incentive award. Instead, this litigation is driven by A+W and its lust for tens of millions

of dollars in attorneys' fees to which A+W believes it is entitled in the Cin-Q action. This clear abuse of the judicial process cannot be permitted.

Foley has tried to build M&C's entire case around some emails that Oppenheim and Bock exchanged on April 29, 2016, in which Oppenheim stated that Wanca "wants to set a record settlement above the Capital One $75 million settlement," but those emails are red herrings. Nowhere in those emails (or anywhere else) did Oppenheim disclose confidential information *about M&C*. Indeed, in a remarkable inconsistency, Wanca testified in his deposition in this case that the April 29, 2016 emails between Oppenheim and Bock were an orchestrated ruse to hide earlier communications in which Oppenheim actually shared confidential information about the CinQ action with Bock. In other words, the April 29, 2016 emails that M&C originally pointed to as the "smoking guns" supposedly proving Defendants' alleged misconduct are now eschewed as a ruse to obscure the real misconduct. Of course, there is no evidence whatsoever to support that new theory. Further, there's no evidence that Oppenheim was ever told, or ever learned anything, confidential about M&C. And according to the deposition testimony of Wanca and other A+W attorneys, the April 29, 2016 emails did not even accurately reflect Wanca's settlement position in the Cin-Q action. M&C's allegations are further belied by the fact that Wanca and other A+W attorneys in the Cin-Q action revealed similar information to attorneys who had no attorney-client relationship with M&C.

M&C cannot prevail on its claims. The only duty that Oppenheim owed in the Cin-Q action was owed to the class, not to M&C or Cin-Q individually. M&C did not share any unique or confidential information with Oppenheim, so Oppenheim plainly could not have disclosed any such information to BLF. Neither Oppenheim nor BLF have acted in a manner inconsistent with the interests of the class; and even if they had done so (which they didn't), that is an issue for

4820-8660-5661.13

Judge Porcelli—not a basis for M&C to pursue the claims asserted in this action. And M&C has not identified any evidence that it suffered cognizable damage as a result of anything that Oppenheim or BLF supposedly did.

**4.    Exhibit List**

See attached lists prepared on the Middle District of Florida's designated form. **Attachment A** lists Plaintiff's Exhibits and **Attachment B** lists Defendants' Exhibits. Should either party not proffer any exhibits into evidence at trial, both parties reserve the right to proffer an opposing party's exhibit.

**5.    Witness List**

**A.    M&C's Witnesses**

**a.  Will Call**

    i.  Michele Zakrzewski c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

    ii.  Michael Addison, c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

**b.  May Call**

    i.  Phil Bock, c/o Bock & Hatch, LLC 134 N La Salle St Suite 1000, Chicago, IL 60602

    ii.  David Oppenheim, c/o Boardman & Clark LLP, 1 S. Pickney St., Ste 410, Madison WI 53701

    iii.  Brian Wanca, c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

      iv.  Ross Good, c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

**B.**    **Defendants' Witnesses**

    a.  **Will Call**

      i.  Defendants do not identify any witnesses they will definitely call live, as opposed to relying on depositions and testimony from the preliminary injunction hearing.

    b.  **May Call**

      i.  Michele Zakrzewski c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

      ii.  Dr. Gregory Williams c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

      iii.  Brian Wanca c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

      iv.  Ross Good c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

      v.  Ryan Kelly c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

      vi.  Michael Addison, c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago IL 60654

      vii.  David Oppenheim, c/o Boardman & Clark LLP, 1 S. Pickney St., Ste 410, Madison WI 53701

viii. Phil Bock, c/o The Bock Law Firm, 134 N. LaSalle St. #1000, Chicago IL 60602

**6.** **Expert Witnesses To Be Called At Trial**

**A.** **M&C's Expert Witness**

a. Henry Lee Paul, Esq. c/o Foley & Lardner LLP, 321 N. Clark St., Ste. 2800, Chicago, IL 60654

b. Mr. Paul will testify that Defendants violated Florida Rules of Professional Conduct, were adverse to M&C, and violated fiduciary duties owed to M&C, particularly in light of the recent 11th Circuit precedential opinion, *Tech. Training Assocs. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017).

c. Defendants contend that M&C did not timely disclose Mr. Paul and therefore he should not be permitted to testify. On December 4, 2017, Plaintiff filed its Motion for Leave to Disclose Its Expert Report (Dkt. 137), listed in the pending motions in Section 13, *supra*. Defendants opposed that motion.

**B.** **Defendants' Expert Witness**

a. Pursuant to this Court's Case Management and Scheduling Order dated July 6, 2017 (Doc. 122), Defendants timely disclosed Timothy C. Chinaris as a retained expert whose testimony they may present at trial and provided M&C with a copy of his expert report and curriculum vitae on October 6, 2016.

b. Mr. Chinaris will testify consistent with his report that Oppenheim had no duty to M&C individually, as opposed to the class, and that neither Oppenheim nor BLF breached any duty to M&C.

**7.** **Plaintiff's Damages**

In summary, Plaintiff's damages are calculated as follows:

| Category | Amount |
|---|---|
| • Loss of potential incentive award in the underlying class actions | Presently Unknown (potentially $0-$25,000) |
| • Disgorgement of any attorneys' fees earned by Oppenheim and the Bock Law Firm resulting from Oppenheim's breach of fiduciary duty | Presently Unknown (Bock Law Firm Requested $4,875,000) |
| • Injunctive relief preventing Defendants from representing the class members covered in the underlying class actions | N/A |
| • Attorneys' Fees and Costs | $932,525.47 through January 31, 2018 |

**8.** **Depositions To Be Offered In Evidence At Trial**

 **A.**  **By M&C**

  a.  Pursuant to this Court's Case Management and Scheduling Order dated July 6, 2017 (Doc. 122), M&C will provide deposition designations by April 10, 2018.

 **B.**  **By Defendants**

  a.  Pursuant to this Court's Case Management and Scheduling Order dated July 6, 2017 (Doc. 122), Defendants will provide deposition designations by April 10, 2018.

**9.** **Stipulated Facts**

 The parties do not concede the relevance or materiality of the facts included herein. The parties reserve any objections to the admissibility of the facts included herein.

 1.  Oppenheim is an attorney licensed in Illinois. In June 2009, Oppenheim became an employee of Brian J. Wanca, J.D., P.C., d/b/a Anderson + Wanca ("A+W"). During his time with A+W, Oppenheim's practice focused almost entirely on TCPA class actions.

2.      In 2013, Cin-Q Automobiles, Inc. ("Cin-Q") filed a putative class action in federal court against the Buccaneers Limited Partnership ("BLP") for alleged TCPA violations. *See Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship*, 8:13-cv-1592-T-AEP (the "Cin-Q Action"). That newly filed federal action had previously been pending in state court since 2009.

3.      Other TCPA class action cases involving the same faxes were also filed against BLP in 2013.

4.      On October 9, 2013, M&C signed a retainer agreement with A+W memorializing A+W's representation of M&C in the Cin-Q Action.

5.      Among other things, the retainer agreement authorizes A+W to replace M&C as class plaintiff, and it expressly states that M&C has "not been promised any special treatment other than the treatment that may be awarded to other class members." The retainer agreement also states: "Plaintiff's Counsel agree that any agreement among counsel as to the division of fees and costs among them shall be in writing and that be subject to Client's written consent." And the retainer agreement provides that "Client agrees that Plaintiff's Counsel may affiliate with other law firms to assist with this representation, shall notify Client of such affiliation and shall provide Client with other such attorney's agreement to the terms of this Retainer Agreement, and shall obtain client's written consent to such retention." The Agreement further states that "Client agrees that he is not now and has not ever been represented by any other attorney with regard to the claims against Defendants."

6.      The retainer agreement between A+W and M&C does not mention attorney Michael Addison ("Addison"), counsel of record on behalf of Cin-Q in the Cin-Q action. Addison has not identified a written retainer agreement with M&C.

14

7.     On October 11, 2013, Addison filed a motion seeking leave to file an amended complaint adding M&C as a second proposed class representative. The court in the Cin-Q action granted that motion on January 3, 2014.

8.     The Cin-Q action plaintiffs and their respective counsel, A+W and Addison, have litigated the Cin-Q action since 2013. Six current and former A+W attorneys and Addison have appeared on behalf of the named plaintiffs and a putative class in the Cin-Q action. Oppenheim did not file an appearance on M&C's behalf in the Cin-Q action, or otherwise enter an appearance in that case.

9.     M&C's President, Michele Zakrzewski ("Zakrzewski"), acting on behalf of M&C, attended one of two mediations, and some depositions in the Cin-Q action.

10.     Oppenheim was involved in mediations and settlement negotiations in the Cin-Q Action. Attorney Brian J. Wanca ("Wanca"), sole owner of A+W, and Addison, retained full authority over class settlement negotiations.

11.     Oppenheim attended two mediations in the Cin-Q action in February 2015 and August 2015. Oppenheim prepared mediation statements in advance of both mediations.

12.     The night before the February 2015 mediation, Oppenheim and other A+W attorneys met with Zakrzewski at a restaurant for dinner.

13.     The following day, Oppenheim and other A+W attorneys attended the February 2015 mediation with Zakrzewski. During that mediation, Oppenheim communicated directly with both BLP's counsel and the mediator.

14.     ██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

15.    Following the February 2015 mediation, A+W and Addison entered into a retainer agreement, along with Siprut PC and James M. Thomas Law Firm, with a different client regarding claims against BLP. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

In deposition testimony, Wanca and Good of A+W could not recall discussing that retainer agreement or fee agreement with M&C. In deposition testimony, M&C did not recall Siprut group's involvement in litigation against BLP, the fee agreement, or approving the fee agreement.

16.    Oppenheim attended the August 2015 mediation with Addison and other A+W attorneys. Zakrzewski did not attend. The Hon. Wayne Andersen (ret.), of JAMS Alternative Dispute Resolution ("JAMS"), served as the mediator at that second mediation.

17.    After the conclusion of the August 2015 mediation session, Oppenheim, in his capacity as an employee of A+W, continued to conduct settlement negotiations.

18.    On December 2, 2015, Addison emailed Phillip A. Bock ("Bock"), owner of BLF, regarding several pending matters, and noted that "there does not seem to be any interest on the part of the Buccaneers in the Cin-Q case to get serious, and we are waiting for their expert report before scheduling any further discovery of experts."

19. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

20.     On March 25, 2016, the plaintiffs in the Cin-Q action filed their motion for class certification. That motion stated in part: "If for any reason the Court finds these representatives inadequate, Plaintiffs request 30 days to substitute new class representatives." The filing included Robert Biggerstaff's expert report, which listed all the telephone numbers that Biggerstaff contends received the faxes at issue.

21.     During his employment with A+W, Oppenheim became familiar with Bock and BLF because A+W and BLF worked together on dozens of class action cases under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, and Oppenheim and Bock frequently worked together and attended mediation sessions together. The firms continue to jointly prosecute TCPA class action cases to this day.

22.     On September 1, 2009, Wanca emailed Addison and cc'd Bock and Ryan M. Kelly from A+W, subject: "Tampa Bay Buccaneers TCPA SUIT".  The email stated "We have a plaintiff but I understand you filed on Friday. Let me know if your plaintiff has a defect or cold feet and we can work something out."  On August 4, 2010, Wanca emailed Addison and cc'd

Bock, subject "FW: tampa chiro v. nfl."  The email stated "Look what was sent to me. Are you game to sue the nfl with us?"

23.     Over the years that BLF and A+W worked together, Oppenheim and Bock discussed the possibility of Oppenheim leaving A+W to join BLF.

24.     On March 31, 2016, Bock contacted Oppenheim and offered Oppenheim a position of employment at BLF. Bock knew Oppenheim had been working on the Cin-Q action, and Bock understood Oppenheim to be A+W's primary settlement negotiator.

25.     On April 3, 2016, Bock and Oppenheim met over dinner to discuss the offer and terms of employment more thoroughly. Bock then formally offered Oppenheim a position at BLF.

26.     On or about April 5, 2016, Oppenheim copied the contents of the hard drive of the laptop computer that he had used at A+W to a new computer that he intended to use after his resignation.

27.     On April 7, 2016, Oppenheim gave A+W notice that he was leaving the firm to join BLF.

28.     On April 12, 2016, Oppenheim began his employment at BLF. Thereafter, Oppenheim continued to work on several cases that were jointly prosecuted by A+W and BLF, and he remained involved in class mediations and settlements in those cases.

29.     On April 18, 2016, BLP filed a motion in the Cin-Q action to waive mediation privilege and set a settlement conference with Judge Porcelli.

30.     On April 29, 2016, Oppenheim and Bock exchanged a series of emails. Among other things, Oppenheim stated that A+W "wants to set a record settlement above the Capital One $75 million settlement," and after Bock suggested that BLP's counsel was a "settler,"

Oppenheim responded that that was the mediator's "read" too. Bock stated to Oppenheim that Oppenheim "could come forward with another class member and settle that case over the objections of your former employer and also over the objections of your former individual client." He further stated Oppenheim's "penultimate [sic] duty is to the class, not to the [M&C] and [referring to M&C's counsel, A+W,] certainly not to some greedy asshole who is not a class member and is just sitting in an office in [R]olling Meadows." Bock also wrote that Oppenheim could "make it even more Machiavellian" if Oppenheim got M&C's local counsel [referring to Addison] to join in a competing class action.

31.     Also on April 29, 2016, Bock emailed other attorneys at BLF (but not Oppenheim), stating "Hmm. [A+W] holding out for a record settlement . . . . We could find a plaintiff and approach the defendant about settling? Lol."

32.     BLF sent solicitation letters to potential junk fax recipients who might be interested in pursuing claims about junk faxes. A solicitation letter was sent to Michele Williams (*i.e.*, Zakrzewski) and her husband, Dr. Gregory Williams, dated May 5, 2016 to an address in Zephyrhills, Florida. That letter suggested that M&C visit "faxlawyers.com." That website directs users to BLF's website, which lists Oppenheim as one of its attorneys.

33.     On May 2, 2016, Judge Andersen declared an impasse in the Cin-Q Action mediation negotiations. The plaintiffs in the Cin-Q Action filed the notice of impasse that the mediator Judge Andersen had prepared. In response to BLP's April 16, 2016 motion seeking waiver of the mediation privilege in the Cin-Q action, the plaintiffs in the Cin-Q action did not agree to waive the mediation privilege at that time.

34.     The plaintiffs in the Cin-Q action agreed to waive the mediation privilege in this litigation, but BLP did not agree to waive the mediation privilege in this litigation.

19

35.     On May 6, 2016, BLF filed a class action in Hillsborough County Circuit Court captioned *Technology Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, Case No. 16-CA-004333 ("the TTA state court action"). That action purported to cover the same claims and same class members as the Cin-Q action.

36.     Over the next week, BLF and BLP's counsel scheduled a mediation to attempt to negotiate a settlement of the TTA state court action.

37.     On May 11, 2016, Addison received an email from Judge Andersen's office at JAMS scheduling a mediation with BLP for May 20, 2016. The email was also addressed to BLP's counsel and Daniel J. Cohen, a BLF attorney working on the TTA state court action.

38.     The email was not intended for Addison as he was not counsel for the plaintiffs in the TTA state court action. After receiving this email and inquiring further with JAMS, Addison discovered the TTA state court action filing.

39.     M&C only became aware of the TTA state court action after Addison's investigation and A+W informing M&C of the filing of that action.

40.     On May 12, 2016, BLP filed a notice of pendency of related action in the Cin-Q action disclosing, that the TTA state court action had been filed six days earlier, on May 6, 2016. The notice explained that the TTA state court action alleged TCPA violations based on the same faxes sent in the Cin-Q action.

41.     Also on May 12, 2016, Addison received a follow up email from JAMS saying he should disregard the mediation invitation that he had received on May 11, 2016, because it was sent to him in error.

42.     On May 13, 2016, the plaintiffs in the Cin-Q action filed a motion to intervene in the TTA state court action. Three days later, they filed in the Cin-Q action a motion to enjoin BLP from proceeding in the competing TTA state court action, which the court denied.

43.     On May 16, 2016, Judge Andersen informed counsel for BLP and the plaintiffs in the TTA state court action that he would not mediate their class settlement negotiations.

44.     On May 18, 2016, the day before the scheduled hearing on the motion to intervene in the TTA state court action, BLF filed a voluntary dismissal of that action.

45.     On May 19, 2016 and June 1, 2016, BLF and the plaintiff in the now-dismissed TTA state court action mediated with BLP. Florida Supreme Court certified mediator Peter Grilli conducted two full-day mediation sessions.

46.     On June 20, 2016, Technology Training Associates ("TTA") (*i.e.*, the plaintiff in the now-dismissed TTA state court action) and another named plaintiff, Larry E. Schwanke, D.C., filed a class action complaint in the Middle District of Florida covering the same class as the Cin-Q action. *See Technology Training Associates v. Buccaneers Limited Partnership*, Case No. 8:16-cv-1622-T-AEP (the "TTA federal action").

47.     Two days later, on June 22, 2016, the plaintiffs in the TTA federal action filed an unopposed motion for class certification and for preliminary approval of a class settlement. The proposed settlement provides for a fund of $19.5 million, and payments ranging from $350 to $565 to class members who submit claims. In the settlement, BLP waived any statute of limitations defense.

48.     On July 8, 2016, the plaintiffs in the Cin-Q action moved to intervene in the TTA federal action seeking standing as a party to argue the proposed settlement in the TTA federal action was the result of a "reverse auction."

21

49.     On March 31, 2017, the district court denied their motion, and on April 14, 2017, the plaintiffs in the Cin-Q action appealed.

50.     On October 26, 2017, the Eleventh Circuit reversed and remanded the district court's denial of the motion to intervene in the TTA federal action filed by the plaintiffs in the Cin-Q action.

**10.    Applicable Principles Of Law (Undisputed)**

To state a claim for breach of fiduciary duty, M&C must establish: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) that such breach was the proximate cause of plaintiff's damages. *Gracey v. Eaker,* 837 So.2d 348, 353 (Fla. 2002).

To establish aiding and abetting breach of fiduciary duty, M&C must prove: (1) fiduciary duty by a primary wrongdoer; (2) breach of that duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. *Turnberry Village North Tower Condo. Assoc., Inc. v. Turnberry Village Twr. Condo. Assoc.*, 224 So.3d 266, 267 n. 1 (Fla. App. 2017); *Mukamal v. Bakes*, 378 Fed. Appx. 890, 902 (11th Cir. 2010).

Individual attorney-client relationships are expressly created fiduciary relationships. *Fla Bar v. Adorno*, 60 So.3d 1016 (Fla. 2011); *Cap. Bank v. Mvb*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994).

**11.    Facts To Be Litigated**

**A.  M&C's Facts**

M&C does not believe there are any material, disputed facts that need to be tried and have moved for summary judgment against Defendants. If this Court denies summary judgment, then M&C will elicit testimony and submit evidence demonstrating that:

- Whether M&C and Cin-Q brought the Cin-Q Action on behalf of "themselves and all others similarly situated."

- Whether M&C has spent considerable time and resources pursuing the underlying class actions and continues to expend in pursuit both those claims and this case.

- Whether Oppenheim had access to M&C's individual confidential business information while representing M&C in the Cin-Q Action.

- Whether M&C viewed Oppenheim as both its individual attorney and as class counsel

- Whether Oppenheim had access to confidential and mediation privileged material during his representation of M&C and the class in the Cin-Q Action.

- Whether Oppenheim, while an employee of A+W, attended the Cin-Q Action mediation sessions and engaged in settlement negotiations on behalf of M&C and the class in the Cin-Q Action.

- Whether the reason Zakrzewski did not attend the August 2015 Cin-Q Action mediation was due to illness.

- Whether M&C or A+W consented to Oppenheim copying his A+W hard drive before leaving A+W.

- Whether Oppenheim informed Bock Law Firm he was going to take materials related to his work at A+W when he left A+W.

- Whether the computer hard drive Oppenheim copied before leaving A+W was A+W property.

- Whether Oppenheim shared confidential information with BLF regarding M&C and/or the Cin-Q action.

23

- Whether Bock emailed his partners at BLF suggesting filing suit against the Buccaneers the same evening as his April 29, 2016 email exchange with Oppenheim discussing the Cin-Q Action settlement negotiations.

- Whether A+W was the motivating factor for M&C bringing this lawsuit.

- Whether Oppenheim signed a confidentiality agreement for the Cin-Q Action mediations.

**B. Defendants' Facts**

Defendants do not believe there any material, disputed facts that need to be tried and have moved for summary judgment against M&C. If this Court denies summary judgment, then Defendants will elicit testimony and submit evidence demonstrating that:

- The retention agreement that M&C signed with A+W did not create any individual attorney-client relationship. M&C understood that A+W (and Oppenheim) represented the class as a whole and at all times acted for the benefit of the class, not M&C individually.

- M&C did not share any confidential information about M&C with Oppenheim, and Oppenheim did not disclose any such information to BLF.

- Wanca and other A+W attorneys revealed information about the status of mediation and settlement negotiations to attorneys who had no relationship with M&C, similar to what M&C alleges Oppenheim disclosed to BLF.

- At no time did Oppenheim or BLF act in any manner inconsistent with the interests of the class.

- A+W is unconditionally financing this litigation in order to advance its own interests, not the interests of M&C.

- M&C has not suffered any cognizable damages.

## 12. <u>Issues Of Law To Be Decided By The Court</u>

### A. <u>M&C's Issues</u>

- Whether Cin-Q Action was filed both individually and on behalf of the putative class or only on behalf of the class.

- Whether Oppenheim owed M&C individual fiduciary duties in the Cin-Q Action.

- Whether Oppenheim owed M&C ethical duties in the Cin-Q Action.

- Whether Oppenheim's duties to the class supersede the duties owed to M&C individually.

- Whether Oppenheim was negotiating for M&C's individual incentive award in the Cin-Q Action's mediations and settlement negotiations.

- Whether the information Oppenheim shared with the BLF was confidential.

- Whether the information Oppenheim shared with the BLF was mediation privileged.

- Whether Defendants' breach of ethical rules implicates a corresponding breach of fiduciary duty.

- Whether Oppenheim's conduct created a conflict of interest that was imputed to the BLF preventing them from representing any class members covered by the Cin-Q and TTA Actions.

- Whether the fee arrangement of Plaintiff's counsel in this case constitutes champerty and serves as an affirmative defense to Defendants' breaches of fiduciary duty and aiding and abetting breaches of fiduciary duty.

- Whether M&C is entitled to damages, and in what amount, due to Defendants' breaches of fiduciary duty and aiding and abetting breaches of fiduciary duty.

25

- Whether M&C had unique legal interests distinct from the class.

- Whether the 11th Circuit's holding that the TTA action plaintiffs' interests are materially adverse to the Cin-Q action plaintiffs is binding on this Court.

- Whether Defendants conducted themselves in a manner that harmed the Cin-Q and TTA plaintiffs, the legal system, and the public imagine of the legal system.

- Whether the communications between Bock and Oppenheim show BLF encouraged Oppenheim to breach his fiduciary duties to M&C.

- Whether the 11th Circuit's holding that BLF's personal interests in grabbing attorneys' fees through settling the TTA Action violated ethical duties to the class is binding on this Court.

- Whether Oppenheim represented both M&C individually and the class at the Cin-Q Action mediations and in settlement negotiations.

- Whether the ethical rules that apply to representing an individual client also apply to representing a class representative.

- Whether M&C is entitled to injunctive relief preventing Defendants from representing the class.

**B.**     **Defendants' Issues**

- Whether the duty owed to a putative class representative in a class action differs significantly from the duty owed in an individual representation case. *See Parker v. Anderson*, 667 F.2d 1204, 1211–12 (5th Cir. 1981), *cert. denied*, 459 U.S. 828 (1982); *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983).

26

- Whether the duty of class counsel or potential class counsel, above all, is to the class members as a whole—as opposed to any particular named plaintiff. *See id.*

- Whether class counsel's duty to the class as a whole frequently diverges from, and overrides, the opinion of either the named plaintiff or other objectors. *See id.*

- Whether an attorney's fiduciary relationship with a class or proposed class also means that, as a matter of law, the attorney simultaneously owes the putative class representative an individual fiduciary duty separate and apart from the duties owed to the class.

- Whether a putative class representative in an uncertified class action has a legal basis to assert an individual claim for breach of fiduciary duty based on the alleged disclosure of information related to the class action to another attorney pursuing similar claims on behalf of the class.

- Whether an attorney's unconditional promise to pay all court costs and attorneys' fees of a putative class member in ongoing class litigation violates Florida Rule of Professional Conduct 1.8 (e) and constitutes impermissible champerty.

- Whether M&C can recover as damages in this case attorneys' fees that it never incurred and has no obligation to pay, where the agreement under which those attorneys' fees are being paid itself violates Rule 4-1.8 (e) of the Rules Regulating the Florida Bar.

- Whether a putative class representative in an uncertified class may assert the loss of a potential incentive award as damages, notwithstanding that the court in the class action has not reached the issue and such an award remains entirely within that court's discretion.

27

- Whether Florida law requires a written agreement in order for an attorney to represent a client on a contingency basis. *E.g.*, Rule 4-1.5 (f) of the Rules Regulating the Florida Bar ("A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.").

## 13.   Disagreement Over Application Of Federal Rules

The parties have no objection to the application of the Federal Rules of Evidence and Federal Rules of Civil Procedure. Any objections related to evidentiary issues, if any, are noted on the parties' exhibit lists, raised in the parties' respective Motions in Limine, or will be raised at trial.

## 14.   Motions Or Matters Requiring Action By The Court

There are currently eight motions pending before the Court. (Dkts. 137, 141-42, 144, 156, 166, 167, and 168). The motions are as follows:

- M&C's Motion for Leave to Disclose Its Expert Report (Dkt. 137);

- The parties' cross motions for summary judgment (Dkts. 141-42, 144);

- Defendants' Motion to Disqualify Foley & Lardner (Dkt. 156);

- BLF's Objection to, and Request for District Court Reconsideration of, the Magistrate's Order on Plaintiff's Motion to De-Designate (Dkt. 166);

- BLF's Motion for Reconsideration of the Magistrate's Order on Plaintiff's Motion for Return of Privileged Documents (Dkt. 167);

- M&C's Unopposed Motion to Seal Portions of the Parties' Joint Stipulation of Facts (Dkt. 175); and,

- M&C's Motion to Seal Portions of the Parties' Joint Pretrial Statement (Dkt. 177).

Dated: March 20, 2018                                  Respectfully submitted,


**DAVID M. OPPENHEIM**                       **MEDICAL & CHIROPRACTIC CLINIC, INC.**

/s/ Barry Blonien_____                    /s/ Lauren M. Loew_____

Barry Blonien                                 Adam Alaee
BOARDMAN & CLARK LLP                          aalaee@foley.com
1 S Pickney St, Ste 410                       lmiranda@foley.com
P.O. Box 927                                  FOLEY & LARDNER LLP
Madison, WI 53701-0927                        100 North Tampa Street, Suite 2700
Phone: (608) 286-7168                         Tampa, FL  33602-5810
Fax: (608) 283-1709                           P.O. Box 3391
Email: bblonien@boardmanclark.com             Tampa, FL 33601-3391
*Attorney for David Oppenheim*                Telephone:  813.229.2300
                                              Facsimile:  813.221.4210

                                              Jeffrey A. Soble (Ill. Bar No. 6238138)
                                              jsoble@foley.com
                                              Admitted Pro Hac Vice
                                              Lauren M. Loew (Ill. Bar No. 6293248)
                                              lloew@foley.com
                                              Admitted Pro Hac Vice
                                              FOLEY & LARDNER LLP
                                              321 N. Clark St., Suite 2800
                                              Chicago, IL 60654
                                              Telephone:  312.832.4500
                                              Facsimile:  312.832.4700

                                              *Attorneys for Medical & Chiropractic Clinic, Inc.*

**BOCK LAW FIRM, LLC**

/s/ Daniel J. Cohen_____
Phillip A. Bock
Daniel J. Cohen (admitted pro hac vice)
Jonathan B. Piper (admitted pro hac vice)
Bock & Hatch, LLC

Suite 1000
134 N La Salle St
Chicago, IL 60602
312-658-5500
Email: phil@bockhatchllc.com
*Attorneys for Bock Law Firm, LLC*

30

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 20, 2018, the foregoing was filed via ECF which will provide electronic notice to all counsel of record:

**Barry Blonien**
BOARDMAN & CLARK LLP
1 S Pickney St, Ste 410
P.O. Box 927
Madison, WI 53701-0927
Phone: (608) 286-7168
Fax: (608) 283-1709
Email: bblonien@boardmanclark.com

*Attorney for David Oppenheim*

**Christopher Stephen Polaszek**
The Polaszek Law Firm, PLLC
3407 W Kennedy Blvd
Tampa, FL 33609
813-574-7678
Email: chris@polaszeklaw.com
*Attorney for Bock Law Firm, LLC*

**Phillip A. Bock**
Bock Law Firm, LLC
134 N La Salle St, Ste 1000
Chicago, IL 60602
312-658-5500
Email: phil@bockhatchllc.com
*Attorney for Bock Law Firm, LLC*

**Daniel J. Cohen**
Bock Law Firm, LLC
134 N. LaSalle St Ste 1000
Chicago, IL 60602
312-658-5500
Fax: 312-658-5555
Email: danieljaycohen209@gmail.com

*Attorney for Bock Law Firm, LLC*

**Jonathan B. Piper**
Bock Law Firm, LLC
134 N. LaSalle St Ste 1000
Chicago, IL 60602
312-658-5500
Fax: 312-658-5555
Email: jon@classlawyers.com
*Attorney for Bock Law Firm, LLC*

/s/ Lauren M. Loew__
Attorney

4820-8660-5661.13