# EXHIBIT 12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLOIRDA

MEDICAL & CHIROPRACTIC CLINIC, INC.,  )
  )
      Plaintiff,  )
  )  Case No. 8:16-cv-001477-CEH-TBM
      vs.  )
  )
DAVID M. OPPENHEIM, an individual, and  )
BOCK LAW FIRM, LLC d/b/a BOCK, HATCH,  )
LEWIS, & OPPENHEIM, LLC,  )
  )
      Defendants.  )
  )

---

## DEFENDANT BOCK LAW FIRM, LLC'S FIRST SUPPLEMENTAL ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

In compliance with the Order entered on March 2, 2017, Defendant Bock Law Firm, LLC ("Bock Law Firm") serves the following first supplemental answers and objections to Plaintiff's first set of interrogatories.

### Objection to Instruction

Bock Law Firm objects to Plaintiff's second "instruction" purporting to define the "relevant time period" as "June 1, 2009 to the present."  Said time period, spanning 7+ years, is extremely overbroad and unduly burdensome, and the burdens of this definition are not proportional to the needs of this case, considering the issues at stake in this litigation, the Plaintiff's failure to identify any cognizable injury, and the lack of value the information would add to this case.  Further, defining the relevant time period in this manner seeks information that is wholly irrelevant to any issue in this action.

### Objection to Definition

Bock Law Firm objects to Plaintiff's purported definition of "Technology Training Action" to include "any ongoing settlement discussions."  The inclusion of that

1

language renders the definition overbroad and thereby unduly interferes with the logical interpretation and/or construction of the interrogatories in which the term "Technology Training Action" is used.

**Answers and Objections to Interrogatories**

1.      Identify all individuals that have knowledge of the claims and defenses in the lawsuit, and for each individual, identify their name, address, contact information, and areas of knowledge.

ANSWER:

See Bock Law Firm's Fed. R. Civ. P. 26(a)(1) Disclosures.

2.      Identify and describe all communications You had with Oppenheim regarding Oppenheim leaving Anderson + Wanca and joining Bock Hatch.

ANSWER:

Objection, this interrogatory is overbroad and unduly burdensome, and seeks information that is irrelevant to any issue in this action.  Further, the burdens of this definition are not proportional to the needs of this case, considering the issues at stake in this litigation, the Plaintiff's failure to identify any cognizable injury, and the lack of value the information would add to this case.  As phrased, this interrogatory would extend to each and every conversation or other communication between Mr. Oppenheim and any other employee of Bock Law Firm, regardless of date and irrespective of content or purpose.  For example, this interrogatory would extend to each and every mundane congratulatory communication or "welcome" greeting from all Bock Law Firm staff members, including secretaries, clerks, paralegals and attorneys.  Such communications would be wholly irrelevant to any issue in this action, and would impose an unreasonable

burden upon Bock Law Firm to undertake to gather totally irrelevant information. Further, this interrogatory as drafted would extend to communications relating to information of a private and confidential nature, such as the amount of Mr. Oppenheim's compensation package, which is not only private and confidential as to Mr. Oppenheim, but private, confidential and proprietary as to Bock Law Firm.  Moreover, such information is irrelevant to the legal theory upon which Plaintiff has brought this action – *i.e.,* alleging that as a matter of law Mr. Oppenheim's participation in Buccaneers mediations while employed by Anderson + Wanca created a conflict of interest automatically and unavoidably disqualifying Mr. Oppenheim and Bock Law Firm from prosecuting a competing Buccaneers class action. In the event the Court were to order Bock Law Firm to disclose such private, confidential and proprietary information, Bock Law Firm would request that the Court enter an "attorneys' eyes only" protective order. In addition, this interrogatory as drafted would extend to the time period after putative class counsel in the *CinQ/Medical* action had communicated their objection to Bock Law Firm's prosecution of the *Technology Training* action, at which time any such communications with Mr. Oppenheim would have been undertaken in anticipation of litigation and would, therefore, be non-discoverable work product, attorney-client privileged, and subject to the joint defense privilege.

In accordance with Plaintiff's "instruction" that Bock Law Firm provide such responsive information as Bock Law Firm agrees is neither overbroad, unduly burdensome, privileged, nor irrelevant, Bock Law Firm answers – subject to its foregoing objections, and without waiving same – as follows:

On multiple occasions over multiple years, the possibility of Mr. Oppenheim coming to work for Bock Law Firm came up in conversations between Mr. Oppenheim and Phillip A. Bock.   Bock Law Firm cannot identify the dates or provide detailed specifics of these conversations because they were oral, unrecorded, and not otherwise memorialized.   However, on or about March 31, 2016, Mr. Bock contacted Mr. Oppenheim and offered him a position of employment.   Subsequently, on April 3, 2016, Mr. Oppenheim met with Mr. Bock and they agreed to the terms of Mr. Oppenheim's "at will" employment at Bock Law Firm.   For reasons articulated in objections asserted above and in objections to other interrogatories below, incorporated herein by reference, Bock Law Firm will not disclose the exact terms of such employment, but the terms included a base salary, an advance bonus, and a bonus plan based on collected fees.   At the time such terms were negotiated, Bock Law Firm had not decided to pursue a new Buccaneers class action.   When Bock Law Firm decided to do so, and decided that Mr. Oppenheim would be "walled off" from such litigation, Bock Law Firm also decided that Mr. Oppenheim would not receive any portion of any fees from the Buccaneers litigation.   Upon agreeing to the terms of the previously-described employment, Mr. Bock advised Mr. Oppenheim that he could give Anderson + Wanca whatever duration of "notice" he felt appropriate, and Mr. Oppenheim responded that he would offer two week notice.   Thereafter, Mr. Oppenheim told Mr. Bock that he had offered two week notice to Mr. Wanca, but Mr. Wanca had declined that offer and allowed Mr. Oppenheim's employment at Anderson + Wanca to terminate effective immediately.

**FIRST SUPPLEMENTAL ANSWER:**

4

To the extent this supplemental answer reveals details relating to the compensation package negotiated and/or agreed to by and between Bock Law Firm and David Oppenheim, Bock Law Firm hereby designates same as "attorneys eyes only" pursuant to the Court's March 2, 2017 Order.

Written communications between Mr. Bock and Mr. Oppenheim have already been produced. As previously indicated, on April 3, 2016, Mr. Bock and Mr. Oppenheim met in person in Chicago for dinner and to discuss the possibility of Mr. Oppenheim coming to work for Bock Law Firm.  As it was an oral conversation, it is impossible to recite verbatim what was said.  However, Mr. Bock expressed his interest in hiring Mr. Oppenheim, and Mr. Oppenheim expressed his interest in coming to work for Bock Law Firm.   Mr. Bock proposed the following compensation package: at-will, W-2 employee, $50,000 starting bonus, plus $200,000 annualized salary, plus 50% of the first $300,000 in excess of $2 million, and 10% above $2.3 million, of the fees the firm collects and keeps for itself during his employment in 2016; excepting any new work originated by Oppenheim, for which he would be paid 50% of the first $1 million, 25% of the next $2 million, and 15% in excess of $3 million, in fees the firm collects and keeps for itself during his employment in 2016. Mr. Oppenheim responded, proposing increases to the following terms, $100,000 starting bonus, plus $400,000 annualized salary, plus 10% in excess of $2.5 million to $6 million, and 20% in excess of $6 million, of the fees the firm collects and keeps for itself during his at-will/W2 employment in 2016, plus including his surname in an amended company name, and deleting the separate bonus schedule for work he might originate. Mr. Bock agreed to Mr. Oppenheim's

**proposal and paid Mr. Oppenheim in accordance with that agreement through February 26, 2017. On February 26, 2017, Mr. Bock reduced Mr. Oppenheim's compensation package as follows:  Remaining an at-will, W-2 employee, $300,000 annualized salary (going forward basis), plus 7.5% in excess of $3 million to $6 million, and 10% in excess of $6 million, of the fees the firm collects and keeps for itself during his employment in 2017. Mr. Oppenheim remains employed by the firm.**

3.      Identify and describe all communications You had with Oppenheim regarding any potential or existing class actions against the Buccaneers prior to Oppenheim joining Bock Hatch.

ANSWER:

If any such communications occurred, they would have been between Mr. Bock and Mr. Oppenheim.  Mr. Bock and Mr. Oppenheim, and therefore Bock Law Firm, do not know of any such communications, but if there were any such communications, they likely would have been initiated by Mr. Oppenheim and would have related to generic facts about the *CinQ/Medical* action.  For example, it is possible that Mr. Oppenheim would have explained his unavailability to attend a hearing in a case jointly prosecuted by Bock Law Firm and Anderson + Wanca because he had to attend some event related to the *CinQ/Medical* action.  Bock Law Firm is not stating that any such communication actually occurred, but merely describing the de minimis content of any such communication if it did occur.  At no time prior to Mr. Oppenheim joining Bock Law Firm did Bock Law Firm have any communications with Mr. Oppenheim regarding any "potential" class action against the Buccaneers.

4.      Identify and describe all documents originating from Oppenheim's work at Anderson + Wanca or related to Oppenheim's representation of clients at Anderson + Wanca.

ANSWER:

Objection, this interrogatory is overbroad, unduly burdensome, seeks irrelevant information, and would require the disclosure of work-product and attorney-client privileged information regarding other class actions, jointly prosecuted by Bock Law Firm and Anderson + Wanca, having no relationship whatsoever to the issues raised in this lawsuit.  Further, the burdens of this interrogatory, as drafted, are not proportional to the needs of this case, considering the issues at stake in this litigation, the Plaintiff's failure to identify any cognizable injury, and the lack of value the information would add to this case.  As to documents related to Mr. Oppenheim's work on the *CinQ/Medical* action that would have been created or generated during the time period after putative class counsel in the *CinQ/Medical* action had communicated their objection to Bock Law Firm's prosecution of the *Technology Training* action, any such documents would have been undertaken in anticipation of litigation and would, therefore, be non-discoverable work product, attorney-client privileged, and subject to the joint defense privilege.

In accordance with Plaintiff's "instruction" that Bock Law Firm provide such responsive information as Bock Law Firm agrees is neither overbroad, unduly burdensome, privileged, nor irrelevant, Bock Law Firm answers – subject to its foregoing objections, and without waiving same – as follows:

As to documents originating from Mr. Oppenheim's work at Anderson + Wanca related to the *CinQ/Medical* action, none.  As to documents related to Mr. Oppenheim's

work on the *CinQ/Medical* action that would have been created or generated during the time period after Mr. Oppenheim began his employment with Bock Law Firm but before putative class counsel in the *CinQ/Medical* action had communicated their objection to Bock Law Firm's prosecution of the *Technology Training* action, there were a few emails back and forth between Mr. Bock and Mr. Oppenheim. These emails arose in the context of Mr. Bock inquiring of Mr. Oppenheim why Mr. Wanca was unwilling to use retired Judge Wayne Anderson as mediator in an upcoming mediation in a class action being jointly prosecuted by Bock Law Firm and Anderson + Wanca. These emails will be produced, and their content is incorporated herein by reference. In addition, and as described in more detail in response to interrogatory no. 5, below, Bock Law Firm concluded that Mr. Oppenheim would not have a "conflict of interest" arising from Bock Law Firm's prosecution of a Buccaneers class action, but out of an abundance of caution, Bock Law Firm decided that Mr. Oppenheim would be "walled off" from the forthcoming *Technology Training* action, and Bock Law Firm issued communications to all members of Bock Law Firm, including Mr. Oppenheim, advising that Mr. Oppenheim was "walled off," and instructing that he should not be made privy to anything related to the *Technology Training* action. These emails will be produced, and their content is incorporated herein by reference.

**FIRST SUPPLEMENTAL ANSWER:**

**The Court's Order states, at page 7, "Moving forward, all such documents <u>or communications or information</u> obtained by reason of Oppenheim's participation in the Cin-Q litigation on behalf of M&C and provided to BLF by Oppenheim at any time shall likewise be promptly produced to M&C. For any such matters withheld**

by BLF on a claim of privilege, a privilege log consistent with Rule 26(b)(5) should be provided" (emphasis added).  Pursuant to said Order, Bock Law Firm provides the following supplemental answer:

On or about May 18, 2017, after Bock Law Firm was on notice of likely forthcoming litigation, Mr. Bock and Mr. Oppenheim were having lunch, and Mr. Bock recalls that Mr. Oppenheim made a brief, unsolicited statement seemingly related to settlement negotiations in the Cin-Q action.  Mr. Bock immediately interrupted Mr. Oppenheim and reminded him that he was walled off from the TTA action, and that he was not to share any information with Mr. Bock, or anyone else at Bock Law Firm, relating to the Cin-Q action.  Because this communication occurred in the context of anticipated litigation against both Bock Law Firm and Mr. Oppenheim, Bock Law Firm believes that the work-product doctrine and joint defense privilege apply to the communication.  This communication is listed on Bock Law Firm's privilege log, produced herewith.

In preparation for the July 18, 2016 hearing on M&C's request for a preliminary injunction, and following instructions from lead counsel for Bock Law Firm, Bock Law Firm attorney Jon Piper conducted interviews of various persons, including Mr. Oppenheim, in order to create a documented timeline of relevant events and communications starting in late-March 2016.  All of the events and communications documented in the timeline have been identified and disclosed in Bock Law Firm's discovery compliance, unless a claim of immunity (*i.e.*, privilege, protection, etc.) was raised.

In preparation for the July 18, 2016 hearing on M&C's request for a preliminary injunction, counsel for Bock Law Firm and for Mr. Oppenheim met with Mr. Bock and Mr. Oppenheim to discuss their anticipated testimony. Bock Law Firm incorporates the testimony given by Mssrs. Bock and Oppenheim during the July 18, 2016 hearing in this case, as well as their testimony given in the October 20, 2016 hearing held in the TTA action, as responsive to the subject matters discussed and communications made during the July 2016 pre-hearing meeting.

In late-2016 or early-2017, it was agreed that given the joint defense posture of this case, Bock Law Firm personnel would facilitate Mr. Oppenheim's production compliance with M&C's discovery requests. On or about February 9, 2017, Bock Law Firm attorney Daniel J. Cohen contacted Mr. Oppenheim to ascertain whether he had gathered the documents responsive to M&C's discovery requests that would be produced subject to the protective order entered on December 27, 2016. Mr. Oppenheim advised that he had already provided those materials in electronic form to a Bock Law Firm employee, Jorge Labarga. Mr. Labarga no longer worked for Bock Law Firm, and Mr. Cohen learned that Mr. Labarga had left the materials in the possession of Bock Law Firm employee, Marie Ang. Mr. Cohen contacted Ms. Ang, and requested that the documents be transmitted to him. Ms. Ang was busy with other work, and so she requested that Bock Law Firm employee John Martin transmit the documents to Mr. Cohen. Mr. Martin sent Mr. Cohen nine (9) emails with numerous PDF attachments. On February 12, 2017, Mr. Cohen initiated his intended review of these email attachments, but upon opening the first attachment, Mr. Cohen noted that it was an email chain pertaining to scheduling a mediation in

the Cin-Q action.  Prior to that moment, Mr. Cohen, Mr. Bock and Bock Law Firm were unaware that Mr. Oppenheim had possession of such documents relating to the Cin-Q action.  Mr. Cohen immediately closed that PDF, and notified Mr. Bock that he did not believe Bock Law Firm should participate in Mr. Oppenheim's discovery production compliance.  Mr. Oppenheim's production compliance was then handled by Mr. Blonien.  Mr. Cohen has retained the aforementioned incoming emails attaching those documents so as not to destroy evidence of the foregoing events.  It is Bock Law Firm's understanding that Mr. Blonien's production of a CD to M&C's counsel at the conclusion of the hearing held on February 24, 2017, contained the same documents that were emailed to Mr. Cohen on February 10, 2017.  Again, with the exception of the first PDF attachment to the first email, Mr. Cohen has not opened or reviewed any of the other attachments.  Mr. Cohen has confirmed that Ms. Ang never looked at any of the PDFs, and that Mr. Martin only opened one PDF document because it was too large to send by email without being broken into three smaller PDFs, and that in the process of doing so he might have glanced briefly at no more than five pages of the PDF as he was performing the aforementioned ministerial service.  Mr. Martin has not divulged, and has been instructed not to divulge, to anyone whatever he saw on those five or so PDF pages.

5.    Identify and describe any ethics screens completed regarding Oppenheim's employment at Bock Hatch, including without limitation the date such screen(s) was completed.

ANSWER:

Objection, the term "ethics screen" is undefined, vague and ambiguous.  Further, to the extent this interrogatory is not limited to activities specific and limited to a Buccaneers class action, it is overbroad, irrelevant, and invades Bock Law Firm's confidential and proprietary interests in its current and prospective case load.  Further, the burdens of this construction are not proportional to the needs of this case, considering the issues at stake in this litigation, the Plaintiff's failure to identify any cognizable injury, and the lack of value the information would add to this case.  Subject to said objections, and without waiving same, Bock Law Firm was aware of one or more case decisions addressing how "conflicts of interest" are analyzed differently in the context of class action litigation, and being aware of the nature of both Bock Law Firm's and Anderson + Wanca's exclusive class action focus, Bock Law Firm did not perceive any "conflict of interest" associated with Mr. Oppenheim's forthcoming employment with Bock Law Firm.  After Mr. Oppenheim began his employment with Bock Law Firm, and after Bock Law Firm decided to prosecute a Buccaneers class action, consideration was given to whether Mr. Oppenheim would have a "conflict of interest," and if so, whether that "conflict of interest" would be imputed to Bock Law Firm.  Bock Law Firm concluded that Mr. Oppenheim would not have a "conflict of interest," and thus no "conflict of interest" would be imputed to Bock Law Firm.  However, out of an abundance of caution, Bock Law Firm decided that Mr. Oppenheim would be "walled off" from the *Technology Training* action, and issued communications to effectuate that intent, as explained more fully in response to interrogatory no. 4, above.  The dates of the email communications advising Bock Law Firm personnel that Mr. Oppenheim was to be "walled off" from the *Technology Training* action are shown in the aforementioned emails to be produced, and

are incorporated herein by reference.  Bock Law Firm has not identified any documents reflecting Bock Law Firm's consideration of whether Mr. Oppenheim had a "conflict of interest," or Bock Law Firm's decision making as to whether Mr. Oppenheim should be "walled off" from the *Technology Training* action.  If any such documents are located, and assuming they do not fall under one or more of the previously-asserted objections, they will be produced.  Bock Law Firm's communications in these regards occurred primarily, if not exclusively, in telephone conversations between Mr. Bock and Daniel J. Cohen, an attorney employed by Bock Law Firm.

**FIRST SUPPLEMENTAL ANSWER:**

**The Court's March 2, 2017 Order does not require any supplementation of the answer to this interrogatory.  However, in reviewing documents in anticipated compliance with the Court's Order, Bock Law Firm has located documents which may or may not be responsive to this interrogatory.  In particular, Mr. Bock communicated with Illinois ethics attorney Mary Robinson, and thereafter with Florida ethics attorney John Weiss, regarding whether a conflict of interest existed by virtue of Mr. Oppenheim's employment at Bock Law Firm at a time when Bock Law Firm was prosecuting the TTA action.  Text messages between Mr. Bock and Mr. Cohen relating to the decision to seek such input, and emails between Mr. Bock and one or more of these consulting attorneys, are produced herewith and incorporated herein by reference.**

6.   Identify and describe any conflicts checks completed regarding Oppenheim's employment at Bock Hatch.

ANSWER:

Bock Law Firm incorporates herein by reference the objections and answer set forth in response to interrogatory no. 5, above.

**FIRST SUPPLEMENTAL ANSWER:**

**Bock Law Firm incorporates herein by reference the first supplemental answer set forth in response to interrogatory no. 5, above.**

7.     Identify and describe all communications You had with Oppenheim regarding any potential or existing class actions against the Buccaneers during Oppenheim's employment at Bock Hatch.

ANSWER:

Objection as to communications related to Mr. Oppenheim's work on the *CinQ/Medical* action, or related to the *Technology Training* action, that would have been created or generated during the time period after putative class counsel in the *CinQ/Medical* action had communicated their objection to Bock Law Firm's prosecution of the *Technology Training* action, because any such communications would have been undertaken in anticipation of litigation and would, therefore, be non-discoverable work product, attorney-client privileged, and subject to the joint defense privilege.

In accordance with Plaintiff's "instruction" that Bock Law Firm provide such responsive information as Bock Law Firm agrees is neither overbroad, unduly burdensome, privileged, nor irrelevant, Bock Law Firm answers – subject to its foregoing objections, and without waiving same – as follows:

See previous communications identified (and to be produced) in response to earlier interrogatories herein.   In addition, Bock Law Firm discloses the following communications:

On or about April 29, 2016, Phil Bock and David Oppenheim exchanged emails regarding Brian Wanca's opposition to using mediator Anderson in the *Rogan Shoes* case.  These emails will be produced, and their content is incorporated herein by reference.

**FIRST SUPPLEMENTAL ANSWER:**

**Bock Law Firm incorporates herein by reference previous answers and supplemental answers to these interrogatories, as well as previous responses to and compliance with M&C's requests for production.**

**The Court's March 2, 2017 Order states, "By my consideration, relevant discovery includes matters related to … matters [Oppenheim] learned or obtained in the Cin-Q litigation, the sharing of such matters with BLF, and BLF's use of the same in planning, filing, prosecuting, and settling the TTA class-action suit."  Any communications by Mr. Oppenheim to Bock Law Firm in any manner related to the Cin-Q action have been identified.  Bock Law Firm did not plan, file, prosecute or settle the TTA action based upon, or through the use of, information from Mr. Oppenheim.**

8.    Identify and describe all communications You had with Buccaneers' counsel before the Technology Training Action was filed.

ANSWER:

Objection, the information sought by this interrogatory is irrelevant to any issue properly raised in this lawsuit.  Further, the burdens of this interrogatory, as drafted, are not proportional to the needs of this case, considering the issues at stake in this litigation, the Plaintiff's failure to identify any cognizable injury, and the lack of value the information would add to this case.  Plaintiff's theory of the case as pleaded in its Verified Complaint is that as a matter of law Mr. Oppenheim's participation in

15

Buccaneers mediations while employed by Anderson + Wanca created a conflict of interest automatically and unavoidably disqualifying Mr. Oppenheim and Bock Law Firm from prosecuting a competing Buccaneers class action.  Communications between Bock Law Firm and Buccaneers counsel before the *Technology Training* action was filed, if any, have no relevance whatsoever to this case.  Subject to said objection, and without waiving same, none.

**FIRST SUPPLEMENTAL ANSWER:**

**The Court's March 2, 2017 Order states, "Regarding Request No. 13, pre-suit communications between BLF and the Buccaneers in the TTA class action, in whatever format, … shall be produced."  In compliance with the scope of this aspect of the Court's Order, Bock Law Firm provides the following supplemental answer:**

**Bock Law Firm filed the TTA action in the afternoon of May 6, 2016.  On that day, shortly before the TTA action was filed, Bock Law Firm attorneys Cohen and Piper placed a call to BLP counsel Mark Mester at his office.  Mr. Mester was unavailable, and Mr. Cohen left a brief voicemail message indicating who they were, what law firm they worked for, and that they would like to speak with him when he had time to call back.  To the best of Mr. Cohen's recollection, the voicemail message made no reference at all to a Buccaneers class action or to any other specific purpose for the call.  The TTA action was filed within an hour or so of leaving that message, and there was no communication between Bock Law Firm and BLP counsel prior to the filing of the TTA action.**

9.      Identify and describe all communications You had with Buccaneers' counsel after the Technology Training Action was filed.

ANSWER:

Objection, the information sought by this interrogatory is irrelevant to any issue properly raised in this lawsuit.  Plaintiff's theory of the case as pleaded in its Verified Complaint is that as a matter of law Mr. Oppenheim's participation in Buccaneers mediations while employed by Anderson + Wanca created a conflict of interest automatically and unavoidably disqualifying Mr. Oppenheim and Bock Law Firm from prosecuting a competing Buccaneers class action.  Communications between Bock Law Firm and Buccaneers counsel after the *Technology Training* action was filed, if any, have no relevance whatsoever to this case.  Further, the burdens of this interrogatory, as drafted, are not proportional to the needs of this case, considering the issues at stake in this litigation, the Plaintiff's failure to identify any cognizable injury, and the lack of value the information would add to this case.  In addition, to the extent any such communications occurred in the context of, or as part of, formal mediation, such communications would be subject to the mediation privilege and, therefore, would be non-discoverable in this action at this time.

**FIRST SUPPLEMENTAL ANSWER:**

**The Court's March 2, 2017 Order states, "Regarding Request No. 13, … non-privileged post-suit demand letters and position papers by BLF, shall be produced." Footnote 7 states, "On this request, BLF is not required to produce a privilege log for communications made in connection with the May and June 2016 mediation sessions and communications during and after this period resulting in a proposed settlement."  Although Bock Law Firm's supplemental response to Request No. 13, served contemporaneously herewith, also complies with the Court's ruling in this**

**regard, Bock Law Firm similarly supplements its answer to Interrogatory No. 9 as follows:**

**If Bock Law Firm had transmitted any demand letters or position papers regarding settlement of the TTA action to BLP or its counsel after suit was filed but before formal mediation, Bock Law Firm would assert that such communications are privileged under Florida's privilege(s) covering settlement negotiations, including the statutory mediation privilege, because any and all such communications would have been in furtherance of mediation. However, Bock Law Firm did not transmit any such demand letters or position papers to BLP or its counsel after suit was filed but before formal mediation.**

10.    Identify and describe all communications You had the Buccaneers' counsel regarding potential settlements, including the date of the first communication and who initiated the communication.

ANSWER:

Bock Law Firm incorporates herein by reference its objections to interrogatory no. 9, above.

11.    Identify and describe all communications with any attorney representing Medical & Chiropractic or Cin-Q regarding the M&C Action.

ANSWER:

Objection, as drafted, this interrogatory is vague and ambiguous in its use of the term "representing" because it is unclear whether that term refers to communications occurring at a time contemporaneous with the indicated "representation." Bock Law Firm construes this ambiguity to include a contemporaneous component. Assuming

18

Plaintiff did not intend a "contemporaneous" construction, and assuming Plaintiff intends to include Mr. Oppenheim as an attorney "representing" M&C, Bock Law Firm further objects to the extent any communications with Mr. Oppenheim, if any, occurred during the time period after putative class counsel in the *CinQ/Medical* action had communicated their objection to Bock Law Firm's prosecution of the *Technology Training* action, because any such communications would have been undertaken in anticipation of litigation and would, therefore, be non-discoverable work product, attorney-client privileged, and subject to the joint defense privilege. In addition, Bock Law Firm objects to the extent the interrogatory presupposes that an individual attorney-client relationship existed between any of the referenced attorneys and M&C, as opposed to a representative attorney-client relationship on behalf of a putative class inclusive of the proposed, putative class representatives.

In accordance with Plaintiff's "instruction" that Bock Law Firm provide such responsive information as Bock Law Firm agrees is neither overbroad, unduly burdensome, privileged, nor irrelevant, Bock Law Firm answers – subject to its foregoing objections, and without waiving same – as follows:

> On or about April 18, 2016, Mr. Bock and Mr. Addison attended a summary judgment hearing in Tampa state court in the *Florida First v. Term Provider* case, at which time Mr. Addison complained to Mr. Bock about Mr. Wanca's role in and handling of the mediation in the *CinQ* case.
>
> On or about May 2, 2016, Mr. Oppenheim attended a scheduling conference in *Zurich v. Dalzell* in Tampa federal court, accompanied by Mike Addison. Mr. Addison told Mr. Oppenheim that in the *CinQ* case, Mr. Wanca was holding the class hostage to his ego. Mr. Addison continued to express frustration with Mr. Wanca's role in the negotiations, both in his office and in his car driving Mr. Oppenheim to the airport. Mr. Addison showed Mr. Oppenheim emails in which Mr. Wanca asked mediator Anderson to declare an impasse in the settlement negotiations. Mr. Oppenheim asked Mr. Addison if he was concerned that someone else would try to settle the case, but Mr. Addison responded that there

were no other cases.  Mr. Wanca called Mr. Addison during this conversation, and Mr. Wanca told Mr. Addison that he would talk to him later once he knew Mr. Oppenheim was not there.

On or about May 4, 2016, Mr. Oppenheim appeared at a final approval hearing in Chicago, Illinois, in *Flashtric v. Georgia Printco*, also attended by Mr. Wanca. Mr. Wanca shared with Mr. Oppenheim his complaints about mediator Anderson's role in the *CinQ* mediation.  In particular, he told Mr. Oppenheim that he felt the Buccaneers put mediator Anderson up to file a report that would have made CinQ plaintiff's counsel look bad.  Mr. Wanca asked Mr. Oppenheim to keep this between the two of them.  At no time prior to Bock Law Firm's anticipation of litigation based on Mr. Wanca's allegation of a "conflict of interest" did Mr. Oppenheim disclose this conversation to Bock Law Firm.

On or about May 12, 2016, Mr. Addison sent an email to Mr. Bock expressing his objection to Bock Law Firm proceeding with a mediation in the *Technology Training* case.  Mr. Bock responded that Mr. Oppenheim was not involved in the case, and that he had been screened from the case.  On or about the same date, Mr. Wanca sent an email objecting to Mr. Oppenheim attending the mediation scheduled in the *Rogan Shoes* case.  Mr. Cohen, on behalf of Bock Law Firm, responded advising that Mr. Oppenheim would attend that mediation if that was the decision of Bock Law Firm.  In addition, on or about that same date, attorney Ross Good, attorney with the Anderson + Wanca firm, called Mr. Oppenheim and implored him not to continue with the *Technology Training* case.  Mr. Oppenheim responded that he was not involved in that case.

12.     Identify your clients in the Technology Training Action.

ANSWER:

Bock Law Firm represents a putative class of persons who received the unsolicited fax advertisements at issue in the Buccaneers class action lawsuits, inclusive of the putative class representatives in the *Technology Training* action – to-wit, Technology Training Associates, Inc. and Larry E. Schwanke, D.C. d/b/a Back To Basics Family Chiropractic.

13.     Identify each witness You will or may call at trial, including the name, address, telephone number, and anticipated areas of testimony of each witness, including experts and all applicable requirements listed in FRCP 26(a)(2).

ANSWER:

Bock Law Firm has not yet decided upon witnesses whom it will or may call to testify at trial.   Bock Law Firm will supplement its answer to this interrogatory as discovery proceeds.

Respectfully submitted,

BOCK LAW FIRM, LLC.


By:   /s/ Daniel J. Cohen
        One of its attorneys

Daniel J. Cohen (pro hac vice)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Fax: 312-658-5555

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2017, I served the foregoing upon Plaintiff by serving same by electronic mail upon its counsel of record, Christopher L. Griffin, FOLEY & LARDNER LLP, 100 North Tampa Street, Suite 2700, Tampa, FL 33602, E-mail: cgriffin@foley.com, and that a paper copy of same shall be placed in the U.S. Mail tomorrow, postage prepaid, addressed to said counsel of record.


/s/ Daniel J. Cohen

Daniel J. Cohen (pro hac vice)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Fax: 312-658-5555