UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDICAL & CHIROPRACTIC CLINIC,  )
INC.,                           )
                                )
        Plaintiff,              )
                                )  Case No.
        vs.                     )  8:16-cv-01477-
                                )  CEH-TBM
DAVID M. OPPENHEIM, an          )
individual, and BOCK LAW FIRM,  )
LLC d/b/a BOCK, HATCH, LEWIS, & )
OPPENHEIM, LLC,                 )
                                )
        Defendants.             )

        The videotaped deposition of

DR. GREGORY WILLIAMS, called for examination

pursuant to the Rules of Civil Procedure for the

United States District Courts pertaining to the

taking of depositions, taken before Layli

Phillips, Certified Shorthand Reporter of the

State of Illinois, at 321 North Clark Street,

Suite 2800, Chicago, Illinois, on

November 13, 2017, at 12:46 p.m.

Reported by:  Layli Phillips, CSR, RPR, CRR

License No.:  084.003900

Page 2

```
 1   APPEARANCES:
 2   For the Plaintiffs:
       FOLEY & LARDNER LLP
 3     MR. BENNETT L. EPSTEIN
       MR. PATRICK J. MCMAHON
 4     321 North Clark Street, Suite 2800
       Chicago, Illinois  60654
 5     (312) 832-4576
       bepstein@foley.com
 6     pmcmahon@foley.com
 7
     For the Defendant David M. Oppenheim:
 8     BLONIEN LEGAL COUNSEL
       MR. BARRY J. BLONIEN
 9     1718 Adams Street
       Madison, Wisconsin  53711
10     (608) 620-5357
       barry@blonienlegal.com
11
12   For the Defendant Bock Law Firm, LLC:
       BOCK & HATCH, LLC
13     MR. DANIEL COHEN
       134 North LaSalle Street, Suite 1000
14     10th Floor
       Chicago, Illinois  60602
15     (312) 658 5500
       danieljaycohen209@gmail.com
16
17
     ALSO PRESENT:  MR. STEPHEN GOETHALS, VIDEOGRAPHER
18               MR. DAVID M. OPPENHEIM
19
20
21
22
23
24
```

Page 3

```
 1              I N D E X
 2
 3   Examinations               Page
 4
 5   By Mr. Blonien              6
 6   By Mr. Cohen                43
 7
 8
 9            E X H I B I T S
10
11   Number      Description       Page
12
13   Exhibit 1   MC 188 Through MC 195    18
14
15
16
17
18
19
20
21
22
23
24
```

Page 4

```
 1         THE VIDEOGRAPHER:  Here begins the
 2   videotaped deposition of Dr. Gregory Williams,
 3   Tape one, Volume 1, in the matter of Medical &
 4   Chiropractic Clinic versus Oppenheim, Case Number
 5   8:16-cv-01477-CEH-TBM.
 6         Today's date is November 13th, 2017, and
 7   the time on the video monitor is 12:46.
 8         My name is Stephen Goethals and the
 9   court reporter is Layli Phillips of Thompson Court
10   Reporters.
11         Today's deposition is taking place at
12   Foley & Lardner in Chicago, Illinois.
13         Would counsel please introduce
14   themselves and state whom they represent.
15         MR. EPSTEIN:  I'm Bennett Epstein, and I
16   represent Medical & Chiropractic, Inc.
17         THE VIDEOGRAPHER:  Mr. Epstein, do you
18   have your --
19         MR. EPSTEIN:  Oh, I do not.
20         THE VIDEOGRAPHER:  It might have slipped
21   down.
22         MR. EPSTEIN:  I don't know if I have
23   one.
24         MR. BLONIEN:  There's one on the floor.
```

Page 5

```
 1         MR. EPSTEIN:  All righty.  I'll -- you
 2   want me to restate it?
 3         THE VIDEOGRAPHER:  Sure.
 4         MR. EPSTEIN:  My name is Bennett
 5   Epstein.  I'm with the law firm of Foley &
 6   Lardner, and I represent Medical & Chiropractic,
 7   Inc.
 8         MR. BLONIEN:  And this is Barry Blonien
 9   on behalf of Blonien Legal Counsel representing
10   defendant David Oppenheim.
11         MR. COHEN:  Dan Cohen of Bock Law Firm,
12   LLC, here on behalf of Bock Law Firm, LLC.
13         THE VIDEOGRAPHER:  Will the court
14   reporter please swear in the witness.
15         MR. EPSTEIN:  Could I also get the other
16   names of the other -- of the other individuals who
17   are in the room, even if they are not counsel of
18   record?
19         MR. OPPENHEIM:  David Oppenheim.
20         THE COURT:  Patrick McMahon, Foley &
21   Lardner.
22         MR. EPSTEIN:  Thank you.
23
24
```

2 (Pages 2 to 5)

Page 6

1    DR. GREGORY WILLIAMS
2        the deponent herein, called as a
3    witness, after having been first duly sworn, was
4    examined and testified as follows:
5            EXAMINATION
6    BY MR. BLONIEN:
7        Q.   Good afternoon, Dr. Williams.
8        A.   Afternoon.
9        Q.   Your name, just for the record, is
10   Gregory Williams; is that correct?
11       A.   Correct.
12       Q.   And you are a doctor of what?
13       A.   Chiropractic.
14       Q.   How long have you been a doctor of
15   chiropracty?
16       A.   Since '82.
17       Q.   And you have your own operation; is that
18   correct?
19       A.   Correct.
20       Q.   And that's Medical & Chiropractic
21   Clinic, Inc.?
22       A.   Correct.
23       Q.   And are you a part owner?
24       A.   Yes.

Page 7

1        Q.   Are you a 50 percent owner?
2        A.   Yes.
3        Q.   With your wife, Michelle Zakzrewski, as
4    the other 50 percent owner?
5        A.   Yes.
6        Q.   Have you worked anywhere else, aside
7    from Medical & Chiropractic Clinic, Inc., as a
8    chiropractor?
9        A.   Yes.
10       Q.   Where else did you work?
11       A.   I worked in Vero Beach.  My brother had
12   a clinic over there.  He's a medical doctor.  And
13   I worked there with him for seven years.
14       Q.   Anywhere else that you worked?
15       A.   Yes.  I worked in Alabama for about two
16   years.
17           And I worked with my father when I first
18   got out and back in '82 for a couple of years
19   there.
20       Q.   When did you start Medical &
21   Chiropractic Clinic, Inc.?
22       A.   I believe it was in Vero Beach.
23       Q.   Do you know the year approximately?
24       A.   No, sir.

Page 8

1        Q.   Do you know the decade?
2        A.   '90s.
3        Q.   Have you worked consistently at Medical
4    & Chiropractic Clinic, Inc., since you opened it
5    in the '90s approximately?
6        A.   Yes.
7        Q.   Have you worked anywhere else since
8    opening Medical & Chiropractic Clinic, Inc.?
9        A.   You mean for anybody else or just worked
10   in general?
11       Q.   Have you received a paycheck from anyone
12   else, apart from Medical & Chiropractic Clinic,
13   Inc.?
14       A.   No.
15       Q.   What do you understand of the claims at
16   issue in this case?
17       A.   For today's purpose?
18       Q.   The case that we're here for today, yes,
19   sir.
20       A.   I believe this is the Medical &
21   Chiropractic Clinic brought an issue against
22   Mr. Oppenheim for things that has been transpired
23   on his portion or for what he has done.
24       Q.   Do you understand what the claims are

Page 9

1    that are asserted in this case?
2        A.   I don't know if I know them all.
3        Q.   Okay.  What claims do you know being
4    asserted in this case?
5        A.   That Mr. Oppenheim had worked with
6    Wanca, and then he was handling all of the class
7    action -- well, not all of it, but a large portion
8    of it -- against the Buccaneers and was in court
9    many times for that.  And then when he left that
10   firm, he had started an additional class action
11   lawsuit with a new firm he is at.  That's what I
12   understand.
13       Q.   Okay.  Anything else that you can recall
14   as to the nature of the claims that M & C is
15   asserting in this case?
16       A.   That we have had some injury in our
17   behalf.
18       Q.   Okay.  And can you describe what that
19   injury is for me, please?
20       A.   Well, we are the class representative of
21   the original suit brought against the Buccaneers.
22   And my wife, Michelle, who did most of all of that
23   paperwork with Mr. Wanca's firm and Mr. Oppenheim
24   and whoever else was involved in that lawsuit

Thompson Court Reporters, Inc
thompsonreporters.com

Page 10

```
1    spent quite a bit of her time and some travel,
2    loss of income for our office.
3         She is also my assistant as well as
4    running the front and any pertinent insurance data
5    information.  That is her forte.
6         We have -- I have lost some time myself
7    in the office, including today.
8         And as a class representative, I believe
9    once there is a loss there, we were to get a small
10   stipend, if you will, for being class
11   representative and taking the time to represent
12   the class.
13        Q.   Anything else that you can think of?
14        A.   I think that's -- I think that's all.
15        Q.   Okay.  There are a couple things I just
16   want to unpack on what you just went over.
17        You said that it's your understanding
18   that Mr. Oppenheim was involved in the class
19   action litigation against the Tampa Bay Buccaneers
20   at Anderson & Wanca; did I hear that correctly?
21        A.   That's correct.
22        Q.   And that it's your understanding that he
23   appeared in court many times on that case?
24        A.   Yes.
```

Page 11

```
1         Q.   Okay.  How many times do you understand
2    Mr. Oppenheim to have appeared in court on behalf
3    of the class or on behalf of M & C in that
4    litigation?
5         A.   That I don't know.
6         Q.   What gives you the impression that
7    Mr. Oppenheim went to court many times for that
8    case?
9         A.   From my wife.
10        Q.   From your wife?
11        A.   Yes.
12        Q.   Do you recall specifically what she told
13   you?
14        A.   She told me that Mr. Oppenheim was
15   essentially the closer of a case, and the other
16   attorneys would do preliminary work, and then he
17   would come in and make the deal or settle, however
18   they -- however you do that.
19        Q.   And you also stated that your
20   understanding of this case in the claims involved
21   here are that when Mr. Oppenheim left Anderson &
22   Wanca, he started a competing class action?
23        A.   Yes, with -- I don't know the -- Cohen
24   and another person, I don't know, Cohen and three
```

Page 12

```
1    names.
2         Q.   And do you have any facts that you know
3    personally that support those claims?
4         A.   I believe there was an appellate ruling
5    in that regard.  And in that appellate ruling, it
6    ruled that there were the two fractions, if you
7    will, one for X amount of dollars and Mr. Cohen
8    and Oppenheim's for a smaller amount.
9         Q.   How did you learn of that appellate
10   ruling that you were referring to?
11        A.   I saw it.
12        Q.   How did you see it?
13        A.   My wife showed it to me.
14        Q.   When did your wife show it to you?
15        A.   Several weeks ago, but I don't know the
16   day.
17        Q.   Do you know how she obtained the
18   opinion?
19        A.   I believe it was sent to her.
20        Q.   Do you know who sent it to her?
21        A.   Mr. Wanca's firm.  That's all I know.
22        Q.   So someone at Anderson & Wanca sent
23   Ms. Zakzrewski a copy of the 11th Circuit
24   decision, and she shared it with you?
```

Page 13

```
1         A.   Right.
2         Q.   Okay.  Apart from the appellate ruling
3    that you referred to, are you aware of any other
4    facts that you have personal knowledge of that you
5    believe support the claims in this case?
6         A.   Those are the ones I have only seen.
7         Q.   Okay.  So you saw the appellate ruling?
8         A.   Yes.
9         Q.   And that's pretty much the sum and
10   substance of what you know about the claims and
11   the facts to support it?
12        A.   For this, yes.
13        Q.   For M & C's action against Mr. Oppenheim
14   for breaching fiduciary duty?
15        A.   Correct.
16        Q.   Okay.  When did you first meet
17   Mr. Oppenheim?
18        A.   He had a deposition recently.  I never
19   met him personally or shook his hand.  That's the
20   first time I've seen him.
21        Q.   Okay.  So you hadn't put your eyes on
22   him before that point?
23        A.   No, sir.
24        Q.   Did you ever speak to him by phone?
```

4 (Pages 10 to 13)

Page 14

1    A.   No.
2    Q.   By email?
3    A.   No.
4    Q.   Or any other form that we can think of?
5    A.   No.
6    Q.   Okay.  So the first time that you ever
7    saw or spoke to Mr. Oppenheim was at his
8    deposition in this litigation.
9    A.   Well, I never spoke to him.
10   Q.   Right.  The only interaction -- the
11   first interaction that you had, even if it was
12   simply eyeballs on the person, was at that
13   deposition?
14   A.   Correct.
15   Q.   And you never spoke to him before that
16   point or even at that point, if I understand your
17   clarification?
18   A.   I don't believe so.
19   Q.   Okay.  Do you know who is paying your
20   attorney fees for today?
21   A.   Yes.
22   Q.   Who?
23   A.   Wanca firm.
24   Q.   And is Mr. Wanca paying all of the fees

Page 15

1    associated with this litigation?
2    A.   As far as I know, yes.
3    Q.   And expenses, same thing?
4    A.   Most expenses, yes.
5    Q.   What expenses is Mr. Wanca not paying
6    for?
7    A.   Food, cabs, anything that I need to pay
8    for that he doesn't; but mostly it's food and
9    cabs.
10   Q.   Okay.  You said it's mostly.  I just
11   want to make sure I get this right.
12   A.   Well, I'm -- I can't speak for Michelle
13   and her portion.
14   Q.   Okay.  I -- I'm glad that you can't, and
15   I won't ask you to.
16        Focused on what you know personally and
17   your own personal knowledge --
18   A.   Yes.
19   Q.   -- apart from cabs and food, is there
20   any other expenses associated with this litigation
21   that Mr. Wanca is not paying for?
22   A.   No, I don't think so.
23   Q.   Okay.  Are you staying in a hotel?
24   A.   No.  I'm here today and gone today.

Page 16

1    Q.   Okay.  What about the last time you came
2    in for Mr. Oppenheim's deposition where you saw
3    him first?
4    A.   Yes.
5    Q.   You stayed at a hotel?
6    A.   Yes.
7    Q.   Did you pay for that hotel?
8    A.   No.
9    Q.   Who paid for that hotel?
10   A.   Mr. Wanca.
11   Q.   Okay.  And did you fly if for today's
12   deposition?
13   A.   I did.
14   Q.   And did you pay for your flight?
15   A.   No.
16   Q.   Who paid for the flight?
17   A.   Mr. Wanca.
18   Q.   Okay.  Do you know if Mr. Wanca has a
19   contract with Medical & Chiropractic to seek
20   reimbursement for any of these expenses that he's
21   paying for?
22   A.   I don't know.
23   Q.   Do you know if Mr. Wanca ever had any
24   agreements with Medical & Chiropractic as an

Page 17

1    attorney?
2    A.   I have not seen any.
3    Q.   Okay.  Have you looked for any?
4    A.   No.
5    Q.   Okay.  Have you asked your wife to look
6    for any?
7    A.   I haven't asked her that.
8    Q.   Okay.  Is she the primary person who is
9    handling the litigation?
10   A.   Yes.
11   Q.   As the agent and representative of
12   Medical & Chiropractic?
13   A.   Yes.
14   Q.   Is it fair to say that she would be the
15   go-to person to ask as it relates to the claims in
16   this case?
17   A.   Yes.
18   Q.   Okay.  I'd like to show you what's been
19   marked as Exhibit Number 1.  Please take a moment
20   to look at that, and let me know when you're ready
21   for a question, Doctor.
22
23
24

Thompson Court Reporters, Inc
thompsonreporters.com

Page 18

1      (Whereupon Deposition Exhibit
2      No. 1 was marked for
3      identification by the court
4      reporter.)
5      **A.   Do you want me to read the whole thing?**
6      Q.   I don't want you to read the whole
7   thing.  I do want you to take a moment to
8   familiarize yourself with the document I handed
9   you, and let me know when you're ready for a
10  question.
11      MR. EPSTEIN:  Is that the same as this
12  (indicating)?
13      MR. BLONIEN:  Indeed.
14      MR. EPSTEIN:  I'm identifying MC 188
15  through MC 19 like 4, I believe.
16      MR. BLONIEN:  5.
17      MR. EPSTEIN:  5, yes, through MC 195,
18  correct?
19      MR. BLONIEN:  Yes.
20      **A.   Okay.  I've looked at this.**
21      Q.   I realized that there's a couple
22  introductory things that I usually like to say at
23  the outset and I didn't.  So before turning to the
24  questions on the exhibit, let me just go through a

Page 19

1   couple of quick things.
2          One is to the best that we can, let's
3   try not to interrupt each other so that the court
4   reporter's job is as easy as possible.
5          If you have any questions or concerns or
6   confusion about what I've asked, please let me
7   know.  If you don't ask me to clarify, then I'm
8   going to assume you understood my question and are
9   answering it truthfully and fully; is that fair?
10      MR. EPSTEIN:  Objection.  He can't -- he
11  can't know what you assume.  He can answer a
12  factual question, but he can't answer to what you
13  assume.
14  BY MR. BLONIEN:
15      Q.   Okay.  Did you hear what I said?
16      **A.   I think so.**
17      Q.   Okay.  Does that sound fair to you?
18      **A.   You're asking me to answer things I**
19  **understand.**
20      Q.   Yes.
21      **A.   I understand that.**
22      Q.   And only the things that you understand.
23      **A.   Correct.**
24      Q.   And if --

Page 20

1      **A.   And if not, then I should ask you for**
2   **clarification.**
3      Q.   Yes.
4      **A.   Okay.**
5      Q.   Does that sound fair?
6      **A.   I -- I do understand that, sure.**
7      Q.   Okay.  And if at any point you need a
8   break, just let me know.  Okay?
9      **A.   Okay.**
10      Q.   All right.  Have you seen Exhibit
11  Number 1 before just now?
12      **A.   I think I have.**
13      Q.   When did you see it?
14      **A.   I think this was I -- presented on the**
15  **first deposition.**
16      Q.   And just to be clear, when you say the
17  first deposition, what do you mean?
18      **A.   The first deposition I was at.  That was**
19  **back in Florida, I don't know when.**
20      Q.   When you were first deposed?
21      **A.   Yes.**
22      Q.   Okay.  And what is the Exhibit Number 1?
23      **A.   Retainer agreement.**
24      Q.   Does that mean anything to you?

Page 21

1      **A.   It means that apparently we have hired**
2   **Wanca to represent us in this class action, I**
3   **believe, because it explains what class action is**
4   **here also.**
5      Q.   Okay.
6      **A.   And Michelle signed it.**
7      Q.   Okay.  Is that Ms. Zakzrewski's
8   signature?
9      **A.   It is.**
10      Q.   And is this retainer agreement
11  consistent with your understanding, that is, that
12  you hired Anderson & Wanca for the Tampa Bay
13  Buccaneers litigation?
14      **A.   It is.**
15      Q.   Okay.  Did you hire anyone else for the
16  Tampa Bay Buccaneers litigation, did Medical &
17  Chiropractic?
18      **A.   We -- we hired their firm.**
19      Q.   Anderson & Wanca?
20      **A.   Yes.**
21      Q.   Okay.  Apart from Anderson & Wanca, did
22  you hire anyone else to work on the Tampa Bay
23  Buccaneers litigation on your or M & C's behalf?
24      **A.   I think there was another attorney down**

Page 22

1  in Tampa, but I don't think we hired him.  I think
2  he was part of some of the original paperwork from
3  the other class defendant.
4      Q.   I'm glad that you brought that up
5  because I think if I understood what you had said
6  earlier about your understanding of the claims,
7  you talked about the original suit against the
8  Buccaneers as compared to the competing lawsuit
9  that Bock Law Firm had filed.
10     A.   Yes.
11     Q.   But you understand that there was a
12 pending class action before Medical & Chiropractic
13 got involved against the Tampa Bay Buccaneers
14 relating to these faxes?
15     A.   I don't think I understand.
16     Q.   Okay.  Do you know when Tampa Bay was
17 first sued for sending out fax advertisements?
18     A.   The original date?
19     Q.   Or an approximation to the best of your
20 ability.
21     A.   If you're asking for the year, I don't
22 know.
23     Q.   Do you know whether Tampa Bay was -- the
24 Tampa Bay Buccaneers were sued before Medical &

Page 23

1  Chiropractic got involved as a named plaintiff?
2      A.   I do not know.
3      Q.   Okay.  Do you know whether there are any
4  other named plaintiffs involved in the Tampa Bay
5  Buccaneers litigation?
6      A.   Besides the one that the Cohen firm
7  brought forth, that's the only two, I guess, that
8  I know of.
9      Q.   So your understanding is that there's
10 Medical & Chiropractic; and you understand Medical
11 & Chiropractic's role as a class representative,
12 right?
13     A.   Yes.
14     Q.   And then you understand that there's
15 someone else who sued after Medical & Chiropractic
16 that was represented by Bock Law Firm?
17     A.   Correct.
18     Q.   Who also sought to represent the class,
19 right?
20     A.   Yes.
21     Q.   Do you know of anyone else who sought to
22 represent the class aside from those two?
23     A.   The -- it would have to be the attorney
24 in Tampa, but I don't know if that was before, at

Page 24

1  the same time.  I don't know those answers.
2      Q.   Okay.  And do you know of anyone else,
3  apart from what might be the attorney from
4  Florida?
5      A.   No.
6      Q.   Okay.  Do you know of any other lawyers
7  that were involved in the Tampa Bay class action,
8  setting aside the Bock Law Firm lawsuit that
9  happened afterward, apart from Anderson & Wanca
10 and this attorney from Florida?
11     A.   I thought that was all.
12     Q.   So I think that this is necessarily
13 true, but let me just be sure.  Assuming that
14 that's not all that's participated in the lawsuit,
15 you wouldn't have any understanding of other
16 people involved or what their relationship was, is
17 that fair, if there were other attorneys?
18     A.   Other attorneys with lawsuits against
19 the Bucs as well?
20     Q.   Yes.
21     A.   I would not.
22     Q.   Okay.  You indicated that Ms. Zakzrewski
23 and yourself that you've spent time in the Tampa
24 Bay Buccaneers litigation, right?

Page 25

1      A.   Correct.
2      Q.   Do you have an understanding of how much
3  time?
4      A.   Well, for me, it was today and the
5  deposition day, the last one.  That's two days for
6  me.
7          And Michelle, at least six or more days
8  and several depositions; but I'm not sure how
9  many.
10     Q.   Okay.  And do I understand that answer
11 to put this case and the Tampa Bay Buccaneers all
12 sort of in one bucket for how you're viewing
13 things?
14     A.   That's how I view them.
15     Q.   Okay.  Have you ever spoken with
16 Mr. Wanca?
17     A.   As far as for this case?
18     Q.   At all, have you ever spoken with
19 Mr. Wanca?
20     A.   Once.
21     Q.   Okay.  When was that?
22     A.   We had dinner one evening, but I don't
23 remember when.
24     Q.   Do you know the year?

7 (Pages 22 to 25)

Page 26

1   A.   I think it was this year.
2   Q.   This year?
3   A.   Yeah.
4   Q.   2017?
5   A.   Yes.
6   Q.   So that would have been after M & C
7   filed its lawsuit in this case?
8   A.   I don't know that.
9   Q.   Do you know when M & C filed its lawsuit
10  in this case?
11  A.   I do not.
12  Q.   Did you talk with any -- have you ever
13  talked with anyone else, apart from the one
14  conversation that you just identified with Brian
15  Wanca, anyone else with Anderson & Wanca that
16  you've had a conversation with at any point?
17  A.   Ever had a conversation?
18  Q.   Yes, sir.
19  A.   Of any kind?
20  Q.   Yes, sir.
21  A.   Yes.
22  Q.   And who?
23  A.   Ross Good.
24  Q.   And who else?

Page 27

1   A.   There was another attorney at that
2   dinner.  Mr. Wanca's first name is Brian?
3   Q.   Yes, sir.
4   A.   The other gentleman's name was Ryan.  I
5   don't know his last name.
6   Q.   Anyone else?
7   A.   Mr. Good's wife was there, so social.
8   Q.   And all of these meeting -- all three of
9   these were at the dinner that you referred to
10  earlier in your testimony; that is, Ross Good,
11  Brian Wanca, and Ryan, were they all at the
12  dinner?
13  A.   There was Ryan's girlfriend.
14  Q.   So yes, they were all at the dinner?
15  A.   Yes.
16  Q.   And also some guests it sounds like?
17  A.   I think that was it.
18  Q.   Ryan's girlfriend and Ross's wife.
19  A.   Yes.
20  Q.   Okay.  And what did you discuss at that
21  meeting?
22  A.   The Cubs game.
23  Q.   The Cubs game?
24  A.   Yes.

Page 28

1   Q.   Anything else?
2   A.   Well, I came up for a conference, and I
3   was here for that; and then we had gone to a Cubs
4   game, and we discussed that.
5        And we talked about, I believe, Ryan
6   travels quite a bit for the firm, so he was gone
7   like three weeks or something; and that's about
8   it.
9        Mr. Wanca, he was down at the other end;
10  so I didn't have a one-on-one conversation with
11  him.
12  Q.   Did the substance of the Tampa Bay
13  Buccaneers litigation come up at all?
14  A.   That was not discussed.  I was told we
15  can't discuss it because, of course, I had some
16  questions.  But it was not discussed.
17  Q.   Who told you that you can't discuss it?
18  A.   Ross Good told me.  I believe Ryan also
19  told me.  And I don't know if Mr. Wanca said
20  anything.
21  Q.   What about the substance of this
22  litigation and the claims that M & C is making,
23  did that come up, or are you considering that
24  together?

Page 29

1   A.   No.  I don't believe that had come up at
2   that time --
3   Q.   Okay.
4   A.   -- as far as I remember.
5   Q.   Did you have a chance to ask the
6   questions that you had afterward?
7   A.   No, because it was told there's --
8   there's no discussion on it.
9   Q.   There's no discussion?
10  A.   There was no discussion on any of the
11  Bucs matters.
12  Q.   At that dinner?
13  A.   Correct.
14  Q.   What about after the dinner?
15  A.   I don't deal with Mr. Wanca's firm per
16  se.  Michelle does.
17  Q.   Okay.
18  A.   So if there were any, she would be the
19  one to ask those questions on.
20  Q.   I appreciate that.  And that's going to
21  make our time move fairly quickly here.
22       But in order to make sure I understand
23  the whole range --
24  A.   I understand.

8 (Pages 26 to 29)

Page 30

1    Q.  -- we have a one dinner conversation
2  that happened likely sometime in 2017.  Is there
3  any other conversations that you had with anyone
4  at Anderson & Wanca at any time about anything?
5    **A.  Michelle handles those questions --**
6    Q.  Okay.
7    **A.  -- anything pertaining to anything.**
8    Q.  I appreciate that Michelle handles -- is
9  the one that's primarily responsible.
10     Can you recall any other conversation
11  that you had with any member of Anderson & Wanca?
12    **A.  As -- are you talking about personal,**
13  **the Bucs?  I'm not sure.**
14    Q.  I am trying to make sure I understand as
15  best as I can ask and as you can answer what the
16  facts are that relate to this case.  If there are
17  personal conversations, I hope that you would
18  answer yes and that we can discuss those.  If not,
19  then the answer would be different.
20    **A.  Normally I would ask Michelle if I had a**
21  **question.  Sometimes she gets personal information**
22  **because women seem to talk to each other about**
23  **what they are doing from day to day, but not**
24  **really about the Bucs that I know of.**

Page 31

1    Q.  Okay.  I think I understand how the
2  normal process worked and how the delegation of
3  responsibilities were.
4     What I need to know is whether, apart
5  from the dinner that you've already described,
6  whether you can recall any other conversations
7  that you, Dr. Williams, had with attorneys at
8  Anderson & Wanca.
9    **A.  I don't believe I have.**
10    Q.  Okay.  Do you recall ever having a
11  conversation with Michael Addison?
12    **A.  Yes.**
13    Q.  Okay.
14    **A.  Yes.**
15    Q.  Tell me about that.
16    **A.  We had gone to dinner in Tampa.  And I**
17  **think it was for the original case, but it was**
18  **nothing really specific because I don't know**
19  **specific questions to ask other than general**
20  **questions.**
21    MR. EPSTEIN:  And I'm going to make a
22  general objection and caution the witness, if
23  there's anything -- does Mr. Addison represent
24  you, your company --

Page 32

1    THE WITNESS:  I don't think so.
2    MR. EPSTEIN:  Is he one of the class
3  representatives or class attorneys?
4    THE WITNESS:  I think so.
5    MR. EPSTEIN:  Okay.  I'm going to
6  caution him that if you ask anything about any
7  legal advice given by Mr. Addison that it be
8  subject to attorney-client privilege, and I would
9  like an opportunity to talk to him about it before
10  and before he testifies.
11    Go ahead.
12  BY MR. BLONIEN:
13    Q.  I think it's been clear on the record;
14  but just to make sure we're clear clear, I guess,
15  to your knowledge, does Mr. Addison represent
16  Medical & Chiropractic?
17    **A.  I'm not sure.**
18    Q.  Do you have any reason to assume that he
19  does?
20    **A.  I don't know that answer.**
21    Q.  Okay.  Have you ever talked to him about
22  a relationship as an attorney with Medical &
23  Chiropractic?
24    **A.  I don't believe so.**

Page 33

1    Q.  Are you aware of any agreement that says
2  that Michael Addison was involved as an attorney?
3    **A.  I have never seen anything.**
4    Q.  Okay.  Have you seen a retainer
5  agreement that reflects the terms of the Tampa Bay
6  Buccaneers class action litigation?
7    **A.  This is the one I've only seen**
8  **(indicating).**
9    Q.  And if you could turn on the one that
10  you have seen to 189, the bottom, it says, Other
11  Attorneys.  Do you see where I'm reading from?
12    **A.  I see that.**
13    Q.  "Client agrees that plaintiff's counsel
14  may affiliate with other law firms to assist with
15  this representation, shall notify client of such
16  affiliation, and shall provide client with such
17  other attorney's agreement to the terms of the
18  this retainer agreement, and shall obtain client's
19  written consent to such retention."
20    Did I read that right?
21    **A.  You read what was said.**
22    Q.  And the next sentence is, "Client agrees
23  that he is not now and has never been" -- sorry.
24  Let me repeat that.

Thompson Court Reporters, Inc
thompsonreporters.com

Page 34

1     "Client agrees that he is not now and
2  has not ever been represented by any other
3  attorney with regard to the claims against
4  defendants."
5        Did I read that correctly?
6     A.  Yes.
7     Q.  Do you have any facts that suggest that
8  that's not correct?
9     A.  No.
10    Q.  Okay.  So to the best of your knowledge,
11 that would be accurate?
12    A.  Correct.
13    Q.  That Anderson & Wanca and only Anderson
14 & Wanca was your attorney, your being M & C's
15 attorney, for its claims against the Tampa Bay
16 Buccaneers, correct?
17       MR. EPSTEIN:  Objection.  It misstates
18 the record.
19       But go ahead and answer if you wish.
20       MR. BLONIEN:  Okay.  In what manner does
21 that misstate the record, Counsel?
22       MR. EPSTEIN:  Why don't you ask the
23 witness.
24       MR. BLONIEN:  I'm asking you as making

Page 35

1  the objection --
2        MR. EPSTEIN:  Well, I'm making the
3  objection --
4        MR. BLONIEN:  -- for you to clarify
5  what your objection --
6        MR. COHEN:  Guys, don't talk over,
7  please.
8        MR. EPSTEIN:  Why don't you finish.
9        MR. BLONIEN:  I'm asking you to clarify
10 what your objection is, please.
11       MR. EPSTEIN:  You misstated the record.
12 You can read back the record.  I don't know how
13 else to answer it, but you misstated the record.
14 We can read back what the record says if you wish,
15 and he will stand by what he says in the record.
16 I don't know what else you want me to explain.
17       MR. BLONIEN:  Layli, can you please
18 repeat the question that I asked?
19          (Whereupon, record was read as
20          requested.)
21       MR. EPSTEIN:  That's the same objection.
22       I said you can answer it if you -- if
23 you -- if you can understand it and know the
24 answer.

Page 36

1     A.  I'm not sure I really understand.
2     Q.  Do you know whether Mr. Wanca was a
3  licensed attorney in Florida?
4     A.  Yes.
5     Q.  He is?
6     A.  Yes.
7     Q.  And did he tell you that?
8     A.  I believe --
9        MR. EPSTEIN:  You can answer that
10 question.
11    A.  I believe he said he's practiced many
12 years, but I don't know how many.  So I'm assuming
13 he's a licensed Florida attorney.
14    Q.  And when did he tell you that?
15    A.  I believe it was at that dinner --
16    Q.  Okay.
17    A.  -- in general conversation.
18    Q.  Okay.  You mentioned that there were --
19 there was some time that both you and
20 Ms. Zakzrewski spent away from the office as a
21 result of the litigation, right?
22    A.  Yes.
23    Q.  How much time did you spend on the Tampa
24 Bay Buccaneers case would you estimate?

Page 37

1     A.  Two days.
2     Q.  And --
3     A.  I'm sorry.  Two days for the deposition
4  and the one day I flew up here, three days.
5     Q.  And how much money are you seeking for
6  that time?
7     A.  I don't understand the question.
8     Q.  You've -- M & C has sued Mr. Oppenheim,
9  right?
10    A.  Yes.
11    Q.  And Bock Law Firm.
12    A.  Yes.
13    Q.  And they are seeking damages in that
14 case?
15    A.  Yes.
16    Q.  How much damage?
17    A.  I believe it's $15,000.
18    Q.  And that's for a lost incentive award?
19    A.  Yes.
20    Q.  Apart from the lost incentive award, is
21 M & C seeking any damage for the time that it
22 spent in this litigation?
23       MR. EPSTEIN:  Objection.  It's really a
24 legal question.

10 (Pages 34 to 37)

Page 38

1      But if you can answer it, answer it.
2      **A.   I don't think I -- I -- am I personally**
3  **suing him for time?**
4      Q.   Well, the lawsuit is on behalf of
5  Medical & Chiropractic Clinic, Inc., correct?
6      **A.   I -- right, but I don't -- I don't quite**
7  **understand the --**
8      Q.   Are you seeking to recoup the time that
9  you've spent in this case?
10     **A.   I believe that's under that whole**
11 **umbrella.**
12     Q.   The $15,000 would cover --
13     **A.   Correct.**
14     Q.   -- it all?
15     **A.   Yes.**
16     Q.   Is there anything, apart from the
17 $15,000, that you can think of that M & C is
18 asking for as damages in this case?
19          MR. EPSTEIN:  Again, it calls for a
20 legal conclusion.
21          But go ahead and answer.
22     **A.   I don't -- I don't know that answer.**
23     Q.   Okay.
24     **A.   I -- I don't know.  I don't know that**

Page 39

1  answer.
2      Q.   You don't know that answer.  The only
3  thing that you know is the $15,000?
4      **A.   Yes.**
5      Q.   Okay.  And you're not aware of any other
6  facts as to what the damages might be in this
7  case?
8          MR. EPSTEIN:  Objection.  He already
9  answered what he believed to be the factual
10 predicate.
11 BY MR. BLONIEN:
12     Q.   He's not instructing you not to answer,
13 so you need to answer.
14     **A.   No.  I'm trying to understand, again,**
15 **for my portion --**
16     Q.   Mm-hmm.
17     **A.   -- it was the three days at least.**
18 **That's the only time that I've been away from the**
19 **office.  And then Michelle's time, whatever that**
20 **is.**
21     Q.   Okay.  And my question then, recognizing
22 that you're saying that you spent time away from
23 the office in this litigation, are you seeking to
24 recover that --

Page 40

1          MR. EPSTEIN:  Objection --
2  BY MR. BLONIEN:
3      Q.   -- do --
4          MR. EPSTEIN:  Are you done?
5          MR. BLONIEN:  I am not.  I was in the
6  middle of my sentence.
7          MR. EPSTEIN:  I thought you were done.
8  BY MR. BLONIEN:
9      Q.   Are you seeking to recover the time that
10 you lost in this case, and if so, how much?
11     **A.   And I --**
12          MR. EPSTEIN:  Objection.
13          I'm going to ask you to stop so I can
14 make my objection.
15          It calls for a legal conclusion.
16          But go ahead and answer it.
17     **A.   I think that's covered under the 15,000.**
18     Q.   Okay.
19     **A.   That's as a part of the legal**
20 **representative as a class representative.**
21     Q.   Do you know of any other facts that
22 support damages, apart from the incentive award,
23 that $15,000 that you're talking about?
24     **A.   I don't know what facts you may be**

Page 41

1  referring to.
2      Q.   I don't know what facts I'm referring to
3  either because I'm asking you what personal
4  knowledge you have.  And if you don't have it,
5  that's simple.  I'm just trying to make sure that
6  I'm not missing anything here.
7      **A.   I don't -- I don't have any other**
8  **knowledge.**
9      Q.   You don't have any other knowledge of
10 the ways in which Medical & Chiropractic was
11 allegedly damaged by Mr. Oppenheim and Bock Law
12 Firm?
13          MR. EPSTEIN:  I believe it's been asked
14 three times.
15          But go ahead and ask it -- answer it
16 again.
17     **A.   I -- from the -- from my time away and**
18 **Michelle's time, that's it.**
19     Q.   The 15,000 bucks?
20     **A.   Yes.**
21     Q.   Okay.  Do you have any personal
22 knowledge of facts that would support the breach
23 of fiduciary duty claim that M & C is bringing
24 against Mr. Oppenheim?

11 (Pages 38 to 41)

Page 42

1       MR. EPSTEIN: Objection. It requires
2  him to be knowledgeable about a legal concept, and
3  you haven't let -- you haven't created the
4  foundation for that.
5       MR. BLONIEN: Okay. That's an awfully
6  long objection, and I would encourage you to limit
7  it to form and not be giving a narrative
8  instruction for the witness, please, Counsel.
9  BY MR. BLONIEN:
10    Q.  Go ahead and answer.
11    **A.  Ask would you repeat the question,**
12  **please. I'm sorry.**
13       MR. BLONIEN: Okay. Kayli, can you
14  repeat -- or Layli, sorry, can you repeat the
15  question?
16       (Whereupon, record was read as
17       requested.)
18       MR. EPSTEIN: Same objection.
19    **A.  I'm still not quite understanding your**
20  **question.**
21    **Can -- can you say it again, please?**
22       **(Whereupon, record was read as**
23       **requested.)**
24    **A.  No.**

Page 43

1    Q.  Do you have any personal knowledge of
2  facts that would support the aiding and abetting
3  claim against Bock Law Firm?
4       MR. EPSTEIN: Objection to the form of
5  the question.
6    **A.  No.**
7       MR. BLONIEN: Okay. Let's take a short
8  break, please. Off the record.
9       THE VIDEOGRAPHER: Off the record. The
10  time is 1:25.
11       (Whereupon, a short break was
12       taken.)
13       THE VIDEOGRAPHER: We are back on the
14  record. The time is 1:31.
15       EXAMINATION
16  BY MR. COHEN:
17    Q.  Good afternoon, sir. My name is Dan
18  Cohen. And I do recall seeing you in this, I
19  think, same conference room when we did the
20  depositions of David Oppenheim and Phil Bock; but
21  I don't know if we actually got to introduce
22  ourselves at the time.
23       Because my name is Dan Cohen and because
24  I heard you multiple times in your testimony

Page 44

1  responding to Mr. Blonien's questions use the name
2  Cohen referring to somebody, something, some stuff
3  that I don't think it's me, but since I didn't
4  know what you were talking about, I don't know.
5       What were you referring to generally?
6  And I'm not looking for you to give me some big
7  narrative. If you can even give me an idea of
8  what you were referring to when you would have
9  used the name Cohen in your earlier testimony
10  answering Mr. Blonien's questions, I can then have
11  some follow-up questions.
12    **A.  That was pertaining to your filing --**
13  **your firm filing the other class action, I**
14  **believe.**
15    Q.  The Technology Training case?
16    **A.  I'm not familiar with Technology.**
17    Q.  Okay. And I'll represent to you,
18  Medical & Chiropractic has been a named plaintiff
19  in what we call a putative or potential class
20  action against the Buccaneers; and another named
21  plaintiff in that case is called Cin-Q
22  Automobiles.
23       So even though Medical & Chiropractic is
24  the named plaintiff in that case, everybody has

Page 45

1  been referring to that as the Cin-Q case. Okay?
2    **A.  Our case is considered the Cin-Q case?**
3    Q.  That's the way everybody calls it. I'll
4  just ask you to assume that. Okay?
5    **A.  Okay.**
6    Q.  Okay. And then the Bock Law Firm, by
7  which I'm employed, in May of 2016 filed a
8  putative class action against the Buccaneers
9  relating to the same fax broadcasting; and one of
10  the two named plaintiffs in the putative class
11  action we filed is called Technology Training
12  Associates.
13       So most of us are calling that case the
14  Technology Training case. Okay?
15    **A.  Okay.**
16    Q.  All right. And I am employed by Bock
17  Law Firm, so I have been involved in the
18  Technology Training case.
19       When I heard my name come up earlier in
20  your discussions with Mr. Blonien, were you
21  referring to my participation or role in
22  prosecuting the Technology Training case?
23    **A.  I thought you were a partner in the**
24  **firm, whatever that is.**

12 (Pages 42 to 45)

Page 46

1    Q.   I wish, sir.
2    A.   And that you represented the firm.
3    Q.   And so you know, I represent Bock Law
4    Firm because Bock Law Firm is a party.  It's a
5    defendant that has been sued in this case, sued by
6    Medical & Chiropractic.  And even though I'm
7    employed by Bock Law Firm, I'm also representing
8    it as one of its counsel in this case.  Is that
9    fair?
10   A.   So you're not a partner?
11   Q.   I am not a partner.
12   A.   You're an employee, and it's really the
13   Bock Law Firm I should have been speaking about
14   as -- is that correct?
15   Q.   Yeah, I think so.  And that's -- no
16   criticism.
17   A.   Okay, okay.
18   Q.   Just I kept hearing my last name.  I
19   wasn't even sure if you were talking about me
20   because of the way it was coming up.
21   A.   As never really knowing you, I don't
22   know.
23   Q.   Okay.  But now we're speaking the same
24   language.

Page 47

1    A.   I think so.
2    Q.   Okay.  And this -- my question won't
3    take as long as Mr. Blonien's.  And he didn't take
4    very long, but I -- I'll probably be even shorter.
5         When Mr. Blonien asked you to explain or
6    detail Medical & Chiropractic's harm or injury
7    allegedly resulting from some misconduct by
8    Mr. Oppenheim and Bock Law Firm, one of the things
9    you -- these just my notes, so it's not a
10   verbatim.  So if you think I'm saying something
11   incorrect, don't let me put words in your mouth.
12        You said something to the effect, we,
13   which I assume means Medical & Chiropractic, are
14   the class representative in what I call the Cin-Q
15   case and as class representative were entitled to,
16   and you used the words small stipend or stipend
17   (pronounced different)?
18   A.   Yes.
19   Q.   Okay.  And then in later discussions
20   with Mr. Blonien, you clarified that what the
21   quantification of that -- and I'll tell you, we
22   call that incentive award in class actions for
23   whoever serves as the class representative -- you
24   quantified that at $15,000.

Page 48

1    A.   Yes.
2    Q.   Okay.
3    A.   It's called a what?
4    Q.   Incentive award.
5    A.   Incentive award.  Okay.
6    Q.   Are you aware that in the Technology
7    Training case, the other Buccaneers class action
8    where Bock Law Firm is prosecuting it, that
9    everybody in that case has agreed that if that
10   settlement gets finally approved that Medical &
11   Chiropractic is free to submit its petition for
12   an incentive award to the judge in the Technology
13   Training case with the opportunity to receive the
14   same incentive award it would have received if the
15   settlement had occurred in the Cin-Q case instead;
16   are you aware of that?
17   A.   No.
18   Q.   Okay.  Would that be significant to you
19   in evaluating whether Medical & Chiropractic had
20   actually suffered this harm, this loss of this
21   $15,000 incentive award, to know that there is
22   nothing to prevent Medical & Chiropractic from
23   requesting and receiving that award through the
24   settlement of the Technology Training case?  Would

Page 49

1    that be significant to you in evaluating whether
2    Medical & Chiropractic has actually necessarily
3    suffered that harm?
4         MR. EPSTEIN:  Objection, form of
5    question.
6    A.   Let me ask you a question.  You're
7    saying that if the -- the incentive award with
8    Wanca could be the same incentive award with your
9    firm?
10   Q.   Close.  And by the way, I don't mind it
11   doing that.
12   A.   Because I'm a little confused.
13   Q.   Sure.
14   A.   And I'm not --
15        MR. EPSTEIN:  Just tell him you're
16   confused and let him restate it.
17   A.   Okay.  I'm confused.
18   Q.   I don't mind answering questions if it
19   gets us through confusion.
20        What I'll ask you to assume is the
21   attorneys don't control incentive awards.  They
22   can't promise them, they can't guarantee them, and
23   they don't get to decide the amount.
24        The judge having control of the class

13 (Pages 46 to 49)

Page 50

action, if he approves the settlement, that judge can decide whether somebody is entitled to an incentive award and, if so, how much it should be.

And it just so happens in the Cin-Q case and in the Technology Training case, it's the same judge. It's Judge Porcelli. He's the judge overseeing the Cin-Q case with Medical & Chiropractic. He's the judge overseeing the Technology Training case.

And so all I'm asking you -- and I asked you if you were aware, and you said no, so I'll ask you to assume in the Technology Training case, everyone agreed that if the proposed settlement for the class gets approved, then Medical & Chiropractic is free to request and receive from Judge Porcelli whatever incentive award it might have been able to request and obtain if the settlement had happened in the Cin-Q case; but it's just going to happen in the Technology Training case.

And I know you don't know that to be true, and you don't have to accept what an attorney tells you to be truth.

But if I ask you for purposes of this

Page 51

question to assume that's true, would that have any effect on your assessment of whether the Technology Training case has harmed Medical & Chiropractic by affecting the possibility of an incentive award?

MR. EPSTEIN: Objection, form of question.

**A. Well, I believe it -- it has because of these -- I believe the depos for myself and Michelle are a result of this, not in favor of us whether we win with Bock or with Wanca. It's still we're harmed either way you look at it because of our loss of time, and then we've had additional time because of these depositions.**

Q. Did you know that this agreement in the Technology Training case, namely, that Medical & Chiropractic was free to request and receive whatever incentive award it's entitled to in the Technology Training case, did you know that that agreement happened well before yourself and your wife were deposed in this case?

MR. EPSTEIN: Objection, form of question.

**A. I -- I'm not sure if that has anything**

Page 52

**to do with me here today. I'm not really understanding --**

Q. Okay. Well --

**A. -- the question.**

Q. -- you seem to be suggesting that your harm is increased, so the incentive award isn't the only issue because in addition to that, you and your wife have had to come testify.

But if finding out that you could have gotten the incentive award in the Technology Training case could have made this lawsuit unnecessary, then you never would have had to come and give these depositions.

MR. EPSTEIN: Is that your testimony or your argument, or is that a question?

BY MR. COHEN:

Q. So I'm asking you: With that in mind, why doesn't that have any effect on your assessment of whether you've been harmed to the tune of the incentive award?

MR. EPSTEIN: I think that's been the fourth time that's been asked, and it's getting argumentative -- let me finish -- and I object to the form of the question because it's getting

Page 53

argumentative.

BY MR. COHEN:

Q. You can answer.

**A. I think I'm more confused.**

MR. EPSTEIN: Thank you.

**A. But the original case with Wanca, I think we should follow through with Wanca irregardless of who wins. I believe that is the correct way to do so and fair way to do so.**

Q. Why do you believe you should follow through with Wanca?

**A. I think they have worked very hard on this case for many years and put forth a lot of effort and time; and I know my wife has over a year or so, however long it's been. And so I typically stay with the first person, if that's what you're asking.**

Q. You dance with the one that brung you?

**A. Yes.**

Q. Now, you said, "I think we should follow through with Wanca irregardless of who wins."

And I just want to make certain I'm understanding what that refers to, "irregardless of who wins."

Thompson Court Reporters, Inc
thompsonreporters.com

Page 54

```
 1        Which -- which two sides are the winners
 2  versus the losers in that statement, "irregardless
 3  of who wins?"
 4        MR. EPSTEIN:  Objection, form of
 5  question.
 6     A.  I don't decide who wins or loses.  The
 7  court does, and you all do.  So that's all I can
 8  tell you on that.
 9     Q.  I'm not being clear.  When you say
10  "irregardless of who wins," I don't know if you
11  mean in this lawsuit whether Medical &
12  Chiropractic wins versus Bock and -- Bock Law Firm
13  and Oppenheim winning or whether you're talking
14  about the Cin-Q case and the issue is whether
15  Medical & Chiropractic and Cin-Q win or the
16  Buccaneers win.
17        When you say "irregardless of who wins,"
18  I don't know in which case you're talking about.
19  Can you clarify that for me?
20     A.  That would be the first case with the
21  Bucs, the Cin-Q case.
22     Q.  Okay.  And I appreciate that.  Now I get
23  it.  You think you should follow through with
24  Wanca without regard to who ends up winning in the
```

Page 55

```
 1  Cin-Q case; whether it's the plaintiffs or the
 2  Buccaneers, you think the follow -- go -- go to
 3  the end with Wanca.
 4     A.  Yes.
 5     Q.  Okay.  And do you perceive that by
 6  prosecuting this case -- and by you, I mean M &
 7  C -- prosecuting this lawsuit against
 8  Mr. Oppenheim and Bock Law Firm that it serves the
 9  interest of trying to make sure that the Cin-Q
10  case is the one that gets to go forward against
11  the Buccaneers?
12        MR. EPSTEIN:  Objection to form of
13  question.
14        THE WITNESS:  Do you want me to answer?
15        MR. EPSTEIN:  Yeah, if you can.
16     A.  Okay.  So if I go back to the appellate
17  brief that I read where Cin-Q was charging 70
18  million or so, I believe that's right, and the
19  Bock was about 20 million, representing the class
20  would be much better for the class as a whole,
21  wouldn't it, to go for the 70 million versus the
22  20 million or whatever the case may be, if it was
23  even 25 million or 30 million.
24        But if that was the case, then we all
```

Page 56

```
 1  would stand to benefit more, anybody who was on
 2  that list.
 3     Q.  And I do understand what you've said,
 4  but I'm not positive if it fully responds to what
 5  my question was.
 6        My question is:  Do you perceive that
 7  your prosecution, M & C's prosecution, of this
 8  case against Mr. Oppenheim and Bock Law Firm
 9  serves the interest of trying to make sure that
10  the Cin-Q action is the one that goes forward
11  against the Buccaneers?
12        MR. EPSTEIN:  Objection to form of
13  question.
14        But go ahead and answer if you
15  understand it.
16     A.  I'm not sure I fully understand a lot of
17  these questions.
18        But I think if you're asking for more
19  and you get more, you should stay with that
20  person, that -- that attorney firm who is
21  representing the case -- the class better than
22  undercutting the first one for 20 million, which
23  is -- I don't know relatively what it's worth and
24  what it's not worth.  But I still think that's a
```

Page 57

```
 1  better goal for the class as a whole; and as a
 2  class representative, I should represent that.
 3        And in that regard, the case against
 4  Mr. Oppenheim should go forward with what --
 5  however Mr. Wanca is carrying it forward because
 6  obviously there's issues there.
 7     Q.  I understand your last answer, and I
 8  understand the one you gave before that.  You're
 9  talking about bigger is better, more is better,
10  Wanca's dedicated to getting more, you think, than
11  the Bock Law Firm got in its settlement.  I
12  understand that.
13        I'm focused on why you're prosecuting
14  this case.  And my only question is:  Are you
15  prosecuting this case to try to help serve the
16  Cin-Q case so the Cin-Q case has its chance to go
17  forward?
18        MR. EPSTEIN:  Objection, form of
19  question.
20     A.  You're talking about the case against
21  Mr. Oppenheim itself, is that --
22     Q.  Yes, this case --
23     A.  This case, this only -- let's talk about
24  one case at a time, and maybe I could be more
```

Thompson Court Reporters, Inc
thompsonreporters.com

Page 58

1    understanding.
2        Q.   But I'm trying to see if there's a
3    connection --
4            MR. EPSTEIN:  Let him -- let him finish
5    answering the question, please.
6        A.   Because I'm confused about the Cin-Q
7    case and Mr. Oppenheim's case because they seem to
8    roll in together; but they are really separate
9    cases is what you're saying, correct?
10       Q.   Well, they are separate lawsuits.
11       A.   So then you're asking me what I think
12   about Mr. Oppenheim's separate case.
13       Q.   I'm asking you if you're doing B to help
14   A.  A is the Cin-Q case.  B is this case against
15   Mr. Oppenheim.  I want to know:  Are you doing B,
16   the lawsuit against Oppenheim, to help A, the
17   Cin-Q case?
18           MR. EPSTEIN:  Objection, again, form of
19   question.
20       A.   Well, I'm not sure if B helps A.
21       Q.   Okay.
22           THE WITNESS:  I probably --
23           MR. EPSTEIN:  You took the table with
24   you.

Page 59

1            THE WITNESS:  I believe I did.
2            MR. EPSTEIN:  Happens to me all the
3    time.
4            THE WITNESS:  Sorry.
5            MR. EPSTEIN:  I'll get you some coffee.
6    Why don't you just --
7            THE WITNESS:  I was going to get some
8    water.
9            MR. EPSTEIN:  I'll get you some water.
10           MR. COHEN:  Take your time.
11           MR. EPSTEIN:  Why don't you just be
12   seated.
13           THE WITNESS:  Okay.  I apologize.
14           Is it still hooked on?
15           MR. EPSTEIN:  Hold on for a second.
16           MR. COHEN:  We'll wait.
17           THE WITNESS:  Okay.  I apologize.
18           MR. EPSTEIN:  You want some ice in it?
19           THE WITNESS:  No, just water, please.
20   Thank you.
21           MR. BLONIEN:  I can assure you, Doctor,
22   you've been -- you're in good company in having
23   done that.
24           MR. OPPENHEIM:  Well, you watched me do

Page 60

1    it.
2            THE WITNESS:  Thank you very much.
3            Can you still hear me?  Okay.
4            Yes, sir.
5    BY MR. COHEN:
6        Q.   Okay.  So going back to something you
7    said a little while ago, you were telling me -- I
8    asked a question; and in your answer to the
9    question, you brought up the court of appeals, the
10   recent court of appeals' decision.
11           And you said that it was -- it referred
12   to the Cin-Q case seeking $70 million and the Bock
13   Law Firm case settling for $20 million; and then
14   you said you weren't sure, maybe it was 20, maybe
15   it was 25.
16           Where did you get those numbers, 70
17   million on the Cin-Q case, 20 to $25 million on
18   the Bock Law Firm case?
19       A.   It was in that paper.
20       Q.   And I'll talk to you about that a little
21   bit more.  But wherever it came from, you have
22   received that kind of information that what the
23   plaintiffs were seeking in the Cin-Q action was
24   somewhere up around $70 million and the Bock Law

Page 61

1    Firm was around 20 to $25 million?
2        A.   In that paper, yes.
3        Q.   Do you have any personal knowledge from
4    your own involvement in -- as Medical &
5    Chiropractic and as being the potential class
6    representatives, do you have any information or
7    knowledge as to whether either of those numbers
8    are true?
9        A.   I do not.
10       Q.   And I think I got this quote right, but
11   it's part of a bigger statement you made; and I
12   didn't write down the whole thing.  I only wrote
13   down the quote.
14           I've got that you said, "So I think we
15   should go forward however Mr. Wanca is carrying it
16   forward."
17           What were you referring to, and what do
18   you mean by that?
19       A.   The Cin-Q case.
20       Q.   Okay.  And what do you mean by "go
21   forward however Mr. Wanca is carrying it forward?"
22       A.   Well, I don't know the legal procedures
23   of what comes today, tomorrow, or next week.  The
24   attorneys do.  You know the format.  I do not.

Page 62

1    Q.   So you are relying on Mr. Wanca's
2  knowledge and expertise, fair?
3    A.   Yes.
4    Q.   You're relying on his good judgment.
5    A.   Yes.
6    Q.   And you're relying on the fact that he
7  wouldn't put his interests ahead of the interest
8  of the class that he's trying to represent.
9    A.   Yes.
10   Q.   Is it fair to say though that since
11 you're deferring to his expertise and judgment,
12 you don't know whether the positions he is staking
13 out in settlement negotiations with the
14 Buccaneers, you don't know whether he's acting in
15 the best interest of the class or, alternatively,
16 whether he's putting his self interest ahead of
17 the class; you don't know one way or the other, do
18 you?
19   A.   No.
20   Q.   As you understand it, how did Medical &
21 Chiropractic -- and by that, I mean the company or
22 you or your wife -- how did you all in the very
23 beginning ever know about, come into contact with
24 Brian Wanca or his firm?

Page 63

1    **A.   I had gone to a local in -- well, it's**
2  **not informal, I guess it's informal -- radiology**
3  **center in conjunction, I believe, with a law firm.**
4  **But I don't know which one because it happens all**
5  **the time.**
6    **They get together and bring all the**
7  **doctors together in the area.  So you get 50, 100,**
8  **200 doctors together; and they bring up new**
9  **Florida law, new interesting cases, things that**
10 **are pertinent to what we do.**
11   **And in that setting, they brought forth**
12 **a packet of information on -- one of the attorneys**
13 **had mentioned something on these type of faxes**
14 **that were not legal.  And they gave us a packet of**
15 **information.**
16   **I took that information from this**
17 **conference, whatever you wish to call it, and then**
18 **took it to my wife.  And I said, "Here, this is**
19 **what they told me.  This is the information I**
20 **have.  I don't know anything about this, but here**
21 **it is.  You can look it up."**
22   **And I believe that's how she got ahold**
23 **of Mr. Wanca.**
24   Q.   And do you know if -- strike that.

Page 64

1    As you recall, and I know it was a while
2  ago, but was Brian Wanca or his firm's
3  information, his contact information and whatnot,
4  actually in some of the documents in that packet?
5    **A.   I don't know.  They give me a packet.  I**
6  **look at it briefly.  I go, okay.  It's another**
7  **thing.  And here, I don't know if this means**
8  **anything or not, which we get that stuff all of**
9  **the time.  It's, you know, solicitation type**
10 **stuff, informational type stuff.  Accountants do**
11 **it.  They all do it to give you their information**
12 **on how they best -- how they can help you.**
13   Q.   Left it to Ms. Zakzrewski to review?
14   **A.   I just -- she wasn't there.  I just gave**
15 **it to her and said, "Would you go over this and**
16 **see if this has any merit."**
17   Q.   Do you know from that point, when you
18 gave her the packet and said what you just told
19 me, do you know what unfolded or transpired that
20 then actually led to communication between your
21 wife and anyone at Anderson Wanca?
22   **A.   No.  I don't know any of that.**
23   Q.   It's my understanding that Brian Wanca
24 or his law firm has agreed to cover all of the

Page 65

1  legal fees for the Foley law firm in prosecuting
2  this case for M & C against Oppenheim and Bock,
3  including all of Foley law firm's litigation
4  expenses.  Is that your understanding too?
5    **A.   I believe so.**
6    Q.   Do you have any idea how much the Foley
7  firm has invoiced to Anderson Wanca and how much
8  Anderson Wanca has paid in Foley's legal fees and
9  litigation costs to date?
10   **A.   You're asking me if I know how much**
11 **Mr. Wanca has paid the law firm of Foley?**
12   Q.   If you have any idea at all.
13   **A.   I have no idea.**
14   Q.   You haven't seen any invoices at any
15 time?
16   **A.   No, sir.**
17   Q.   And I'll -- I'll ask you to assume that
18 as of early this year, February, March of this
19 year, the Foley firm had already billed Brian
20 Wanca; and Brian Wanca had already paid just under
21 $400,000 in attorneys' fees and expenses on this
22 case that Medical & Chiropractic has brought
23 against Mr. Oppenheim and Bock Law Firm.  And a
24 lot has happened since then.  So it's got to be a

17 (Pages 62 to 65)

Page 66

1 lot more by now.
2     If Bock law -- I'm sorry.
3     If Brian Wanca and his firm weren't
4 willing to pay M & C's fees and expenses in
5 prosecuting this case, would you be willing to
6 incur those kinds of fees and expenses to
7 prosecute this case?
8     MR. EPSTEIN:  Objection, form of
9 question.
10    **A.   I don't have those type of funds.**
11    Q.   I am not for purposes of this question
12 criticizing the idea that an incentive award could
13 be $15,000 or so or calling into question any of
14 your claimed damages in this case.  I'm not
15 acknowledging them either.  I'm just saying, I
16 heard what you said about your harm, your damages.
17    You would agree that spending 500, 600,
18 $700,000 or more on this lawsuit that Medical &
19 Chiropractic has brought against Mr. Oppenheim and
20 Bock Law Firm, that much money greatly exceeds any
21 damages that Medical & Chiropractic suffered
22 because of anything that Mr. Oppenheim or Bock Law
23 Firm did.  You would agree with that, wouldn't
24 you?

Page 67

1     MR. EPSTEIN:  Objection, form of
2 question.
3     **A.   I'm not sure I understand the relevance**
4 **of the 15,000 versus 5 or 700,000 in the 2**
5 **separate -- they are 2 separate issues.**
6     Q.   Why?
7     **A.   Well, I thought they were.**
8     Q.   Well, you bring a lawsuit to get your
9 sense of damages.  You feel you've been damaged in
10 a certain amount of money.  You want to get -- you
11 want to get your damages.
12    So if your damages are a thousand
13 dollars, as long as you don't have to spend more
14 than a thousand to get it, maybe it's worth it.
15 But a lot of people would think spending $10,000
16 to get $1,000 in damages isn't worth it.
17    Why would you prosecute a case to
18 recover some 10,000, 15,000, 25,000, $30,000 in
19 damages that M & C allegedly suffered?  Why would
20 you go forward with that case if it's costing
21 hundreds and hundreds and hundreds of thousands of
22 dollars to prosecute?
23    MR. EPSTEIN:  Objection, form of
24 question.  This is getting very argumentative.

Page 68

1 But go ahead and ask it, and he'll answer it --
2     MR. BLONIEN:  You know, I'd like to
3 interpose an objection as well.  Mr. Epstein, I've
4 been --
5     MR. EPSTEIN:  That's fine.
6     MR. BLONIEN:  -- watching you make all
7 sorts of facial gestures and guffawing at the
8 questions that are being asked --
9     MR. EPSTEIN:  Yes.
10    MR. BLONIEN:  -- and whispering to
11 co-counsel in his ear --
12    MR. EPSTEIN:  Yeah.
13    MR. BLONIEN:  -- all of which entirely
14 are inappropriate and in my view are directing the
15 answers of the witness, which is not okay.
16    And I'm also confused.  I don't think
17 that you've ever made an appearance in this case,
18 have you?
19    MR. EPSTEIN:  My firm has appeared in
20 this case.
21    MR. BLONIEN:  My question is:  Have you
22 made an appearance in this case?
23    MR. EPSTEIN:  I'm not a witness, and you
24 can cross-examine the witness if you want.

Page 69

1     And second of all --
2     MR. BLONIEN:  I'd also like to object --
3     MR. EPSTEIN:  -- the questions that your
4 co-counsel has been asking has been his own
5 narrative.  They have lasted far, far longer than
6 the answer has; and what he assumes is well beyond
7 the purview of asking a question of this witness.
8     But go ahead and ask your question of
9 the witness.
10    MR. BLONIEN:  I'd also like to state an
11 objection that Mr. Epstein has not made an
12 appearance in this case pro hac vice or otherwise.
13 Mr. McMahon has who is sitting here and would be
14 more of a legitimate person to be making these
15 sorts of objections than Mr. Epstein who has not
16 made an appearance in this case.
17    I apologize for interrupting.
18    MR. COHEN:  That's okay.
19    For somebody who is participating
20 without an appearance at the courtesy of defense
21 counsel, I would appreciate it if you kept your
22 critiques to yourself.
23 BY MR. COHEN:
24    Q.   So do you need her to read the question

18 (Pages 66 to 69)

Page 70

1  back?
2  **A.  I'm sure I do.**
3       **(Whereupon, record was read as**
4       **requested.)**
5  **A.  I'm not sure I know how to answer that**
6  **question.**
7  Q.  Honestly?
8  **A.  Honestly.**
9  Q.  No.  I mean, how about honestly.
10 **A.  Well, that's what I'm -- I'm not sure**
11 **how to answer that question.  I -- I think I'm a**
12 **little confused on --**
13 Q.  What confuses you?
14 **A.  -- the cases, and I'm not really sure**
15 **about the question.**
16 Q.  What confuses you?
17 **A.  This is a separate lawsuit.**
18 Q.  Yes.
19 **A.  And you're saying that Mr. Wanca costs**
20 **hundreds of thousands of dollars.**
21 Q.  Paid.
22 **A.  Paid already.**
23 Q.  Mm-hmm.
24 **A.  Well, then maybe I should have a**

Page 71

1  **conversation with him and ask him.  Otherwise I**
2  **don't have an answer for that question.**
3  Q.  Going back to some questions that
4  Mr. Blonien had with you about communications you
5  had with Michael Addison, have you ever
6  communicated with Mr. Addison in any way, shape,
7  or form related to this case that we're here about
8  today, M & C versus Oppenheim and Bock Law Firm?
9  **A.  No.**
10 Q.  Do you recall when you were sitting in
11 this room during the deposition of Mr. Oppenheim
12 some months ago, weeks ago, that the issue arose
13 and he testified regarding the fact that Anderson
14 Wanca's payment of attorneys' fees and litigation
15 expenses to Foley on behalf of M & C can be
16 properly viewed as income to M & C which must be
17 declared to the IRS and taxes must be paid on it?
18 Do you recall being in this room when that issue
19 and testimony came up with Mr. Oppenheim?
20 **A.  I don't remember that.**
21 Q.  To your knowledge, has the Anderson
22 Wanca law firm's financial contribution to
23 prosecute or finance this case for Medical &
24 Chiropractic against Oppenheim and Bock Law Firm,

Page 72

1  has that been declared by Medical & Chiropractic
2  or by you and your wife as income on your 2016 tax
3  returns?
4       MR. EPSTEIN:  Objection, form of
5  question.
6       Go ahead and answer.
7  **A.  I don't think so.**
8  Q.  Have you consulted with an accounting
9  expert regarding that specific question of whether
10 the funds spent by Wanca on this case for your
11 benefit should be deemed taxable income?
12      MR. EPSTEIN:  Objection, form of
13 question.
14 **A.  Michelle is an accountant.  She does**
15 **that portion.  So I never thought to ask that**
16 **question of that nature.**
17 Q.  You're letting it ride on
18 Ms. Zakrzewski's expertise.
19 **A.  She does --**
20      MR. EPSTEIN:  Objection, form if that's
21 a question.  Object to your comment or the
22 question.
23 **A.  She does all of our accounting.**
24 Q.  Last thing, one of the first things you

Page 73

1  said to Mr. Blonien when he asked you about the
2  harm or injury that you and Medical & Chiropractic
3  have suffered, you said, "We are the class
4  representatives" in the Cin-Q case.
5       And you didn't say Cin-Q case, but we
6  all now know that term.  "We are the class
7  representatives" in the Cin-Q case.
8       Do you understand, sir, that, in fact,
9  Medical & Chiropractic was never, and to this day
10 still has not been, appointed by the court to be a
11 class representative in the Cin-Q case?
12      MR. EPSTEIN:  Objection, form of
13 question.
14 **A.  I did not know that.**
15 Q.  Sir, I appreciate your time.
16      MR. BLONIEN:  We can go off the record.
17      THE VIDEOGRAPHER:  Off the record.  The
18 time is 2:12.
19      THE REPORTER:  Did you want to waive or
20 reserve signature?
21      MR. EPSTEIN:  We will reserve signature.
22      (Whereupon the deposition
23      adjourned.)
24

19  (Pages 70 to 73)

Page 74

```
 1    STATE OF ILLINOIS  )
 2                       ) SS
 3    COUNTY OF C O O K  )
 4
 5
 6    I,_____,
 7    do hereby certify that I have read the foregoing
 8    transcript of my deposition consisting of pages
 9    ____ through ___, inclusive; and I find it is a
10    true and correct transcript of my deposition so
11    given as aforesaid.
12
13
14    _____
15
16
17    Subscribed and sworn to
18    before me this ____ day
19    of _____, 2017.
20
21    _____
22    Notary Public
23
24
```

Page 76

```
 1    STATE OF ILLINOIS  )
 2                       ) SS:
 3    COUNTY OF C O O K  )
 4
 5          I, Layli Phillips, RPR, CRR,
      CSR, in and for the County of Cook and State of
      Illinois, do hereby certify that DR. GREGORY
 6    WILLIAMS on November 13, 2017, was by me first
      duly sworn to testify to the truth, the whole
 7    truth, and nothing but the truth, and that the
      above deposition was recorded stenographically by
 8    me and transcribed by me.
 9          I FURTHER CERTIFY that the foregoing
10    transcript of said deposition is a true, correct,
      and complete transcript of the testimony given by
      the said witness at the time and place specified.
11
12          I FURTHER CERTIFY that I am not a
      relative or employee or attorney or employee of
13    such attorney or counsel, or financially
      interested directly or indirectly in this action.
14          IN WITNESS WHEREOF, I have set my hand.
15
16    _Layli Phillips_____
17    Layli Phillips
      Registered Professional Reporter
18    Certified Realtime Reporter
      Certified Shorthand Reporter
19    Certificate No. 084.003900
20
21
22
23
24
```

Page 75

```
 1    IN RE THE CASE OF:  MEDICAL & CHIROPRACTIC CLINIC,
 2    INC., vs. DAVID M. OPPENHEIM, et al.
 3    taken on:  November 13, 2017
 4
 5    PAGE   LINE       REASON AND CHANGE
 6    _____
 7    _____
 8    _____
 9    _____
10    _____
11    _____
12    _____
13    _____
14    _____
15    _____
16    _____
17    _____
18    _____
19    _____
20    _____
21    _____
22    _____
23    _____
24    _____
```

20  (Pages 74 to 76)

**A**

abetting 43:2
ability 22:20
able 50:17
above 76:7
accept 50:22
accountant 72:14
Accountants 64:10
accounting 72:8,23
accurate 34:11
acknowledging 66:15
acting 62:14
action 9:7,10 10:19 11:22 13:13 21:2 21:3 22:12 24:7 33:6 44:13,20 45:8,11 48:7 50:1 56:10 60:23 76:13
actions 47:22
actually 43:21 48:20 49:2 64:4 64:20
Adams 2:9
Addison 31:11,23 32:7,15 33:2 71:5 71:6
addition 52:7
additional 9:10 51:14
adjourned 73:23
advertisements 22:17
advice 32:7
affecting 51:4
affiliate 33:14
affiliation 33:16
aforesaid 74:11
after 6:3 23:15 26:6 29:14
afternoon 6:7,8 43:17
afterward 24:9 29:6
again 38:19 39:14 41:16 42:21 58:18
agent 17:11
ago 12:15 60:7 64:2 71:12,12
agree 66:17,23
agreed 48:9 50:13 64:24
agreement 20:23 21:10 33:1,5,17 33:18 51:15,20
agreements 16:24
agrees 33:13,22

34:1
ahead 32:11 34:19 38:21 40:16 41:15 42:10 56:14 62:7 62:16 68:1 69:8 72:6
ahold 63:22
aiding 43:2
al 75:2
Alabama 7:15
allegedly 41:11 47:7 67:19
already 31:5 39:8 65:19,20 70:22
also 2:17 5:15 10:3 11:19 21:4 23:18 27:16 28:18 46:7 68:16 69:2,10
alternatively 62:15
am 30:14 38:2 40:5 45:16 46:11 66:11 76:11
amount 12:7,8 49:23 67:10
Anderson 10:20 11:21 12:22 21:12 21:19,21 24:9 26:15 30:4,11 31:8 34:13,13 64:21 65:7,8 71:13,21
another 11:24 21:24 27:1 44:20 64:6
answered 39:9
answering 19:9 44:10 49:18 58:5
answers 24:1 68:15
anybody 8:9 56:1
anyone 8:11 21:15 21:22 23:21 24:2 26:13,15 27:6 30:3 64:21
anything 9:13 10:13 15:7 20:24 28:1 28:20 30:4,7,7 31:23 32:6 33:3 38:16 41:6 51:24 63:20 64:8 66:22
anywhere 7:6,14 8:7
apart 8:12 13:2 15:19 21:21 24:3 24:9 26:13 31:4 37:20 38:16 40:22
apologize 59:13,17 69:17

apparently 21:1
appeals 60:9
appeals' 60:10
appearance 68:17 68:22 69:12,16,20
APPEARANCES 2:1
appeared 10:23 11:2 68:19
appellate 12:4,5,9 13:2,7 55:16
appointed 73:10
appreciate 29:20 30:8 54:22 69:21 73:15
approved 48:10 50:14
approves 50:1
approximately 7:23 8:5
approximation 22:19
area 63:7
argument 52:15
argumentative 52:23 53:1 67:24
arose 71:12
around 60:24 61:1
aside 7:6 23:22 24:8
ask 15:15 17:15 19:7 20:1 29:5,19 30:15,20 31:19 32:6 34:22 40:13 41:15 42:11 45:4 49:6,20 50:12,24 65:17 68:1 69:8 71:1 72:15
asked 17:5,7 19:6 35:18 41:13 47:5 50:10 52:22 60:8 68:8 73:1
asking 19:18 22:21 34:24 35:9 38:18 41:3 50:10 52:17 53:17 56:18 58:11 58:13 65:10 69:4 69:7
asserted 9:1,4
asserting 9:15
assessment 51:2 52:19
assist 33:14
assistant 10:3
associated 15:1,20
Associates 45:12
assume 19:8,11,13

32:18 45:4 47:13 49:20 50:12 51:1 65:17
assumes 69:6
assuming 24:13 36:12
assure 59:21
attorney 14:20 17:1 21:24 23:23 24:3 24:10 27:1 32:22 33:2 34:3,14,15 36:3,13 50:23 56:20 76:12,12
attorney's 33:17
attorney-client 32:8
attorneys 11:16 24:17,18 31:7 32:3 33:11 49:21 61:24 63:12
attorneys' 65:21 71:14
Automobiles 44:22
award 37:18,20 40:22 47:22 48:4 48:5,12,14,21,23 49:7,8 50:3,16 51:5,18 52:6,10 52:20 66:12
awards 49:21
aware 13:3 33:1 39:5 48:6,16 50:11
away 36:20 39:18 39:22 41:17
awfully 42:5

**B**

B 3:9 58:13,14,15 58:20
back 7:18 20:19 35:12,14 43:13 55:16 60:6 70:1 71:3
Barry 2:8 5:8
barry@blonienle... 2:10
Bay 10:19 21:12,16 21:22 22:13,16,23 22:24 23:4 24:7 24:24 25:11 28:12 33:5 34:15 36:24
Beach 7:11,22
because 21:3 22:5 28:15 29:7 30:22 31:18 41:3 43:23 43:23 46:4,20

49:12 51:8,13,14 52:7,24 57:5 58:6 58:7 63:4 66:22
before 1:16 13:22 14:15 18:23 20:11 22:12,24 23:24 32:9,10 51:20 57:8 74:18
beginning 62:23
begins 4:1
behalf 5:12 9:17 11:2,3 21:23 38:4 71:15
being 9:3 10:10 34:14 54:9 61:5 68:8 71:18
believed 39:9
benefit 56:1 72:11
Bennett 2:3 4:15 5:4
bepstein@foley.co... 2:5
Besides 23:6
best 19:2 22:19 30:15 34:10 62:15 64:12
better 55:20 56:21 57:1,9,9
between 64:20
beyond 69:6
big 44:6
bigger 57:9 61:11
billed 65:19
bit 10:1 28:6 60:21
Blonien's 44:1,10 47:3
both 36:19
bottom 33:10
breach 41:22
breaching 13:14
break 20:8 43:8,11
Brian 26:14 27:2,11 62:24 64:2,23 65:19,20 66:3
brief 55:17
briefly 64:6
bring 63:6,8 67:8
bringing 41:23
broadcasting 45:9
brother 7:11
brought 8:21 9:21 22:4 23:7 60:9 63:11 65:22 66:19
brung 53:18
Buccaneers 9:8,21 10:19 21:13,16,23

22:8,13,24 23:5
24:24 25:11 28:13
33:6 34:16 36:24
44:20 45:8 48:7
54:16 55:2,11
56:11 62:14
**bucket** 25:12
**bucks** 41:19
**Bucs** 24:19 29:11
30:13,24 54:21

**C**

**C** 9:14 11:3 26:6,9
28:22 37:8,21
38:17 41:23 55:7
65:2 67:19 71:8
71:15,16 74:3
76:2
**C's** 13:13 21:23
34:14 56:7 66:4
**cabs** 15:7,9,19
**call** 44:19 47:14,22
63:17
**called** 1:13 6:2
44:21 45:11 48:3
**calling** 45:13 66:13
**calls** 38:19 40:15
45:3
**came** 16:1 28:2
60:21 71:19
**can't** 15:12,14
19:10,11,12 28:15
28:17 49:22,22
**carrying** 57:5 61:15
61:21
**cases** 58:9 63:9
70:14
**caution** 31:22 32:6
**CEH-TBM** 1:7
**center** 63:3
**certain** 53:22 67:10
**Certificate** 76:19
**Certified** 1:17 76:18
76:18
**certify** 74:7 76:5,9
76:11
**chance** 29:5 57:16
**CHANGE** 75:5
**charging** 55:17
**Chicago** 1:19 2:4,14
4:12
**Chiropractic's**
23:11 47:6
**chiropractor** 7:8
**chiropracty** 6:15
**Circuit** 12:23

**Civil** 1:14
**claim** 41:23 43:3
**claimed** 66:14
**claims** 8:15,24 9:3
9:14 11:20 12:3
13:5,10 17:15
22:6 28:22 34:3
34:15
**clarification** 14:17
20:2
**clarified** 47:20
**clarify** 19:7 35:4,9
54:19
**Clark** 1:18 2:4
**clear** 20:16 32:13
32:14,14 54:9
**client** 33:13,15,16
33:22 34:1
**client's** 33:18
**clinic** 1:4 4:4 6:21
7:7,12,21 8:4,8,12
8:21 38:5 75:1
**Close** 49:10
**closer** 11:15
**co-counsel** 68:11
69:4
**coffee** 59:5
**Cohen** 2:13 3:6 5:11
5:11 11:23,24
12:7 23:6 35:6
43:16,18,23 44:2
44:9 52:16 53:2
59:10,16 60:5
69:18,23
**come** 11:17 28:13
28:23 29:1 45:19
52:8,12 62:23
**comes** 61:23
**coming** 46:20
**comment** 72:21
**communicated** 71:6
**communication**
64:20
**communications**
71:4
**company** 31:24
59:22 62:21
**compared** 22:8
**competing** 11:22
22:8
**complete** 76:10
**concept** 42:2
**concerns** 19:5
**conclusion** 38:20
40:15
**conference** 28:2

43:19 63:17
**confused** 49:12,16
49:17 53:4 58:6
68:16 70:12
**confuses** 70:13,16
**confusion** 19:6
49:19
**conjunction** 63:3
**connection** 58:3
**consent** 33:19
**considered** 45:2
**considering** 28:23
**consistent** 21:11
**consistently** 8:3
**consisting** 74:8
**consulted** 72:8
**contact** 62:23 64:3
**contract** 16:19
**contribution** 71:22
**control** 49:21,24
**conversation** 26:14
26:16,17 28:10
30:1,10 31:11
36:17 71:1
**conversations** 30:3
30:17 31:6
**Cook** 76:5
**copy** 12:23
**correct** 6:10,11,18
6:19,22 10:21
13:15 14:14 18:18
19:23 23:17 25:1
29:13 34:8,12,16
38:5,13 46:14
53:9 58:9 74:10
76:9
**correctly** 10:20 34:5
**costing** 67:20
**costs** 65:9 70:19
**could** 5:15 33:9 49:8
52:9,11 57:24
66:12
**counsel** 2:8 4:13 5:9
5:17 33:13 34:21
42:8 46:8 69:21
76:12
**County** 74:3 76:2,5
**couple** 7:18 10:15
18:21 19:1
**course** 28:15
**court** 1:2 4:9,9 5:13
5:20 9:8 10:23
11:2,7 18:3 19:3
54:7 60:9,10
73:10
**courtesy** 69:20

**Courts** 1:15
**cover** 38:12 64:24
**covered** 40:17
**created** 42:3
**criticism** 46:16
**criticizing** 66:12
**critiques** 69:22
**cross-examine**
68:24
**CRR** 1:22 76:4
**CSR** 1:22 76:5
**Cubs** 27:22,23 28:3

**D**

**D** 3:1
**d/b/a** 1:9
**damage** 37:16,21
**damaged** 41:11
67:9
**damages** 37:13
38:18 39:6 40:22
66:14,16,21 67:9
67:11,12,16,19
**Dan** 5:11 43:17,23
**dance** 53:18
**DANIEL** 2:13
**danieljaycohen20...**
2:15
**data** 10:4
**date** 4:6 22:18 65:9
**David** 1:8 2:7,18
5:10,19 43:20
75:2
**day** 12:16 25:5
30:23,23 37:4
73:9 74:18
**days** 25:5,7 37:1,3,4
39:17
**deal** 11:17 29:15
**decade** 8:1
**decide** 49:23 50:2
54:6
**decision** 12:24
60:10
**declared** 71:17 72:1
**dedicated** 57:10
**deemed** 72:11
**defendant** 2:7,12
5:10 22:3 46:5
**defendants** 1:10
34:4
**defense** 69:20
**deferring** 31:2
**delegation** 31:2
**deponent** 6:2
**depos** 51:9

**deposed** 20:20
51:21
**deposition** 1:12 4:2
4:11 13:18 14:8
14:13 16:2,12
18:1 20:15,17,18
25:5 37:3 71:11
73:22 74:8,10
76:7,9
**depositions** 1:16
25:8 43:20 51:14
52:13
**describe** 31:8
**described** 31:5
**Description** 3:11
**detail** 47:6
**didn't** 18:23 28:10
44:3 47:3 61:12
73:5
**different** 30:19
47:17
**dinner** 25:22 27:2,9
27:12,14 29:12,14
30:1 31:5,16
36:15
**directing** 68:14
**directly** 76:13
**discuss** 27:20 28:15
28:17 30:18
**discussed** 28:4,14
28:16
**discussion** 29:8,9,10
**discussions** 45:20
47:19
**District** 1:2,2,15
**DIVISION** 1:3
**doctor** 6:12,14 7:12
17:21 59:21
**doctors** 63:7,8
**document** 18:8
**documents** 64:4
**does** 19:17 20:5,24
29:16 31:23 32:15
32:19 34:20 54:7
72:14,19,23
**doesn't** 15:8 52:18
**doing** 30:23 49:11
58:13,15
**dollars** 12:7 67:13
67:22 70:20
**done** 6:23 40:4,7
59:23
**down** 4:21 21:24
28:9 61:12,13
**Dr** 1:13 4:2 6:1,7
31:7 76:5

**duly** 6:3 76:6
**during** 71:11
**duty** 13:14 41:23

**E**

**E** 3:1,9
**each** 19:3 30:22
**ear** 68:11
**earlier** 22:6 27:10
    44:9 45:19
**early** 65:18
**easy** 19:4
**effect** 47:12 51:2
    52:18
**effort** 53:14
**either** 41:3 51:12
    61:7 66:15
**else** 7:6,10,14 8:7,9
    8:12 9:13,24
    10:13 21:15,22
    23:15,21 24:2
    26:13,15,24 27:6
    28:1 35:13,16
**email** 14:2
**employed** 45:7,16
    46:7
**employee** 46:12
    76:12,12
**encourage** 42:6
**end** 28:9 55:3
**ends** 54:24
**entirely** 68:13
**entitled** 47:15 50:2
    51:18
**essentially** 11:15
**estimate** 36:24
**et** 75:2
**evaluating** 48:19
    49:1
**even** 5:17 14:11,16
    44:7,23 46:6,19
    47:4 55:23
**evening** 25:22
**ever** 13:24 14:6
    16:23 25:15,18
    26:12,17 31:10
    32:21 34:2 62:23
    68:17 71:5
**everybody** 44:24
    45:3 48:9
**everyone** 50:13
**examination** 1:13
    6:5 43:15
**Examinations** 3:3
**examined** 6:4
**exceeds** 66:20

**exhibit** 3:13 17:19
    18:1,24 20:10,22
**expenses** 15:3,4,5
    15:20 16:20 65:4
    65:21 66:4,6
    71:15
**expert** 72:9
**expertise** 62:2,11
    72:18
**explain** 35:16 47:5
**explains** 21:3
**eyeballs** 14:12
**eyes** 13:21

**F**

**facial** 68:7
**fact** 62:6 71:13 73:8
**facts** 12:2 13:4,11
    30:16 34:7 39:6
    40:21,24 41:2,22
    43:2
**factual** 19:12 39:9
**fair** 17:14 19:9,17
    20:5 24:17 46:9
    53:9 62:2,10
**fairly** 29:21
**familiar** 44:16
**familiarize** 18:8
**far** 15:2 25:17 29:4
    69:5,5
**father** 7:17
**favor** 51:10
**fax** 22:17 45:9
**faxes** 22:14 63:13
**February** 65:18
**feel** 67:9
**fees** 14:20,24 65:1,8
    65:21 66:4,6
    71:14
**fiduciary** 13:14
    41:23
**filed** 22:9 26:7,9
    45:7,11
**filing** 44:12,13
**finally** 48:10
**finance** 71:23
**financial** 71:22
**financially** 76:12
**find** 74:9
**finding** 52:9
**fine** 68:5
**finish** 35:8 52:23
    58:4
**firm's** 64:2 65:3
    71:22
**firms** 33:14

**first** 6:3 7:17 13:16
    13:20 14:6,11
    16:3 20:15,17,18
    20:20 22:17 27:2
    53:16 54:20 56:22
    72:24 76:6
**flew** 37:4
**flight** 16:14,16
**floor** 2:14 4:24
**Florida** 1:2 20:19
    24:4,10 36:3,13
    63:9
**fly** 16:11
**focused** 15:16 57:13
**Foley** 2:2 4:12 5:5
    5:20 65:1,3,6,11
    65:19 71:15
**Foley's** 65:8
**follow** 53:7,10,20
    54:23 55:2
**follow-up** 44:11
**follows** 6:4
**food** 15:7,8,19
**foregoing** 74:7 76:9
**form** 14:4 42:7 43:4
    49:4 51:6,22
    52:24 54:4 55:12
    56:12 57:18 58:18
    66:8 67:1,23 71:7
    72:4,12,20 73:12
**format** 61:24
**forte** 10:5
**forth** 23:7 53:13
    63:11
**forward** 55:10
    56:10 57:4,5,17
    61:15,16,21,21
    67:20
**foundation** 42:4
**fourth** 52:22
**fractions** 12:6
**free** 48:11 50:15
    51:17
**front** 10:4
**fully** 19:9 56:4,16
**funds** 66:10 72:10
**FURTHER** 76:9,11

**G**

**game** 27:22,23 28:4
**gave** 50:8 63:14
    64:14,18
**general** 8:10 31:19
    31:22 36:17
**generally** 44:5
**gentleman's** 27:4

**gestures** 68:7
**get** 5:15 10:9 15:11
    49:23 54:22 56:19
    59:5,7,9 60:16
    63:6,7 64:8 67:8
    67:10,11,14,16
**gets** 30:21 48:10
    49:19 50:14 55:10
**getting** 52:22,24
    57:10 67:24
**girlfriend** 27:13,18
**give** 44:6,7 52:13
    64:5,11
**given** 32:7 74:11
    76:10
**gives** 11:6
**giving** 42:7
**glad** 15:14 22:4
**go** 18:24 32:11
    34:19 38:21 40:16
    41:15 42:10 55:2
    55:2,10,16,21
    56:14 57:4,16
    61:15,20 64:6,15
    67:20 68:1 69:8
    72:6 73:16
**go-to** 17:15
**goal** 57:1
**goes** 56:10
**Goethals** 2:17 4:8
**going** 19:8 29:20
    31:21 32:5 40:13
    50:19 59:7 60:6
    71:3
**gone** 15:24 28:3,6
    31:16 63:1
**good** 6:7 26:23
    27:10 28:18 43:17
    59:22 62:4
**Good's** 27:7
**got** 7:18 22:13 23:1
    43:21 57:11 61:10
    61:14 63:22 65:24
**gotten** 52:10
**greatly** 66:20
**Gregory** 1:13 4:2
    6:1,10 76:5
**guarantee** 49:22
**guess** 23:7 32:14
    63:2
**guests** 27:16
**guffawing** 68:7
**Guys** 35:6

**H**

**H** 3:9

**hac** 69:12
**hadn't** 13:21
**hand** 13:19 76:14
**handed** 18:8
**handles** 30:5,8
**handling** 9:6 17:9
**happen** 50:19
**happened** 24:9 30:2
    50:18 51:20 65:24
**happens** 50:4 59:2
    63:4
**hard** 53:12
**harm** 47:6 48:20
    49:3 52:6 66:16
    73:2
**harmed** 51:3,12
    52:19
**HATCH** 1:9 2:12
**haven't** 17:7 42:3,3
    65:14
**having** 6:3 31:10
    49:24 59:22
**he'll** 68:1
**he's** 7:12 16:20
    36:11,13 39:12
    50:6,8 62:8,14,16
**hear** 10:20 19:15
    60:3
**heard** 43:24 45:19
    66:16
**hearing** 46:18
**help** 57:15 58:13,16
    64:12
**helps** 58:20
**her** 10:1,5 12:19,20
    15:13 17:7 64:15
    64:18 69:24
**here** 4:1 5:12 8:18
    11:21 15:24 21:4
    28:3 29:21 37:4
    41:6 52:1 63:18
    63:20 64:7 69:13
    71:7
**hereby** 74:7 76:5
**herein** 6:2
**him** 7:13 13:19,20
    13:22,24 14:9,15
    16:3 22:1 28:11
    32:6,9,21 38:3
    42:2 49:15,16
    58:4,4 71:1,1
**hire** 21:15,22
**hired** 21:1,12,18
    22:1
**his** 8:23 13:19 14:7
    27:5 62:4,7,11,16

62:24 64:2,3,24
66:3 68:11 69:4
**Hold** 59:15
**honestly** 70:7,8,9
**hooked** 59:14
**hope** 30:17
**hotel** 15:23 16:5,7,9
**however** 11:17,18
53:15 57:5 61:15
61:21
**hundreds** 67:21,21
67:21 70:20

_____ **I** _____

**I'd** 17:18 68:2 69:2
69:10
**I'll** 5:1 44:17 45:3
47:4,21 49:20
50:11 59:5,9
60:20 65:17,17
**I've** 13:20 18:20
19:6 33:7 39:18
61:14 68:3
**ice** 59:18
**idea** 44:7 65:6,12,13
66:12
**identification** 18:3
**identified** 26:14
**identifying** 18:14
**Illinois** 1:18,19 2:4
2:14 4:12 74:1
76:1,5
**impression** 11:6
**inappropriate**
68:14
**Inc** 1:5 4:16 5:7
6:21 7:7,21 8:4,8
8:13 38:5 75:2
**incentive** 37:18,20
40:22 47:22 48:4
48:5,12,14,21
49:7,8,21 50:3,16
51:5,18 52:6,10
52:20 66:12
**including** 10:7 65:3
**inclusive** 74:9
**income** 10:2 71:16
72:2,11
**incorrect** 47:11
**increased** 52:6
**incur** 66:6
**Indeed** 18:13
**indicated** 24:22
**indicating** 18:12
33:8
**indirectly** 76:13

**individual** 1:8
**individuals** 5:16
**informal** 63:2,2
**information** 10:5
30:21 60:22 61:6
63:12,15,16,19
64:3,3,11
**informational** 64:10
**injury** 9:16,19 47:6
73:2
**instead** 48:15
**instructing** 39:12
**instruction** 42:8
**insurance** 10:4
**interaction** 14:10
14:11
**interest** 55:9 56:9
62:7,15,16
**interested** 76:13
**interesting** 63:9
**interests** 62:7
**interpose** 68:3
**interrupt** 19:3
**interrupting** 69:17
**into** 62:23 66:13
**introduce** 4:13
43:21
**introductory** 18:22
**invoiced** 65:7
**invoices** 65:14
**involved** 9:24 10:18
11:20 22:13 23:1
23:4 24:7,16 33:2
45:17
**involvement** 61:4
**irregardless** 53:8,21
53:23 54:2,10,17
**IRS** 71:17
**isn't** 52:6 67:16
**issue** 8:16,21 52:7
54:14 71:12,18
**issues** 57:6 67:5
**its** 26:7,9 34:15 46:8
48:11 57:11,16
**itself** 57:21

_____ **J** _____

**J** 2:3,8
**job** 19:4
**judge** 48:12 49:24
50:1,6,6,6,8,16
**judgment** 62:4,11

_____ **K** _____

**K** 74:3 76:2
**Kayli** 42:13

**kept** 46:18 69:21
**kind** 26:19 60:22
**kinds** 66:6
**knowing** 46:21
**knowledge** 13:4
15:17 32:15 34:10
41:4,8,9,22 43:1
61:3,7 62:2 71:21
**knowledgeable** 42:2

_____ **L** _____

**L** 2:3
**language** 46:24
**Lardner** 2:2 4:12
5:6,21
**large** 9:7
**LaSalle** 2:13
**last** 16:1 25:5 27:5
46:18 57:7 72:24
**lasted** 69:5
**later** 47:19
**lawsuit** 9:11,24 22:8
24:8,14 26:7,9
38:4 52:11 54:11
55:7 58:16 66:18
67:8 70:17
**lawsuits** 24:18
58:10
**lawyers** 24:6
**Layli** 1:16,22 4:9
35:17 42:14 76:4
76:17
**learn** 12:9
**least** 25:7 39:17
**led** 64:20
**left** 9:9 11:21 64:13
**legal** 2:8 5:9 32:7
37:24 38:20 40:15
40:19 42:2 61:22
63:14 65:1,8
**legitimate** 69:14
**let** 17:20 18:9,24
19:6 20:8 24:13
33:24 42:3 47:11
49:6,16 52:23
58:4,4
**let's** 19:2 43:7 57:23
**letting** 72:17
**LEWIS** 1:9
**License** 1:23
**licensed** 36:3,13
**like** 17:18 18:15,22
27:16 28:7 32:9
68:2 69:2,10
**likely** 30:2
**limit** 42:6

**LINE** 75:5
**list** 56:2
**litigation** 10:19 11:4
14:8 15:1,20 17:9
21:13,16,23 23:5
24:24 28:13,22
33:6 36:21 37:22
39:23 65:3,9
71:14
**little** 49:12 60:7,20
70:12
**LLC** 1:9,9 2:12,12
5:12,12
**LLP** 2:2
**local** 63:1
**long** 6:14 42:6 47:3
47:4 53:15 67:13
**longer** 69:5
**look** 17:5,20 51:12
63:21 64:6
**looked** 17:3 18:20
**looking** 44:6
**losers** 54:2
**loses** 54:6
**loss** 10:2,9 48:20
51:13
**lost** 10:6 37:18,20
40:10
**lot** 53:13 56:16
65:24 66:1 67:15

_____ **M** _____

**M** 1:8 2:7,18 9:14
11:3 13:13 21:23
26:6,9 28:22
34:14 37:8,21
38:17 41:23 55:6
56:7 65:2 66:4
67:19 71:8,15,16
75:2
**made** 52:11 61:11
68:17,22 69:11,16
**Madison** 2:9
**make** 11:17 15:11
29:21,22 30:14
31:21 32:14 40:14
41:5 53:22 55:9
56:9 68:6
**making** 28:22 34:24
35:2 69:14
**manner** 34:20
**many** 9:9 10:23
11:1,7 25:9 36:11
36:12 53:13
**March** 65:18
**marked** 17:19 18:2

**matter** 4:3
**matters** 29:11
**may** 33:14 40:24
45:7 55:22
**maybe** 57:24 60:14
60:14 67:14 70:24
**MC** 3:13,13 18:14
18:15,17
**McMahon** 2:3 5:20
69:13
**mean** 8:9 20:17,24
54:11 55:6 61:18
61:20 62:21 70:9
**means** 21:1 47:13
64:7
**meet** 13:16
**meeting** 27:8,21
**member** 30:11
**mentioned** 36:18
63:13
**merit** 64:16
**met** 13:19
**Michael** 31:11 33:2
71:5
**Michelle** 7:3 9:22
15:12 21:6 25:7
29:16 30:5,8,20
51:10 72:14
**Michelle's** 39:19
41:18
**middle** 1:2 40:6
**might** 4:20 24:3
39:6 50:16
**million** 55:18,19,21
55:22,23,23 56:2
60:12,13,17,17,24
61:1
**mind** 49:10,18
52:17
**misconduct** 47:7
**missing** 41:6
**misstate** 34:21
**misstated** 35:11,13
**misstates** 34:17
**Mm-hmm** 39:16
70:23
**moment** 17:19 18:7
**money** 37:5 66:20
67:10
**monitor** 4:7
**months** 71:12
**more** 25:7 53:4 56:1
56:18,19 57:9,10
57:24 60:21 66:1
66:18 67:13 69:14
**most** 9:22 15:4

45:13
**mostly** 15:8,10
**mouth** 47:11
**move** 29:21
**Ms** 12:23 21:7
  24:22 36:20 64:13
  72:18
**much** 13:9 25:2
  36:23 37:5,16
  40:10 50:3 55:20
  60:2 65:6,7,10
  66:20
**multiple** 43:24
**must** 71:16,17
**myself** 10:6 51:9

**N**

**N** 3:1
**name** 4:8 5:4 6:9
  27:2,4,5 43:17,23
  44:1,9 45:19
  46:18
**named** 23:1,4 44:18
  44:20,24 45:10
**namely** 51:16
**names** 5:16 12:1
**narrative** 42:7 44:7
  69:5
**nature** 9:14 72:16
**necessarily** 24:12
  49:2
**need** 15:7 20:7 31:4
  39:13 69:24
**negotiations** 62:13
**never** 13:18 14:9,15
  33:3,23 46:21
  52:12 72:15 73:9
**new** 9:11 63:8,9
**next** 33:22 61:23
**normal** 31:2
**Normally** 30:20
**North** 1:18 2:4,13
**Notary** 74:22
**notes** 47:9
**nothing** 31:18 48:22
  76:7
**notify** 33:15
**November** 1:20 4:6
  75:3 76:1
**now** 20:11 33:23
  34:1 46:23 53:20
  54:22 66:1 73:6
**Number** 1:11 4:4
  17:19 20:11,22
**numbers** 60:16 61:7

**O**

**O** 74:3,3 76:2,2
**object** 52:23 69:2
  72:21
**objections** 69:15
**obtain** 33:18 50:17
**obtained** 12:17
**obviously** 57:6
**occurred** 48:15
**off** 43:8,9 73:16,17
**office** 10:2,7 36:20
  39:19,23
**Oh** 4:19
**once** 10:9 25:20
**one-on-one** 28:10
**ones** 13:6
**only** 13:6 14:10
  19:22 23:7 33:7
  34:13 39:2,18
  52:7 57:14,23
  61:12
**opened** 8:4
**opening** 8:8
**operation** 6:17
**opinion** 12:18
**Oppenheim's** 12:8
  16:2 58:7,12
**opportunity** 32:9
  48:13
**order** 29:22
**original** 9:21 22:2,7
  22:18 31:17 53:6
**otherwise** 69:12
  71:1
**our** 9:16 10:2 29:21
  45:2 51:13 72:23
**ourselves** 43:22
**out** 7:18 22:17 52:9
  62:13
**outset** 18:23
**over** 7:12 10:16
  35:6 53:14 64:15
**overseeing** 50:7,8
**own** 6:17 15:17 61:4
  69:4
**owner** 6:23 7:1,4

**P**

**p.m** 1:20
**packet** 63:12,14
  64:4,5,18
**Page** 3:3,11 75:5
**pages** 74:8
**paid** 16:9,16 65:8
  65:11,20 70:21,22
  71:17

**paper** 60:19 61:2
**paperwork** 9:23
  22:2
**part** 6:23 22:2
  40:19 61:11
**participated** 24:14
**participating** 69:19
**participation** 45:21
**partner** 45:23 46:10
  46:11
**party** 46:4
**Patrick** 2:3 5:20
**pay** 15:7 16:7,14
  66:4
**paycheck** 8:11
**paying** 14:19,24
  15:5,21 16:21
**payment** 71:14
**pending** 22:12
**people** 24:16 67:15
**per** 29:15
**perceive** 55:5 56:6
**percent** 7:1,4
**person** 11:24 14:12
  17:8,15 53:16
  56:20 69:14
**personal** 13:4 15:17
  30:12,17,21 41:3
  41:21 43:1 61:3
**personally** 12:3
  13:19 15:16 38:2
**pertaining** 1:15
  30:7 44:12
**pertinent** 10:4
  63:10
**petition** 48:11
**Phil** 43:20
**Phillips** 1:17,22 4:9
  76:4,17
**phone** 13:24
**place** 4:11 76:10
**plaintiff** 1:6 23:1
  44:18,21,24
**plaintiff's** 33:13
**plaintiffs** 2:2 23:4
  45:10 55:1 60:23
**please** 4:13 5:14
  9:19 17:19 19:6
  35:7,10,17 42:8
  42:12,21 43:8
  58:5 59:19
**pmcmahon@fole...**
  2:6
**point** 13:22 14:16
  14:16 20:7 26:16
  64:17

**Porcelli** 50:6,16
**portion** 8:23 9:7
  15:13 39:15 72:15
**positions** 62:12
**positive** 56:4
**possibility** 51:4
**possible** 19:4
**potential** 44:19 61:5
**practiced** 36:11
**predicate** 39:10
**preliminary** 11:16
**PRESENT** 2:17
**presented** 20:14
**pretty** 13:9
**prevent** 48:22
**primarily** 30:9
**primary** 17:8
**privilege** 32:8
**pro** 69:12
**probably** 47:4
  58:22
**Procedure** 1:14
**procedures** 61:22
**process** 31:2
**Professional** 76:17
**promise** 49:22
**pronounced** 47:17
**properly** 71:16
**proposed** 50:13
**prosecute** 66:7
  67:17,22 71:23
**prosecuting** 45:22
  48:8 55:6,7 57:13
  57:15 65:1 66:5
**prosecution** 56:7,7
**provide** 33:16
**Public** 74:22
**purpose** 8:17
**purposes** 50:24
  66:11
**pursuant** 1:14
**purview** 69:7
**put** 13:21 25:11
  47:11 53:13 62:7
**putative** 44:19 45:8
  45:10
**putting** 62:16

**Q**

**quantification**
  47:21
**quantified** 47:24
**questions** 18:24
  19:5 28:16 29:6
  29:19 30:5 31:19
  31:20 44:1,10,11

**Porcelli** ... 49:18 56:17 68:8
  69:3 71:3
**quick** 19:1
**quickly** 29:21
**quite** 10:1 28:6 38:6
  42:19
**quote** 61:10,13

**R**

**radiology** 63:2
**range** 29:23
**RE** 75:1
**read** 18:5,6 33:20
  33:21 34:5 35:12
  35:14,19 42:16,22
  55:17 69:24 70:3
  74:7
**reading** 33:11
**ready** 17:20 18:9
**realized** 18:21
**really** 30:24 31:18
  36:1 37:23 46:12
  46:21 52:1 58:8
  70:14
**Realtime** 76:18
**reason** 32:18 75:5
**recall** 9:13 11:12
  30:10 31:6,10
  43:18 64:1 71:10
  71:18
**receive** 48:13 50:15
  51:17
**received** 8:11 48:14
  60:22
**receiving** 48:23
**recent** 60:10
**recently** 13:18
**recognizing** 39:21
**record** 5:18 6:9
  32:13 34:18,21
  35:11,12,13,14,15
  35:19 42:16,22
  43:8,9,14 70:3
  73:16,17
**recorded** 76:7
**recoup** 38:8
**recover** 39:24 40:9
  67:18
**referred** 13:3 27:9
  60:11
**referring** 12:10 41:1
  41:2 44:2,5,8 45:1
  45:21 61:17
**refers** 53:23
**reflects** 33:5
**regard** 12:5 34:3

54:24 57:3
**regarding** 71:13
   72:9
**Registered** 76:17
**reimbursement**
   16:20
**relate** 30:16
**related** 71:7
**relates** 17:15
**relating** 22:14 45:9
**relationship** 24:16
   32:22
**relative** 76:12
**relatively** 56:23
**relevance** 67:3
**relying** 62:1,4,6
**remember** 25:23
   29:4 71:20
**repeat** 33:24 35:18
   42:11,14,14
**Reported** 1:22
**reporter** 1:17 4:9
   5:14 18:4 73:19
   76:17,18,18
**reporter's** 19:4
**Reporters** 4:10
**represent** 4:14,16
   5:6 10:11 21:2
   23:18,22 31:23
   32:15 44:17 46:3
   57:2 62:8
**representation**
   33:15
**representative** 9:20
   10:8,11 17:11
   23:11 40:20,20
   47:14,15,23 57:2
   73:11
**representatives**
   32:3 61:6 73:4,7
**represented** 23:16
   34:2 46:2
**representing** 5:9
   46:7 55:19 56:21
**request** 50:15,17
   51:17
**requested** 35:20
   42:17,23 70:4
**requesting** 48:23
**requires** 42:1
**reserve** 73:20,21
**responding** 44:1
**responds** 56:4
**responsibilities** 31:3
**responsible** 30:9
**restate** 5:2 49:16

**result** 36:21 51:10
**resulting** 47:7
**retainer** 20:23
   21:10 33:4,18
**retention** 33:19
**returns** 72:3
**review** 64:13
**ride** 72:17
**right** 13:1 14:10
   15:11 20:10 23:12
   23:19 24:24 33:20
   36:21 37:9 38:6
   45:16 55:18 61:10
**righty** 5:1
**role** 23:11 45:21
**roll** 58:8
**room** 5:17 43:19
   71:11,18
**Ross** 26:23 27:10
   28:18
**Ross's** 27:18
**RPR** 1:22 76:4
**ruled** 12:6
**Rules** 1:14
**ruling** 12:4,5,10
   13:2,7
**running** 10:4
**Ryan** 27:4,11 28:5
   28:18
**Ryan's** 27:13,18

_____

**S**
**S** 3:9
**said** 10:17 15:10
   19:15 22:5 28:19
   33:21 35:22 36:11
   47:12 50:11 53:20
   56:3 60:7,11,14
   61:14 63:18 64:15
   64:18 66:16 73:1
   73:3 76:9,10
**same** 15:3 18:11
   24:1 35:21 42:18
   43:19 45:9 46:23
   48:14 49:8 50:5
**saw** 12:11 13:7 14:7
   16:2
**say** 17:14 18:22
   20:16 42:21 54:9
   54:17 62:10 73:5
**saying** 39:22 47:10
   49:7 58:9 66:15
   70:19
**says** 33:1,10 35:14
   35:15
**se** 29:16

**seated** 59:12
**second** 59:15 69:1
**see** 12:12 20:13
   33:11,12 58:2
   64:16
**seeing** 43:18
**seek** 16:19
**seeking** 37:5,13,21
   38:8 39:23 40:9
   60:12,23
**seem** 30:22 52:5
   58:7
**seen** 13:6,20 17:2
   20:10 33:3,4,7,10
   65:14
**self** 62:16
**sending** 22:17
**sense** 67:9
**sent** 12:19,20,22
**sentence** 33:22 40:6
**separate** 58:8,10,12
   67:5,5 70:17
**serve** 57:15
**serves** 47:23 55:8
   56:9
**set** 76:14
**setting** 24:8 63:11
**settle** 11:17
**settlement** 48:10,15
   48:24 50:1,13,18
   57:11 62:13
**settling** 60:13
**seven** 7:13
**several** 12:15 25:8
**shall** 33:15,16,18
**shape** 71:6
**shared** 12:24
**she** 10:3 11:12,14
   12:17,24 17:8,14
   29:18 30:21 63:22
   64:14 72:14,19,23
**shook** 13:19
**short** 43:7,11
**shorter** 47:4
**Shorthand** 1:17
   76:18
**should** 20:1 46:13
   50:3 53:7,10,20
   54:23 56:19 57:2
   57:4 61:15 70:24
   72:11
**show** 12:14 17:18
**showed** 12:13
**sides** 54:1
**signature** 21:8
   73:20,21

**signed** 21:6
**significant** 48:18
   49:1
**simple** 41:5
**simply** 14:12
**since** 6:16 8:4,7
   44:3 62:10 65:24
**sir** 7:24 8:19 13:23
   26:18,20 27:3
   43:17 46:1 60:4
   65:16 73:8,15
**sitting** 69:13 71:10
**six** 25:7
**slipped** 4:20
**small** 10:9 47:16
**smaller** 12:8
**social** 27:7
**solicitation** 64:9
**some** 9:16 10:1,6
   22:2 27:16 28:15
   36:19 44:2,6,11
   47:7 59:5,7,9,18
   64:4 67:18 71:3
   71:12
**somebody** 44:2 50:2
   69:19
**someone** 12:22
   23:15
**something** 28:7
   44:2 47:10,12
   60:6 63:13
**sometime** 30:2
**Sometimes** 30:21
**somewhere** 60:24
**sorry** 33:23 37:3
   42:12,14 59:4
   66:2
**sort** 25:12
**sorts** 68:7 69:15
**sought** 23:18,21
**sound** 19:17 20:5
**sounds** 27:16
**speak** 13:24 15:12
**speaking** 46:13,23
**specific** 31:18,19
   72:9
**specifically** 11:12
**specified** 76:10
**spend** 36:23 67:13
**spending** 66:17
   67:15
**spent** 10:1 24:23
   36:20 37:22 38:9
   39:22 72:10
**spoke** 14:7,9,15
**spoken** 25:15,18

**SS** 74:2 76:1
**staking** 62:12
**stand** 35:15 56:1
**start** 7:20
**started** 9:10 11:22
**state** 1:18 4:14
   69:10 74:1 76:1,5
**stated** 11:19
**statement** 54:2
   61:11
**States** 1:2,15
**stay** 53:16 56:19
**stayed** 16:5
**staying** 15:23
**stenographically**
   76:7
**Stephen** 2:17 4:8
**still** 42:19 51:12
   56:24 59:14 60:3
   73:10
**stipend** 10:10 47:16
   47:16
**stop** 40:13
**Street** 1:18 2:4,9,13
**strike** 63:24
**stuff** 44:2 64:8,10
   64:10
**subject** 32:8
**submit** 48:11
**Subscribed** 74:17
**substance** 13:10
   28:12,21
**such** 33:15,16,19
   76:12
**sued** 22:17,24 23:15
   37:8 46:5,5
**suffered** 48:20 49:3
   66:21 67:19 73:3
**suggest** 34:7
**suggesting** 52:5
**suing** 38:3
**suit** 9:21 22:7
**Suite** 1:19 2:4,13
**sum** 13:9
**support** 12:3 13:5
   13:11 40:22 41:22
   43:2
**sure** 5:3 15:11 20:6
   24:13 25:8 29:22
   30:13,14 32:14,17
   36:1 41:5 46:19
   49:13 51:24 55:9
   56:9,16 58:20
   60:14 67:3 70:2,5
   70:10,14
**swear** 5:14

sworn 6:3 74:17
76:6

**T**

**T** 3:9
**table** 58:23
**take** 17:19 18:7
43:7 47:3,3 59:10
**taken** 1:16 43:12
75:3
**taking** 1:16 4:11
10:11
**talk** 26:12 30:22
32:9 35:6 57:23
60:20
**talked** 22:7 26:13
28:5 32:21
**talking** 30:12 40:23
44:4 46:19 54:13
54:18 57:9,20
**Tampa** 1:3 10:19
21:12,16,22 22:1
22:13,16,23,24
23:4,24 24:7,23
25:11 28:12 31:16
33:5 34:15 36:23
**Tape** 4:3
**tax** 72:2
**taxable** 72:11
**taxes** 71:17
**Technology** 44:15
44:16 45:11,14,18
45:22 48:6,12,24
50:5,9,12,19 51:3
51:16,19 52:10
**tell** 31:15 36:7,14
47:21 49:15 54:8
**telling** 60:7
**tells** 50:23
**term** 73:6
**terms** 33:5,17
**testified** 6:4 71:13
**testifies** 32:10
**testify** 52:8 76:6
**testimony** 27:10
43:24 44:9 52:14
71:19 76:10
**than** 31:19 56:21
57:10 67:14 69:5
69:15
**Thank** 5:22 53:5
59:20 60:2
**their** 21:18 24:16
64:11
**them** 9:2 25:14
49:22,22 66:15

**themselves** 4:14
**then** 9:6,9 11:16
19:7 20:1 23:14
28:3 30:19 39:19
39:21 44:10 45:6
47:19 50:14 51:13
52:12 55:24 58:11
60:13 63:17 64:20
65:24 70:24
**there's** 4:24 18:21
23:9,14 29:7,8,9
31:23 57:6 58:2
**these** 16:20 22:14
27:8,9 47:9 51:9
51:14 52:13 56:17
63:13 69:14
**thing** 15:3 18:5,7
39:3 61:12 64:7
72:24
**things** 8:22 10:15
18:22 19:1,18,22
25:13 47:8 63:9
72:24
**Thompson** 4:9
**those** 12:3 13:6
23:22 24:1 29:19
30:5,18 60:16
61:7 66:6,10
**though** 44:23 46:6
62:10
**thought** 24:11 40:7
45:23 67:7 72:15
**thousand** 67:12,14
**thousands** 67:21
70:20
**three** 11:24 27:8
28:7 37:4 39:17
41:14
**through** 3:13 18:15
18:17,24 48:23
49:19 53:7,11,21
54:23 74:9
**times** 9:9 10:23 11:1
11:7 41:14 43:24
**today** 8:18 10:7
14:20 15:24,24
25:4 52:1 61:23
71:8
**today's** 4:6,11 8:17
16:11
**together** 28:24 58:8
63:6,7,8
**told** 11:12,14 28:14
28:17,18,19 29:7
63:19 64:18
**tomorrow** 61:23

**too** 65:4
**took** 58:23 63:16,18
**Training** 44:15
45:11,14,18,22
48:7,13,24 50:5,9
50:12,20 51:3,16
51:19 52:11
**transcribed** 76:8
**transcript** 74:8,10
76:9,10
**transpired** 8:22
64:19
**travel** 10:1
**travels** 28:6
**true** 24:13 50:22
51:1 61:8 74:10
76:9
**truth** 50:23 76:6,7,7
**truthfully** 19:9
**try** 19:3 57:15
**trying** 30:14 39:14
41:5 55:9 56:9
58:2 62:8
**tune** 52:20
**turn** 33:9
**turning** 18:23
**two** 7:15 12:6 23:7
23:22 25:5 37:1,3
45:10 54:1
**type** 63:13 64:9,10
66:10
**typically** 53:16

**U**

**umbrella** 38:11
**under** 38:10 40:17
65:20
**undercutting** 56:22
**understanding**
10:17,22 11:20
21:11 22:6 23:9
24:15 25:2 42:19
52:2 53:23 58:1
64:23 65:4
**understood** 19:8
22:5
**unfolded** 64:19
**United** 1:2,15
**unnecessary** 52:12
**unpack** 10:16
**up** 22:4 28:2,13,23
29:1 37:4 45:19
46:20 54:24 60:9
60:24 63:8,21
71:19
**us** 21:2 45:13 49:19

51:10 63:14
**use** 44:1
**used** 44:9 47:16
**usually** 18:22

**V**

**verbatim** 47:10
**Vero** 7:11,22
**versus** 4:4 54:2,12
55:21 67:4 71:8
**very** 47:4 53:12
60:2 62:22 67:24
**vice** 69:12
**video** 4:7
**VIDEOGRAPHER**
2:17 4:1,17,20 5:3
5:13 43:9,13
73:17
**videotaped** 1:12 4:2
**view** 25:14 68:14
**viewed** 71:16
**viewing** 25:12
**Volume** 4:3
**vs** 1:7 75:2

**W**

**wait** 59:16
**waive** 73:19
**Wanca's** 9:23 12:21
27:2 29:15 57:10
62:1 71:14
**want** 5:2 10:16
15:11 18:5,6,7
35:16 53:22 55:14
58:15 59:18 67:10
67:11 68:24 73:19
**wasn't** 46:19 64:14
**watched** 59:24
**watching** 68:6
**water** 59:8,9,19
**way** 45:3 46:20
49:10 51:12 53:9
53:9 62:17 71:6
**ways** 41:10
**We'll** 59:16
**we're** 8:18 32:14
46:23 51:12 71:7
**we've** 51:13
**week** 61:23
**weeks** 12:15 28:7
71:12
**well** 9:7,20 10:3
14:9 15:12 24:19
25:4 28:2 35:2
38:4 51:8,20 52:3
58:10,20 59:24

61:22 63:1 67:7,8
68:3 69:6 70:10
70:24
**went** 10:16 11:7
**weren't** 60:14 66:3
**what's** 17:18
**whatever** 39:19
45:24 50:16 51:18
55:22 63:17
**whatnot** 64:3
**where** 7:10 16:2
33:11 48:8 55:17
60:16
**WHEREOF** 76:14
**Whereupon** 18:1
35:19 42:16,22
43:11 70:3 73:22
**wherever** 60:21
**whether** 22:23 23:3
31:4,6 36:2 48:19
49:1 50:2 51:2,11
52:19 54:11,13,14
55:1 61:7 62:12
62:14,16 72:9
**which** 41:10 45:7
47:13 54:1,1,18
56:22 63:4 64:8
68:13,15 71:16
**while** 60:7 64:1
**whispering** 68:10
**whoever** 9:24 47:23
**whole** 18:5,6 29:23
38:10 55:20 57:1
61:12 76:6
**whom** 4:14
**why** 34:22 35:8
52:18 53:10 57:13
59:6,11 67:6,17
67:19
**wife** 7:3 9:22 11:9
11:10 12:13,14
17:5 27:7,18
51:21 52:8 53:14
62:22 63:18 64:21
72:2
**will** 5:13 10:10 12:7
35:15 73:21
**Williams** 1:13 4:2
6:1,7,10 31:7 76:6
**willing** 66:4,5
**win** 51:11 54:15,16
**winners** 54:1
**winning** 54:13,24
**wins** 53:8,21,24
54:3,6,10,12,17
**Wisconsin** 2:9

**wish** 34:19 35:14
  46:1 63:17
**without** 54:24 69:20
**witness** 5:14 6:3
  31:22 32:1,4
  34:23 42:8 55:14
  58:22 59:1,4,7,13
  59:17,19 60:2
  68:15,23,24 69:7
  69:9 76:10,14
**women** 30:22
**won't** 15:15 47:2
**words** 47:11,16
**work** 7:10 11:16
  21:22
**worked** 7:6,11,13
  7:14,15,17 8:3,7,9
  9:5 31:2 53:12
**worth** 56:23,24
  67:14,16
**wouldn't** 24:15
  55:21 62:7 66:23
**write** 61:12
**written** 33:19
**wrote** 61:12

       **X**
**X** 3:1,9 12:7

       **Y**
**Yeah** 26:3 46:15
  55:15 68:12
**year** 7:23 22:21
  25:24 26:1,2
  53:15 65:18,19
**years** 7:13,16,18
  36:12 53:13
**you've** 24:23 26:16
  31:5 37:8 38:9
  52:19 56:3 59:22
  67:9 68:17
**yourself** 18:8 24:23
  51:20 69:22

       **Z**
**Zakzrewski** 7:3
  12:23 24:22 36:20
  64:13
**Zakzrewski's** 21:7
  72:18

       **0**
**084.003900** 1:23
  76:19

       **1**

**1** 3:13 4:3 17:19
  18:2 20:11,22
**1,000** 67:16
**1:25** 43:10
**1:31** 43:14
**10,000** 67:15,18
**100** 63:7
**1000** 2:13
**10th** 2:14
**11th** 12:23
**12:46** 1:20 4:7
**13** 1:20 75:3 76:6
**134** 2:13
**13th** 4:6
**15,000** 37:17 38:12
  38:17 39:3 40:17
  40:23 41:19 47:24
  48:21 66:13 67:4
  67:18
**1718** 2:9
**18** 3:13
**188** 3:13 18:14
**189** 33:10
**19** 18:15
**195** 3:13 18:17

       **2**

**2** 67:4,5
**2:12** 73:18
**20** 55:19,22 56:22
  60:13,14,17 61:1
**200** 63:8
**2016** 45:7 72:2
**2017** 1:20 4:6 26:4
  30:2 74:19 75:3
  76:6
**25** 55:23 60:15,17
  61:1
**25,000** 67:18
**2800** 1:19 2:4

       **3**

**30** 55:23
**30,000** 67:18
**312** 2:5,15
**321** 1:18 2:4

       **4**

**4** 18:15
**400,000** 65:21
**43** 3:6

       **5**

**5** 18:16,17 67:4
**50** 7:1,4 63:7
**500** 66:17

**53711** 2:9
**5500** 2:15

       **6**

**6** 3:5
**600** 66:17
**60602** 2:14
**60654** 2:4
**608** 2:10
**620-5357** 2:10
**658** 2:15

       **7**

**70** 55:17,21 60:12
  60:16,24
**700,000** 66:18 67:4

       **8**

**8:16-cv-01477-C...**
  4:5
**8:16-cv-01477** 1:7
**82** 6:16 7:18
**832-4576** 2:5

       **9**

**90s** 8:2,5