UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDICAL & CHIROPRACTIC CLINIC,
INC.,

       Plaintiff,

v.                                           Case No: 8:16-cv-1477-T-36CPT

DAVID M. OPPENHEIM and BOCK LAW
FIRM, LLC,

       Defendants.

_____/

## <u>ORDER</u>

This cause comes before the Court upon Plaintiff's Motion for Partial Summary Judgment

(Doc. 141; Doc. 142),[1] Defendants' Joint Memorandum in Opposition to Plaintiff's Motion for

Partial Summary Judgment (Doc. 150; Doc. 217-1; Doc. 154; Doc. 217-2),[2] Defendants' Motion

---

[1] Contrary to the Court's Case Management and Scheduling Order and the Local Rules of the Middle District of Florida, Plaintiff filed a unilateral "Statement of Undisputed Facts" (Doc. 141) in support of its Motion for Partial Summary Judgment (Doc. 142). Doc. 70, p. 7 ("[T]he parties **SHALL** also file a stipulation of agreed material facts signed by the movant and the parties opposing summary judgment pursuant to Local Rule 4.15." (emphasis in original)); L.R. 3.01(a) ("In a motion or other application for an order, the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request, all of which the movant shall include in **a single document** not more than twenty-five (25) pages." (emphasis added)). Plaintiff's "Statement of Undisputed Facts" totals 13 pages (not including the signature block and certificate of service) and Plaintiff's Motion for Partial Summary Judgment totals 13 pages (not including the signature block and certificate of service), thus exceeding the 25 page limitation. Doc. 141; Doc. 142. However, a review of the two documents shows that, if filed together, the text (not including the signature block and certificate of service) would have fit within the 25 page limitation. Accordingly, the Court will construe Plaintiff's "Statement of Undisputed Facts" as part of Plaintiff's Motion for Partial Summary Judgment.

[2] In response to Plaintiff's Motion for Partial Summary Judgment, Defendants filed a Joint Memorandum in Opposition (Doc. 150; Doc. 217-1) consisting of 19 pages (not including the signature block and certificate of service). Defendants also filed a "Response to Plaintiff's Statement of Undisputed Material Facts" (Doc. 154; Doc. 217-2) consisting of 20 pages (not including the signature block and certificate of service). Construed as a single response, the documents well exceed the 20 page limitation. L.R. 3.01(b) ("Each party opposing a motion or application shall file . . . a response that includes a memorandum of legal authority in opposition to the request, all of which the respondent shall include in a document not more than twenty (20) pages."). However, much of Defendants' "Response to Plaintiff's Statement of Undisputed Material Facts" includes reproduction of Plaintiff's "Statement of Undisputed Facts." Doc. 154. Moreover, the Court recognizes that Defendants' filings were made jointly; had Defendants filed separate responses, the total number of pages allowed would have been 40. Given these circumstances, and given the fact that the Court is extending some leniency to Plaintiff, the Court will consider the entirety of Defendants' Joint

for Summary Judgment (Doc. 144; Doc. 211-1), and Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 149; Doc. 208-1). Plaintiff Medical & Chiropractic Clinic, Inc. ("M&C") alleges that Defendant David M. Oppenheim ("Oppenheim") breached fiduciary duties owed to his former client, M&C, and that Defendant Bock Law Firm, LLC ("Bock Law") aided and abetted Oppenheim in his breach. Doc. 142. M&C moved for partial summary judgment on its claims as to the issue of liability. Doc. 142. Defendants moved for summary judgment on M&C's claims in full. Doc. 144.

Oral argument on the cross-motions for summary judgment was held on April 2, 2018. Doc. 172; Doc. 192; Doc. 195. Upon due consideration of the parties' submissions, and for the reasons that follow, the Court will deny M&C's Motion for Partial Summary Judgment and grant Defendants' Motion for Summary Judgment.

## I. Factual Background[3]

Oppenheim is an attorney licensed to practice law in Illinois.[4] JSOF, ¶ 1. In 2009, Oppenheim joined the law firm of Brian J. Wanca, J.D., P.C., d/b/a Anderson + Wanca ("A+W"). JSOF, ¶ 1. Oppenheim focused his practice at A+W almost entirely on Telephone Consumer

---

Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment and Defendants' "Response to Plaintiff's Statement of Undisputed Material Facts" and construe the documents as a single response to Plaintiff's Motion for Partial Summary Judgment.

[3] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the Joint Stipulation of Facts (Doc. 176; Doc. 209-1) ("JSOF"), depositions, and attachments thereto. The facts of this case are based in large part on two underlying class action lawsuits as described *infra*. Accordingly, where necessary and to promote clarity, the Court takes judicial notice of filings in the underlying class action lawsuits which, themselves, are not subject to reasonable dispute. Fed. R. Evid. 201(b); *U.S. v. Jones,* 29 F.3d 1549, 1553 (11th Cir. 1994) (A court may take judicial notice of other court documents "for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."). However, the Court does not take judicial notice of any factual findings or legal conclusions within those documents. *See id.*; *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, __F. Supp. 3d __, 2018 WL 2299043, at *8-9 (M.D. Fla. May 21, 2018); *Evanston Ins. Co. v. Premium Assignment Corp.*, No. 8:11-cv-2630-T-33TGW, 2012 WL 5877966, at *1-2 (M.D. Fla. Nov. 20, 2012).

[4] Oppenheim is not licensed to practice law in Florida. Doc. 56, p. 156.

Protection Act ("TCPA") class action lawsuits. JSOF, ¶ 1. A+W frequently collaborated with other law firms on TCPA class action lawsuits, including Bock Law. JSOF, ¶ 21.

In 2009, A+W began investigating potential TCPA violations involving the Buccaneers Limited Partnership ("BLP"). JSOF, ¶ 22. Brian Wanca ("Wanca") of A+W sent two e-mails to attorney Michael Addison ("Addison") of Addison & Howard, P.A. ("A&H") and attorney Phil Bock ("Bock") of Bock Law discussing A+W's investigation of potential TCPA violations involving BLP.[5] JSOF, ¶ 22.

On June 18, 2013, Cin-Q Automobiles, Inc. ("Cin-Q"), through A+W and A&H, filed a putative class action lawsuit in federal court against BLP for alleged TCPA violations. JSOF, ¶ 2; *Cin-Q Autos., Inc. v. Buccaneers Ltd. P'ship et al.,* 8:13-cv-1592-T-AEP (the "Cin-Q action"), Doc. 1.[6] On October 9, 2013, M&C signed a retainer agreement with A+W memorializing A+W's representation of M&C in the Cin-Q action. JSOF, ¶ 4. The retainer agreement, including the addenda attached thereto, provide in pertinent part:

> BY THIS AGREEMENT, MEDICAL & CHIROPRACTIC CLINIC, INC. ("Client"), hereby retains Anderson + Wanca to represent Client regarding any and all claims that the Client may have, or similarly situated individuals (the "Class") may have, against **BUCCANEERS LIMITED PARTNERSHIP** and any related entities ("Defendant"), in connection with the sending of unsolicited advertisements by fax.
>
> **The Action.** Client understands and agrees that this action will be brought on behalf of the Client, individually, and also as a representative of a proposed class of similarly-situated claimants, against the above identified Defendants. Plaintiff's Counsel agree to represent the Client with their best efforts; communicate regularly

---

[5] The e-mail exchanges provided as follows. On September 1, 2009, Wanca e-mailed Addison and copied Bock. JSOF, ¶ 22. The e-mail subject line read, "Tampa Bay Buccaneers TCPA SUIT". JSOF, ¶ 22. The e-mail stated, "We have a plaintiff but I understand you filed on Friday. Let me know if your plaintiff has a defect or cold feet and we can work something out." JSOF, ¶ 22. On August 4, 2010, Wanca again e-mailed Addison and copied Bock. JSOF, ¶ 22. The e-mail subject line read, "FW: tampa chiro v. nfl". JSOF, ¶ 22. The e-mail stated, "Look what was sent to me. Are you game to sue the nfl with us?" JSOF, ¶ 22.

[6] Before it was filed in federal court, the Cin-Q action had been pending in state court. JSOF, ¶ 2. The Cin-Q action challenged BLP's "practice of sending unsolicited facsimiles," including those sent "for the purpose of offering for sale individual game tickets to the Tampa Bay Buccaneers' home football games . . . ." Cin-Q action, Doc. 1.

with the Client; and not to negotiate any settlement of the individual or class action without consulting with the Client.

. . .

**Class Representative.** Client understands that as a class representative plaintiff, client will be required to act in the best interests of the class as a whole.

. . .

Client also understands the need for continuity of his position as plaintiff in this class action, and agrees that it will continue in that capacity until such time, if any, as the entire class action is resolved, subject to approval of the Court, or the Client is deemed by Plaintiff's Counsel or the Court to be an improper class representative.

. . .

**You are Suing As Class Representatives.** As such, you represent the interests of all class members who have been affected by the challenged conduct.

. . .

**No Special Treatment.** You have not been promised any special treatment other than the treatment that may be awarded to other class members. If successful, we may ask the judge to award you additional compensation for the extra time and effort you expend as class representatives. We cannot guarantee that the judge will award any such amounts but, in our experience, judges often will do so.

Doc. 207-2, pp. 2-3, 8-9.

In early 2014, M&C was added to the Cin-Q action as a second proposed class representative.[7] JSOF, ¶ 7. Six current and former A+W attorneys and Addison appeared on behalf of the named plaintiffs and putative class in the Cin-Q action. JSOF, ¶ 8. Oppenheim did not file an appearance on M&C's behalf in the Cin-Q action, or otherwise enter an appearance in the Cin-Q action. JSOF, ¶ 8. However, Oppenheim was involved in mediations and settlement negotiations in the Cin-Q action. JSOF, ¶ 10. In 2015, Oppenheim attended two mediations in the Cin-Q action, prepared mediation statements in advance of those mediations, and continued to conduct

---

[7] Cin-Q and M&C will be referred to, collectively, as the "Cin-Q plaintiffs."

settlement negotiations after the second mediation concluded. JSOF, ¶¶ 11, 17. Wanca and Addison maintained full authority over class settlement negotiations. JSOF, ¶ 10.

On March 25, 2016, the Cin-Q plaintiffs filed their Motion to Certify Class. JSOF, ¶ 20; Cin-Q action, Doc. 207.[8] On March 31, 2016, Bock contacted Oppenheim and offered Oppenheim a position of employment at Bock Law. JSOF, ¶ 24. Bock's firm, Bock Law, and Oppenheim's firm, A+W, had previously collaborated on dozens of class action cases under the TCPA and Oppenheim and Bock frequently worked and attended mediation sessions together. JSOF, ¶ 21. Bock knew that Oppenheim had been working on the Cin-Q action, and Bock understood Oppenheim to be A+W's primary settlement negotiator. JSOF, ¶ 24.

On April 3, 2016, Bock and Oppenheim met to discuss the offer and terms of employment more thoroughly. JSOF, ¶ 25. On or about April 5, 2016, Oppenheim copied the contents of the hard drive of the laptop computer that he had used at A+W to a new computer that he intended to use after his resignation. JSOF, ¶ 26. On April 7, 2016, Oppenheim gave A+W notice that he was leaving A+W to join Bock Law. JSOF, ¶ 27. On April 12, 2016, Oppenheim began his employment at Bock Law. JSOF, ¶ 28. Oppenheim continued to work on several cases that were jointly prosecuted by A+W and Bock Law, and he remained involved in class mediations and settlements in those cases. JSOF, ¶ 28.

On April 29, 2016, Oppenheim and Bock exchanged a series of e-mails referencing the Cin-Q action. JSOF, ¶ 30. Among other things, Oppenheim stated that A+W "wants to set a record settlement above the Capital One $75 million settlement." JSOF, ¶ 30. After Bock suggested that BLP's counsel was a "settler," Oppenheim responded that this was the mediator's "read" as well. JSOF, ¶ 30. Bock stated to Oppenheim that Oppenheim "could come forward with another class

---

[8] On March 31, 2017, the Motion to Certify Class was denied as moot based on subsequent events discussed *infra*. *See* Cin-Q action, Doc. 250.

member and settle that case over the objections of your former employer and also over the objections of your former individual client." JSOF, ¶ 30. Bock further stated that Oppenheim's "penultimate [sic] duty is to the class, not to the [M&C] and [referring to M&C's counsel, A+W,] certainly not to some greedy asshole who is not a class member and is just sitting in an office in [R]olling Meadows." JSOF, ¶ 30. Bock also wrote that Oppenheim could "make it even more Machiavellian" if Oppenheim got M&C's local counsel (Addison) to join in a competing class action. JSOF, ¶ 30. Later that same day, Bock e-mailed other attorneys at Bock Law (but not Oppenheim), stating, "Hmm. [A+W] holding out for a record settlement . . . . We could find a plaintiff and approach the defendant about settling? Lol." JSOF, ¶ 31.

Bock Law sent solicitation letters to potential recipients of BLP facsimiles who might be interested in pursuing claims against BLP. JSOF, ¶ 32. One such solicitation letter was sent on May 5, 2016 to Michele Williams (Zakrzewski) and her husband, Dr. Gregory Williams, the owners of M&C, to an address in Zephyrhills, Florida. JSOF, ¶ 32. The letter suggested that the recipient visit "faxlawyers.com." JSOF, ¶ 32. That website directed the user to Bock Law's website, which listed Oppenheim as one of its attorneys. JSOF, ¶ 32.

On May 6, 2016, Technology Training Associates, Inc., ("TTA") through Bock Law, filed a class action lawsuit against BLP in Hillsborough County Circuit Court. *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship,* Case No. 16-CA-004333 ("the TTA state court action"). JSOF, ¶ 35. The TTA state court action purported to cover the same claims and same class members as the Cin-Q action. JSOF, ¶ 35. Bock Law and BLP's counsel scheduled a mediation to attempt to negotiate a settlement of the TTA state court action. JSOF, ¶ 36. On May 11, 2016, the mediator's office sent an e-mail about the upcoming mediation to Bock Law and BLP's counsel. JSOF, ¶ 37. The e-mail accidentally included Addison. JSOF, ¶¶ 37-39.

On May 13, 2016, after Addison inadvertently discovered the existence of the TTA state court action, the Cin-Q plaintiffs filed a Motion to Intervene in the TTA state court action. JSOF, ¶¶ 37-39, 42. Three days later, the Cin-Q plaintiffs filed a Motion to Enjoin BLP from proceeding in the competing TTA state court action, which the court denied. JSOF, ¶ 42; Cin-Q action, Docs. 223, 233. On May 18, 2016, the day before the scheduled hearing on the Motion to Intervene in the TTA state court action, TTA, through Bock Law, filed a voluntary dismissal of that action. JSOF, ¶ 44. This lawsuit followed on June 1, 2016.[9]

Meanwhile, TTA and BLP mediated during two full-day sessions on May 19, 2016 and June 1, 2016. JSOF, ¶ 45. On June 20, 2016, TTA and another named plaintiff, Larry E. Schwanke, D.C., through Bock Law, filed a class action complaint in the United States District Court for the Middle District of Florida. JSOF, ¶ 46; *Tech. Training Assocs., Inc. et al. v. Buccaneers Ltd. P'ship*, Case No. 8:16-cv-1622-T-AEP (the "TTA federal action").[10] The TTA federal action covered the same class as the Cin-Q action. JSOF, ¶ 46. On the same day the TTA federal action was filed, BLP filed a Motion to Stay in the Cin-Q action on the basis that BLP had reached a class settlement as a result of the two-day mediation with TTA. Cin-Q action, Doc. 237. The Cin-Q plaintiffs opposed the Motion to Stay. Cin-Q action, Doc. 240. Magistrate Judge Porcelli granted BLP's Motion to Stay on June 27, 2016. Cin-Q action, Doc. 242.

On June 22, 2016, the TTA plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement and Notice to the Class. JSOF, ¶ 47; TTA federal action, Doc. 18. The proposed settlement provides for a fund of $19.5 million, and payments ranging from $350 to $565 to class members who submit claims. JSOF, ¶ 47. As part of the settlement, BLP waived any statute

---

[9] The procedural history of this case is described in detail *infra*.
[10] The plaintiffs in the TTA federal action, TTA and Larry E. Schwanke, D.C., are referred to, collectively, as the "TTA plaintiffs."

of limitations defense it may have. JSOF, ¶ 47. On July 8, 2016, the Cin-Q plaintiffs filed a Motion to Intervene in the TTA federal action, seeking standing as a party to argue that the proposed settlement in the TTA federal action was the result of a "reverse auction." JSOF, ¶ 48.

Magistrate Judge Porcelli granted the TTA plaintiffs' Motion for Preliminarily Approval of Class Action Settlement and Notice to the Class and denied the Cin-Q plaintiffs' Motion to Intervene. TTA federal action, Doc. 56. On the same day, Magistrate Judge Porcelli denied as moot the Cin-Q plaintiffs' Motion to Certify Class. Cin-Q action, Doc. 250.

The Cin-Q plaintiffs appealed Magistrate Judge Porcelli's denial of their Motion to Intervene in the TTA federal action. JSOF, ¶ 49; TTA federal action, Doc. 58. On October 26, 2017, the Eleventh Circuit reversed and remanded the denial of the Motion to Intervene in the TTA federal action. JSOF, ¶ 50. In its order, the Eleventh Circuit summarized the record before it, including the content of several e-mail exchanges between Oppenheim and Phil Bock of Bock Law.

> [Oppenheim] took part in an e-mail discussion with Phil Bock, a partner at Bock [Law], about the Cin-Q [action]. Oppenheim told Bock that the [Cin-Q plaintiffs'] remaining counsel "want[ed] to set a record" by extracting more than $75 million in damages from B[LP]. Bock responded that Oppenheim "could come forward with another class member and settle [the] case over the objections of [A+W] and also over the objections of [Oppenheim's] former individual client." Bock opined that Oppenheim's "penultimate [sic] duty is to the class, not to the named plaintiff and certainly not to some greedy asshole who is not a class member and is just sitting in an office in [R]olling Meadows," referring to the [Cin-Q plaintiffs'] remaining counsel. He went further, suggesting that Bock [Law] could "make it even more Machiavellian" by bringing [A+W's] local counsel in on the potential separate class action that Bock was proposing. After that exchange, Bock sent an e-mail to several other Bock [Law] lawyers that read: "Hmm. [Cin-Q plaintiffs' counsel] holding out for a record settlement.... We could find a plaintiff and approach the defendant about settling? Lol."

*Tech. Training Assocs., Inc., et al. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695 (11th Cir. 2017).

Based on these e-mail exchanges and other information in the record, the Eleventh Circuit stated:

> The [TTA plaintiffs] have a greater incentive to settle [their class action lawsuit with BLP] because their claims may be barred by the statute of limitations if they cannot secure a waiver from [BLP], while [the Cin-Q plaintiffs] have no statute of limitations issue. Although the parties fiercely contest whether the [TTA plaintiffs'] claims are actually time barred, the risk that they could be gives [the TTA plaintiffs] a greater incentive to settle as compared to the [Cin-Q plaintiffs]. Which is evidenced by the [TTA plaintiffs] getting a waiver of the statute of limitations as part of the settlement.
>
> More broadly, the record appears to show that [the TTA plaintiffs'] counsel, Bock [Law], deliberately underbid [the Cin-Q plaintiffs] in an effort to collect attorney's fees while doing a fraction of the work that the [Cin-Q plaintiffs'] counsel did. If, as it appears, Bock [Law] was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement possible for the class, it violated its ethical duty to the class. It is plain from the record that during the negotiations the interests of the [TTA plaintiffs] and of Bock [Law] were aligned with those of [BLP] and adverse to the [Cin-Q plaintiffs'] interests. Given that, [the TTA plaintiffs] cannot be expected to adequately represent [the Cin-Q plaintiffs'] interests.

*Id.* at 697-98 (internal citation and quotation omitted).

Based on the mandate of the Eleventh Circuit, the portion of the order denying the Cin-Q plaintiffs' Motion to Intervene was vacated, and the Cin-Q plaintiffs' Motion to Intervene was granted. *See* TTA federal action, Docs. 28, 77, 81, 82, 87.

On February 12, 2018, the Cin-Q plaintiffs (as interveners in the TTA federal action) filed a Motion to Decertify the Settlement Class and Vacate the Preliminary Approval Order in the TTA federal action. TTA federal action, Doc. 91. That motion remains pending before Magistrate Judge Porcelli. The Cin-Q plaintiffs also filed a Motion to Lift the Stay in the Cin-Q action and Rule on the Motion to Certify Class that had been filed on March 25, 2016. Cin-Q action, Doc. 251. That motion was denied without prejudice, and the Cin-Q action was stayed pending further order of the court. Cin-Q action, Doc. 253.

## II.    Procedural History

On June 1, 2016, M&C, through counsel,[11] filed a verified complaint ("Complaint") and Motion for Temporary Restraining Order against Oppenheim and Bock Law (collectively, "Defendants") in Hillsborough County Circuit Court. Doc. 2; Doc. 3. The Complaint alleges one count for breach of fiduciary duty against Oppenheim and Bock Law and one count for aiding and abetting breach of fiduciary duty against Bock Law. Doc. 2; Doc. 3. The Complaint alleges that Oppenheim "as [M&C's] attorney . . . owed [M&C] ethical and fiduciary duties" including "an undivided duty of loyalty to represent [M&C's] interests and a duty not to represent a client with interests materially adverse to [M&C]." Doc. 2, pp. 6, 12. The Complaint further alleges that Bock Law "substantially assisted [Oppenheim's] breach of fiduciary duties to [M&C], including filing the [TTA state court action], pursuing mediation of the [TTA state court action], and acting contrary to [M&C's] interests." Doc. 2, p. 15.

Defendants removed the action to this court on June 8, 2016. Doc. 1. M&C then filed an Amended Motion for Entry of a Temporary Restraining Order and Preliminary Injunction. Doc. 5. The Court denied M&C's Motion for Entry of a Temporary Restraining Order, and reserved ruling to the extent the motion sought a preliminary injunction. Doc. 41. After an evidentiary hearing on July 18, 2016, the Court denied M&C's Motion for Preliminary Injunction. Doc. 51; Doc. 71. In the Order denying M&C's Motion for Preliminary Injunction, the Court found that M&C was likely to establish the existence of a fiduciary duty to the class. Doc. 71, p. 7. However, the Court also found that it was questionable whether M&C would be able to establish the existence of a special fiduciary duty to M&C different from the fiduciary duty to all class members. Doc. 71, p. 7.

---

[11] M&C retained the law firm of Foley & Lardner, LLP to represent it in this action against Oppenheim and Bock Law.

Thereafter, M&C filed its Motion for Partial Summary Judgment, Doc. 141; Doc. 142, in which it argues that it is entitled to partial summary judgment because there is no genuine issue of material fact that Oppenheim breached his fiduciary duty to his former client, M&C, and that Bock Law aided and abetted Oppenheim in that breach. Doc. 142, p. 1. M&C seeks to establish the amount of damages at trial. Doc. 142, p. 11.

Defendants also filed a Motion for Summary Judgment. Doc. 144; Doc. 211-1. Defendants argue that Oppenheim did not owe M&C an individual or special fiduciary duty, and that even if there was a duty, it was not breached because there was no "material adversity" between the TTA plaintiffs and M&C and because there was no disclosure of confidential information. Doc. 144, pp. 14-20; Doc. 211-1, pp. 14-20. Defendants contend that because M&C's claim against Oppenheim fails, the aiding and abetting claim against Bock Law likewise fails. Doc. 144, p. 24; Doc. 211-1, p. 24. Defendants also seek summary judgment "based on [their] affirmative defenses of champerty and maintenance." Doc. 144, pp. 24-25; Doc. 211-1, pp. 24-25.[12]

## III. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged

---

[12] Defendants also suggest by their Motion for Summary Judgment that the Court should invalidate the fee agreement between A+W and M&C's counsel to finance the instant action brought by M&C. Doc. 144, p. 24-25; Doc. 211-1, pp. 24-25. That dispute is the subject of Defendants' Motion to Disqualify Counsel, which is currently before Magistrate Judge Tuite. Doc. 156.

if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine" only if a reasonable jury, considering the evidence present, could find for the nonmoving party, and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 Fed. Appx. 852, 858 (11th Cir. 2006).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Grp. v. U.S.*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *U.S. v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555-56.

## IV. Discussion

### A. *Breach of Fiduciary Duty*

To prove a breach of fiduciary duty by Oppenheim under Florida law, M&C must show (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) that such breach was the proximate cause of M&C's damages. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).[13]

#### 1. Fiduciary Duty

The parties do not dispute that Oppenheim owed some fiduciary duty to M&C in connection with his representation of the Cin-Q plaintiffs and putative class in the Cin-Q action. At issue is the character and scope of the duty owed to M&C, individually. Importantly, the issue of whether Oppenheim or Bock Law owed and breached duties to the *class* is not before the Court.[14]

M&C argues that Oppenheim had an attorney-client relationship with M&C and that, as a result, Oppenheim owed fiduciary and ethical duties to M&C both individually and as a putative class representative. Doc. 142, pp. 3-8. M&C contends that the Florida Rules of Professional Conduct ("Florida Rules")[15] delineate the scope of the fiduciary duties Oppenheim owed,[16] and

---

[13] The Court applies Florida law in this diversity action.

[14] Whether Oppenheim and/or Bock Law breached fiduciary duties to the class, and whether Bock Law can adequately represent the class, will be taken up by Magistrate Judge Porcelli in the Cin-Q action and the TTA federal action. *See* Doc. 71, p. 7; Doc. 96, p. 8; TTA federal action, Doc. 91. *See generally Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1178 (5th Cir. 1978) (class conflicts are resolved by judge presiding over class action).

[15] M&C's Motion for Partial Summary Judgment relies, in significant part, on the untimely expert report of Henry Lee Paul (the "Paul Expert Report"). Doc. 142, pp. 3-4. The Paul Expert Report was not disclosed before the end of the expert disclosure deadline and was the subject of M&C's Motion for Leave to Disclose its Expert Report. Doc. 137. The Court denied that motion and ordered that all references to the expert report be stricken from M&C's Motion for Partial Summary Judgment. Doc. 192; Doc. 219. Accordingly, the Court will not consider M&C's references to the Paul Expert Report within its Motion for Partial Summary Judgment.

[16] There is some dispute between the parties as to whether the Florida Rules apply to Oppenheim given that he is not licensed to practice law in Florida and did not made a *pro hac vice* appearance in the Cin-Q action. Doc. 195, p. 16. The parties have not provided the Court with any case law on point. However, if Oppenheim was "practicing law" in Florida, then he is subject to the Florida Rules. R. Regulating Fla. Bar 4-5.5, comment ("A lawyer who practices law in Florida pursuant to subdivisions (c), (d), or otherwise is subject to the disciplinary authority of Florida."; "A lawyer who practices law in Florida is subject to the disciplinary authority of Florida.").

that "Oppenheim's duties to the class as a whole do not supplant the duties he also owed to M&C individually." Doc. 142 pp. 3-4, 8. M&C contends that Oppenheim violated the following Florida Rules: Rule 4-1.6, Confidentiality of Information; Rule 4-1.9, Conflict of Interest, Former Client; Rule 4-1.10, Imputation of Conflicts of Interest, General Rule; and Rule 4-8.4, Misconduct. Doc. 142, pp. 4-11.

Defendants argue that M&C's application of the Florida Rules is inappropriate given that the duties "of class attorneys are necessarily different than the duties owed in an individual action." Doc. 150, p. 15; Doc. 217-1, p. 15. Because Oppenheim owed a duty to the class as a whole, Defendants argue, M&C's contention that it was owed duties, individually, fails. Doc. 144, pp. 14-16; Doc. 211-1, pp. 14-16.

The Court has previously explained that the duty owed to class clients differs significantly from the duty owed in an individual representation case. *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, No: 8:16-cv-1477-T-36TBM, 2016 WL 6093223, at *4 (M.D. Fla. Oct. 19, 2016) (citing *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982); *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981)).[17] There is little authority in the Eleventh Circuit addressing what duties class counsel owe to named plaintiffs, if any, apart from those duties owed to the class as a whole. But the Court is not without guidance. The relevant case law both within and outside the Eleventh Circuit generally holds that class counsel's duty, above all, is to the class members as a whole and not to any particular named plaintiff. *Kincade*, 635 F.2d at 508 (holding that the "client" in a class action includes numerous unnamed class members and the class attorney must act in the best interests of the class as a whole); *Parker*, 667 F.2d at 1211 (stating that the compelling obligation of class counsel in class action litigation is to the group which makes up the

---

[17] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

class and is not dependent on the special desire of the named plaintiffs). Furthermore, the duty to the class is owed regardless of whether the class has yet been certified. *Fla. Bar. v. Adorno*, 60 So. 3d 1016, 1018, 1025 (Fla. 2011) (holding that a three-year suspension was warranted for an attorney whose misconduct included negotiating a seven million dollar settlement on behalf of seven named plaintiffs, while abandoning thousands of putative class members, and obtaining a nondisclosure agreement with the named plaintiffs for which the only logical reason could be keeping the facts of settlement secret from putative class members).

M&C cites to *Adorno* to support its contention that Oppenheim owed duties to it individually. *Id.* But rather than support M&C's argument, *Adorno* underscores the principle that a class attorney's predominant duty is to the class and not to any named plaintiff. *Id.* at 1028. *Masztal v. City of Miami*, also cited by M&C, further highlights that class counsel's principal duty is to the class. 971 So. 2d 803, 808-09 (Fla. 3d DCA 2007) (finding a breach of fiduciary duty and vacating the settlement that included only the named plaintiffs and abandoned the remaining class members).

The additional cases cited by M&C regarding attorney-client privilege are not instructive either. Two cases M&C cites, *In re Katrina Canal Breaches Consol. Litigation*, No. 05-4182, 2008 WL 4401970, at *2 (E.D. La. Sept. 22, 2008) and *Morisky v. Pub. Serv. Elec. & Gas Co. ("PSE&G")*, 191 F.R.D. 419, 424 (D. N.J. 2000), both hold that only named plaintiffs may claim attorney-client privilege before a class is certified. But neither case suggests that class counsel does not owe fiduciary duties to putative class members, or that an attorney-client relationship between named class plaintiffs and class counsel displaces the duty owed to a putative class.[18]

---

[18] The remaining case cited by M&C for the proposition that Oppenheim owed it individual duties is inapposite. *Cap. Bank v. MVB, Inc.*, 644 So. 2d 515, 520 (Fla. 3d DCA 1994) (discussing fiduciary duties owed by a bank).

Given the foregoing, it is questionable whether the Florida Rules may properly frame the scope of class counsel's fiduciary duties. Indeed, case law appears to warn against such an application. *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1176 (5th Cir. 1978) ("Certainly it is inappropriate to import the traditional understanding of the attorney-client relationship into the class action context by simply substituting the named plaintiffs as the client.").

The Preamble to the Florida Rules, themselves, provide some guidance:

> **Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption that a legal duty has been breached.** In addition, violation of a rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. **They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons.** The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating a substantive legal duty. **Nevertheless, since the rules do establish standards of conduct by lawyers, a lawyer's violation of a rule may be evidence of a breach of the applicable standard of conduct.**

R. Regulating Fla. Bar 4, Preamble (emphasis added).

M&C hones in on the last sentence of the above-cited text. Doc. 142, pp. 7, 9 (citing *Baker v. Eichholz*, No. CV406-021, 2009 WL 62266, at *3 (S.D. Ga. Jan. 9, 2009) ("The standard of care established by ethical rules, while not dispositive, is relevant to the existence of a fiduciary duty and its possible breach.")). But M&C does not merely consider the Florida Rules "relevant" or simply cite to them as "evidence of a breach of the applicable standard of conduct." *Baker,* 2009 WL 62266 at *3; R. Regulating Fla. Bar 4, Preamble. Rather, M&C relies upon the Florida Rules entirely for the applicable standard of conduct.

Moreover, all of the cases M&C cites in support of its use of the Florida Rules are in the context of individual representation, not in terms of class action lawsuits. *See Baker*, 2009 WL 62266, at \*3 (individual client suing former attorneys for failure to prosecute personal injury claim); *Griva v. Davison*, 637 A.2d 830, 846 (D.C. 1994) (individual representation); *Avianca, Inc. v. Corriea*, 705 F. Supp. 666, 679 (D.D.C. 1989) (individual representation). M&C does not direct the Court to any cases applying state rules of professional conduct to a class attorney's purported breach of duty to a particular named plaintiff. Defendants, on the other hand, have directed the Court to cases where courts have declined to import state ethics rules into class action litigation because of the dissimilar nature of class action lawsuits. *E.g., Radcliffe v. Hernandez*, 818 F.3d 537, 547 (9th Cir. 2016) (declining to adopt mandatory state disqualification rules because "district courts should have discretion to deal with the unique complexities and ethical concerns involved in class action lawsuits").

The recognition that class action lawsuits are different and governed by separate procedure—namely, Federal Rule of Civil Procedure 23—has previously given the Eleventh Circuit pause with respect to whether an individual class member may bring a separate action against class counsel stemming from class counsel's representation in class action litigation. *Diaz v. Sheppard*, 85 F.3d 1502, 1508 (11th Cir. 1996) (Logan, J., dissenting). In *Diaz*, the district court granted class counsel's motion to dismiss an individual class member's separate malpractice lawsuit on the ground that class counsel owed no duty to individual class members. *Id.* at 1504. The Eleventh Circuit reversed, finding that the district court did not have subject matter jurisdiction and therefore could not properly consider the merits of the case. *Id.* at 1506. Disagreeing with the majority's decision that the district court did not have subject matter jurisdiction, the dissenting judge opined that the district court's dismissal on the merits was proper because a separate action

against class counsel is unwarranted where Rule 23 provides proper procedures and protections in class action litigation. *Id.* at 1506-09 (citing *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 212 (5th Cir. 1981)).

Indeed, class action conflicts are common and commonly resolved within the class action. *Radcliffe*, 818 F.3d at 546 ("Conflicts of interest among class members are not uncommon and arise for many different reasons . . . ." (internal citation omitted)); *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 164-65 (3d Cir. 1984) (Adams, J., concurring) (explaining that the legal system has responded to the unique risks inherent in class action litigation by imposing strict procedural requirements pursuant to Federal Rule of Civil Procedure 23 and by placing "special responsibility" on the trial judge to protect the rights of class members); *Thomas v. Albright*, 77 F. Supp. 2d 114, 123 (D.D.C. 1999) (enjoining prosecution of a separate malpractice action against class counsel, finding that "plaintiffs already have been given an adequate forum (i.e. at the fairness hearing) to air their individual grievances").

M&C contends that "if the Court accepted Defendants' premise [that class counsel does not have duties to individuals], Defendants' position would have no limits; any class lawyer at any time could dump one client, and pick up another one." Doc. 208-1, p. 10. While not approving M&C's characterization, the Court recognizes—and so must M&C—the fluidity of class action litigation. Even M&C's own counsel, A+W, has acknowledged that it may be appropriate to dismiss one class plaintiff and retain another. *See* JSOF, ¶ 22 (e-mail from Wanca to Addison, stating, "[w]e have a plaintiff . . . . Let me know if your plaintiff has a defect or cold feet and we can work something out"). The retainer agreement between A+W and M&C even accounts for such a possibility in M&C's case. Doc. 207-2, pp. 2-3, 8-9 (M&C "will continue [to be a plaintiff in the class action] **until such time, if any, as** the entire class action is resolved, subject to approval

of the Court, or **the Client is deemed by Plaintiff's Counsel or the Court to be an improper class representative."** (emphasis added)).

Finally, further undermining M&C's position that Oppenheim owed it individual duties, and that those duties are framed by the Florida Rules, is the fact that M&C's current counsel in the Cin-Q action, A+W, moved to consolidate the Cin-Q action and TTA federal action, and to be named the class counsel. Cin-Q action, Doc. 236. Assuming TTA and M&C are materially adverse,[19] as M&C contends, an application of the Florida Rules would prohibit A+W's representation of both TTA and M&C in the class action litigation. *See* R. Regulating Fla. Bar 4-1.7. That M&C takes no issue with A+W representing its alleged adversary begs the question of M&C's motivation in this litigation.

The facts before this Court show that A+W's representation of M&C was limited to class actions, including against BLP. Oppenheim acted for the class as a whole. Doc. 211-9, pp. 60-61. M&C did not share individual, personal, or proprietary information with Oppenheim. Doc. 211-8, pp. 206-07; Doc. 211-9, p. 46.

Put simply, the Court is not persuaded by M&C's use of the Florida Rules as the standard of care in this breach of fiduciary duty case involving class action litigation. By its ruling, the Court does not hold that the Florida Rules do not apply to Oppenheim and does not comment on whether M&C would have a meritorious complaint to the Florida Bar. Nor is the Court unmindful of the ethical issues that may arise in class action litigation. Rather, the Court finds that on this record the Florida Rules do not provide the basis for a fiduciary duty owed to M&C, individually, in class action litigation.

---

[19] Discussed *infra.*

M&C has failed to establish a standard of care applicable to it, individually, in the relevant class action litigation. For this reason, M&C has failed to prove the first element of its claim, existence of a fiduciary duty. Therefore, it is not entitled to summary judgment as a matter of law on its first claim. Moreover, because M&C cannot prove its claim for breach of fiduciary duty, Defendants are entitled to summary judgment on M&C's first claim as a matter of law.

### 2. Breach

Even assuming, *arguendo*, that the Florida Rules could frame the scope of Oppenheim's duty to M&C individually as M&C urges, M&C's claim for breach of fiduciary duty would still fail because M&C cannot establish by the evidence that Oppenheim's, or Bock Law's,[20] actions constitute a breach.

*Material Adversity*

M&C argues that Oppenheim and/or Bock Law breached their fiduciary duties to M&C by violating certain of the Florida Rules, including Florida Bar Rule 4-1.10, Imputation of Conflicts of Interest, General Rule,[21] which provides that "[w]hen a lawyer becomes associated with a firm,

---

[20] In its Motion for Partial Summary Judgment, M&C argues that the Florida Rules apply to Bock Law's conduct, but does not make a clear effort to prove Bock Law breached separate fiduciary duties to M&C. Doc. 142, pp. 10. Rather, M&C's Motion for Partial Summary Judgment, as it pertains to Bock Law, focuses on Bock Law's alleged aiding and abetting of Oppenheim's alleged breach. Nonetheless, M&C argues that Bock Law's actions—representing TTA— violated the Florida Rules and, therefore, are relevant to Oppenheim's breach despite the fact that Oppenheim did not take part in the representation of the TTA plaintiffs. Doc. 142, p. 10. The Florida Rules, on which M&C relies, provide that Oppenheim's conflicts may be imputed to his new firm, Bock Law—not that Bock Law's conduct may be imputed to Oppenheim. *See* R. Regulating Fla. Bar 4-1.9, Conflict of Interest, Former Client; R. Regulating Fla. Bar 4-1.10, Imputation of Conflicts of Interest, General Rule. Despite M&C's unclear and circular argument, the Court will endeavor to address M&C's contentions about material adversity as it relates to Florida Bar Rules 4-1.9 and 4-1.10.

[21] R. Regulating Fla. Bar 4-1.10, Imputation of Conflicts of Interest, General Rule, provides:

> **(a) Imputed Disqualification of All Lawyers in Firm.** While lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
>
> **(b) Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client

the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer . . . had previously represented a client whose interests are materially adverse to that person . . . ."

To support its theory of breach, M&C relies on the Eleventh Circuit's opinion in *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d at 697-98 (the "*TTA* opinion"). As the Court previously discussed in its Order denying M&C's Motion for Leave to Disclose its Expert Report, however, M&C overstates the relevance of the *TTA* opinion to the instant case. Doc. 219. Contrary to M&C's assertions, the *TTA* opinion spoke barely in terms of ethics[22] and entirely in terms of class.[23] 874 F.3d at 696-97 ("If, as it appears, Bock [Law] was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best settlement possible **for the class,** it violated its ethical duty **to the class."** (emphasis added); "[T]he interests of **[the TTA plaintiffs]** and of Bock [Law] were aligned with those of [BLP] and adverse to the **[Cin-Q plaintiffs']** interests." (emphasis added)).

Even if the *TTA* opinion had stated that adversity exists between the TTA plaintiffs and M&C, individually (as opposed to the Cin-Q plaintiffs, of which M&C was a part), it did not

---

whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

**(c) Representing Interests Adverse to Clients of Formerly Associated Lawyer.** When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

**(d) Waiver of Conflict.** A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.

**(e) Government Lawyers.** The disqualification of lawyers associated in a firm with former or current government lawyers is governed by rule 4-1.11.

[22] The only citation to an ethics source in the *TTA* opinion are the ethical guidelines for settlement negotiations, promulgated by the American Bar Association. 874 F.3d at 697.

[23] As discussed *supra,* class issues will be taken up by Magistrate Judge Porcelli in the Cin-Q action and TTA federal action.

determine, as M&C contends, that the TTA plaintiffs and M&C are *materially adverse*. M&C posits that adversity and materially adversity are one and the same. Doc. 195, pp. 8-9. But the *TTA* opinion dealt with the discrete issue of whether the Cin-Q plaintiffs should be allowed to intervene in the TTA federal action pursuant to Rule 24(a)(2). 874 F.3d at 694. Relevant to that inquiry was this narrow question: whether the Cin-Q plaintiffs could meet a "minimal burden" and show their interests "may be" represented inadequately by the TTA plaintiffs. *Id.* at 696-97.

Moreover, the Eleventh Circuit's holding that the Cin-Q plaintiffs may be inadequately represented by the TTA plaintiffs was based on the fact that the TTA plaintiffs may have had a greater incentive to settle with BLP than the Cin-Q plaintiffs. *Id.* at 642 ("[A] representative party's 'greater willingness to compromise can impede [it] from adequately representing the interests of a nonparty.' That is the case here." (quoting *Clark v. Putnam Cnty.*, 168 F.3d 458, 462 (11th Cir. 1999))). But, as discussed above, conflicts, including conflicts over whether and how to settle, are common in class action litigation. *E.g., Radcliffe*, 818 F.3d at 539. And, courts have found it inappropriate to exclude class counsel based on similar diverging interests of class members. *Id.* at 543-45.

In *Radcliffe*, the Ninth Circuit examined whether a state rule of automatic disqualification, typically applied in lawsuits involving individual clients, should apply to a class action lawsuit where class members had developed differing interests. *Id.* The Ninth Circuit held that cases involving individual representation and applying the automatic disqualification rule were inapposite to "the circumstances of the lawyer who represents a class of plaintiffs whose interests may in some ways be adverse to each other, but all of whose interests are adverse to the defendant." *Id.* The Ninth Circuit explained that "[i]n a class action, conflicts often arise not because an attorney simultaneously represents litigation adversaries but because they simultaneously

represent different members of the same class who develop divergent interests regarding how to prevail on their shared claims." *Id. See also Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999) ("In many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class). If, by applying the usual rules on attorney-client relations, class counsel could easily be disqualified in these cases, not only would the objectors enjoy great 'leverage,' but many fair and reasonable settlements would be undermined by the need to find substitute counsel after months or even years of fruitful settlement negotiations.").

Here, the TTA plaintiffs and M&C, like the class members in *Radcliffe*, do not seek diametrically different outcomes. While they may have different interests, they seek the same general outcome against the same defendant, BLP. And, again, M&C's assertion that the TTA plaintiffs are materially adverse to it is belied by the fact that its current class action attorneys, A+W, moved to represent both the TTA plaintiffs and the Cin-Q plaintiffs in a combined action. The Court is not convinced that the TTA plaintiffs' and M&C's interests are so adverse as to constitute material adversity for purposes of the Florida Rules.

*Confidential Information*

M&C also argues that Oppenheim breached his fiduciary duties to M&C by violating Florida Rules 4-1.6, 4-1.9, and 4-8.4 by sharing "confidential and mediation privileged information from the Cin-Q [a]ction with Bock [Law] without M&C's consent." Doc. 142, p. 10. Specifically, M&C points to a series of e-mails between Oppenheim and Bock, including those which "disclosed . . . that the Cin-Q [a]ction [p]laintiffs were seeking a settlement above $75 million" and "disclosed . . . that Judge Andersen [the mediator] believed B[LP's] counsel was a 'settler.'" Doc. 141, p. 6.

M&C states that Oppenheim obtained the former information "through mediation communications." Doc. 141, p. 6.

M&C does not explain how either of the communications it points to were "confidential and mediation privileged," leaving the Court to sort through the parties' differing characterizations of the communications. Doc. 142, pp. 8-10; Doc. 150, pp. 10-11; Doc. 217-1, pp. 10-11; Doc. 144, pp. 20-21; Doc. 211-1, pp. 20-21; Doc. 149, pp. 12-13; Doc. 208-1, pp. 12-13. Despite the parties' dispute over these communications, however, the Court concludes that M&C cannot show a violation of the Florida Rules on this record. The "confidential" information M&C points to, at best, deals with class counsels' efforts to obtain a settlement for the class. M&C fails to direct the Court to any communications that show disclosure of information relevant to the representation of M&C, individually.

Even if M&C had been able to articulate a standard of care applicable to it, individually, based on the Florida Rules, it failed to show a violation of the Florida Rules. Accordingly, M&C also cannot prove the second element of its claim, breach, and is not entitled to summary judgment as a matter of law. Because M&C cannot establish the breach of a fiduciary duty, Defendants are entitled to summary judgment on M&C's first claim as a matter of law.

3.  Damages Caused by the Breach

M&C also fails to prove any damages as a result of Oppenheim's alleged breach. In its Motion for Partial Summary Judgment, M&C argues only that "[t]he filing of the copycat class action forced M&C and the Cin-Q [p]laintiffs to intervene . . . in order to protect their rights" by "expend[ing] time and other resources to prevent a settlement between Bock [Law][24] and [BLP] resulting from their aligned interests." Doc. 142, p. 10. But whether the Cin-Q plaintiffs were

---

[24] It appears M&C may have meant to refer to the "TTA plaintiffs" rather than "Bock Law."

"forced" to intervene invokes questions pertaining to the class, not to M&C individually. Moreover, as described throughout this Order, conflicts between class members and/or class representatives in class action litigation is anticipated, and procedures, such as those employed by the Cin-Q plaintiffs in their Motion to Intervene, are in place to address such conflicts. For example, whether M&C will receive an incentive award will be determined by the magistrate judge in the class action litigation. As for attorneys' fees incurred in this action, the contract under which Foley & Lardner represents M&C indicates that A+W has sole responsibility for all fees and expenses incurred in this action. Doc. 211-27; Doc. 211-8, pp. 133-35; Doc. 211-3, pp. 268-72.

M&C cannot show by the evidence presented that it suffered damages as a result of Oppenheim's breach of a fiduciary duty, owed to it individually. Accordingly, M&C is not entitled to summary judgment on any part of its first claim. Because M&C cannot prove its first claim as a matter of law, Defendants are entitled to summary judgment in their favor on M&C's first claim.

### B. *Aiding and Abetting*

To establish that Bock Law aided and abetted Oppenheim's breach of fiduciary duty, M&C must establish all of the following four elements: "(1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). As discussed *supra,* M&C cannot establish the requisite fiduciary duty on the part of Oppenheim, nor a breach of any such duty. Because the underlying breach of fiduciary duty claim fails, M&C's claim for aiding and abetting that breach must also fail. Accordingly, M&C cannot establish the elements of aiding and abetting, and its Motion for Partial Summary Judgment must fail. Because M&C cannot

prove its claim as a matter of law, Defendants are entitled to summary judgment in their favor on M&C's second claim.[25]

**Accordingly, it is ORDERED**:

1.    M&C's Motion for Partial Summary Judgment (Doc. 142) is **DENIED.**

2.    Defendants' Motion for Summary Judgment (Doc. 144) is **GRANTED.**

3.    All pending motions are **DENIED** as moot, except for Defendants' motion to disqualify Foley & Lardner, LLP (Doc. 156), which has been referred to the magistrate judge.

4.    The Clerk is directed to enter judgment in favor of Defendants David M. Oppenheim and Bock Law Firm, LLC and against Plaintiff Medical & Chiropractic Clinic, Inc.

5.    The Clerk is further directed to close this case.

**DONE AND ORDERED** in Tampa, Florida on August 3, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

COPIES TO:
COUNSEL OF RECORD AND UNREPRESENTED PARTIES, IF ANY

---

[25] Because Defendants are entitled to summary judgment as a matter of law on both of M&C's claims, the Court need not address Defendants' arguments pertaining to its affirmative defense of champerty and maintenance. Doc. 144, pp. 24-25; Doc. 211-1, pp. 24-25.