UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDICAL & CHIROPRACTIC
CLINIC, INC.,

     Plaintiff,

v.

                                        Case No. 8:16-cv-1477-T-36CPT

DAVID M. OPPENHEIM, an
individual, and BOCK LAW
FIRM, LLC,

     Defendants.

_____/

## O R D E R

This matter is before the Court on the *Defendants' Motion to Disqualify Foley &*

*Lardner, LLP* (Doc. 156) and *Plaintiff Medical & Chiropractic Clinic, Inc.'s Response to*

*Defendants' Motion to Disqualify* (Doc. 165). Following a status conference on May

15, 2018, the Court ordered the parties to file a joint stipulation of undisputed facts as

well as supplemental briefs addressing one of the issues raised in their filings. (Doc.

199). The parties complied with the Court's Order (Docs. 200, 204, 205), and the

Court heard oral argument on the Defendants' motion to disqualify on June 21, 2018

(Doc. 212). Pursuant to the Court's directive, the Plaintiff filed an additional

submission on June 25, 2018. (Doc. 216).

Upon a thorough review of the parties' filings and arguments, the Court denies the Defendants' disqualification motion.

## BACKGROUND

Defendant David Oppenheim (Oppenheim) is an attorney licensed in the State of Illinois who joined the Illinois law firm of Brian J. Wanca, J.D., P.C. d/b/a Anderson + Wanca (A+W) in June 2009. (Doc. 204 at 2; Doc. 221 at 2). While at A+W, Oppenheim's practice focused almost entirely on class actions brought pursuant to the Telephone Consumer Protection Act of 1991 (TCPA). (Doc. 204 at 2; Doc. 221 at 2-3).

In October 2013, Plaintiff Medical & Chiropractic Clinic, Inc. (M&C) retained A+W in connection with a putative TCPA class action lawsuit pending in the Middle District of Florida against the Buccaneers Limited Partnership. (Doc. 204 at 2; Doc. 221 at 3-4). That putative class action had been initiated earlier in 2013 by Cin-Q Automobiles, Inc., and was styled *Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship*, Case No. 8:13-cv-1592-T-AEP (Cin-Q Action). (Doc. 221 at 3).

Shortly after M&C retained A+W, Cin-Q and M&C filed a motion in the Cin-Q Action for leave to file an amended complaint adding M&C as a second proposed class representative. (Doc. 204 at 2). That motion was granted in early January 2014. *Id.*; (Doc. 221 at 4).

Since then, M&C, Cin-Q, and their counsel, including A+W, have continued to litigate the Cin-Q Action. (Doc. 204 at 2). During the course of that litigation, the

plaintiffs filed a motion for class certification and participated in a number of mediation sessions and settlement negotiations. (Doc. 204 at 2; Doc. 221 at 5).

Oppenheim was involved in these meditations and settlement negotiations while employed at A+W. (Doc. 204 at 2; Doc. 221 at 4). His involvement in these matters included preparing and submitting mediation statements for two mediation sessions in 2015, attending those mediations, and conducting settlement negotiations after the second mediation concluded. (Doc. 204 at 2; Doc. 221 at 4-5).

On March 31, 2016, Oppenheim was offered a position at Defendant Bock Law Firm, LLC (BLF). (Doc. 204 at 2; Doc. 221 at 5). BLF and A+W were familiar with each other at the time, as the two firms had worked together on TCPA class action cases over the years. *Id.* BLF knew that Oppenheim had been working on the Cin-Q Action and understood that he had been A+W's primary settlement negotiator. (Doc. 204 at 2-3; Doc. 221 at 5).

Oppenheim began working at BLF on April 12, 2016, and less than a month later, on May 6, 2016, BLF filed a class action complaint in state court against the Buccaneers Limited Partnership on behalf of both Technology Training Associates (TTA) and the same putative class as the Cin-Q Action. *Id.* When M&C's attorneys moved to intervene in that state court action, BLF voluntarily dismissed it. (Doc. 204 at 3; Doc. 221 at 7).

On June 20, 2016, BLF filed a new class action complaint against the Buccaneers Limited Partnership in the Middle District of Florida on behalf of TTA and another named plaintiff, captioned *Tech. Training Assocs., Inc., et al. v. Buccaneers*

*Ltd. P'ship*, Case No. 8:16-cv-1622-T-35AEP (TTA Action). (Doc. 204 at 3; Doc. 221 at 7). Two days later, on June 22, 2016, the TTA plaintiffs filed an unopposed motion seeking, *inter alia,* preliminary approval of a proposed class settlement. *Id.* That settlement disposed of the claims against the Buccaneers "in exchange for nearly $20 million in damages." *Tech. Training Assocs., Inc., et al. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 694 (11th Cir. 2017); *see also* (Doc. 221 at 7).

In the meantime, on June 1, 2016, M&C initiated the instant litigation against Oppenheim and BLF in state court, alleging that: (1) Oppenheim breached his fiduciary duty to M&C by disclosing confidential information to BLF regarding the Cin-Q Action; and (2) BLF aided and abetted that breach by using that information to file, prosecute, and settle the TTA Action with the Buccaneers. (Doc. 204 at 3). To remedy these harms, M&C sought, among other relief, damages for the loss of a potential incentive award of up to $25,000 in the Cin-Q Action, disgorgement of any attorneys' fees that Oppenheim or BLF might ultimately obtain in the TTA action, and injunctive relief barring Oppenheim and BLF from representing the class in litigation against the Buccaneers. *Id.* at 3-4. With Oppenheim's consent, BLF removed the matter to this Court. (Docs. 1, 4).

M&C is represented in the instant litigation by Foley & Lardner LLP (Foley), which M&C retained by way of an "Engagement Letter Agreement" (Retainer Agreement) dated May 26, 2016. (Doc. 204 at 5). Although not a named party to the case, A+W is identified as a client in the Retainer Agreement along with M&C, and has been represented by Foley in connection with third-party subpoenas in this

matter. *Id.* at 8. The Retainer Agreement provides that A+W is "responsible for the payment of . . . [Foley's] invoices and expenses" incurred in the instant litigation. *Id.*

After entering into the Retainer Agreement, A+W sued Oppenheim in Illinois state court based on the events surrounding Oppenheim's resignation from A+W and his subsequent employment at BLF. *See Wanca v. Oppenheim*, Case No. 2017CH08373 (Ill. Cir. Ct., Cook Cty.) As set forth in the operative complaint in that action, A+W asserts claims against Oppenheim for breach of fiduciary duty, conversion, violation of the Illinois Trade Secrets Act, and negligence. (Doc. 216-1). Foley represents A+W in the Illinois state court action. *Id.*

In mid-January 2017, the Defendants learned through discovery that A+W had "agreed to pay all of M&C's fees and costs in its pursuit of" the instant action. (Doc. 204 at 6). Responding to a similar document request, M&C listed the Retainer Agreement in a privilege log it served on BLF the same day. *Id.*

On March 28, 2017, BLF moved to compel the production of the Retainer Agreement. *Id.*; (Doc. 98). Following hearings on the matter, the Court entered an Order on June 13, 2017, directing M&C to produce portions of the Retainer Agreement "[t]o the extent the matter of M&C's responsibility for payment of fees and costs in this action or the matter of an award to M&C is addressed" in it. (Doc. 204 at 7; Doc. 120). M&C provided BLF with a redacted version of the Retainer Agreement on June 30, 2017. (Doc. 204 at 7). The unredacted portions of the agreement identified A+W as a "client" and included the following two provisions:

- The Law Firm [A+W] will be responsible for the payment of the Firm's [Foley & Lardner's] invoices and expenses incurred.

- In no event shall the Clinic [M&C] be responsible for any fees or expenses billed on the matter.

*Id.* at 7-8.

Discovery in the instant litigation closed on November 11, 2017. *Id.* at 9; (Doc. 122; Doc. 156 at 9). Roughly a month later, on December 8, 2017, the parties filed cross-motions for summary judgment and responses. (Doc. 204 at 10).

On December 21, 2017, the Defendants notified M&C of their intention to file a motion to disqualify Foley, *id.,* and subsequently filed that motion on January 17, 2018, six days before mediation. (Doc. 204 at 10). M&C responded to that motion on February 6, 2018. (Doc. 165). As noted above, the parties have filed a number of supplemental submissions since then (Docs. 200, 204, 205, 216), the most recent of which was submitted on June 25, 2018.

On August 3, 2018, the Court issued an Order (August 3 Order), *inter alia*: (1) denying M&C's motion for partial summary judgment; (2) granting the Defendants' motion for summary judgment; (3) denying as moot all other pending motions, except the instant motion; and (4) directing that judgment be entered in favor of the Defendants and that the case be closed. (Doc. 221).

Since the Court's issuance of the August 3 Order, the Defendants have not withdrawn their motion to disqualify Foley from its continued representation of M&C, including with respect to any appeal. Accordingly, the Defendants' motion remains ripe for the Court's review.

## DISCUSSION

The Rules Regulating the Florida Bar (Florida Bar Rules or Rules) govern members of this Court and counsel specially admitted to appear before it, including the attorneys in this action. Local Rule 2.04(d) (M.D. Fla. 2009); *Keane v. Jacksonville Police Fire & Pension Fund Board of Trustees,* 2017 WL 4102302, at *5 (M.D. Fla. Sept. 15, 2017).

In their motion, the Defendants argue that Foley should be disqualified under the Florida Bar Rules because the firm's representation agreement with M&C "impermissibly provides" that A+W "will pay all the attorney's fees, costs, and expenses that Foley charges" in this litigation, "unconditionally and without recourse." (Doc. 156 at 2). In support of this argument, the Defendants rely on a number of rules, beginning with Rule 4-1.8(e). Subject to certain exceptions not material here, Rule 4-1.8(e) prohibits a lawyer "from providing financial assistance to a client in connection with pending or contemplated litigation." R. Reg. Fla. Bar 4-1.8(e). "The concerns raised by Rule 4-1.8(e) are that of the common law doctrines of champerty and maintenance as well as the conflict of interest created when an attorney has a personal economic interest in the outcome of the matter." Fla. Ethics Opinion 96-1; *see also* Fla. Ethics Opinion 16-1. The Defendants contend that, because M&C is A+W's client in the Cin-Q Action, A+W is violating Rule 4-1.8(e) by providing financial assistance to M&C in this case. (Doc. 156 at 9-15).

To tie Foley to A+W's alleged violation of Rule 4-1.8(e), the Defendants rely on two other Florida Bar Rules: Rule 4-1.5(a) and Rule 4-1.16(a)(1). Rule 4-1.5(a)

states, in pertinent part, "an attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost . . . ." R. Reg. Fla. Bar 4-1.5(a). Rule 4-1.16(a)(1) provides, in relevant part, that, unless a court orders otherwise, "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the representation will result in violation of the Rules of Professional Conduct or law . . . ." R. Reg. Fla. Bar 4-1.16(a)(1). "Read together," the Defendants claim, "these Rules make it clear that Foley never should have agreed to represent M&C under a contract whereby A+W would pay Foley's fees and expenses . . . ." (Doc. 156 at 16). Because of these alleged violations, the Defendants assert that nothing less than Foley's disqualification will suffice to remedy the resultant harm. (Doc. 156 at 17-19).

M&C opposes the Defendants' motion. In brief, it argues, *inter alia*, that the Defendants: (1) do not have standing to seek Foley's disqualification under the circumstances present here; (2) have waived their ability to seek such relief by failing to pursue it in a timely manner; (3) are improperly using their disqualification motion as a procedural weapon to gain a tactical advantage in the case; and (4) are not entitled to disqualification on the merits.[1] (Doc. 165 at 6-17).

In support of its last argument, M&C asserts that A+W's payment of M&C's fees and expenses does not violate Rule 4-1.8(e) because, among other reasons, A+W does not represent M&C in this case (which, M&C argues, is a "fundamentally

---

[1] The Court has re-ordered M&C's arguments for purposes of the Court's analysis.

different" from the TTA class action); A+W shares a "unified interest" with M&C in this action; and, in fact, is M&C's co-client. (Doc. 165 at 9-13; Doc. 213 at 70). M&C further submits that, even should the Court decide otherwise, Rule 4-1.8(f), the Florida Bar Rule that immediately follows Rule 4-1.8(e), permits Foley to accept A+W's funding of this litigation. (Doc. 165 at 13-14). Rule 4-1.8(f) authorizes a lawyer to accept compensation for representing a client from a third party where "(1) the client gives informed consent; (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and (3) information relating to representation of a client is protected as required by Rule 4-1.6 governing the confidentiality of information." R. Reg. Fla. Bar 4-1.8(f).

M&C asserts that all three conditions are satisfied here. (Doc. 165 at 13-14). In particular, M&C maintains that it has given its informed consent to the challenged fee arrangement; there has been no showing of any interference with Foley's independence of professional judgement or its attorney-client relationship with M&C; and it has not been alleged, much less shown, that any confidential information relating to M&C's representation is not being protected as required by Rule 4-1.6. *Id.* at 14.

The Defendants acknowledged at oral argument that "the plain language" of Rule 4-1.8(f) "could plausibly be argued to allow the Foley law firm to accept th[e challenged] payments" from A+W. (Doc. 213 at 19-22). Nonetheless, they assert that Rule 4-1.8(f) "cannot be read to trump or obviate Rule 4-1.8(e)." (Doc. 156 at 16-17). Instead, the Defendants contend, "Rule 4-1.8(e) must be construed to be an

exception to Rule 4-1.8(f)" because "[o]therwise, a client in the shoes of M&C would always agree to permit some other party to finance litigation that M&C doesn't care about or sees as primarily benefitting its attorneys." *Id.* at 17.

## I. The Defendants Lack Standing to Seek Foley's Disqualification

As argued by the parties, the threshold issue posed by the Defendants' motion is whether the Defendants have standing to seek Foley's disqualification based on the alleged rule violations. (Doc. 156 at 18; Doc. 165 at 16). Both parties submit that a litigant generally lacks standing to seek disqualification of opposing counsel where there is no privity of contract between the attorney and the party claiming a conflict of interest. *Id.; see also U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 2013 WL 12082739, at *3 (S.D. Fla. Sept. 6, 2013) (citing *Anderson Trucking Serv., Inc. v. Gibson*, 884 So. 2d 1046, 1050-51 (Fla. Dist. Ct. App. 2004)); *THI Holdings v. Shattuck*, 93 So. 3d 419, 424 (Fla. Dist. Ct. App. 2012) (internal citation omitted) (same).

The Defendants assert, however, that the Florida Bar Rules authorize a party-litigant other than the client to seek disqualification under the present circumstances. (Doc. 156 at 18-19). In support of this contention, the Defendants cite the Comment to Rule 4-1.7 and the Florida Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630 (Fla. 1991). *Id.* In *K.A.W.*, the Court addressed the issue of whether insurers could "stand in the shoes" of their insured for purposes of seeking disqualification of the insured's law firm. *K.A.W.*, 574 So. 2d at 632-33. Answering this question in the affirmative, the Court pointed to the Comment to

Rule 4-1.7 and concluded that "where a conflict 'is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question.'" *Id.* (quoting Comment to R. Reg. Fla. Bar 4-1.7 and citing *In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976)); *see also McGriff v. Christie*, 477 F. App'x 673, 676-77 (11th Cir. 2012) (applying Georgia law interpreting comment to the Georgia Rules of Professional Conduct identical to the Comment to Rule 4-1.7, and noting that "[a] party who is not a former client of opposing counsel nevertheless has standing to raise the issue of opposing counsel's conflict of interest if there is 'a violation of the rules which is sufficiently severe to call in question the fair and efficient administration of justice.'").[2]

Not surprisingly, M&C argues that the standing principles enunciated in *K.A.W.* do not extend as far as the Defendants would like. In particular, it contends that the provisions conferring standing in *K.A.W.* only apply when the ethical violations at issue involve Rule 4-1.7, which is not the case here. (Doc. 165 at 16-17).

This Court need not resolve the disagreement between the parties as to whether the Comment to Rule 4-1.7 supplies the appropriate standard for standing in

---

[2] The Defendants not only maintain that the standard enunciated in the Comment to Rule 4-1.7 applies here, Oppenheim's counsel even asserted at oral argument that it would arguably "be an abuse of discretion for the Court to . . . disqualify [an attorney] in a circumstance absent privity where [that] standard was not met . . . ." (Doc. 213 at 53). While the Court has accordingly analyzed the standing issue using the standard advanced by the Defendants, it notes that there is authority, which the Defendants (and M&C) do not address, much less rely on, suggesting that a more generous standard might be applicable in this case. *See, e.g., Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980); *In re Gopman*, 531 F.2d at 265.

this case because, even accepting the Defendants' position that it does, the claimed rule violations here do not "clearly" call in question the fair or efficient administration of justice.

To begin, the nature of the asserted rule violations here is both "unique" and "complicated." *See, e.g., Keane v. Jacksonville Police Fire & Pension Fund Board of Trustees,* 2017 WL 4102302, at *7 (M.D. Fla. Sep. 15, 2017) (finding that "unique" and "complicated" nature of alleged conflict of interest at issue militated against disqualification). As noted above, these alleged violations involve the complex interplay between four Florida Bar Rules and their application to the involvement of two different law firms in three different federal cases (*i.e.,* the instant litigation, the Cin-Q Action, and the TTA Action).[3] The outcome of the interplay between all of these elements is hardly straightforward, much less "clear."

Further depriving the matter of clarity is the fact that both parties rely on factual assertions for which there is conflicting evidence in the record. *See* (Doc. 156 at 5-8; Doc. 165 at 3-4; Doc. 204 at 4-6). By way of example, the Defendants claim that the deposition testimony of M&C President, Michele Zakrzewski, and attorney Brian Wanca (of A+W) "confirms" that A+W is funding the instant litigation to advance A+W's "fee goals" in the TTA litigation, and that "M&C doesn't care about this case" or the TTA matter, "viewing both as . . . [A+W's] property, province and dominion." (Doc. 156 at 5). M&C disputes these characterizations

---

[3] This list of cases does not include the Illinois state court action brought by A+W, with Foley as its counsel, against Oppenheim.

and cites competing portions of Zakrzewski's deposition transcript, in which she testified that M&C filed the instant lawsuit because: (1) Oppenheim stole M&C's information; and (2) Zakrzewski "felt that [M&C] was wronged" by Oppenheim's actions and was "being taken advantage of." (Doc. 165 at 3). M&C also maintains that, contrary to the Defendants' suggestions, Zakrzewski testified that "she had been heavily involved in the case" until becoming very ill. *Id.* at 3-4.

In addition to the above complexities, despite presumably extensive research on the matter, the Defendants have not tendered any authority directly on point showing the alleged rule violations are, indeed, clear. They have not cited, for example, any dispositive Florida Bar opinion, Florida Bar Rule commentary, or case law demonstrating that A+W's payment of the fees in the instant action violates Rule 4-1.8(e), even though A+W does not represent M&C in this case and, in fact, is its co-client.[4] (Doc. 213 at 9). Nor have the Defendants provided any controlling authority that plainly evidences that Rule 4-1.8(e) is an exception to Rule 4-1.8(f), despite the fact that there is no express language in Rule 4-1.8 that dictates such a conclusion.

Finally, for the reasons discussed more fully below, the Defendants have also not shown that, to the extent Foley suffers from any conflict of interest, "it is []sufficiently severe to call in question the fair and efficient administration of justice." *Keane*, 2017 WL 4102302, at * 7. Accordingly, denial of the Defendants'

---

[4] As the Defendants acknowledge, the case upon which they heavily rely in making their Rule 4-1.8(e) argument, *Fla. Bar v. Patrick*, 67 So. 3d 1009 (Fla. 2011), is not dispositive of that issue. (Doc. 156 at 10). The *Patrick* decision is addressed *infra.*

disqualification motion based on a lack of standing under the standard enunciated in the Comment to Rule 4-1.7 is warranted.

## II.     The Defendants' Untimely Filing of Their Disqualification Motion Operates as a Waiver

A "motion to disqualify should be made with reasonable promptness after the party discovers the facts which lead to the motion." *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1988) (internal citation omitted). Furthermore, "[a] litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed." *Id.* (quoting *Jackson v. J.C. Penney Co.*, 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981)). A party's failure to timely file a disqualification motion "operates as a waiver of its right to object." *Concerned Parents of Jordan Park v. Hous. Auth. of City of St. Petersburg, Fla.*, 934 F. Supp. 406, 408 (M.D. Fla. 1996) (citing *Cox*, 847 F.2d at 725).

In this case, the Defendants did not act with reasonable promptness after discovering the operative facts upon which their motion to disqualify is founded. As noted above, they knew by mid-January 2017 that "M&C's counsel in the Cin-Q Action, [A+W], agreed to pay all of M&C's fees and costs in its pursuit of this action." (Doc. 165-1 at 10). They also had the redacted Retainer Agreement memorializing that fee arrangement by the end of June 2017. (Doc. 156 at 8).

Despite being so advised, the Defendants waited another roughly seven months to seek Foley's disqualification. By that point, substantial preparation of this case had been completed. The parties had litigated (and the Court resolved) the Plaintiff's motion for a temporary restraining order and a preliminary injunction (Docs. 41, 71) along with the Defendants' motion to dismiss (Doc. 96); discovery, replete with numerous disputes requiring the Court's intervention, *see, e.g.,* (Docs. 75, 78, 98, 107, 127), had closed (Doc. 122); and cross-motions for summary judgment, as well as responses, had been filed (Docs. 142, 144 149, 150).

Only after the Defendants had the benefit of M&C's dispositive motion filings did they elect to submit their motion to disqualify. The belated nature of this submission, coupled with the fact that the Defendants filed it less than one week prior to mediation, is troubling and suggests that the motion was motivated, at least in part, by tactical considerations.

The Court is unpersuaded by the Defendants' claims that their delay in filing the motion stemmed from their need to obtain additional information from M&C. (Doc. 213 at 37-39). While the Defendants maintained at oral argument that they were waiting for the Plaintiff to produce additional documents before filing the motion, they did not adequately explain to the Court what essential information they envisioned that supplemental production would contain. And, despite receiving this

production on August 8, 2017[5] (Doc. 156 at 8), the Defendants still did not broach the issue of disqualification with either M&C or the Court at the time.

The Defendants' assertion that they needed to take certain depositions before submitting their motion similarly rings hollow. It is evident from the record before the Court that the Defendants did not view the need to file their motion with sufficient urgency even after they obtained the redacted Retainer Agreement. As BLF's counsel conceded at oral argument, " . . . in all candor, we were not focused at any point on separating out our discovery efforts from things going to . . . what is this employment relationship and payment relationship and why is it happening from every other important issue in the case that we wanted discovery on for the substantive merits of the case." (Doc. 213 at 38-39).

Once armed with the redacted Retainer Agreement, the Defendants did not have the luxury of waiting to seek Foley's disqualification for months on end while the discovery and dispositive motion deadlines came and went. Putting aside any possible tactical considerations driving this delay, the Defendants' filing of their disqualification motion only after cross-motions for summary judgment had been fully briefed and with a possible trial on the horizon created an unacceptable risk that the Court would not be able to resolve this case in a timely fashion.

Given these circumstances, the Defendants' delay in filing their motion operates as a waiver. This Court has found such waivers under similar

---

[5] The Defendants conceded at oral argument that nothing in that document production was relevant to their motion. (Doc. 213 at 38-39).

circumstances, including situations where the parties seeking disqualification have been less dilatory. *See, e.g., Houston Specialty Ins. Co. v. Titleworks of Southwest Fla., Inc.*, 2016 LEXIS 173164, at *9-10 (M.D. Fla. Apr. 12, 2016) (defendant's five-month delay in filing disqualification motion after becoming aware of potential conflict "severely prejudiced" plaintiff and resulted in waiver despite the fact that discovery and dispositive motion deadlines were still three-to-four months away); *Concerned Parents,* 934 F. Supp. at 408 (denying disqualification motion for untimeliness where movant knew of representation giving rise to potential ethical violation several months before suit commenced and yet waited five months after filing of suit to raise the issue, causing extreme prejudice to plaintiff and public's interest in expedient resolution of the case).

## III. The Defendants Have Not Met Their Heavy Burden of Showing that Disqualification is Warranted

In addition to the above shortcomings, the Defendants have not shown—as they must—that disqualification of Foley is warranted under the particular circumstances in this case.

There a number of sanctions available "to enforce the [Florida Bar's] prophylactic conflict rules." *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005). These sanctions generally include, *inter alia,* disciplinary proceedings and the disqualification of counsel. *Id.*

The disqualification of an attorney, however, "is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Concerned*

*Parents,* 934 F. Supp. at 408 (quoting *Freeman v. Chicago Musical Instr. Co.*, 689 F.2d

715, 721-22 (7th Cir. 1982)). Due to the "substantial hardship" it often imposes on a

client, the Eleventh Circuit has admonished that motions to disqualify are a "harsh

sanction" that should "be resorted to sparingly." *Herrmann v. GutterGuard, In*c., 199

F. App'x 745, 752 (11th Cir. 2006) (quoting *Norton v. Tallahassee Mem'l Hosp.*, 689

F.2d 938, 941 n.4 (11th Cir. 1982)).

Such substantial hardship includes denying the client the counsel of its choice,

a choice to which it is "presumptively entitled," *In re BellSouth Corp.*, 334 F.3d 941,

961 (11th Cir. 2003) (citation omitted), as well as "the delay, inconvenience, and

expense" associated with retaining a new attorney, *Anodyne, Inc.*, 365 F.Supp.2d at

1237 (citing *SWS Financial Fund A v. Salomon Bros., Inc.*, 790 F. Supp. 1392, 1399

(N.D. Ill. 1992)). Furthermore, "it may be difficult for a replacement attorney to

fully master factual and legal nuances in a complex case, actually impairing the

adversarial process." *Id.* And, "the disqualification process itself slows the litigation

and . . . is frequently used as a dilatory tactic[] intended to divert [] the litigation from

attention to the merits." *Id.* (internal quotation marks omitted).

When brought by opposing counsel, disqualification motions are subject to

heightened scrutiny because they "may be used to harass or for tactical advantage."

*Keane*, 2017 WL 4102302, at *5 (citing *Herrmann*, 199 F. App'x at 752). Indeed, the

Preamble to the Florida Rules of Professional Conduct warns that "the purpose of

the rules can be subverted when they are invoked by opposing parties as procedural

weapons." R. Reg. Fla. Bar 4-Preamble. Accordingly, as even the Defendants

acknowledge, "[c]ourts are appropriately suspicious of motions to disqualify, particularly when the motion is brought by an opponent in litigation." (Doc. 156 at 3).

In light of all of the above, a party seeking to disqualify opposing counsel bears the heavy burden of showing that "compelling reasons" for disqualification exist. *In re BellSouth Corp.*, 334 F.3d at 961 (citations omitted).

Even when courts are confronted with a violation of the Florida Bar Rules, disqualification is not mandatory. *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgm't, Inc.*, 2008 WL 1994857, at *1 (S.D. Fla. May 6, 2008) (citing *Anodyne*, 365 F. Supp. 2d at 1236) ("It is well-settled that disqualification is not mandatory even after a finding that a law firm has violated a conflict of interest rule."). To the contrary, courts have broad discretion in determining whether counsel should be disqualified in ongoing litigation. *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651, 654 (M. D. Fla. 1992), *aff'd*, 43 F.3d 1439 (11th Cir. 1995). In exercising this discretion, "a 'court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other societal interests.'" *Keane*, 2017 WL 4102302, at *5 (quoting *Woods v. Covington Cty. Bank,* 537 F.2d 804, 810 (5th Cir. 1976)).

To aid in this balancing, courts in this Circuit often weigh a number of factors. *Keane*, 2017 WL 4102302, at *5 (collecting cases). These factors include "the nature of the ethical violation, the age of the action, the prejudice to the parties, the effectiveness of counsel in light of the violation, the public's perception of the

profession, and whether the attempt to disqualify is a tactical device or a means of harassment." *Id.*

In this case, the Court need not decide if Foley has engaged in the alleged rule violations because, even if it has, the Defendants have failed to satisfy their heavy burden of showing that compelling reasons warrant Foley's disqualification. An analysis of the above factors dictates such a conclusion.

    *A.*    *Nature of Alleged Violation*

The nature of Foley's alleged rule violations does not counsel in favor of the firm's disqualification. As noted above, these asserted violations are complicated and hardly clear.

They are also rather attenuated. As evidenced by the great deal of attention the Defendants pay to it in their motion, the brunt of their argument centers around A+W's alleged self-dealing in violation of Rule 4-1.8(e). (Doc. 156 at 9-16; Doc. 213 at 22-24). Yet, the target of the Defendants' disqualification motion, Foley, is not itself alleged to have engaged in any such self-dealing, nor is it claimed to suffer from any disabling conflict of interest. As the Defendants conceded at oral argument, A+W is the source of the "primary" or "triggering transgression" in this case, not Foley. (Doc. 213 at 33).

The Defendants' reliance on the Florida Supreme Court's decision in *Fla. Bar v. Patrick*, 67 So. 3d 1009 (Fla. 2011), is unavailing. (Doc. 156 at 10-15). In that case, an attorney (Patrick) represented a client against an insurance company on a contingency fee basis regarding two claims for which the client could receive a

maximum award of only $48, plus attorney's fees. *Patrick*, 67 So. 3d at 1010-11.

During settlement discussions, the insurance company offered the client $2,500 to

resolve the matter. *Id*. at 1011. Because this amount would have resulted in Patrick

being underpaid for his services, his client maintained that Patrick induced him to

reject the offer, with the understanding that Patrick would pay the insurance

company's attorney's fees if the client lost at trial. *Id.*

At a subsequent trial on one of the claims, the client prevailed, and the court

awarded Patrick a substantial sum in attorney's fees. *Id.* at 1011-12. Final summary

judgment was granted to the insurance company on the other claim. *Id.* at 1012.

Both parties appealed. *Id.*

Patrick retained separate counsel to represent the client on appeal and assured

the client that he would pay the appellate attorney's fees. *Id.* When the insurance

company prevailed on both claims, resulting in a setting aside of his attorney's fees

award, Patrick retained another appellate attorney (Caldevilla) to pursue the matter

further, with the understanding that he would again pay counsel's fees. *Id.*

The Florida Supreme Court found that Patrick's payments to Caldevilla, so

that Patrick could obtain a larger fee award, violated Rule 4-1.8(e). *Id.* at 1015-17.

In particular, the Court concluded that Patrick developed "too great a financial stake

in the litigation" and engaged in conduct detrimental to his client. *Id.* at 1017-18.

Because of this violation and other aggravating circumstances, the Florida Supreme

Court suspended Patrick from the practice of law for one year. *Id.* at 1018-19.

Contrary to the Defendants' contentions, this case is not *Patrick*. Even assuming there has been a violation 4-1.8(e), Foley's alleged role in that violation is not equivalent to that of Patrick's. As noted above, unlike in *Patrick*, there is a degree of attenuation between the party claimed to have violated Rule 4-1.8(e) (A+W) and the party who is the object of the disqualification motion (Foley).

Nor have the Defendants shown that the law firm sought to be disqualified, namely, Foley, has a personal economic interest in the outcome of the matter that creates a conflict of interest. There is no dispute that Foley is not paying the Plaintiff's costs and expenses and, in fact, has no independent financial stake in this case. Indeed, M&C has advised that Foley does not represent it on a contingent fee basis, is instead paid on an hourly basis, and has no more inducement to pursue this litigation than it does in any other matter where it is representing a paying client. (Doc. 165 at 10-11). *Cf. Patrick*, 67 So. 3d at 1016-17 (Patrick "developed 'too great a financial stake in the litigation'" and "proceeded with the cases to benefit himself").

Further, unlike in *Patrick,* the alleged violation here involves a law firm (A+W) that represents a client (M&C) in one case paying the fees and expenses of that client in another matter. While the Defendants minimize this distinction, the Court in *Patrick* specifically noted in assessing the severity of the violation that Patrick "knowingly engaged in actions that were adverse to his client in the *very matters in which he was representing him.*" *Patrick,* 67 So. 3d at 1018. (emphasis added).

In addition, irrespective of the applicability of Rule 4-1.8(f), there is evidence in the record that, unlike *Patrick,* the client (M&C) has provided its informed consent to the challenged fee arrangement and has not suffered any harm. *Cf. id.* at 1018-19 (Patrick "did not accurately inform" the client regarding "possible harm that could result from" the challenged fee arrangement, and the client "did eventually incur harm"). Nor has there been any allegation, much less a showing, as there was in *Patrick*, that the independent professional judgment of the attorney sought to be sanctioned (Foley) has been compromised.

At least one additional fact distinguishes *Patrick* from the present circumstances. Patrick was subjected to a "more severe" sanction, in part, due to the fact that he had "a disciplinary history for similar misconduct." *Id.* at 1018-19. There is no allegation that Foley has similarly engaged in a pattern of unethical conduct.

In sum, based on the above distinctions and the record before it, the Court declines the Defendants' invitation to extend *Patrick* in a manner that would compel subjecting Foley to the "drastic" and "harsh" sanction of disqualification under the circumstances in this case.

### B.  *Age of the Action*

The age of this action also cuts against disqualification. Foley filed the instant Complaint on behalf of the Plaintiff in June 2016 (Doc. 2), and its litigation spanned more than two years—extending well beyond the October 2017 trial term the Court initially envisioned for the case (Doc. 70). And, as set forth above, the parties' and

the Court's handling of this matter over the past two years required a substantial expenditure of time and resources. *See Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 731-32 (11th Cir. 1988) (cautioning that four-year representation of plaintiff resulted in an attorney-client relationship and expenditure of considerable energy in preparing the case that must not be taken lightly).

Furthermore, as also noted above, the Defendants belatedly filed their disqualification motion after discovery had been completed and dispositive motions had been filed. The fact that the Court has now granted the Defendants' motion for summary judgment and directed that the case be closed further militates against disqualification. *Keane*, 2017 WL 4102302, at *7 (finding that age of action weighed against disqualification where, among other things, plaintiff failed to timely raise the issue and did so only three months shy of the discovery deadline).

C. *Prejudice to the Parties*

In light of the Court's decision granting the Defendants' motion for summary judgment, some of the prejudice previously claimed by the parties is in now question.

Before summary judgment was granted in their favor, the Defendants contended that the alleged violations prejudiced them by "the persistence of an action that would never likely have been brought but for [the alleged] rule violations" (Doc. 213 at 43), and disqualification was the "only remedy that would. . . directly address [that] harm" (Doc. 213 at 60-61). With the case now closed but for the resolution of this motion, the Defendants' previously asserted prejudice has effectively evaporated.

24

On the other hand, the Defendants could assert, as they did when the case was still pending, that M&C would not be in position to take an appeal absent the alleged rule violations. *Cf.* (Doc. 156 at 19). Weighing against this claim, however, is the evidence before the Court that M&C will continue to pursue its claims against the Defendants regardless of the outcome of the disqualification motion. (Doc. 165 at 4, 16).

Although it has been suggested that the parties will appeal any adverse judgment (Doc. 213 at 61), it is not yet clear whether M&C will appeal the Court's August 3, 2018 Order. Nonetheless, it seems evident that if the Court were to disqualify Foley at this juncture, M&C would suffer prejudice in having to hire new counsel to assist it in making that decision. Moreover, if M&C elects to appeal, it might be "be difficult [for it] to find a replacement to 'fully master factual and legal nuances' in this complex action," thereby "impairing the adversarial process." *Keane*, 2017 WL 4102302, at *7 (quoting *Anodyne, Inc.*, 365 F. Supp. 2d at 1237).

In the end, the Court finds that prejudice to the parties tips the scales against disqualification.

D.   *Effectiveness of Counsel in Light of Alleged Violation*

The Defendants acknowledged at oral argument that Foley's judgment in this litigation has not been impaired by the challenged fee arrangement. (Doc. 213 at 45) ("Foley is a competent and capable firm and the attorneys that they have assigned to this case have handled themselves capably and competently and I would not say otherwise . . . .").

In this vein, this action differs materially from the sole case the Defendants appear to cite in support of their contention that a violation of Rule 4-1.8(e) is sufficient to warrant the disqualification of a litigation opponent's counsel, *Rubio v. BNSF Railway Co.*, 548 F. Supp. 2d. 1220 (D.N.M. 2008). (Doc. 156 at 19). This case neither binds the Court nor persuades it. The court in *Rubio* was confronted with an undisputed violation of New Mexico's version of Rule 4-1.8(e), namely, plaintiff's *pro hac vice* counsel's co-signing of a $86,400 bank loan to their client. *Id.* at 1224-25. In assessing whether this prohibited financial transaction gave rise to a conflict of interest, the court noted that "the relationship between a debtor and a lender is inherently adversarial in nature" and surmised that the loan may have negatively affected the prospect of settlement of the action. *Id.* at 1224. Ultimately, however, after balancing the relevant interests, the court in *Rubio* found that disqualification of the plaintiff's attorney served the purposes behind New Mexico's version of Rule 4-1.8(e) because "[t]he loan created a conflict of interest that . . . undermines [the court's] confidence in the vigor of counsel's representation." *Id.* at 1226. With the vigor of Foley's representation of M&C over the more than two years of litigation unquestioned, this factor weighs heavily against disqualification.

E.     *Public's Perception of Legal Profession*

The public's perception of the legal profession will not be materially impacted by Foley's continued representation of M&C. As noted, the intricacies of the alleged rule violations are not easily explained nor likely well known to the community. "Even the highly experienced attorneys on both sides disagree on whether" Foley's

representation "is proper, and they present at least colorable arguments to support their respective positions." *Keane*, 2017 WL 4102302, at *7.

      F.      *Whether the Disqualification Motion is a Tactical Device or Means of Harassment*

While the Court is disinclined to infer that a party has engaged in conduct for a nefarious purpose, there is evidence in the record that suggests that the Defendants filed their disqualification motion as a means of gaining a tactical advantage in this litigation. *Herrmann*, 199 F. App'x at 752 ("A motion to disqualify brought by opposing counsel should be viewed with caution . . . for it can be misused as a technique of harassment.") (internal quotation marks and citation omitted). This is particularly true given the timing of the motion and the allegedly "Machiavellian" manner in which the Defendants have approached the TTA class action. *See Tech. Training Assocs., Inc.*, 874 F.3d at 697 (noting that evidence tendered by Cin-Q and M&C showed that BLF had "engaged in a 'Machiavellian' plan' to undercut . . . [A+W's] negotiating position" in the Cin-Q Action, and—it "appears"—had also engaged in other conduct that would constitute a violation of BLF's ethical duty to the class in the TTA action).

## CONCLUSION

For all of the reasons discussed above, the *Defendants' Motion to Disqualify*

*Foley & Lardner, LLP* (Doc. 156) is DENIED.

DONE and ORDERED in Tampa, Florida, this 10th day of August 2018.

*Christopher P. Tuite*

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record